## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
In re:                                    :
                                          :   Chapter 11
                                          :
ETOYS, INC., et al.,                      :   Case Nos. 01-0706 (MFW)
                                          :   Through 01-0709 (MFW)
            Debtors.                      :
                                          :
-----------------------------------------------------------x
ROBERT K. ALBER, Pro Se,                  :
                                          :
            Appellant,                    :
                                          :
      v.                                  :   Civil Action No. 05-830 (KAJ),
                                          :   procedurally consolidated with
                                          :   Civil Action No. 05-0831 (KAJ)
TRAUB, BONACQUIST & FOX LLP,              :
BARRY GOLD, MORRIS NICHOLS               :
ARSHT & TUNNELL LLP, and POST-           :
EFFECTIVE DATE COMMITTEE OF              :
EBC I, INC.,                              :
                                          :
            Appellees.                    :
-----------------------------------------------------------x
```

### MEMORANDUM OF LAW IN SUPPORT OF APPELLEES'
### MOTION TO DISMISS APPEAL FOR FAILURE TO PROSECUTE

Dated: November 17, 2006          Derek C. Abbott (No. 3376)
                                  Gregory W. Werkheiser (No. 3553)
                                  MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                  1201 N. Market St., 18th Floor
                                  P.O. Box 1347
                                  Wilmington, DE 19899-1347
                                  Tel:   (302) 658-9200
                                  Fax:   (302) 658-3989


                                  Frederick B. Rosner (No. 3995)
                                  DUANE MORRIS LLP
                                  *Delaware Counsel to Traub, Bonacquist & Fox LLP*
                                  1100 North Market Street, Suite 1200
                                  Wilmington, DE 19801
                                  Tel:   (302) 657-4900
                                  Fax:   (302) 657-4901

-and-

Ronald R. Sussman (RS-0641)
COOLEY GODWARD KRONISH LLP
*Co-Counsel for Traub, Bonacquist & Fox LLP*
1114 Avenue of the Americas
New York, NY  10036-7798
Tel:    (212) 479-6000
Fax:    (212) 479-6275

-and-

James L. Garrity, Jr. (JG-8389)
SHEARMAN & STERLING LLP
*Co-Counsel for Traub, Bonacquist & Fox LLP*
599 Lexington Avenue
New York, New York 10022
Tel:    (212) 848-4000
Fax:    (212) 848-7179

Mark Minuti (No. 2659)
SAUL EWING LLP
*Counsel to Barry Gold*
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
Ph:    (302) 421-6800
Fax:    (302) 421-5873

-and-

G. David Dean
SAUL EWING LLP
100 South Charles Street
Baltimore, MD  21201
Ph:    (410) 332-8600
Fax:    (410) 332-8862

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS     ii

PRELIMINARY STATEMENT     1

BACKGROUND     2

ARGUMENT     10

      A.    Alber Is Solely Responsible For His Unjustifiable Delays     11

      B.    The Appellees And the Court Are Seriously Prejudiced By Alber's Failure To Comply With The Court's Scheduling Orders.     12

      C.    Alber Has An Established Pattern Of Dilatory Conduct     13

      D.    Alber's Conduct Is Willful And In Bad Faith     14

      E.    A Sanction Short Of Dismissal Would Not Be Effective     14

      F.    Alber's Appeal Is Totally Lacking In Merit     15

      G.    Summary     15

CONCLUSION     17

ii.

## TABLE OF CITATIONS

<u>Cases</u>                                                                      <u>Page(s)</u>

<u>Balaber-Strauss v. Reichard (In re Tampa Chain Co., Inc.),</u>
    835 F.2d 54 (2d Cir. 1987)                                              16

<u>Green v. Dorrell,</u>
    969 F.2d 915 (10th Cir. 1992)                                           12

<u>Hammer v. Cardio Med. Prod., Inc.,</u>
    No. Civ. A. 01-564, 2006 WL 89927 (W.D. Pa. Jan. 11,
    2006)                                                                   12

<u>In re Champion,</u>
    895 F.2d 490 (8th Cir. 1990)                                            16

<u>In re Haardt,</u>
    Civ. A. No. 90-7509, 1991 WL 101555 (E.D. Pa. June 7,
    1991)                                                                   16

<u>In re Nutraquest, Inc.,</u>
    434 F.3d 639 (3d Cir. 2006)                                             15

<u>In re Orthopedic Bone Screw Prods. Liab. Litig.,</u>
    246 F.3d 315 (3d Cir. 2001)                                             15

<u>Jewelcor Inc. v. Asia Commercial Co., Ltd. (In re Jewelcor Inc.),</u>
    11 F.3d 394 (3d Cir. 1993)                                              10

<u>Koutoufaris v. Morris, James, Hitchens & Williams (In re
    Koutoufaris),</u>
    No. 95-204 (JKF), 2002 WL 158912 (D. Del. July 18,
    2002) (same)                                                            16

<u>Mindek v. Rigatti,</u>
    964 F.2d 1369 (3d Cir. 1992)                                          2, 11

<u>Nielsen v. Price,</u>
    17 F.3d 1276 (10th Cir. 1994)                                        12, 16

<u>Ocwen Fed. Sav. Bank, FSB v. Jennings,</u>
    Civil Action No. 05-5106 (FLW), 2006 WL 2403442
    (D.N.J. Aug. 17, 2006)                                                   16

<u>Poulis v. State Farm Fire & Cas. Co.,</u>
    747 F.2d 863 (3d Cir. 1984)                                             11

TABLE OF CITATIONS (continued)

Page(s)

Tellewoyan v. Wells Fargo Home Mortg., Civil Action No. 05-
        4653 (FLW),
        2006 WL 2331108 (D.N.J. Aug. 10, 2006)                16

United States Trustee v. Price Waterhouse,
        19 F.3d 138 (3d Cir. 1994)                            15

Statutes and Other Authorities

Bankruptcy Rule 9019                                          15

Fed. R. Bankr. P. 8001(a)                                     10

Fed. R. Bankr. P. 8009(a)(1)                                  10

Rule 8006 of the Federal Rules of Bankruptcy Procedure    1, 4, 13

PRELIMINARY STATEMENT

Appellees Traub, Bonacquist & Fox LLP ("TB&F") and Barry Gold ("Gold"), and Appellee/Cross-Appellant Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols," and collectively with TB&F and Gold, the "Appellee Movants") have filed this Motion To Dismiss Appeal For Failure To Prosecute (the "Motion") to address the dilatory conduct and willful failure to abide by the rules and orders of this Court of appellant Robert K. Alber ("Alber") in connection with the above-captioned appeal (the "Appeal").[1]  Alber's bad faith behavior has delayed the resolution of this Appeal and the related cross-appeal filed by Morris Nichols, Civil Action No. 05-0831 (KAJ) (the "Cross-Appeal," and together with the Appeal, the "Appeals"), for more than one year.

Alber initially impeded the progress of the Appeals through the filing of record designations (which he has yet to properly correct) that were woefully noncompliant with the requirements of Rule 8006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Alber then caused significant further delay and waste of resources through his failure to abide by the Court ordered briefing schedule that he specifically requested and agreed to and by his failure to seek an extension of time until prompted to respond by the request of certain of the Appellees for a status conference with this Court.  After being fully apprised by this Court of his rights and duties in connection with this Appeal and agreeing to abide by an extended brief schedule that he specifically requested, Alber has yet again willfully defied the authority of this

---

[1]    Additional appellees not party to this Motion are: the United States Trustee; and the Post-Effective Date Committee of EBC I, Inc., f/k/a eToys, Inc. (collectively with the Appellee Movants, the "Appellees").

Court through his failure to file his opening brief when due on November 15, 2006 and his repeated failure to properly seek an extension of time from this Court.

The Appellee Movants respectfully submit that the time has come to discontinue indulging Alber's abuse of the appeal process. As the Third Circuit has cautioned, "district courts cannot, and should not, tolerate unjustifiable delays and the expenditure of irreplaceable judicial resources caused by litigants, *pro-se* or represented, who will not obey court orders." <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1375 (3d Cir. 1992). The Appellee Movants therefore respectfully request that this Court dismiss Alber's Appeal with prejudice. This is the Appellee Movants' opening memorandum of law in support of their Motion.

## BACKGROUND

On October 14, 2005, Alber filed a notice of appeal [Bankr. Docket Item 2327] from the Order, dated October 4, 2005 [Bankr. Docket Item 2320] (the "October 4 Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[2] The Appeal was docketed in this Court on December 5, 2005 [App. Docket Item 1]. According to the Notice of Docketing [App. Docket Item 6] filed by the Clerk of Court, Alber was provided notice of the docketing of the appeal.

On October 24, 2005, Alber filed his Designation of Record on Appeal [Bankr. Docket Item 2332] (the "First Appellant Designation").[3] In the First Appellant

---

[2]    Morris Nichols filed a Notice of Conditional Cross-Appeal on October 24, 2005 [Bankr. Docket Item 2329], thereby commencing the Cross-Appeal.

[3]    In the First Appellant Designation, Alber included characterizations of the substance of certain of the documents referenced therein. The Appellee Movants did not and do not acquiesce to Alber's self-serving characterizations.

Designation, Alber improperly designated for inclusion in the record on appeal a number of documents which were (A) not part of the record in connection with either the specific contested matter below or the Debtors' bankruptcy cases in general, (B) not considered by the Bankruptcy Court in entering the October 4 Order, (C) items that were totally incomprehensible so as to be unidentifiable with any precision from which either this Court or interested parties could understand what was intended, (D) items that were stricken from the record by the Bankruptcy Court, and (E) items that have never been available to either the Bankruptcy Court below or the other parties in interest.

Pursuant to a motion dated December 19, 2005, TB&F sought the issuance and entry of an order of this Court, inter alia, striking those improperly designated items contained in the First Appellant Designation [App. Docket Item 8] (the "First Motion to Strike"). Pursuant to separate pleadings, appellees Gold and Morris Nichols joined in the First Motion to Strike [App. Docket Items 11 and 12].

By Memorandum Order dated August 30, 2006 [App. Docket Item 22] (the "Memorandum Order"), this Court granted the First Motion to Strike. In addition, the Court afforded Alber an additional two (2) weeks from the date of the Memorandum Order to submit an amended designation of the record, which designation had to identify each designated item by specific docket number.

On September 18, 2006, Alber filed his Amended Designation of Record on Appeal by Appellant Robert K. Alber, eToys Shareholders [App. Docket Item 24] (the "Appellant Amended Designation"). The Appellant Amended Designation fails to correct many of the deficiencies of the First Appellant Designation and contains

additional violations of Bankruptcy Rule 8006. For instance, Alber has now improperly designated over 100 additional items that do not belong in the record on this Appeal.[4]

By Order dated September 20, 2006 [App. Docket Item 25] (the "Initial Scheduling Order"), this Court fixed a consolidated briefing schedule in this Appeal, as well as in the related Cross-Appeal by Morris Nichols. The Initial Scheduling Order required Alber to file his opening brief by September 27, 2006.

On September 21, 2006, Morris Nichols wrote the Court [App. Docket Item 26] requesting a clarification of the Initial Scheduling Order. Although Morris Nichols suggested certain modifications to the appellate briefing schedule, Morris Nichols did not seek to alter the September 27, 2006 deadline for the filing of Alber's opening brief.

Alber responded with a letter to the Court on September 22, 2006 [App. Docket Item 27]. In his letter, Alber requested an additional week to file his opening appeal brief, but otherwise assented to the modifications of the Initial Scheduling Order requested by Morris Nichols.

Later on September 22, 2006, Alber and Morris Nichols corresponded by e-mail and confirmed an agreement among Alber and all of the Appellees pursuant to which Alber would file his opening appeal brief by October 4, 2006.[5]

---

[4]    The Appellee Movants had intended to confer with Alber following the filing of his opening brief in an effort to persuade him to reform his record designations if it appeared that he was relying on the improperly designated items in connection with the Appeal. However, Alber failed to file his opening appeal brief. In light of this Motion, the Appellee Movants have deferred filing a second motion to strike relating to the Appellant's Amended Designation. Appellee Movants reserve their rights to file such a motion.

[5]    Copies of this e-mail correspondence are attached as Exhibit C to the MNAT Motion (as defined below).

After being notified of the parties' agreement, on September 22, 2006, the Court entered its Amended Consolidated Scheduling Order [App. Docket Item 28] (the "First Amended Scheduling Order"). The First Amended Scheduling Order required Alber to file his opening brief by October 4, 2006. The same day the First Amended Consolidated Scheduling Order was entered, Morris Nichols caused a copy of the First Amended Scheduling Order Order to be served upon Alber by e-mail.[6]

Although Alber's opening brief was due on October 4, 2006, Alber failed to file his opening brief and failed to move for an extension of time until prompted to do so twelve (12) days after the filing deadline by the request of certain of the Appellees for a status conference with this Court. Pursuant to that certain Request of Appellee/Cross-Appellant Morris, Nichols, Arsht & Tunnell LLP for (I) Status Conference to Address Consequences of Robert K. Alber's Failure to Timely file Opening Appeal Brief and (II) Stay of Deadlines for Appellees to File their Briefs, dated October 9, 2006 [App. Docket Item 29] (the "MNAT Motion")[7] appellee Morris Nichols sought a stay of the briefing schedule fixed by the First Amended Scheduling Order and certain related relief as a result of Alber's failure to timely file his opening brief.

On October 16, 2006, twelve days after his opening brief was due, Alber filed a response to the MNAT Motion and a request for enlargement of time to file his opening brief [App. Docket Item 35] (the "Extension Request"). The Extension Request

---

[6]    A copy of the e-mail correspondence reflecting service of the First Amended Scheduling Order on Alber is as Exhibit E to the MNAT Motion.

[7]    Appellees TB&F and Gold each joined in the MNAT Motion [App. Docket Items 30 & 31].

6.

consisted of twenty-two (22) pages of argument and twenty-one (21) exhibits.   Alber

argued, among other things, that:

> [t]he strain imposed by the attempted, but utterly
> unsuccessful, composition of said Alber Appellate Brief,
> coupled with other events, has pushed ALBER into such a
> state of abjectivity and mental fatigue as to preclude
> ALBER from composing an Appellate Brief, effective or
> otherwise, at this time.  For ALBER is of such indomitable
> determination and spirit, that if ALBER is forced to
> proceed while mentally exhausted and over-stressed to such
> an advanced degree, unfortunate occurrences could
> transpire which ALBER has been warned could cause
> ALBER long-term mental deterioration which a simple
> enlargement of time could prevent.

(Extension Request at 2).

In further support of his Extension Request, Alber offered a note from a

family nurse practitioner, which was dated ten days prior to the filing of his Extension

Request and recited as follows:

> Mr. Alber was seen in my office today and requested that I
> write this letter to the court for him.  He is experiencing
> extreme stress and anxiety.  He states he has been working
> on some legal proceedings, which have been occupying all
> of his time and energy.  This is causing insomnia and
> anxiety.  If it is possible could these legal matters be put on
> hold for a time, allowing Mr. Alber time for a respite?

(Extension Request, Ex. A).

On October 16, 2006, the Court convened a telephonic status conference

among Alber and the Appellees.  Considering the Extension Request, the Court stated as

follows:

> THE COURT:  Yes, I'm not faulting your ability to
> put together a position at all, Mr. Alber.  On the contrary,
> Mr. Alber, I wonder why you couldn't put together a brief
> in support of your appeal when you put together a very fine
> document in articulating your position for an extension
> clearly.  So it's not the ability you have, it's the failure to

exercise your ability in this instance to produce an opening brief that has me asking these questions.

Well, here is what we're going to do. I'm going to give you your 30 days Mr. Alber. I'll give you 30 days to come up with this opening brief, okay? Is that what I understood you to be asking for?

MR. ALBER: That would probably be fine, Your Honor. Yes.

THE COURT: Okay. If I understand you right, I'll give you that. Now, if you can't do it within the 30 days because you fee like you are still mentally and emotionally at sea, then I will entertain a motion. You go ahead and tell me, file a document which you have to serve on everybody . . . .

       . . . .

THE COURT: . . . . You need to send me a letter if you feel like you can't meet that 30-day deadline that we're giving you, and then you would need to also – well, in effect, you would, not a letter, send me a motion for further extension of time. And you would need to, of course, append your further documentation from your medical provider. And what I will do at that point is I will entertain a motion from any of the defendants under Rule 35(a) of the Federal Rules of Criminal [sic] Procedure which provides that if a party's mental or physical condition is at issue and good cause is shown for requiring an independent examination, and in this instance I would certainly consider it good cause shown, to keep putting off briefing on appeal, we'll go ahead and require you to submit to an independent examination by a psychiatrist or a duly certified psychologist that all the parities can agree on and you will bear at least half the cost of that, maybe all the cost of that, depending on how it comes out and we'll see whether, from an independent practitioner, mental health practitioner's perspective you are genuinely unable to proceed. Because I don't want to deprive you of your opportunity to make your case but I also don't want to make people whose rights are at stake here on the defendants' side wait indefinitely on the basis of subjective complaints which are supported by no more than the very sketchy statement, indeed question posed by your nurse practitioner. Do you understand what I'm saying?

        MR. ALBER:  Yes, I do, your Honor. . . .

    . . . .

        THE COURT:  So what I'm telling you is that's not much but it's enough to get you 30 days.  And if you still can't do it in that time frame, then we're going to get you to a doctor that isn't your doctor, it's some independent party with credentials associated with mental health evaluation and we'll see how you are.

Transcript of D. Del. 10/16/06 Hearing, at 9-13, attached as <u>Exhibit A</u> hereto.

        Following the status conference Morris Nichols prepared a proposed form of second amended scheduling order, which provided for Alber to file his opening brief by November 15, 2006.  Morris Nichols circulated the proposed order to Alber via an e-mail requesting his comments, if any.[8]  Alber, however, did not provide any comments.  Thereafter, Morris Nichols tendered the proposed order to the Court under a cover letter [App. Docket Item 38], again copying Alber.  Once again, no response was received from Alber.

        On October 23, 2006, the Court entered the Second Amended Consolidated Scheduling Order [App. Docket Item 39] (the "Second Amended Scheduling Order").  The Second Amended Scheduling Order required Alber to file and serve his opening brief by November 15, 2006.  Morris Nichols immediately caused a copy of the Second Amended Scheduling Order to be served on Alber by e-mail and first class U.S. mail, postage prepaid [App. Docket Item 40].

---

[8]    A copy of Morris Nichols' 10/17/06 e-mail to Alber is attached hereto as <u>Exhibit B</u>.

Once again, and notwithstanding his representations and the explicit direction of this Court, Alber ignored the November 15, 2006 deadline to file his opening brief or to move for a further extension of time.

On the afternoon of November 16, 2006, Alber transmitted an e-mail to certain of the Appellees announcing his intention to move for a further extension.[9] Alber does not seek a further extension based on any alleged mental or physical disability. Indeed, he advises that his "health is greatly improved after the time off" and that he is "now in a mental state able to continue without break for the foreseeable future." Rather, he now contends that he should be excused from complying with the Second Amended Scheduling Order because he allegedly has been burdened with other litigation and criminal matters:

> [I]t's been a struggle since I've been served with 24 documents from the previously named 'associates' of some of you in the Arizona case, and coincidentally, just a few days prior to my November 15th deadline they took steps to have me arrested. Those actions culminated with the local police visiting me, and my having to defend myself from yet more perjurious allegations, which necessitates my drafting a filing (albeit a short filing which will only take me a day or two at most) to deal with these new criminal allegations against me.

The Appellee Movants dispute that any further extension is appropriate and deny the fantastic allegations of Alber's email, including that they are somehow behind the Arizona litigation and criminal proceedings in which Alber has become embroiled.

---

[9]     A copy of Alber's 11/16/06 e-mail is attached as <u>Exhibit C</u> hereto.

ARGUMENT

Alber has repeatedly ignored the scheduling orders and applicable rules of this Court and must be forced to bear the appropriate consequences of his willful actions and dilatory conduct. The Appellee Movants therefore respectfully submit that this Court can and should exercise its discretion to dismiss Alber's Appeal with prejudice for failure to prosecute it.

The authority for such action by the Court includes Bankruptcy Rules 8001(a) and 8009(a)(1), as well as this Court's inherent authority to enforce its orders and manage its docket. See Fed. R. Bankr. P. 8001(a) ("An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court . . . deems appropriate, which may include dismissal of the appeal."); Fed. R. Bankr. P. 8009(a)(1) (requiring compliance with the briefing schedule establishing by the rule or otherwise fixed by local rule or order of the court); Degen v. United States, 517 U.S. 820 (1996) (stating with respect to the inherent power of a federal court that a "federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case.").

Whether to dismiss Alber's Appeal is committed to this Court's sound discretion. See Jewelcor Inc. v. Asia Commercial Co., Ltd. (In re Jewelcor Inc.), 11 F.3d 394, 397 (3d Cir. 1993) (dismissal for failure to prosecute committed to district court's discretion). The Third Circuit has applied the following equitable factors to guide the exercise of discretion in considering whether to dismiss for failure to prosecute: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an

analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (upholding dismissal with prejudice for plaintiff's counsel's failure to meet court-imposed deadlines and other procedural requisites).  "[T]he decision must be made in the context of the district court's extended contact with the litigant." Mindek, 964 F.2d at 1373. The factors are to be balanced, and not all of the factors need to be satisfied in order for dismissal to be warranted. Id.

Here it is clear that each of the Poulis factors weighs in favor of dismissal of the Appeal.

### A.    Alber Is Solely Responsible For His Unjustifiable Delays

Alber is exclusively responsible for his failure to comply with this Court's rules and scheduling orders.  Initially, Alber ignored the First Amended Scheduling Order, to which he consented, and only filed his Extension Request twelve days after his brief was due when prompted by the MNAT Motion.  Thereafter, at the October 16, 2006 scheduling conference, Alber specifically acknowledged and agreed to his obligation to either file an opening brief within thirty (30) days or to timely move for a further extension within such period.  Alber did neither, and ignored the Second Amended Scheduling Order that was entered with his consent.

Whereas Alber initially attempted to hide behind dubious allegations of emotional or mental incapacity to proceed, Alber now offers the excuse that he was too busy dealing with his Arizona litigation and criminal matters in which he has become embroiled to comply with this Court's order.  Otherwise stated, Alber consciously chose to prioritize other matters of greater subjective importance to him over compliance with

his commitments to this Court and the parties to this Appeal to deliver a brief by November 15, 2006.

Alber will no doubt attempt to fall back on the crutch of his *pro se* status as he did in his initial Extension Request. Court rules and deadlines, however, apply with equal force to *pro se* parties as they do to other litigants. See Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994) (this court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'") (quoting Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992)); Hammer v. Cardio Med. Prod., Inc., No. Civ. A. 01-564, 2006 WL 89927, at *1 (W.D. Pa. Jan. 11, 2006) ("[E]ven self-represented parties are required to comply with procedural rules and filing deadlines . . . .").[10]   That is particularly true when, as is the case here, an experienced *pro se* litigant is before the Court.[11]

In sum, Alber should not be permitted to cast blame for his delay elsewhere. He bears sole responsibility for his failure to abide by the schedules established by this Court with his participation and agreement.

B.    The Appellees And the Court Are Seriously Prejudiced By Alber's Failure To Comply With The Court's Scheduling Orders.

The Appellees and the Court have experienced and continue to experience significant prejudice as a result of Alber's wrongful actions. As a threshold matter, the costs to the Appellees of opposing the Appeal have been substantially increased as a

---

[10]    Copies of unreported decisions cited herein are attached as Exhibit D hereto.

[11]    In three-years litigating before the Bankruptcy Court Alber filed at least 27 pleadings, as set forth on Exhibit E hereto.

result of Alber's failure to comply with the Court's scheduling orders and refusal to limit his appeal designations to relevant items actually in the record before the Bankruptcy Court. Moreover, the Appellees have been denied the ability to clear their reputations. Alber has made numerous extraneous and unsupportable assertions against the Appellees in the course of litigating the matters now before the Court, including allegations of fraud and criminal misconduct. Alber's continual delays of this Appeal have allowed many of his smears to linger unchallenged and unaddressed.

The adverse impact on the Court is similarly grievous. Alber's shenanigans have forced this Court to consume scarce judicial time and resources to probe Alber's dubious allegations. Moreover, his delays have burdened this Court's docket with an inactive appeal.

C.    Alber Has An Established Pattern Of Dilatory Conduct

Alber's history of dilatory behavior is evident from his course of conduct in the more than thirteen months this Appeal has been pending. Initially, Alber ignored the requirements of Bankruptcy Rule 8006 in his First Appellant Designation, which strayed far beyond the record in the Bankruptcy Court and consisted of more argument than record designation.[12] Then he defied a briefing schedule in the First Amended Scheduling Order that he specifically requested. Further, after specifically agreeing to a thirty (30) day extension of his briefing deadline and committing to this Court to seek any

---

[12]    Alber has compounded his failure to abide by Bankruptcy Rule 8006 with his Appellant Amended Designation, which designates well in excess of 100 items either not found in the record before the Bankruptcy Court or which have no relevance to this Appeal.

further extension prior to the expiration of that period, Alber once again ignored the express terms of the Second Amended Scheduling Order. Alber, therefore, has demonstrated a systematic refusal to comply with the rules and orders of this Court.

D.    Alber's Conduct Is Willful And In Bad Faith

There can be little doubt that Alber is acting willfully and in bad faith to thwart the administration of justice before this Court. Alber's willful lack of respect to this Court is demonstrated by, among other things, his willingness to produce 22 pages of argument and assemble 21 exhibits in the Extension Request, in lieu of channeling his energies into the legitimate task of preparing his appellate brief. Moreover, Alber's latest set of excuses evidence a conscious decision on his part to place his interest in his Arizona litigation ahead of compliance with this Court's orders.

E.    A Sanction Short Of Dismissal Would Not Be Effective

There are no monetary or other sanctions short of dismissal of the Appeal that would be appropriate to address Alber's misconduct. Although Alber was made fully aware at the October 16, 2006 status conference that the seeking a further extension could result in him being taxed with substantial costs and being subjected to a mental examination, Alber nonetheless chose for a second time not to comply with his filing deadline. Alber's conduct to date clearly demonstrates that he is not meaningfully deterred from defying this Court by the prospect of imposition, embarrassment or monetary burden. The only realistic option left to this Court to vindicate its authority is to direct the dismissal of the Appeal with prejudice.

F.    Alber's Appeal Is Totally Lacking In Merit

The absence of substantial merit to Alber's Appeal makes it particularly appropriate for this Court to order the dismissal of the Appeal. Although Alber has never provided the Court with a formal statement of the issues on appeal, it is apparent that Alber principally challenges the Bankruptcy Court's exercise of discretion in fashioning remedies for the disinterestedness and disclosure violations it identified and in approving the settlement between the United States Trustee and TB&F under Bankruptcy Rule 9019. It is well established, however, that the bankruptcy courts possess broad discretion to fashion an appropriate remedy when confronted with such violations. See United States Trustee v. Price Waterhouse, 19 F.3d 138 (3d Cir. 1994) (construing section 328(c) of the Bankruptcy Code to give the bankruptcy court discretion over the disallowance of fees when a professional is or becomes non-disinterested). Likewise, it is well established that the approval of settlements under Bankruptcy Rule 9019 is something uniquely committed to a bankruptcy court's discretion. See In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006) (Appellate court should "not 'disturb an exercise of discretion unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'") (quoting In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 320 (3d Cir. 2001) (internal quotation marks omitted)). The likelihood that Alber can successfully challenge the Bankruptcy Court's exercise of its broad discretion as to such matters is minimal.

G.    Summary

Dismissing Alber's Appeal with prejudice on the record presently before the Court is supported by and consistent with a substantial body of case law from both

16.

within and outside of the Third Circuit.  See, e.g., Nielsen, 17 F.3d at 1277 (dismissing

bankruptcy appeal for failure to prosecute); In re Champion, 895 F.2d 490, 492 (8th Cir.

1990) (same); Balaber-Strauss v. Reichard (In re Tampa Chain Co., Inc.), 835 F.2d 54,

55-56 (2d Cir. 1987) (same); Ocwen Fed. Sav. Bank, FSB v. Jennings, Civil Action No.

05-5106 (FLW), 2006 WL 2403442, at *1 (D.N.J. Aug. 17, 2006) (same); Tellewoyan v.

Wells Fargo Home Mortg., Civil Action No. 05-4653 (FLW), 2006 WL 2331108, at *2

(D.N.J. Aug. 10, 2006) (same); Koutoufaris v. Morris, James, Hitchens & Williams (In re

Koutoufaris), No. 95-204 (JKF), 2002 WL 158912, at *1-2 (D. Del. July 18, 2002)

(same); In re Haardt, Civ. A. No. 90-7509, 1991 WL 101555 at *3 (E.D. Pa. June 7,

1991) (same).

    The Koutoufaris case, decided by Judge Sleet, is a particularly apt

example.  As in this case, the appellants ignored their briefing deadline and waited for the

appellee to file a motion seeking relief as a result of the delay before contacting the court.

Koutoufaris, 2002 WL 1585912, at *1.  Attempting to cover for their delay (as is Alber

here), the appellants then attempted to blame their failure to act on the alleged illness of

their counsel.  Id.  The Court was unimpressed, stating: "Regardless of [counsel's] illness,

the appellants had the affirmative duty to either file their brief, or to file a motion for

enlargement of time.  The appellants unilaterally chose to do neither, and in the process,

burdened the court with an inactive appeal." Id.

CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Appellee Movants respectfully request that this Court enter an order in substantially the form annexed to the Motion dismissing the Appeal with prejudice and granting the Appellee Movants such other and further relief as is just and proper.[13]

Dated: November 17, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
*Pro Se*

By: _____
Derek C. Abbott (No. 3376)
Gregory W. Werkheiser (No. 3553)
1201 N. Market St., 18th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Tel:      (302) 658-9200
Fax:      (302) 658-3989

DUANE MORRIS LLP
*Delaware Counsel to Traub, Bonacquist & Fox LLP*

By: Frederick B. Rosner w/ permission (DCA)
Frederick B. Rosner (No. 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Tel:      (302) 657-4900
Fax:      (302) 657-4901

-and-

---

[13]    If this Motion is granted, Morris Nichols intends to seek to voluntarily dismiss the Cross-Appeal effective upon the Order granting this Motion becoming final and non-appealable.

Ronald R. Sussman (RS-0641)
COOLEY GODWARD KRONISH LLP
*Co-Counsel for Traub, Bonacquist & Fox LLP*
1114 Avenue of the Americas
New York, NY 10036-7798
Tel:    (212) 479-6000
Fax:    (212) 479-6275

-and-

James L. Garrity, Jr. (JG-8389)
SHEARMAN & STERLING LLP
*Co-Counsel for Traub, Bonacquist & Fox LLP*
599 Lexington Avenue
New York, New York 10022
Tel:    (212) 848-4000
Fax:    (212) 848-7179

SAUL EWING LLP
*Counsel to Barry Gold*

By: *Mark Minuti with permission* ___ (4451)
     Mark Minuti (No. 2659)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Ph:    (302) 421-6800
Fax:    (302) 421-5873

-and-

G. David Dean
**SAUL EWING LLP**
100 South Charles Street
Baltimore, MD 21201
Ph:    (410) 332-8600
Fax:    (410) 332-8862