**EXHIBIT D**

Westlaw.

517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal D.A.R. 6639
**(Cite as: 517 U.S. 820, 116 S.Ct. 1777)**

▷
Briefs and Other Related Documents
Degen v. U.S.U.S.Nev.,1996.
Supreme Court of the United States
Brian J. DEGEN, Petitioner,
v.
UNITED STATES.
**No. 95-173.**

Argued April 22, 1996.
Decided June 10, 1996.

Civil forfeiture proceeding was brought seeking property used in connection with or purchased with proceeds of illegal drug transactions which formed basis of claimant's criminal indictment. The United States District Court for the District of Nevada, Edward C. Reed, Jr., J., 755 F.Supp. 308, ruled that claimant was barred, under fugitive disentitlement doctrine, from entering a defense, and claimant appealed. The Court of Appeals, affirmed, 47 F.3d 1511, and certiorari was granted. The Supreme Court, Justice Kennedy, held that fugitive disentitlement doctrine did not permit district court to enter summary judgement in favor of government in civil forfeiture case, on grounds claimant was outside United States and could not be extradited to face federal drug charges.

Reversed and remanded.
West Headnotes
**[1] Constitutional Law 92 🗝️303**

92 Constitutional Law
    92XII Due Process of Law
        92k299 Creation or Discharge of Liability in General
            92k303 k. Penalties or Forfeitures. Most Cited Cases

**Forfeitures 180 🗝️5**

180 Forfeitures
    180k5 k. Proceedings for Enforcement. Most Cited Cases
In ordinary case citizen has right to hearing to contest forfeiture of his or her property, a right secured by due process clause, and implemented by federal rule. U.S.C.A. Const.Amend. 14; Supplemental Admiralty and Maritime Claims Rule C(6), 28 U.S.C.A.

**[2] Forfeitures 180 🗝️5**

180 Forfeitures
    180k5 k. Proceedings for Enforcement. Most Cited Cases
"Fugitive disentitlement doctrine" does not allow court in civil forfeiture suit to enter judgment against claimant because he or she is fugitive from, or otherwise is resisting related criminal prosecution. U.S.C.A. Const.Amend. 14; Supplemental Admiralty and Maritime Claims Rule C(6), 28 U.S.C.A.

**[3] Federal Courts 170B 🗝️3.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk3 Jurisdiction in General; Nature and Source
                170Bk3.1 k. In General. Most Cited Cases
Courts invested with judicial power of United States have certain inherent authority to protect their proceedings and judgments in course of discharging their traditional responsibilities.

**[4] Federal Courts 170B 🗝️3.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk3 Jurisdiction in General; Nature and Source
                170Bk3.1 k. In General. Most Cited Cases
Extent of federal courts' inherent powers to protect their proceedings and judgments in course of discharging their traditional responsibilities must be delimited with care, for there is danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority.

**[5] Federal Courts 170B 🗝️4**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk3 Jurisdiction in General; Nature and

116 S.Ct. 1777                                                                 Page 2
517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal
D.A.R. 6639
**(Cite as: 517 U.S. 820, 116 S.Ct. 1777)**

Source
    170Bk4 k. Constitutional and Statutory
Provisions. Most Cited Cases
In many instances inherent powers of courts may be
controlled or overridden by statute or rule.

**[6] Federal Courts 170B ☞3.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk3 Jurisdiction in General; Nature and
Source
            170Bk3.1 k. In General. Most Cited
Cases
Principles of deference counsel restraint in resorting
to federal court's inherent power, and require its use
to be reasonable response to problems and needs that
provoke it.

**[7] Federal Courts 170B ☞722**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(I) Dismissal, Withdrawal or
Abandonment
            170Bk722 k. Grounds for Involuntary
Dismissal in General. Most Cited Cases
Federal courts have authority to dismiss appeal or
writ of certiorari if party seeking relief is fugitive
while matter is pending.

**[8] Forfeitures 180 ☞5**

180 Forfeitures
    180k5 k. Proceedings for Enforcement. Most
Cited Cases
Fugitive disentitlement doctrine did not permit
district court to enter summary judgment in favor of
government in civil forfeiture case, on grounds
claimant was outside United States and could not be
extradited to face related federal drug charges; court's
jurisdiction over property was secure despite
claimant's absence, and court had means of
preventing claimant from using rules of civil
discovery in forfeiture suit to gain improper
advantage in criminal matter without resorting to rule
forbidding all participation by claimant.

**[9] Criminal Law 110 ☞627.5(1)**

110 Criminal Law
    110XX Trial

110XX(A) Preliminary Proceedings
    110k627.5 Discovery Prior to and Incident
to Trial
        110k627.5(1) k. In General;
Examination of Victim or Witness. Most Cited Cases

**Criminal Law 110 ☞627.8(2)**

110 Criminal Law
    110XX Trial
        110XX(A) Preliminary Proceedings
            110k627.5 Discovery Prior to and Incident
to Trial
                110k627.8 Proceedings to Obtain
Disclosure
                    110k627.8(2) k. Time When
Disclosure Is Permitted. Most Cited Cases
Criminal defendant is entitled to rather limited
discovery, with no general right to obtain statements
of Government's witnesses before they have testified.
Fed.Rules Cr.Proc.Rule 16(a)(2), 26.2, 18 U.S.C.A.

**[10] Federal Civil Procedure 170A ☞1272.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1272 Scope
                170Ak1272.1 k. In General. Most Cited
Cases
In a civil case, party is entitled as a general matter to
discovery of any information sought if it appears
reasonably calculated to lead to discovery of
admissible evidence. Fed.Rules Civ.Proc.Rule
26(b)(1), 28 U.S.C.A.

**[11] ☞1271.5**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1271.5 k. Protective Orders. Most
Cited Cases
        (Formerly 170Ak1271)
District court's authority to manage discovery in civil
suit includes entry of protective orders to prevent
parties from using civil discovery to evade
restrictions on discovery in criminal cases. Fed.Rules
Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[12] Federal Civil Procedure 170A ☞1**

170A Federal Civil Procedure

517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal D.A.R. 6639
**(Cite as: 517 U.S. 820, 116 S.Ct. 1777)**

170AI In General
170AI(A) In General
170Ak1 k. In General. Most Cited Cases
District court can exercise its discretion to manage civil litigation to avoid interference with related criminal case.

**[13] Federal Civil Procedure 170A ☞1278**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases

**Federal Civil Procedure 170A ☞1741**

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)2 Grounds in General
170Ak1741 k. In General. Most Cited Cases
If claimant's unwillingness to appear in person in civil forfeiture case resulted in noncompliance with legitimate order of court respecting pleading, discovery, presentation of evidence, or other matters, he would be exposed to same sanctions as any other uncooperative party. Fed.Rules Civ.Proc.Rule 37, 41(b), 28 U.S.C.A.

**[14] Federal Civil Procedure 170A ☞1741**

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)2 Grounds in General
170Ak1741 k. In General. Most Cited Cases
Federal court has at its disposal array of means to enforce its orders, including dismissal in appropriate case; its powers include those furnished by federal rule, and by inherent authority. Fed.Rules

**Federal Courts 170B ☞3.1**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk3 Jurisdiction in General; Nature and Source
170Bk3.1 k. In General. Most Cited Cases
Federal court has at its disposal array of means to enforce its orders, including dismissal in appropriate case; its powers include those furnished by federal rule, and by inherent authority. Fed.Rules

Civ.Proc.Rule 37, 41(b), 28 U.S.C.A.

**[15] Constitutional Law 92 ☞305(2)**

92 Constitutional Law
92XII Due Process of Law
92k304 Civil Remedies and Proceedings
92k305 Actions
92k305(2) k. Access to Courts; Rights to Hearing and Determination. Most Cited Cases
Right of citizen to defend his or her property against attack in court is corollary to plaintiff's right to sue there. U.S.C.A. Const.Amend. 14.

**[16] Federal Courts 170B ☞3.1**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk3 Jurisdiction in General; Nature and Source
170Bk3.1 k. In General. Most Cited Cases
Court's inherent power is limited by necessity giving rise to its exercise.
**\*\*1779 \*820 Syllabus** [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499.

Petitioner Degen is outside the United States and cannot be extradited to face federal drug charges. When he filed an answer in a related civil action, contesting the Government's attempt to forfeit properties allegedly purchased with proceeds from his drug dealings, the District Court struck his claims and entered summary judgment against him, holding that he was not entitled to be heard in the forfeiture action because he remained outside the country, unamenable to criminal prosecution. The court's final order vested title to the properties in the United States, and the Court of Appeals affirmed.

Held: A district court may not strike a claimant's filings in a forfeiture suit and grant summary judgment against him for failing to appear in a related criminal prosecution. Pp. 1780-1783.

(a) The Government contends that the District Court's

116 S.Ct. 1777                                                                                              Page 4
517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal
D.A.R. 6639
**(Cite as: 517 U.S. 820, 116 S.Ct. 1777)**

inherent powers authorized it to strike Degen's claims under what has been labeled the "fugitive disentitlement doctrine." Principles of deference counsel restraint in resorting to the courts' inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities, see, *e.g.*, *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27, and require its use to be a reasonable response to the problems and needs provoking it, *Ortega-Rodriguez v. United States,* 507 U.S. 234, 244, 113 S.Ct. 1199, 1205, 122 L.Ed.2d 581. Pp. 1780-1781.

(b) No necessity justifies disentitlement here. Since the court's jurisdiction over the property is secure despite Degen's absence, there is no risk of delay or frustration in determining the merits of the Government's forfeiture claims or in enforcing the resulting judgment. The court has alternatives, other than the harsh sanction of disentitlement, to keep Degen from using liberal civil discovery rules to gain an improper advantage in the criminal prosecution, where discovery is more limited. Disentitlement also is too arbitrary a means of redressing the indignity visited upon the court by Degen's absence from the criminal proceedings and deterring flight from criminal prosecution by Degen and others. A court's dignity derives from the respect accorded its judgments. That respect is eroded, not enhanced, by excessive **\*821** recourse to rules foreclosing consideration of claims on the merits. Pp. 1781-1783.

47 F.3d 1511 (C.A.9), reversed and remanded.

KENNEDY, J., delivered the opinion for a unanimous Court.

Lawrence S. Robbins, Washington, DC, for petitioner.
Miguel A. Estrada, Washington, DC, for respondent.For U.S. Supreme Court briefs, see:1996 WL 172244 (Pet.Brief)1996 WL 78332 (Pet.Brief)1996 WL 134938 (Resp.Brief)
Justice KENNEDY delivered the opinion of the Court.
In this case we consider whether a United States District Court may strike the filings of a claimant in a forfeiture suit and grant summary judgment against him for failing to appear in a related criminal prosecution. The Court of Appeals for the Ninth Circuit held this to be a proper exercise of the District Court's inherent authority. We reverse.

A federal grand jury in Nevada indicted Brian Degen for distributing marijuana, laundering money, and related crimes. On the same day in 1989 that it unsealed the indictment, the United States District Court for the District of Nevada also unsealed a civil forfeiture complaint. The Government sought to forfeit properties in California, Nevada, and Hawaii, allegedly worth $5.5 million and purchased with proceeds of Degen's drug sales or used to facilitate the sales. 84 Stat. 1276, as amended, **\*\*1780**21 U.S.C. § § 881(a)(6)-(a)(7). An affidavit by an agent of the Drug Enforcement Agency accompanied the complaint and recounted instances of Degen's alleged drug smuggling during the previous 20 years.

**\*822** Degen is a citizen of the United States and of Switzerland, his father having been born there. Degen moved to Switzerland with his family in 1988. He has not returned to face the criminal charges against him, and we are advised that Switzerland's extradition treaty with the United States does not oblige either country to turn its nationals over to the other. While remaining outside this country, however, Degen did file an answer in the civil action to contest the forfeiture. Among other things, he contended the Government's claims were barred by the statute of limitations, 46 Stat. 758, as amended, 19 U.S.C. § 1621, and based on an unlawful retroactive application of the forfeiture laws.

The District Court in the forfeiture case did not consider any of these arguments. Instead it granted the Government's motion to strike Degen's claims and entered summary judgment against him. The court held Degen was not entitled to be heard in the civil forfeiture action because he remained outside the country, unamenable to criminal prosecution. *United States v. Real Property Located at Incline Village,* 755 F.Supp. 308 (1990). After another two years consumed by procedural matters (for the most part involving attempts by Degen's wife to contest the forfeiture), the District Court entered a final order vesting title to the properties in the United States. The Court of Appeals for the Ninth Circuit affirmed. *United States v. Real Property Located at Incline Village,* 47 F.3d 1511 (1995). We granted certiorari. 516 U.S. 1070, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).

[1][2] In an ordinary case a citizen has a right to a hearing to contest the forfeiture of his property, a right secured by the Due Process Clause, *United States v. James Daniel Good Real Property,* 510 U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal D.A.R. 6639
**(Cite as: 517 U.S. 820, 116 S.Ct. 1777)**

43, 48-62, 114 S.Ct. 492, 498-505, 126 L.Ed.2d 490 (1993); *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972); *McVeigh v. United States,* 11 Wall. 259, 266-267, 20 L.Ed. 80 (1871), and implemented by federal rule, Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Nonetheless, the Government argues, the ***823** District Court's inherent powers authorized it to strike Degen's claims under what some courts have labeled the "fugitive disentitlement doctrine." We have sustained, to be sure, the authority of an appellate court to dismiss an appeal or writ in a criminal matter when the party seeking relief becomes a fugitive. *Ortega-Rodriguez v. United States,* 507 U.S. 234, 239, 113 S.Ct. 1199, 1203, 122 L.Ed.2d 581 (1993); *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876). The question before us is whether the doctrine should be extended to allow a court in a civil forfeiture suit to enter judgment against a claimant because he is a fugitive from, or otherwise is resisting, a related criminal prosecution. The Courts of Appeals to consider the question have come to different conclusions (compare the decision here and in *United States v. Eng,* 951 F.2d 461 (C.A.2 1991), with *United States v. $40,877.59 in United States Currency,* 32 F.3d 1151 (C.A.7 1994), and *United States v. $83,320 in United States Currency,* 682 F.2d 573 (C.A.6 1982)), precipitating our grant of certiorari in this case.

[3][4][5][6] Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-46, 111 S.Ct. 2123, 2132-2134, 115 L.Ed.2d 27 (1991); *Link v. Wabash R. Co.,* 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962); *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812). The extent of these powers must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). In many instances the inherent powers of the courts may be controlled or overridden by statute or rule. *Carlisle v. United States,* 517 U.S. 416, 426, 116 S.Ct. 1460, 1466, 134 L.Ed.2d 613 (1996); **1781*Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). Principles of deference counsel restraint in resorting to inherent power, *Chambers v. NASCO,*

*supra,* at 44, 111 S.Ct., at 2132, and require its use to be a reasonable ***824** response to the problems and needs that provoke it, *Ortega-Rodriguez v. United States, supra,* at 244, 113 S.Ct., at 1205-1206; *Thomas v. Arn,* 474 U.S. 140, 146-148, 106 S.Ct. 466, 470-471, 88 L.Ed.2d 435 (1985).

[7] In accord with these principles, we have held federal courts do have authority to dismiss an appeal or writ of certiorari if the party seeking relief is a fugitive while the matter is pending. Several reasons have been given for the rule. First, so long as the party cannot be found, the judgment on review may be impossible to enforce. This was the rationale of the first case to acknowledge the doctrine, *Smith v. United States, supra,* at 97: "It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render." See also *Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887); *Eisler v. United States,* 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949). Second, we have said an appellant's escape "disentitles" him "to call upon the resources of the Court for determination of his claims." *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970) *(per curiam).* The cases cited so far involved the dismissal of fugitives' petitions in this Court. In reviewing similar practices in state courts for conformity with the Due Process Clause, we have noted further reasons for them: Disentitlement "discourages the felony of escape and encourages voluntary surrenders," and "promotes the efficient, dignified operation" of the courts. *Estelle v. Dorrough,* 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975) *(per curiam)* (using those reasons to justify refusing to reinstate an appeal even once an escaped appellant is recaptured). See also *Allen v. Georgia,* 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897).

[8] Against this backdrop came our decision four Terms ago in *Ortega-Rodriguez.* The defendant had escaped from federal custody after conviction but before sentencing. He was sentenced *in absentia,* but later was recaptured and resentenced; he then filed an appeal, which was dismissed on the authority of *Smith v. United States, supra,* and the other disentitlement cases just described. We reversed, holding ***825** those precedents did not justify dismissal of an appeal by a fugitive recaptured before the appeal was filed. We noted the judgment of the Court of Appeals would be enforceable against the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

116 S.Ct. 1777
517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal D.A.R. 6639
**(Cite as: 517 U.S. 820, 116 S.Ct. 1777)**

Page 6

appellant, and that his earlier absence, when no appeal was pending, did not threaten the dignity of the court imposing the sanction. *Ortega-Rodriguez v. United States,* 507 U.S., at 244-246, 113 S.Ct., at 1205-1207. We did not rule out the possibility of appellate disentitlement where necessary to prevent actual prejudice to the Government from a fugitive's extended absence, *id.,* at 249, 113 S.Ct., at 1208, but we concluded the sanction of disentitlement was unjustified as a sanction applicable to all cases where an escape once had occurred, *id.,* at 249-251, 113 S.Ct., at 1208-1210. We conduct a similar examination of the disentitlement imposed here, and find it likewise unjustified.

There is no risk in this case of delay or frustration in determining the merits of the Government's forfeiture claims or in enforcing the resulting judgment. The Government has shown probable cause to forfeit the property, and Degen must refute the showing or suffer its loss. Since the court's jurisdiction over the property is secure despite Degen's absence, there is no danger the court in the forfeiture suit will waste its time rendering a judgment unenforceable in practice.

[9][10] The Government is on stronger ground in suggesting the criminal prosecution against Degen might be compromised by his participation in the forfeiture case. The problem stems from the differences between the discovery privileges available to Degen in each case. See *Afro-Lecon, Inc. v. United States,* 820 F.2d 1198, 1203-1204 (C.A.Fed.1987); *Campbell v. Eastland,* 307 F.2d 478, 487 (C.A.5 1962). A criminal defendant is entitled to rather limited discovery, with no general right to obtain the statements of the **1782 Government's witnesses before they had testified. Fed. Rules Crim. Proc. 16(a)(2), 26.2. In a civil case, by contrast, a party is entitled as a general matter to discovery of any information sought if it appears "reasonably calculated to lead *826 to the discovery of admissible evidence." Fed. Rule Civ. Proc. 26(b)(1). The Government contends Degen might use the rules of civil discovery in the forfeiture suit to gain an improper advantage in the criminal matter, prying into the prosecution's case in a manner not otherwise permitted.

These problems are not uncommon when criminal and civil forfeiture suits are pending at the same time, but they are made acute by Degen's absence. If he were in federal custody, the risk of compromising the criminal case could be avoided by staying the civil suit until the prosecution is over. 21 U.S.C. § 881(i).

Cf. *United States v. Kordel,* 397 U.S. 1, 9, 90 S.Ct. 763, 768, 25 L.Ed.2d 1 (1970). Degen rendered this solution impractical by frustrating the prosecution of the criminal case against him. The criminal trial cannot begin until he returns, *Crosby v. United States,* 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993); if the civil matter were subordinated to the criminal, the forfeiture could be held in abeyance for an indefinite time. This delay would be prejudicial to the Government, for if its forfeiture claims are good, its right to the properties is immediate. We nonetheless are satisfied the District Court has the means to resolve these dilemmas without resorting to a rule forbidding all participation by the absent claimant.

[11] First, the District Court has its usual authority to manage discovery in a civil suit, including the power to enter protective orders limiting discovery as the interests of justice require. Fed. Rule Civ. Proc. 26(c). Decisions in the Courts of Appeals have sustained protective orders to prevent parties from using civil discovery to evade restrictions on discovery in criminal cases. See, *e.g., In re Ramu Corp.,* 903 F.2d 312, 316-317, 320-321 (C.A.5 1990); *United States v. Stewart,* 872 F.2d 957, 962-963 (C.A.10 1989); *Campbell v. Eastland, supra,* at 487. See also *Capital Engineering & Mfg. Co., Inc. v. Weinberger,* 695 F.Supp. 36, 41-42 (D.C.1988); *Founding Church of Scientology v. Kelley,* 77 F.R.D. 378, 380-381 (D.C.1977).

[12] *827 Second, the court can exercise its discretion to manage the civil litigation to avoid interference with the criminal case. If, for instance, the Government were unable to rebut Degen's arguments except by revealing confidential details of the criminal investigation, the court could consider controlling or limiting the form of proof, or in an extreme case even the theories it permits the absent party to pursue, to prevent him from exploiting the asymmetries he creates by participating in one suit but not the other.

[13][14] Third, of course, Degen's absence entitles him to no advantage. If his unwillingness to appear in person results in non-compliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence, or other matters, he will be exposed to the same sanctions as any other uncooperative party. A federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case. Again, its powers include those furnished by federal rule,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

116 S.Ct. 1777                                                                                                  Page 7
517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal D.A.R. 6639
**(Cite as: 517 U.S. 820, 116 S.Ct. 1777)**

see, e.g., Fed. Rules Civ. Proc. 37, 41(b); National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958); cf. United States v. Pole No. 3172, 852 F.2d 636, 641-642 (C.A.1 1988), and by inherent authority, see, e. g., Chambers v. NASCO, Inc., 501 U.S., at 44-45, 111 S.Ct., at 2132-2133; Link v. Wabash R. Co., 370 U.S., at 630-633, 82 S.Ct., at 1388-1390; Woodson v. Surgitek, Inc., 57 F.3d 1406, 1416-1417 (C.A.5 1995); Zebrowski v. Hanna, 973 F.2d 1001, 1006 (C.A.1 1992) (Breyer, C. J.).

The details of these steps are committed to the discretion of the District Court; it would be premature to consider now the precise measures the court should adopt as the case proceeds. The existence of these alternative means of protecting the Government's interests, however, shows the lack of necessity for the harsh sanction of absolute disentitlement. Consideration of some of Degen's defenses, **1783 such as the statute of limitations, appears to require little discovery. If *828 they have merit, the Government should not prevail; if they are groundless, the Government's interests will not be compromised by their consideration.

We have yet to consider two other purposes said to be advanced by disentitlement: The need to redress the indignity visited upon the District Court by Degen's absence from the criminal proceeding, and the need to deter flight from criminal prosecution by Degen and others. Both interests are substantial, but disentitlement is too blunt an instrument for advancing them. Without resolving whether Degen is a fugitive in all the senses of the word debated by the parties, we acknowledge disquiet at the spectacle of a criminal defendant reposing in Switzerland, beyond the reach of our criminal courts, while at the same time mailing papers to the court in a related civil action and expecting them to be honored. Cf. United States v. Sharpe, 470 U.S. 675, 681-682, n. 2, 105 S.Ct. 1568, 1572-1573, n. 2, 84 L.Ed.2d 605 (1985). A court-made rule striking Degen's claims and entering summary judgment against him as a sanction, however, would be an arbitrary response to the conduct it is supposed to redress or discourage.

[15] The right of a citizen to defend his property against attack in a court is corollary to the plaintiff's right to sue there. McVeigh v. United States, 11 Wall., at 267, 20 L.Ed. 80. For this reason we have held it unconstitutional to use disentitlement similar to this as punishment for rebellion against the United States, ibid., or, in at least one instance, for contempt of court, Hovey v. Elliott, 167 U.S. 409, 413-414, 17 S.Ct. 841, 843-844, 42 L.Ed. 215 (1897). We need not, and do not, intimate a view on whether enforcement of a disentitlement rule under proper authority would violate due process, cf. Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932). It remains the case, however, that the sanction of disentitlement is most severe and so could disserve the dignitary purposes for which it is invoked. The dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits.

[16] *829 There would be a measure of rough justice in saying Degen must take the bitter with the sweet, and participate in the District Court either for all purposes or none. But the justice would be too rough. A court's inherent power is limited by the necessity giving rise to its exercise. There was no necessity to justify the rule of disentitlement in this case; to strike Degen's filings and grant judgment against him would be an excessive response to the concerns here advanced.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

U.S.Nev.,1996.
Degen v. U.S.
517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal D.A.R. 6639

Briefs and Other Related Documents (Back to top)

• 1996 WL 204130 (Oral Argument) Oral Argument (Apr. 22, 1996)
• 1996 WL 172244 (Appellate Brief) REPLY BRIEF FOR PETITIONER (Apr. 12, 1996)
• 1996 WL 134938 (Appellate Brief) BRIEF FOR THE UNITED STATES (Mar. 22, 1996)
• 1996 WL 78332 (Appellate Brief) BRIEF FOR PETITIONER (Feb. 23, 1996)
• 1996 WL 78355 (Appellate Brief) BRIEF OF AMICUS CURIAE PUBLIC CITIZEN IN SUPPORT OF PETITIONER (Feb. 23, 1996)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

116 S.Ct. 1777                                                                 Page 8
517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102, 64 USLW 4413, 96 Cal. Daily Op. Serv. 4106, 96 Daily Journal D.A.R. 6639
**(Cite as: 517 U.S. 820, 116 S.Ct. 1777)**

• 1996 WL 78356 (Appellate Brief) BRIEF FOR GHAITH R. PHARAON, AS AMICUS CURIAE IN SUPPORT OF REVERSAL (Feb. 23, 1996)
• 1995 WL 17013646 (Appellate Petition, Motion and Filing) Reply Brief for Petitioner (Dec. 26, 1995) Original Image of this Document (PDF)
• 1995 WL 17013373 (Appellate Petition, Motion and Filing) Brief for the United States in Opposition (Dec. 15, 1995) Original Image of this Document (PDF)
• 1995 WL 17013650 (Appellate Petition, Motion and Filing) Petition for a Writ of Certiorari (Jul. 28, 1995) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

11 F.3d 394                                                                                                    Page 1
11 F.3d 394, 30 Collier Bankr.Cas.2d 328, 27 Fed.R.Serv.3d 1345, 24 Bankr.Ct.Dec. 1636, Bankr. L. Rep. P 75,618
(Cite as: 11 F.3d 394)

H

Briefs and Other Related Documents
Jewelcor Inc. v. Asia Commercial Co., Ltd.C.A.3 (Pa.),1993.
United States Court of Appeals,Third Circuit.
In re JEWELCOR INCORPORATED; Jewelcor Jewelers and Distributors, Inc.; Gruen Marketing Corporation; Osaka Trading Company; Gruen Precision, Inc.; Showroom Realty Co., Inc.; Catalog Realty Co., Inc.; S.H. Holdings, Inc.; JC Acquisition Corporation; Just Watches, Ltd.; Robert J. Tabakow, Inc.; Guildcraft Precision, Ltd.; Panther Manufacturing, Inc.; Lt, Inc.; JJ & D Realty Co., Inc., Debtors,
v.
ASIA COMMERCIAL COMPANY, LTD. Panther Manufacturing, Ltd.; Gruen Marketing Corporation, successor in interest to Acquisition Entity II pursuant to the confirmed Debtors' Amended Joint Plan of Reorganization, Appellants.
No. 93-7181.

Argued Sept. 30, 1993.
Decided Dec. 1, 1993.

The Bankruptcy Court, John J. Thomas, J., 150 B.R. 576, entered order directing Chapter 11 debtors to pay claim of creditor as required under confirmed plan. Debtors appealed, but the United States District Court for the Middle District of Pennsylvania, Edwin M. Kosik, J., dismissed appeal sua sponte due to debtors' failure to file their appellate brief within 15 days of district court clerk's entry of appeal on docket. Debtors appealed. The Court of Appeals, Aldisert, Circuit Judge, held that the District Court erred in dismissing appeal, since debtors had not been given notice that appeal had been docketed and 15-day period did not begin running until district court clerk gave notice.

Judgment of the District Court reversed.
West Headnotes
[1] Federal Courts 170B ☞754.1

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk754 Review Dependent on Whether Questions Are of Law or of Fact
                    170Bk754.1 k. In General. Most

Cited Cases
    (Formerly 170Bk754)
Plenary standard of review governs questions of law, including district court's interpretation and application of law.

[2] Federal Courts 170B ☞818

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk818 k. Dismissal. Most Cited
Cases
Court of Appeals reviews dismissal for failure to prosecute only for abuse of discretion, but district court must have considered less severe sanctions.

[3] Bankruptcy 51 ☞3777

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3777 k. Record; Assignments of Error; Briefs. Most Cited Cases
Fifteen-day period after entry of appeal, from order of bankruptcy court, on docket within which appellant must serve and file brief is triggered when clerk of district court gives notice of docketing, not when appeal is actually entered; without notice from clerk, appellant cannot be certain of precise date on which appeal was docketed and, given extremely restricted time period in which appellant is to file brief, notice to parties from district court clerk is critical. Fed.Rules Bankr.Proc.Rules 8007(b), 8009(a)(1), 11 U.S.C.A.

[4] Federal Civil Procedure 170A ☞35

170A Federal Civil Procedure
    170AI In General
        170AI(B) Rules of Court in General
            170AI(B)2 Rules of Civil Procedure
                170Ak35 k. Construction and Operation in General. Most Cited Cases

Statutes 361 ☞188

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction

11 F.3d 394                                                                                              Page 2
11 F.3d 394, 30 Collier Bankr.Cas.2d 328, 27 Fed.R.Serv.3d 1345, 24 Bankr.Ct.Dec. 1636, Bankr. L. Rep. P 75,618
(Cite as: 11 F.3d 394)

361k187 Meaning of Language
361k188 k. In General. Most Cited Cases
Starting point for construing statute or rule of
procedure is language of statute or rule itself.

[5] Bankruptcy 51 ⊂═⊃3777

51 Bankruptcy
51XIX Review
51XIX(B) Review of Bankruptcy Court
51k3777 k. Record;  Assignments of Error;
Briefs. Most Cited Cases
District court erred in dismissing Chapter 11 debtors'
appeal from bankruptcy court's order for failure to
file brief within 15 days after district court clerk
entered appeal on docket, where debtors had not been
given notice that appeal had been docketed;  debtors
did not fail to comply with filing requirement of
Bankruptcy Rule, since time period did not begin to
run until clerk gave notice of docketing as required
by Bankruptcy Rules.  Fed.Rules Bankr.Proc.Rules
8007(b), 8009(a), 11 U.S.C.A.

*394 Donald H. Brobst, Robert N. Gawlas, Jr.
(argued), Rosenn, Jenkins & Greenwald, Wilkes-
Barre, PA, for appellants.
Alan J. Sorkowitz (argued), Breed, Abbott &
Morgan, New York City, Marc W. Witzig,
Harrisburg, PA, for appellee.

Before:  SCIRICA, ALITO and ALDISERT, Circuit
Judges.

**OPINION OF THE COURT**
ALDISERT, Circuit Judge.
In this appeal from a final decision of the district
court, we must decide whether the district court erred
by dismissing a debtor's appeal from a bankruptcy
court's order for failure to file a brief within 15 days
of the entry of the appeal on the district court clerk's
docket pursuant to Rule 8009(a)(1) of the Bankruptcy
Rules when the district court clerk failed to give
notice of docketing pursuant to Rule 8007(b).

Jurisdiction was proper in the district court pursuant
to 28 U.S.C. § 158(a).  We have jurisdiction under
28 U.S.C. § 158(d) and § 1291.  Appeal was timely
filed under Rule 4(a) of the Federal Rules of
Appellate Procedure.

I.

The district court proceeding was an appeal from the

bankruptcy court's final order directing the Debtors,
Panther Manufacturing Limited and Gruen Marketing
Corporation, (hereinafter "Debtors" or Appellants), to
pay the claim of a creditor, Asia Commercial
Company (hereinafter "Asia" or Appellee), as
required under the Debtors' confirmed plan of
reorganization.  The bankruptcy court also denied a
request for a civil contempt order against the Debtors
for failing to obey a previous order of the bankruptcy
court.

Although the adjudicative facts are somewhat limited
to circumstances surrounding the docketing of the
appeal in the district court clerk's office, we deem it
necessary to set forth in some detail the proceedings
in the bankruptcy court.   The district court made
reference to these circumstances as a prelude to its
dismissing the Debtors' appeal for failure to prosecute
under Rule 8009.

The Debtors filed a reorganization petition under
Chapter 11 of the Bankruptcy Code on October 5,
1990.    In March of 1991, the Debtors filed a
proposed Amended Joint Plan of Reorganization
(hereinafter "the Plan").    The Plan, which provided
that general unsecured creditors were to receive 10
percent of allowed claims in a cash distribution and
65 percent in the form of a subordinated note, was
subsequently confirmed by order of the bankruptcy
court.

The Appellants, successors-in-interest to the original
debtors, have continued to operate their business and
manage their property as debtors-in-possession
pursuant to the Plan.    They are principally engaged
in the importation, distribution and sale of watches.

Asia filed an unsecured claim against the Debtors in
the bankruptcy court for $485,277.26.    On October
29, 1991, Asia filed a motion in the bankruptcy court
requesting an order requiring the Debtors to make the
appropriate distribution to them as prescribed by the
Plan.    As of October 29, Asia had yet to receive its
share of the distribution, while other creditors in the
same class had been paid their cash and note
distributions under the Plan.    The Debtors filed no
opposition to this motion.

On December 5, 1991, the bankruptcy court entered
an order granting Asia's motion and directing the
Debtors to make payment.    No distribution was
made nor was an appeal taken by the Debtors from
the December 5 order.    On January 24, 1992, Asia
filed a second motion requesting the bankruptcy court
to direct the Debtors to make payment under the

11 F.3d 394                                                                                                                    Page 3
11 F.3d 394, 30 Collier Bankr.Cas.2d 328, 27 Fed.R.Serv.3d 1345, 24 Bankr.Ct.Dec. 1636, Bankr. L. Rep. P 75,618
**(Cite as: 11 F.3d 394)**

Plan.  Asia also sought to have the Debtors held in contempt of the December order.

In their answer and at the hearing on the second motion, the Debtors argued that the December order was a nullity for a variety of procedural and substantive reasons.  Primarily, they alleged that their counsel had not received a copy of Asia's initial motion or notice of the subsequent hearing.  The Debtors contended also that their refusal to pay Asia's claim was justifiable, because there was no deadline for payment of the claim set forth in the Plan or the December order.  Finally, they claimed a potential set-off against Asia for alleged infringement of certain licenses and trademarks.

On November 2, 1992, the bankruptcy court issued an opinion and order rejecting **\*396** the proffered defenses and again directing that payment be made.  At that time, the court denied Asia's motion for contempt.  In response to the Debtors' contention that there was no deadline for payment in the original order, the court noted:
The plain meaning of the language and the grammar of the order dictates that the bankruptcy court intended to have Asia's claim paid.  This order did not contemplate that the claim was still disputed and that the dispute resolution provisions of the plan should be applied to Asia's claim at any time in the future when the debtors deemed fit to bring the matter before the Court for disposition.

App. at 94a.

Finally, on December 14, 1992 Asia filed a renewed motion for contempt because the Debtors had failed to comply with the November 2 order.  After a hearing on the renewed motion, the court ordered the Debtors to pay Asia their portion of the cash distribution, $46,759.95, within ten days and thereafter a per diem of $200 per day as a sanction for late payment.  The Debtors made the payment to Asia within 10 days.  However, the Debtors still owe Asia a subordinated note equal to 65 percent of its outstanding claim.

In the meantime, on November 12, 1992 the Debtors filed a notice of appeal in the district court from the bankruptcy court's order of November 2.  Their designation of record on appeal and statement of issues were filed on December 3, 1992.  On December 24, 1992, the bankruptcy court clerk sent all parties a copy of her letter to the district court clerk transmitting all papers for the appeal.

The foregoing is merely prefatory to the action taken on December 28, 1992, when the district court clerk docketed the appeal.  It is not controverted that the district court clerk failed to send notice to the parties of the date on which the appeal was docketed.  The district court dismissed *sua sponte* the appeal on January 22, 1993 because the Debtors had failed to file their appellate brief within 15 days of December 28.  The Debtors submitted their brief to the district court on February 1, 1993 with their Motion for Reconsideration of the January 22 order.

II.

In entering the order of dismissal, the district court stated:
We are not unmindful of the Editor's Comments (1983) to Rule 8009, which note that dismissal for noncompliance is a severe remedy and should be used only on rare occasions.  Our review of the documents submitted in conjunction with this appeal, and particularly the Order of November 2, 1992, indicate that this is one of those rare occasions....  Under [the Plan], Asia was to receive certain distributions and notes from [Debtors].  After almost two years, Asia has not received any such distributions, and [Debtors have] engaged in a plethora of tactics to avoid making such distributions.  The Bankruptcy Court, after careful consideration, ordered that the distributions be made.  We will not allow [Debtors] to use this appeal, *and specifically its untimely filing of the required briefs,* to delay the distribution any longer.
Accordingly, *[Debtors'] appeal will be dismissed for failure to prosecute under Rule 8009.*

App. at 99a (emphasis added).  Rule 8009(a) provides in relevant part:Unless the district court or the bankruptcy appellate panel by local rule or by order excuses the filing of briefs or specifies different time limits:
(1) The appellant shall serve and file a brief within 15 days after entry of the appeal on the docket pursuant to Rule 8007.

11 U.S.C. Rule 8009(a).

Rule 8007(b) establishes the procedure for docketing of an appeal in the district court:
When the record is complete for purposes of appeal, the clerk of the bankruptcy court shall transmit it forthwith to the clerk of the district court or the clerk of the bankruptcy appellate panel....  On receipt of the transmission the clerk of the district court or the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.3d 394                                                                                                    Page 4
11 F.3d 394, 30 Collier Bankr.Cas.2d 328, 27 Fed.R.Serv.3d 1345, 24 Bankr.Ct.Dec. 1636, Bankr. L. Rep. P 75,618
**(Cite as: 11 F.3d 394)**

clerk of the bankruptcy appellate panel shall enter the appeal in the docket and *give notice promptly to all *397 parties* to the judgment, order, or decree appealed from of the date on which the appeal was docketed.

11 U.S.C. Rule 8007(b) (emphasis added).

On appeal, the Debtors argue that the district court erred in dismissing their appeal, because the district court clerk failed to notify them that the appeal had been docketed pursuant to Rule 8007(b). They assert that the 15-day time period cannot begin to run until the district court clerk provides notice of the docketing date. In essence, they argue that because the docketing was not in compliance with the docketing rule, the 15-day period in which they were to serve and file their brief had never commenced. Accordingly, Debtors contend that their brief was timely filed.

The Appellee responds that the district court did not err, because the time requirement of Rule 8009 is unambiguous in its 15-day requirement, to wit, the penalty for failure to abide by the rule is dismissal of the appeal. Asia argues that such a construction is consistent with the bankruptcy rules which emphasize the expeditious nature of appeals and serve to speed the administration of bankruptcy estates. The Appellee notes that no case law supports the Debtors' contention that the failure of the clerk to notify the parties in some way excuses the tardy filing of an appellate brief.

In an alternative argument, the Appellee contends that, although the district court clerk did not specifically notify the Debtors that the appeal had been docketed, the Debtors had actual notice. According to the Appellee, the letter from the bankruptcy court clerk notifying the parties that the record on appeal had been transmitted to the district court for docketing constituted actual notice of the docketing. The Appellants respond that the bankruptcy clerk's letter "is not equivalent to the docketing notice required to be sent by the district court." Reply Brief at 2.

[1][2] The plenary standard of review governs questions of law, including the district court's interpretation and application of the law. *Tudor Dev. Group, Inc. v. United States Fidelity & Guar. Co.,* 968 F.2d 357 (3d Cir.1992). We review a dismissal for failure to prosecute only for an abuse of discretion, but the district court must have considered less severe sanctions. *Donnelly v. Johns-Manville*

*Sales Corp.,* 677 F.2d 339, 342 (3d Cir.1982); *see also In re Braniff Airways, Inc.,* 774 F.2d 1303, 1305 (5th Cir.1985).

III.

The Appellee relies on *In re Quevedo,* 35 B.R. 117 (D.P.R.1983), to support its position. In *Quevedo,* 35 B.R. at 119, the court concluded:
In this case, debtor-appellant's duty under Rule 8009(a)(1) to submit a brief within the specified time limit did not, as a matter of law and as required by Rule 9006(f), commence as of the time he received service of notice by mail but rather as of the time his request for appeal was entered into the docket. *See* Rule 8009(a)(1).

The court emphasized that the time limits were intended to provide for an "expeditious resolution of bankruptcy proceedings." *Id.* at 120. But in *Quevedo,* the appellant-debtor attempted to argue that the 15-day time period should commence as of the time he received the service of notice in the mail. Clearly, the rule provides that the period shall begin as of the time the appeal was docketed. In the instant case, however, no notice of when the appeal had been docketed was given at all. The question that we must address is whether a lack of notice excuses filing a brief within 15 days. This question was not addressed in *Quevedo.*

Although relied upon by the Appellee, *Quevedo* lends some support to the Debtors' position, because the court determined that the time period begins to run as of the date notice is sent to the debtor:
Since Rule 8007 requires that notice be sent to all parties in interest of the date the appeal was docketed, and since the notice which was sent to debtor-appellant was dated September 29, 1983, we assume that the fifteen days available to debtor-appellant began to run as of that date.

*Id.*

A.

In order to file a bankruptcy appeal, the parties and various court officials must carry *398 out certain duties prescribed by the bankruptcy rules. Initially, the notice of appeal is filed in the office of the bankruptcy court clerk, not with the district court clerk. Within 10 days of filing the notice of appeal, the appellant must provide the bankruptcy court clerk

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.3d 394                                                                                        Page 5
11 F.3d 394, 30 Collier Bankr.Cas.2d 328, 27 Fed.R.Serv.3d 1345, 24 Bankr.Ct.Dec. 1636, Bankr. L. Rep. P 75,618
(Cite as: 11 F.3d 394)

with certain items to be included in the appellate record.  *See* Rule 8006 ("Within 10 days after filing the notice of appeal as provided by Rule 8001(a) ... the appellant shall file with the clerk of the bankruptcy court and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented.").  Thereafter, the bankruptcy clerk must transmit a copy of the record to the district court. All of this must be done prior to the docketing of the appeal with the district court.

[3] The 15-day period is triggered not by the letter of transmittal from the *bankruptcy* court clerk, but the docketing and sending of notice by the *district* court clerk.  Without notice from the clerk of the district court, an appellant cannot be certain of the precise date on which the appeal was docketed.  Given the extremely restricted time period in which the appellant is to file the brief, notice to the parties from the district court clerk is critical.

Where the rules impose such a tight limitations period and the sanction for failure to meet a deadline is dismissal of the appeal, we must consider the actions of not only the parties, but also designated court officials, when determining whether the critical limitations period has lapsed.

In drafting Rule 8009(a)(1), the Advisory Committee on Bankruptcy Rules tied the commencement of the brief-filing limitations period to the actions of the district court clerk, to wit, "within 15 days after entry of the appeal on the docket pursuant to Rule 8007." To be sure, the drafters of the rule could have started the time-clock ticking with the transmission of the record by the bankruptcy court clerk, but they did not.  Rather, the rule starts the time period with the twin actions of the district court clerk prescribed in Rule 8007:  (1) "[T]he clerk ... shall enter the appeal in the docket and [ (2) ] give notice promptly to all parties."   With respect to notice, the advisory committee tracked Rule 12(b) of the Federal Rules of Appellate Procedure:  "Upon receipt of the record ... the clerk of the court of appeals shall file it and shall immediately give notice to all parties of the date on which it was filed." [FN1]  The notice requirement is an integral part of limitations periods found throughout our rules of procedure and the bankruptcy code. Rule 8007 is no exception.  As we will not condone an appellant's dilatory tactics in filing an appeal, we will not hold an appellant accountable for a third party's oversight that was beyond the appellant's knowledge and control.

FN1.  The writer of this opinion was chairman of the Advisory Committee on Bankruptcy Rules at the time the relevant rules were drafted and subsequently enacted.

B.

[4] The starting point for construing a statute or rule of procedure is the language of the statute or rule itself.  Rule 8009 specifically provides that the 15 days will run "after entry of the appeal on the docket pursuant to Rule 8007."   Without the mandatory notice, a case has not been docketed "pursuant to Rule 8007."   Notice to the parties is an essential part of the docketing process and is a condition precedent to the commencement of the brief-filing limitations period.  The obligation to file the brief does not mature until the condition is satisfied.  Here, the critical condition had not been satisfied.

IV.

This too must be said.  In examining the record and the preliminary comments of the district judge prior to dismissing the appeal for failure to file the briefs within 15 days, we see a panorama of foot-dragging by the Debtors.  We recognize the frustration of the district court when it noted that:

Under [the Plan], Asia was to receive certain distributions and notes from [Debtors].  After almost two years, Asia has not received any such distributions, and [Debtors have] engaged in a plethora of tactics to avoid making such distributions.

*399 App. at 99a.  But these are considerations that are relevant only when the district court considers the appeal on the merits.  Here, the court did not consider the appeal on the merits;  instead it ruled that the Appellants had not respected the briefing timetable established by the rules.  The court interpreted only the bankruptcy rules and did not address the merits of the case.

[5] Accordingly, whether viewed as an error of law or abuse of discretion, it was not appropriate for the district court to dismiss the Debtors' appeal for failure to file a timely brief when the Debtors had not been given notice that the appeal had been docketed in the district court.  The Debtors did not fail to comply with Rule 8009(a), because the limitations clock did not start ticking until the clerk of the district court gave notice of the docketing as required by Rule 8007(b).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.3d 394                                                              Page 6
11 F.3d 394, 30 Collier Bankr.Cas.2d 328, 27 Fed.R.Serv.3d 1345, 24 Bankr.Ct.Dec. 1636, Bankr. L. Rep.  P 75,618
**(Cite as: 11 F.3d 394)**

The judgment of the district court will be reversed.

Each party is to pay its own costs.

C.A.3 (Pa.),1993.
Jewelcor Inc. v. Asia Commercial Co., Ltd.
11 F.3d 394, 30 Collier Bankr.Cas.2d 328, 27 Fed.R.Serv.3d 1345, 24 Bankr.Ct.Dec. 1636, Bankr. L. Rep.  P 75,618

Briefs and Other Related Documents (Back to top)

• 1993 WL 13141100 (Appellate Brief) Brief for Appellee Asia Commercial Company, Ltd. (Jun. 02, 1993) Original Image of this Document (PDF)
• 1993 WL 13547911 (Appellate Brief) Brief for Appellants (May 8, 1993)
• 1993 WL 13141101 (Appellate Brief) Reply Brief for Appellants (Jan. 01, 1993) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1991 WL 101555 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

H
In re HaardtE.D.Pa.,1991.Only the Westlaw citation
is currently available.
      United States District Court, E.D. Pennsylvania.
                   In re Fred HAARDT.
                 **Civ. A. No. 90-7509.**
                **Bankruptcy No. 90-11733S.**

                      June 7, 1991.

Fred Haardt, pro se.
Andrew N. Schwartz, Philadelphia, Pa., for appellant-
debtor.
Lawrence T. Phelan, Joan P. Brodsky, Joan S.
Pinsky, Philadelphia, Pa., for defendants.
Edward Sparkman, pro se.

                     *MEMORANDUM*
WALDMAN, District Judge.
**\*1** The underlying Chapter 13 bankruptcy case was
filed *pro se* by the debtor Fred Haardt on April 24,
1990.    On June 26, 1990, defendant New York
Guardian Mortgage Corporation ("NYG") filed a
motion pursuant to 11 U.S.C. § 362(d) seeking relief
from the automatic stay in order to proceed to
foreclose on its mortgage on a premises owned by the
debtor and his wife at 5425 Simpson Avenue, Ocean
City, New Jersey.    On July 6, 1990, the debtor
initiated an adversary proceeding attacking the
secured claims of NYG and defendant Security
Pacific Financial Services ("SPFS") alleging certain
misconduct on the part of NYG in servicing Haardt's
mortgage.    A consolidated trial on the motion and
the proceeding was held on September 27, 1990.

On October 5, 1990, Bankruptcy Judge Scholl
entered his findings of fact and conclusions of law.
The bankruptcy court determined SPFS's interest in
Haardt's interest in the premises to be zero and
NYG's interest to be $115,000.    The bankruptcy
court also allowed SPFS an unsecured claim of
$8,127.00 and NYG a secured claim of $32,090.10 in
Haardt's main bankruptcy case.    Finally, the
bankruptcy court continued the stay conditioned
upon, *inter alia*, Haardt's making monthly payments
to the trustee in the amount of $2,800.00.

On October 15, 1990, Haardt filed his notice of
appeal to this court.    Haardt challenges most of the
Bankruptcy Court's findings of fact and its entire

legal analysis.    He also contends that Judge Scholl
was biased due to his hatred of Mrs. Haardt,
plaintiff's wife who apparently assisted him in
presenting his case.    Presently before the court is
NYG's and Bowest Corporation's Motion to Dismiss
for failure timely to file the Designation of Record
and Statement of Issues on Appeal and Haardt's
Motion for Extension of Time to File Designation of
Record.

Under Bankr.Rule 8006, Haardt was required to file
his Designation of Record within ten days of filing
his notice of appeal.    Haardt failed to file said papers
until November 9, 1990, an admitted fifteen days
late.    On November 16, 1990, appellees filed the
present motion to dismiss.    Haardt responded on
November 26 stating that his funds were tied up and
that his attorney would no longer represent him.[FN1]
Haardt also requested additional time to file a
memorandum of law in opposition to appellees
motion to dismiss.    The court granted the request,
and Haardt subsequently filed his brief.    Although he
had only requested additional time to file his brief in
opposition to the motion to dismiss, Haardt also took
this extended period to file his formal motion for an
extension within which to file his designation of
record.

Haardt requests an extension under Bankr.Rule
9006(b) contending that the designation of record
was filed late because his wife was misinformed by a
clerk of the Bankruptcy Court that he had thirty days
to file.    Rule 9006(b) provides in pertinent part:

when an act is required or allowed to be done at or
within a specified period by these rules or by a notice
given thereunder or by order of court, the court for
cause shown may at any time in its discretion:

(1) ...

(2) on motion made after the expiration of the
specified period permit the act to be done where the
failure to act was the result of excusable neglect.

**\*2** The Bankruptcy rules do not provide guidance on
how the discretion of the court under Rule 9006(b)
should be exercised.    The Rule imposes three
requirements where the extension is sought after
expiration of the time specified:    cause shown, a
motion made, and a failure to act as the result of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1991 WL 101555 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

excusable neglect.

The excusable neglect standard has been applied in two ways, a more exacting standard requiring circumstances beyond reasonable control and a more lenient standard requiring only subjective good faith on the part of the noncomplying party coupled with objective lack of prejudice to the adverse party. *See In Re: Beck-Rumbaugh Associates, Inc., 85-4233 (E.D.Pa.1985) (1985 WL 38). [FN2]* Without adopting any particular standard, the court there found that dismissal was appropriate where the designation of record was filed 39 days late, where the appellant never moved for an extension and claimed ignorance of the bankruptcy rules.

In *In re Bienert, 48 Bankr. 326 (N.D.Iowa 1985)*, the court declined to dismiss an appeal where the designation of record was filed over thirty days late. The court concluded that Rule 8006 is not jurisdictional, and found that there had been no showing of bad faith on the part of the appellants with reference to the untimely designation. *Id.* at 327. Similarly, in *In re France, 63 Bankr. 775 (D.N.H.1986)*, the court declined to dismiss an appeal where the designation of record was filed seventeen days late. The court stated that "[a]bsent evidence of prejudice to defendant, or of bad faith on the part of the creditor, an objection of the kind before the court should rarely be sustained." *Id.* at 776 (citing *In re Comer, 716 F.2d 168, 177 (3d Cir.1983).[FN3]* Finally, in *In re Bernat, 57 Bankr. 1009 (E.D.Pa.1986)*, the court declined to dismiss an appeal where the designation of record was filed approximately twenty days late, finding that the debtor's rights had not been prejudiced by the late filing and that there was no suggestion of bad faith on the part of the appellant. *Id.* at 1011 (citing *In re Comer, supra* ).

Mr. Haardt's reliance on information his wife allegedly received from a clerk in the bankruptcy court does not satisfy the more exacting standard applied under the Rule. Courts have rejected such excuses in other contexts. *See, e.g., Neeley v. Murchison, 815 F.2d 345 (5th Cir.1987)* (creditor's filing of objections to dischargeability ten days after deadline, set by Bankr.Rule 4007, was not excused where attorney relied on statements made by bankruptcy court clerks); *Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc., 579 F.2d 786 (3d Cir.1978)* (defendant's reliance on statements of the trial judge's law clerk did not amount to unique circumstances justifying untimely appeal of a preliminary injunction).

On the record before it, the court is unable to impute bad faith to the appellant in filing his designation of record fifteen days late. Appellees have not pointed to any resulting prejudice and it is uncontested that appellees continue to receive payments provided under the underlying bankruptcy court order of October 5, 1990. Accordingly, applying the more lenient standard, the court concludes that Haardt's appeal should not be dismissed for failure to file his designation of record within the specified time limits.

**\*3** The court notes, however, that Haardt has also failed to file his appellate brief. Bankruptcy Rule 8009 provides that "[t]he appellant shall serve and file his brief within 15 days after entry of the appeal on the docket...." Rule 8009 is not jurisdictional, but instead compliance is entrusted to the discretion of the district judge. *In re Beverly Manufacturing Corp., 778 F.2d 666, 667 (11th Cir.1985)*. Courts have declined to dismiss appeals for failure to comply with the time limits in Rule 8009 where there has been no showing of bad faith or indifference on the part of the noncomplying party, or prejudice to the adverse party. *See Beverly, supra, at 667; In re Winner Corp., 632 F.2d 658 (6th Cir.1980). See, e.g., Connelly v. Roach, 74 Bankr. 36 (W.D.N.Y.1987)* (failure timely to file brief excused where appellant relied on past practice of court to send briefing schedule and where appellee was not prejudiced).

Courts have not hesitated, however, to resort to dismissal where a party has exhibited a consistent pattern of dilatoriness throughout a proceeding. *See, e.g., Adler v. Bancplus Mortgage Corp., 108 Bankr. 435 (S.D.N.Y.1989)* (appeal dismissed where appellant's failure to file brief was found to be the latest in a long series of dilatory tactics); *Lawless v. Central Production Credit Association, 81 Bankr. 475 (1987)* (appeal dismissed where appellant failed to file brief after second extension was denied and failed to return the record in the case after numerous requests by court clerks); *First National Bank of Maryland v. Markoff, 70 Bankr. 264 (S.D.N.Y.1987)* (bank's appeal dismissed where it consistently ignored time limits in underlying proceeding and on appeal filed its brief late without requesting an extension); *In re Webster, 47 Bankr. 1012 (M.D.N.C.1985)* (appeal dismissed where appellant was late in filing designation of record, briefs and responses to motions). *See also In re Soter, 31 Bankr. 986, 989-90 (D.Vt.1983); In re Quevedo, 35 Bankr. 117, 119 n. 1 (D.P.R.1983); In re Har-Dway House Statuary, Inc., 76 F.R.D. 204, 205 (E.D.Mo.1977)*.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 101555 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Haardt failed to file his designation of record on time, carelessly relying on advice allegedly received from a court clerk. He waited for months to file his formal motion for leave to file his designation out of time. He also failed to file his appellate brief on time despite the clear time limits set forth in Bankr.Rule 8009,[FN4] and indeed has not yet filed his brief.

Giving every benefit of the doubt to appellant, the court will give him one last opportunity properly to pursue his appeal.

Appropriate orders will be entered.

### ORDER

AND NOW, this 7th day of June, 1991, upon consideration of defendant's Motion to Dismiss and appellant's response thereto, IT IS HEREBY ORDERED that said Motion is DENIED.

### ORDER

AND NOW, this 7th day of June, 1991, upon consideration of the Motion by Debtor Fred Haardt to Extend Time to File his Designation of Record and Statement of Issues on Appeal, IT IS HEREBY ORDERED that said Motion is GRANTED *nunc pro tunc.*

*4 IT IS FURTHER ORDERED that Appellant-Debtor shall have until June 17, 1991 to file his brief. No further extensions will be considered.

FN1. Haardt originally proceeded *pro se.* On July 23, 1990, Andrew N. Schwartz entered his appearance for Haardt. Mr. Schwartz represented the debtor through the trial of September 27. While Haardt filed the present appeal pro se, certain documents have been signed by his wife who apparently is an attorney.

FN2. Specifically the court provided:
The more exacting interpretation requires the existence of 'unique' or 'extraordinary' circumstances. *See, e.g., Maryland Casualty Company v. Conner,* 382 F.2d 13 (10th Cir.1967); *In re Standard Poultry,* 5 B.R. 643 (Bkrtcy.E.D.Pa.1980); *In re Rogers,* 2 B.R. 485 (Bkrtcy.W.D.Va.1979);

*In re Griffis,* 31 B.R. 279 (Bkrtcy.D.Vt.1983) ( '... circumstances ... beyond reasonable control ...; ordinary negligence is not enough and lack of control over events is essential').... The other view of 'excusable neglect' requires only subjective 'good faith' on the part of the noncomplying party and objective lack of prejudice to the adverse party. *See, e.g., In re Parrish,* 13 B.R. 539 (Bkrtcy.W.D.Ky.1981): 'excusable negligence is a flexible concept which requires a showing of good faith by the party seeking extension of time, reasonable basis for the noncompliance within the required time period and lack of prejudice to the opposing party'; similarly, *In re Klayer,* 13 B.R. 542 (Bkrtcy.W.D.Ky.1981); *In re Abrams,* 35 B.R. 485 (Bkrtcy.Ohio 1983); *In re O.P.M. Leasing Services, Inc.,* 35 B.R. 854 (Bkrtcy.N.Y.1983).
*In re Beck-Rumbaugh, supra,* at 2. Most of the cases cited by the court involved complaints in dischargeability which were filed out of time.

FN3. In *In re Comer,* the Third Circuit found no error in the district court's refusal to dismiss an appeal where the designation of record had been filed four days late, noting that the district court found no prejudice to the appellees and no bad faith on the part of the appellant. 716 F.2d at 177.

FN4. On November 27, 1990, the Clerk's Office sent out a briefing schedule which conformed with Rule 8009(a). Although Mr. Haardt should have known of the applicable fifteen day time limit, it is not clear that he received a copy of the notice. Upon inquiry to the Clerk's Office, it appears that while Haardt signed his Notice of Appeal, the bankruptcy court clerk's office failed to place Mr. Haardt's name on the Certificate of Appeal which the district court clerk's office uses to produce its address list for the scheduling notice. In short, Haardt may not have received the briefing schedule.

E.D.Pa.,1991.
In re Haardt
Not Reported in F.Supp., 1991 WL 101555 (E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1991 WL 101555 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2002 WL 1585912 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**

In re KoutoufarisD.Del.,2002.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
In re: KOUTOUFARIS, Debtor.
John KOUTOUFARIS, et al., Appellants,
v.
MORRIS, James, Hitchens & Williams et al., Appellees.
**Nos. 95-204(JKF), CA.NO. 02-278, 96-180.**

July 18, 2002.

Adversary proceeding was brought alleging legal malpractice. After the bankruptcy court granted summary judgment for defendants, and after the docketing of the plaintiffs' appeal, defendants moved to dismiss. The District Court, Sleet, J., held that appeal would be dismissed for failure to prosecute.

Motion granted.
West Headnotes
**Bankruptcy 51** 🗝3778

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3778 k. Dismissal; Hearing. Most Cited Cases
Appeal in adversary proceeding alleging legal malpractice would be dismissed for failure to prosecute where appellants failed to file an opening brief within 15 days of the date the appeal was docketed, despite appellants' claim that their attorney was "indisposed" due to a medical condition; regardless of the attorney's illness, the appellants had an affirmative duty to file their brief or file for an enlargement of time. Bankruptcy Rule 8009(a)(1).

*MEMORANDUM ORDER*
SLEET, J.

I. INTRODUCTION

**\*1** On October 7, 1996, the appellants, John Koutoufaris, Marlene Koutoufaris, and the Estate of Ernest V. Keith (collectively "the appellants"), filed the above-captioned adversary proceeding alleging legal malpractice. [FN1] The Bankruptcy Court granted summary judgment in favor of Morris, James,

Hitchens and Williams ("the appellees") because the appellants suffered no legally cognizable injury and the remaining claims were barred by collateral estoppel. The Clerk of the District Court docketed the appellants' appeal on April 18, 2002.

> FN1. The instant appeal is closely related to another appeal pending before the court captioned *BCI Pancake House v. Morris, James et al.,* C.A. No. 02-97-GMS ("the BCI appeal"). Two of the plaintiffs in the instant case, John and Marlene Koutoufaris, are the sole stockholders, officers, and directors of the appellants in the BCI appeal. Furthermore, counsel for the appellants are the same in both cases, the appellees in both cases are essentially the same, and the claims in both cases relate to the same failed loan transaction.

Presently before the court is the appellee's motion to dismiss for failure to prosecute. For the following reasons, the court will grant this motion.

II. DISCUSSION

Pursuant to Bankruptcy Rule 8009(a)(1), an appellant must file its opening brief within fifteen days of the date the appeal was docketed. Should the appellant fail to do so, the court has the discretion to dismiss the appeal for failure to prosecute. *See Jewelcor, Inc. v. Asia Commercial Co.,* 11 F.3d 394, 397 (3d Cir.1993). The Third Circuit requires only that the district court consider less severe sanctions before dismissing the appeal. *See id.*

In the present case, the Clerk of the District Court docketed the appeal on April 18, 2002. On that date, he also notified the parties that the appeal had been docketed. Thus, under Bankruptcy Rule 8009, the appellants' opening brief was due on May 3, 2002. Notwithstanding that requirement, however, the appellants have never filed their brief. Nor did they file a timely motion for an enlargement of time in which to do so.

Indeed, rather than adhering to the unambiguous Bankruptcy Rule, the appellants instead waited for the appellee's May 23, 2002 motion to dismiss for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1585912 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

failure to prosecute before contacting the court. On June 3, 2002, the appellants responded to the pending motion to dismiss by adopting the May 29, 2002 Declaration of Gregory Sioris ("Sioris"), which was filed in the BCI appeal. In that declaration, Sioris states that the attorney of record, Henry Heiman ("Heiman"), was "indisposed" due to a medical condition. Sioris claims that he was unable to prosecute this appeal without Heiman's aid.[FN2] Sioris further states that, had the court entered a scheduling order, he would have moved for an adjournment based on Heiman's condition. In their opposition to the present motion, the appellants also note that John and Marlene Koutoufaris filed a Notice of Conversion to Chapter 7 on May 30, 2002. Based on this conversion, they maintain that any decisions concerning the appeal rest with the Chapter 7 Trustee.

> FN2. However, Sioris fails to address why he, as lead counsel, was unable to contact the court regarding an enlargement of time in which to file the opening brief.

The court dismissed the BCI appeal for failure to prosecute due to Heiman's and Sioris' utter disregard for the court's time and docket management concerns. The court concludes that the same result applies to the present case. Although the appellants filed a timely opposition to the motion to dismiss, the court finds their failure to comply with Rule 8009 to be inexcusable neglect. Regardless of Heiman's illness, the appellants had the affirmative duty to either file their brief, or to file a motion for enlargement of time. The appellants unilaterally chose to do neither, and in the process, burdened the court with an inactive appeal. Moreover, Sioris' suggestion that he only had a duty to contact the court regarding Heiman's illness if the court had entered a scheduling order clearly runs afoul of Rule 8009's requirements.

*2 Additionally, the court is troubled by Heiman's and Sioris' history of failing to prosecute both this appeal and the related BCI appeal. The procedural default at issue here is clearly not an isolated incident. Indeed, as the court noted in its June 3, 2002 order dismissing the BCI appeal, their dilatory tactics were also evident during that proceeding, as well as during the bankruptcy proceedings below.

Finally, the court finds it irrelevant that John and Marlene Koutoufaris have filed a Notice of Conversion to Chapter 7. The appellants have failed to cite to any authority for the proposition that such a notice effectively resets the filing clock for Rule 8009 purposes.[FN3] Nor is the court aware of any such authority.

> FN3. The court notes that the appellants have failed to address how the Koutoufaris' conversion to Chapter 7 would affect their co-appellant, the Estate of Keith, which is not in bankruptcy.

III. CONCLUSION

It is uncontested that the appellants have failed to adhere to Rule 8009's unambiguous mandate. This fact, coupled with counsel's pattern of disregarding the court's scarce resources and docket management concerns, warrants dismissal.

For these reasons, IT IS HEREBY ORDERED that:

1. The Appellee's motion to dismiss for failure to prosecute (D.I.6) is GRANTED.

D.Del.,2002.
In re Koutoufaris
Not Reported in F.Supp.2d, 2002 WL 1585912 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

200 F.3d 203                                                                                          Page 1
200 F.3d 203, 45 Fed.R.Serv.3d 371
**(Cite as: 200 F.3d 203)**

H

Briefs and Other Related Documents
U.S. v. Eleven Vehicles, Their Equipment and
AccessoriesC.A.3 (Pa.),2000.
     United States Court of Appeals,Third Circuit.
          UNITED STATES of America
                    v.
ELEVEN VEHICLES, THEIR EQUIPMENT AND
   ACCESSORIES; All Monies and/or Interests in
   Certain Accounts in Banks or Certain other Financial
   Institutions; One Business; Any & All Proceeds,
               from the Sales thereof
Robert Clyde Ivy; Wayne K. Radcliffe; Terrance P.
   Faulds; Irene Ivy; Kleinbard, Bell & Brecker;
Mellon Bank, N.A.; Lebanon Valley National Bank;
Mary E. Ivy; Gerald Schuler; Clyde Ivy; Irene Ivy;
   Elaine K. Radcliffe; Michelle E. Radcliffe,
          Claimants in District Court
   Robert Clyde Ivy and Irene Ivy, Appellants.
                 **No. 99-1241.**

               Argued Oct. 1, 1999.
               Decided Jan. 7, 2000.

The United States District Court For the Eastern
District of Pennsylvania, Eduardo C. Robreno, J., 36
F.Supp.2d 237, made a supplemental award of
attorney fees and expenses under Equal Access to
Justice Act (EAJA) for work performed in a post-
judgment fee litigation in a civil forfeiture
proceeding, and claimants appealed. The Court of
Appeals, Rosenn, Circuit Judge, held that: (1) motion
for supplemental attorney fees was not a motion to
alter or amend judgment, and (2) case would be
remanded where district court did not provide a
sufficient explanation of its reasons for the fee award.

Remanded.

Alito, Circuit Judge, filed concurring opinion.
West Headnotes
**[1] Federal Civil Procedure 170A ☜2659**

170A Federal Civil Procedure
     170AXVII Judgment
          170AXVII(G) Relief from Judgment
               170Ak2657 Procedure
                    170Ak2659 k. Motion, Complaint or
Bill. Most Cited Cases

**Federal Civil Procedure 170A ☜2742.5**

170A Federal Civil Procedure
     170AXIX Fees and Costs
          170Ak2742 Taxation
               170Ak2742.5 k. Attorney Fees. Most Cited
Cases
A motion for supplemental attorney fees is not a
motion to alter or amend judgment. Fed.Rules
Civ.Proc.Rule 59(e), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☜2642**

170A Federal Civil Procedure
     170AXVII Judgment
          170AXVII(G) Relief from Judgment
               170Ak2642 k. Judgments from Which
Relief May Be Granted. Most Cited Cases

**Federal Civil Procedure 170A ☜2742.5**

170A Federal Civil Procedure
     170AXIX Fees and Costs
          170Ak2742 Taxation
               170Ak2742.5 k. Attorney Fees. Most Cited
Cases
Initial award of attorney fees was not a "judgment"
for purposes of rule governing motions to alter or
amend judgment, and therefore a supplemental
request for fees was not governed by the rule;
furthermore, even if initial award of attorney fees was
a "judgment," supplemental request for fees and
expenses incurred during a period of time different
from and subsequent to the time period covered by
the initial fee award could not be a motion to alter or
amend because the supplemental request did not seek
to alter or amend the initial award, but rather, sought
to address only fees and expenses not considered in
the prior award determination. Fed.Rules
Civ.Proc.Rule 59(e), 28 U.S.C.A.

**[3] United States 393 ☜147(6)**

393 United States
     393IX Actions
          393k147 Costs
               393k147(6) k. Application; Form,
Requisites, and Time. Most Cited Cases
District court did not abuse its discretion in
considering the claimants' request under Equal
Access to Justice Act (EAJA) for supplemental award
of attorney fees and expenses for work performed in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 203
200 F.3d 203, 45 Fed.R.Serv.3d 371
**(Cite as: 200 F.3d 203)**

post-judgment fee litigation in a civil forfeiture proceeding; claimants delayed three months in requesting additional fees and expenses because they incorrectly believed that they were required to wait to apply until 30 days after judgment dismissing forfeiture proceeding became unappealable but put the court and the Government on notice that they reserved the right to submit a statement of fees and expenses incurred after period covered by initial fee request. 28 U.S.C.A. § 2412(d)(1)(B).

**[4] Forfeitures 180 ☞5**

180 Forfeitures
   180k5 k. Proceedings for Enforcement. Most Cited Cases
Appeal from supplemental award of attorney fees and expenses under Equal Access to Justice Act (EAJA) for work performed in post-judgment fee litigation in a civil forfeiture proceeding would be remanded where district court did not provide a sufficient explanation of its reasons for the fee award. 28 U.S.C.A. § 2412(d)(1)(A).

**[5] United States 393 ☞147(11.1)**

393 United States
   393IX Actions
     393k147 Costs
      393k147(11) Nature of Action or Proceeding
       393k147(11.1) k. In General. Most Cited Cases
Claimants were not entitled to attorney fees under Equal Access to Justice Act (EAJA) for litigating their unsuccessful motion for the district court to reconsider its grant of a certificate of reasonable cause to the Government in forfeiture proceeding; that motion litigated the issue of claimants' entitlement to costs for the underlying forfeiture claim. 28 U.S.C.A. § 2412(d)(1)(A).

**[6] Federal Civil Procedure 170A ☞2742.5**

170A Federal Civil Procedure
   170AXIX Fees and Costs
     170Ak2742 Taxation
      170Ak2742.5 k. Attorney Fees. Most Cited Cases
In statutory fee cases, in calculating the "lodestar," or initial fee calculation requiring the court to multiply a reasonable hourly fee by the reasonable amount of hours worked, the district court may not award less in fees than requested unless the opposing party makes

specific objections to the fee request.

**[7] Federal Civil Procedure 170A ☞2742.5**

170A Federal Civil Procedure
   170AXIX Fees and Costs
     170Ak2742 Taxation
      170Ak2742.5 k. Attorney Fees. Most Cited Cases
Once the opposing party has made a sufficiently specific objection to the substance of a fee request in a statutory fee case, court has a great deal of discretion to adjust the fee award in light of the objections.

**[8] Federal Civil Procedure 170A ☞2742.5**

170A Federal Civil Procedure
   170AXIX Fees and Costs
     170Ak2742 Taxation
      170Ak2742.5 k. Attorney Fees. Most Cited Cases

**United States 393 ☞147(4)**

393 United States
   393IX Actions
     393k147 Costs
      393k147(3) Items and Amount
       393k147(4) k. Attorney Fees. Most Cited Cases
District court may not, sua sponte, reduce attorney fee amount requested in post-judgment supplemental applications for "fees for fee litigation" in the absence of a Government objection; however, prohibition on sua sponte reduction of fees applies only to challenges to the excessiveness of a fee request and not to legal challenges to certain types of attorney work that are simply never compensable under Equal Access to Justice Act (EAJA). 28 U.S.C.A. § 2412(d)(1)(A).

**[9] United States 393 ☞147(4)**

393 United States
   393IX Actions
     393k147 Costs
      393k147(3) Items and Amount
       393k147(4) k. Attorney Fees. Most Cited Cases
In awarding supplemental attorney fees under Equal Access to Justice Act (EAJA) for fee litigation, district court did not err in seeking to impose some degree of proportionality between the fees for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 203
200 F.3d 203, 45 Fed.R.Serv.3d 371
(Cite as: 200 F.3d 203)

underlying merits litigation and fees for fee litigation. 28 U.S.C.A. § 2412(d)(1)(A).

**[10] Federal Civil Procedure 170A ⚖ 25**

170A Federal Civil Procedure
  170AI In General
    170AI(B) Rules of Court in General
      170AI(B)1 In General
        170Ak25 k. Local Rules of District Courts. Most Cited Cases
A district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment.

**\*205** Charles H. Ivy, (Argued), Law Office of Charles H. Ivy, Counsel for Robert Clyde Ivy and Irene Ivy.
Catherine L. Votaw, (Argued), J. Alvin Stout, III, Michael R. Stiles, Office of the United States Attorney, Counsel for United States of America.

Before: NYGAARD, ALITO and ROSENN, Circuit Judges.

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

ROSENN, Circuit Judge.
This appeal presents a recurring problem concerning the amount of fees due counsel under a fee-shifting statute. The case also presents the grim reality feared by the Supreme Court of the United States when it warned that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). More specifically, we are presented with a challenge to the adequacy of a supplemental award of attorney fees and expenses for work performed in post-judgment fee litigation in a civil forfeiture proceeding initiated by the United States in 1991 in the District Court for the Eastern District of Pennsylvania. After securing the court-ordered release of property seized by the United States Government because it was thought to be involved in illegal money laundering activities, appellants sought attorney fees and expenses incurred in seeking the property's release pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). In its fourth published opinion in this case, the district court awarded the appellant $142,643.26 in attorney fees and $7963.51 in expenses covering services through September 26,

1996. *See United States v. Eleven Vehicles,* 966 F.Supp. 361 (E.D.Pa.1997) [hereinafter *Eleven Vehicles IV*].[FN1] Subsequently, the appellants filed a supplemental request for $23,333.81 in attorney fees and $560 in expenses incurred after September 26, 1996 in litigating their entitlement to fees and expenses for the underlying forfeiture litigation. The court awarded the appellants $5000 in attorney fees plus $560 in expenses. Disappointed, the appellants, Robert Clyde Ivy and Irene Ivy, timely appealed. We remand.

> FN1. The district court had previously found that the appellants were entitled to attorney fees and expenses under the EAJA. *See Eleven Vehicles III,* 937 F.Supp. 1143 (E.D.Pa.1996).

I.

In October 1991, the Government filed a complaint for forfeiture of the assets of numerous parties, including Appellants Robert Clyde Ivy and Irene Ivy ("the **\*206** Ivys"). Over the next four-and-a-half-years, the trial court ordered the piece-by-piece release of all the Ivys' seized properties pursuant to partial grants of summary judgment in October 1993 and September 1995, and a final dismissal of the Government's forfeiture complaint, with prejudice, in March 1996.[FN2] In dismissing the case, the district court expressly retained jurisdiction for the purpose of considering the Ivys' request for attorney fees and expenses pursuant to the EAJA, and the Government's motion for a "certificate of reasonable cause" under 28 U.S.C. § 2465. The certificate of reasonable cause, if granted, would have protected the individuals who actually seized the property at issue from liability to the property owners, and would prevent the claimants from recovering costs from the Government, though not fees or expenses.

> FN2. The district court had jurisdiction over this forfeiture action pursuant to 28 U.S.C. § 1345 and 1355, and 18 U.S.C. § § 981(a)(1)(A), 981(a)(1)(C), and 981(f).

On August 30, 1996, the district court granted the requested certificate of reasonable cause. It held, however, that the Ivys were entitled to attorney fees at a rate of $112.28 per hour and to expenses. *United States v. Eleven Vehicles,* 937 F.Supp. 1143, 1149-56 (E.D.Pa. 1996) (*Eleven Vehicles III*). In ruling on the Ivys' entitlement to fees and expenses, the court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 203
200 F.3d 203, 45 Fed.R.Serv.3d 371
(Cite as: 200 F.3d 203)

Page 4

found that the Ivys were a "prevailing party" in the litigation, the Government's litigating position had not been "substantially justified," and no "special circumstances" existed that would render an attorney fee award unjust. [FN3] *Id.* at 1150-55. The district court ordered the Ivys to submit an itemized statement of counsel's hours and rates by September 30, 1996. *Id.* at 1156. The Ivys submitted the required materials on that date. These materials covered work performed on the case through September 26, 1996. The Government filed objections to some of these requested fees.

> FN3. The EAJA provides in pertinent part:
> (A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
> (B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.
> 28 U.S.C. § 2412(d)(1).

The Government filed a motion for reconsideration of the award of attorney fees and expenses. The Ivys filed a motion for reconsideration of the grant of a certificate of reasonable cause and the failure to grant attorney fees at market rate. The Ivys also filed a motion requesting the court to adjust the hourly billing rate of $112.28, established by the court for calculating the amount of attorney fees owed to the Ivys, upward to reflect cost of living. The parties filed responses to each other's motions. In

November 1996, the Ivys apparently gave the Government and the court notice that they intended at some future date to seek attorney fees and expenses for work performed after September 26, 1996.

On May 30, 1997, the district court denied the Government's motion for reconsideration as merely a "rehash" of earlier arguments in the litigation. As for the Ivys' motion for reconsideration of the grant of the certificate of reasonable cause and the court's denial of their entitlement to attorney fees at market rates, the court also, after careful consideration, denied it **207** as essentially a restatement of their earlier arguments. *Eleven Vehicles IV*, 966 F.Supp. at 363-66. However, the court granted the Ivys' request for a cost of living adjustment, revising the compensable hourly billing rate upward to $120.68. *Id.* at 366-67. Finally, the court accepted one of the Government's narrow objections to the fees requested by the Ivys, rejected the remainder of the Government's objections, and granted attorney fees for 1182 hours of work in the amount of $142,643.76, and expenses in the amount of $7,963.81. *Id.* at 367-69.

On August 27, 1997, the Ivys submitted to the district court a supplemental request for attorney fees and expenses covering work performed after September 26, 1996. In this application, the Ivys requested $23,333.81 in fees as compensation for 190.9 additional hours work, and $560.00 in expenses. The Government opposed this supplemental request, arguing that the requested supplemental payment was not authorized by any law, and was in essence a motion under Federal Rule of Civil Procedure 59(a) to alter or amend the May 30, 1997 award. Because such a request must be filed within 10 days after judgment, the Government asserted that the request was untimely, and the court's March 30, 1997 award was sufficiently generous and adequate to cover additional fees and expenses accumulated between September 26, 1996 and May 30, 1997. Further, the Government argued that the Ivys were not entitled to receive fees and expenses for post-judgment work, particularly work related to the decision not to take an appeal. The Ivys responded to the Government's arguments, and in addition asserted that the Government's memorandum in opposition was untimely and therefore should not be considered by the district court.

After a telephone conference with counsel for the parties, the court issued its decision. *United States v. Eleven Vehicles V*, 36 F.Supp.2d 237 (E.D.Pa.1999). The court first held that the Ivys' supplemental fee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 203                                                                                                    Page 5
200 F.3d 203, 45 Fed.R.Serv.3d 371
(Cite as: 200 F.3d 203)

application was not a Rule 59(a) motion, but instead arose under the EAJA. *Id.* at 238 n. 1. It then addressed the merits of the application, considering the supplemental application as a whole along with the first application and fee award. *Id.* at 239. The court stated that it took into account all of the factors it had considered in determining the first fee award. In addition, the district court considered that "the supplemental request involves work performed on motions for reconsideration of doubtful validity filed by both parties," and that "the 190 hours spent by counsel appears 'excessive, redundant and otherwise unnecessary.' " *Id.* (citation omitted). Based on these factors, the court awarded the Ivys an additional $5,000 in fees and $560.00 in expenses. The district court's opinion did not address the Ivys' argument that the Government's opposition to their request was untimely and should not be considered.

## II.

On appeal, the Ivys make several substantive arguments in support of their assertion that the district court erred in awarding them less attorney fees than they requested. In addition, they contend that the court abused its discretion by entertaining the Government's late-filed memorandum opposing their supplemental request for attorney fees and expenses. The Government argues that the supplemental fee application is, in essence, a motion to alter or amend the district court's May 30, 1997 original fee award under Federal Rule of Civil Procedure 59(e).[FN4] Accordingly, the Government contends*208 that the Ivys were obliged to comply with that Rule's requirement that such motions be filed "no later than 10 days after the entry of the judgment." Fed.R.Civ.P. 59(e). Because the Ivys' supplemental fee request was filed approximately three months after entry of the May 30, 1997 award of attorney fees, the Government asserts that the request was untimely, and thus the court lacked subject matter jurisdiction. The district court rejected this argument, *Eleven Vehicles V*, 36 F.Supp.2d at 238 n. 1, and the Government did not appeal this issue.

FN4. In the district court, the Government argued in its opposition to the Ivys' supplemental fee application that the application was effectively a motion to amend the court's findings of fact under Fed.R.Civ.P. 59(a), not 59(e). However, in the instant case, there is little practical effect to this discrepancy. Moreover, the court

explicitly relied on *Brown v. Local 58, Int'l Bhd. of Elec. Workers, AFL-CIO*, 76 F.3d 762 (6th Cir.1996), which considered the same argument under Rule 59(e). The court here stated that it saw no difference between relying on subdivision (a) or subdivision (e) of Rule 59. Thus, for purposes of our review, this discrepancy is immaterial.

[1] It appears well settled that a motion for supplemental attorney fees is not a Rule 59(e) motion. In *White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 447-48, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) the Court addressed a situation in which the petitioner requested attorney fees under the Civil Rights Attorney's Fees Awards Act, 28 U.S.C. § 1988, four-and-a-half months after winning judgment on the merits. The respondent argued that the motion was governed by the 10-day time limit of Fed.R.Civ.P. 59(e), and was therefore untimely. The Supreme Court held that Rule 59(e) was reserved "only to support reconsideration of matters properly encompassed in a decision on the merits." *Id.* at 451, 102 S.Ct. 1162. The Court concluded that "a request for attorneys fees ... raises legal issues collateral to the main cause of action-issues to which Rule 59(e) was never intended to apply." *Id.* It held that attorney fees are not "compensation" for the injury suffered and are not an "element of 'relief' ":

[A] motion for attorney fees is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks what is due because of the judgment. It is, therefore, not governed by the provisions of Rule 59(e).

*Id.* at 452-53, 102 S.Ct. 1162 (quoting *Knighton v. Watkins*, 616 F.2d 795, 797 (5th Cir.1980)). Numerous other decisions of the Supreme Court, this court, and other circuit courts have made the same observation. *See Federal Communications Comm'n v. League of Women Voters of Cal.*, 468 U.S. 364, 373 n. 10, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984) ("a postjudgment request for attorney fees is not considered a motion to amend or alter the judgment under Rule 59(e)").[FN5]

FN5. Other cases in accord are: *Utah Women's Clinic, Inc. v. Leavitt*, 75 F.3d 564, 567 (10th Cir.1995), *cert. denied*, 518 U.S. 1019, 116 S.Ct. 2551, 135 L.Ed.2d 1070 (1996); *Samuels v. American Motors Sales Corp.*, 969 F.2d 573, 577-78 (7th Cir.1992); *Schake v. Colt Indus. Operating Corp.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 203                                                                                    Page 6
200 F.3d 203, 45 Fed.R.Serv.3d 371
**(Cite as: 200 F.3d 203)**

_Severance Plan for Salaried Employees_, 960
F.2d 1187, 1192 (3d Cir.1992);   _Cruz v.
Hauck_, 762 F.2d 1230, 1236-37 (5th
Cir.1985).

[2] The Government asserts that Rule 59(e)
nevertheless applies in this case because the
"judgment" the Ivys sought to "alter or amend" with
their supplemental fee application was the initial May
30, 1997 award of attorney fees.   However, under
_White_, this May 30 award was not a "judgment" at
all.   _See also Cartledge v. Heckler_, 615 F.Supp. 545,
546 (N.D.Ill.1985) ( "[U]nder 28 U.S.C. §
2412(d)(1)(A), as under other fee-shifting statutes,
the fee award is really in addition to and not part of
the judgment.");   _Watkins v. Harris_, 566 F.Supp.
493, 495 (E.D.Pa.1983) ("[t]he EAJA is a fee shifting
statute and if attorneys' fees are awarded, they are in
addition to the amount of the judgment");   _cf._ _Shultz
v. Crowley_, 802 F.2d 498, 500-05 (D.C.Cir.) (suit is
final and not "pending" under the EAJA when merits
have been decided even though post-judgment
motion for attorney fees remains unresolved), _reh'g
denied_, 806 F.2d 281 (D.C.Cir.1986), _cert. denied_,
484 U.S. 869, 108 S.Ct. 197, 98 L.Ed.2d 148 (1987).
The underlying "judgment" in this case was the
district *209 court's dismissal of the forfeiture
proceedings.   Because Rule 59(e) only applies to
motions to alter or amend a judgment, it is
inapplicable here.

Moreover, even if an initial award of attorney fees is
a "judgment," a supplemental request for fees and
expenses incurred during a period of time _different
from and subsequent to_ the time period covered by an
initial fee award cannot be a motion under Rule 59(e)
because the supplemental request does not seek to
alter or amend the initial award.   Rather, such a
request seeks to address only fees and expenses not
considered in the prior award determination.   _See
Brown v. Local 58, Int'l Bhd. of Elec. Workers, AFL-
CIO_, 76 F.3d at 769-70.

[3] Thus, the question remains under what authority
could the district court consider the Ivys'
supplemental request for attorney fees and expenses.
[FN6]   The Ivys appear to contend that their
supplemental request was a valid motion under the
EAJA.   However, the Ivys misconstrue the timing
requirements of the EAJA.   The EAJA requires that a
party seeking an award of fees and other expenses
shall submit its application to the court within thirty
days of _final judgment in the action_.   28 U.S.C. §
2412(d)(1)(B).   The underlying "action" here is the
Government's forfeiture proceeding against the Ivys'

property.   The "final judgment" contemplated by the
statute, it seems clear, is the judgment dismissing that
forfeiture proceeding.   It is not, as the Ivys argue, the
May 30, 1997 adverse ruling on the parties' motions
to reconsider ancillary matters.   That ruling involved
only post-judgment residual proceedings dealing with
fees, costs, and expenses.[FN7]

> FN6.   The only other case to address the
> precise question at issue here was _Brown v.
> Local 58, Int'l Bhd. of Elec. Workers, AFL-
> CIO_.   _See_ 76 F.3d at 769.   Although the
> Court of Appeals for the Sixth Circuit in
> _Brown_ rejected the appellants objections to
> the jurisdiction of the district court, it did
> not explain on what basis the district court
> could consider an application for
> supplemental attorney fees.

> FN7.   The underlying forfeiture action was
> dismissed with prejudice and "final
> judgment" entered on March 26, 1996.   (_See_
> Dist. Ct. Dkt. Entry # 146).   The
> concurrence states that the district court's
> August 30, 1996 decision in _Eleven Vehicles
> III_ was the final judgment in the underlying
> forfeiture action.   However, the court's
> _Eleven Vehicles III_ decision dealt only with
> post-judgment issues ancillary to the March
> 1996 dismissal of the forfeiture case.   As
> discussed above, these issues had no effect
> on the finality of the March 26, 1996
> judgment dismissing the underlying
> forfeiture action.

There currently is no dispute that the Ivys satisfied
the EAJA's requirements for their initial claim to
attorney fees and expenses incurred in the underlying
litigation.   They filed their claim within thirty days
after the final dismissal of the forfeiture case became
unappealable.   The district court, in a thoughtful and
carefully written opinion, held in _Eleven Vehicles III_
that the Ivys were a "prevailing party" in the
forfeiture litigation, that the Government did not
substantially justify its litigating position, and that
there were no "special circumstances" that would
make an award unjust.   The Supreme Court has held
that under the EAJA, once these findings are made a
claimant need not relitigate these issues in later
claims for attorney fees.   _See Commissioner,
Immigration & Naturalization Serv. v. Jean_, 496 U.S.
154, 158-62, 110 S.Ct. 2316, 110 L.Ed.2d 134
(1990).   Moreover, this court has held that once an
EAJA fee request has been timely filed, "deficiencies

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 203                                                                                    Page 7
200 F.3d 203, 45 Fed.R.Serv.3d 371
(Cite as: 200 F.3d 203)

in the contents of the claim may be corrected if the government cannot show any prejudice arising from the later correction of these deficiencies." *See Dunn v. United States, 775 F.2d 99, 103-04 (3d Cir.1985); see also Bazalo v. West, 150 F.3d 1380, 1383-84 (Fed.Cir.1998)* (adopting this circuit's reasoning in *Dunn).* The *Dunn* Court reasoned that Congress envisioned only one strict requirement in EAJA fee cases, namely that the court and the Government be put on notice that the claimant seeks fees under the EAJA. 775 F.2d at 104.

*210 Thus, once the jurisdictional elements of an initial claim for attorney fees under the EAJA have been shown, the strictures of the EAJA do not dictate when a request for *supplemental* fees must be filed. In the absence of a timeliness requirement imposed by statutory command, a Federal Rule of Civil Procedure, or an applicable local court rule, "the only time limitation arises out of those equitable considerations that a district judge may weigh in his discretion." *Hicks v. Southern Maryland Health Systems Agency, 805 F.2d 1165, 1166-67 (4th Cir.1986); Cruz, 762 F.2d at 1236-38; see also Smith v. Bowen, 815 F.2d 1152, 1156 (7th Cir.1987)* (motion for attorney fees is governed by Fed.R.Civ.P. 54, which " 'imposes no time limit apart from an implicit requirement of reasonableness' " (quoting *Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1248 (7th Cir.1982), aff'd. on other grounds, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)* (citation omitted))). The Ivys waited approximately three months after the May 30, 1997 decision to request supplemental attorney fees. In addition, all of the supplemental fees and expenses applied for were incurred, and therefore known to the Ivys, prior to the district court's May 30, 1997 decision. Accordingly, the Ivys could and should have supplemented their fee request prior to the court's decision in *Eleven Vehicles IV.* Based on such equitable considerations, had the district court refused to entertain the Ivys' supplemental fee request because of their three-month delay, it would have been within its discretion so to do. This is especially true given the Supreme Court's admonition in *Hensley* that a request for attorney fees should not result in a second major litigation. *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933.

Nevertheless, the district court in the exercise of its discretion chose to entertain this supplemental request. The Ivys' *initial* fee request clearly covered only fees and expenses incurred through September 26, 1996. All parties were aware at the time that request was filed that the Government's motion for

reconsideration of the Ivys' right to a fee award, the Ivys' motion for reconsideration of the Government's right to a certificate of reasonable cause, and the Ivys' motion for a cost of living adjustment to the compensable attorney billing rate remained pending before the district court. The Government acknowledges that in the course of litigating its objections to the Ivys' first request for fees and expenses, the Ivys put the court and the Government on notice that they reserved the right to submit a statement of fees and expenses incurred after September 26, 1996. The Ivys appear to have delayed three months in requesting additional fees and expenses because they incorrectly believed that they were required to wait until 30 days after the May 30, 1997 judgment became unappealable. Thus, we cannot say that the district court abused its discretion in considering the Ivys' supplemental request.[FN8]

> FN8. The Government's suggestion that it was prejudiced by the Ivys' delay in filing its supplemental request because it could not appeal the final fee award rings hollow. The Government was free to appeal the May 30, 1997 award if it chose so to do. The Government was also free to appeal the January 20, 1999 supplemental award if it chose to do so. It does not appear that the Government was in any way prejudiced by the Ivys' delay.

Thus, we turn to the Ivys' challenges to the district court's legal analysis, and their argument that the court abused its discretion in failing to address their contention that the Government's memorandum in opposition to their supplemental fee request was untimely and should not have been considered.

III.

The Ivys assert that the district court erred in several ways in its analysis of their supplemental fee request. Their arguments essentially boil down to the following: (1) the court failed to justify or explain its findings that the claim submitted was "excessive, redundant, or otherwise*211 unnecessary"; (2) the court *sua sponte* improperly granted attorney fees in an amount below that requested in the absence of a Government challenge to the requested amount; (3) the court disallowed hours worked and granted less than the amount submitted without making the findings required by EAJA § 2412(d)(1)(C); and (4)

200 F.3d 203                                                                                          Page 8
200 F.3d 203, 45 Fed.R.Serv.3d 371
(Cite as: 200 F.3d 203)

the court failed to inquire into the particulars of the supplemental fee request, instead relying on its "generalized sense" of what fee was reasonable for the entire case. Our review of such challenges to the legal standards applied by the district court is plenary. *See Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 718 (3d Cir.1989).

The district court awarded the Ivys less in attorney fees than requested for the supplemental proceedings at least in part because it found that "the 190 hours spent by counsel appears 'excessive, redundant and otherwise unnecessary.' " *Eleven Vehicles*, 36 F.Supp.2d at 239 (quoting *Becker v. ARCO Chem. Co.*, 15 F.Supp.2d 621, 633 (E.D.Pa.1998)). When this court reviews such a finding, it is presented with two issues: "first, whether the district court abused its discretion in concluding that the hours expended on a certain task were excessive; and second, whether the district court abused its discretion in concluding that a certain number of hours would be a reasonable number of hours to expend on that task." *Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir.1990).

[4] The court, in the instant case, may have been correct in its conclusions but regrettably did not explain how it reached them. The Supreme Court has instructed that it is important "for the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. We have held, in reviewing similar situations, that to resolve these issues "the district court must explain on the record the reasons for its decisions." *Rode*, 892 F.2d at 1187. Indeed, the lack of explanation makes it difficult for us to address with any competence the Ivys' remaining challenges to the district court's decision. We therefore are constrained to remand this case to the district court for an explanation of its reasons for the fee award. At the same time, we believe it is appropriate to provide the district court with some guidance bearing on the Ivys' other challenges.

A.

[5] First, the Court stated in *Commissioner, Immigration and Naturalization Service v. Jean* that "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." 496 U.S. at 163 n. 10, 110 S.Ct. 2316. In the instant case, the Ivys request fees for one unsuccessful claim-their motion and ensuing activity for the district court to reconsider its grant of a

certificate of reasonable cause to the Government. In essence, this motion litigated the issue of the Ivys' entitlement to costs for the underlying forfeiture claim. Nevertheless, there is no reason why the Court's admonition about unsuccessful "fees for fee litigation" does not apply equally to "fees for cost litigation." *See Hathaway v. United States*, 50 F.3d 14 (9th Cir. 1995); *Davis v. United States*, 887 F.Supp. 1387, 1389 (D.Colo.1995). Thus, the Ivys are not entitled to fees for litigating this motion.

B.

[6][7] Second, the Ivys note that in this circuit, a court may not reduce counsel fees *sua sponte* as "excessive, redundant, or otherwise unnecessary" in the absence of a sufficiently specific objection to the amount of fees requested. In statutory fee cases, it is well settled in this circuit that in calculating the "lodestar," or initial fee calculation requiring the court to multiply a reasonable hourly fee by the reasonable amount of hours worked, the district court may not award less in fees than requested unless the opposing party makes specific objections to the fee request.**212** As this court stated in *Cunningham v. City of McKeesport*,

when an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard uncontested affidavits filed by a fee applicant.

753 F.2d 262, 266 (3d Cir.1985), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986), *and reinstated*, 807 F.2d 49 (3d Cir.1986); *see also McDonald v. McCarthy*, 966 F.2d 112, 118 (3d Cir.1992); *Bell*, 884 F.2d at 719. A district court may not " 'decrease a fee award based on factors not raised at all by an adverse party.' " *Rode*, 892 F.2d at 1183 (quoting *Bell*, 884 F.2d at 720).[FN9] However, once the opposing party has made a sufficiently specific objection to the substance of a fee request, "the court has a great deal of discretion to adjust the fee award in light of these objections." *Bell*, 884 F.2d at 721. The rationale for this prohibition on *sua sponte* fee award reductions is twofold. First, *sua sponte* reduction deprives the applicant of the right "to offer evidence in support of the reasonableness of the request." *Bell*, 884 F.2d at 719. (internal quotation marks omitted). Second, "because statutory fee litigation is adversarial litigation, there is no need to allow the district court

200 F.3d 203                                                                                                    Page 9
200 F.3d 203, 45 Fed.R.Serv.3d 371
**(Cite as: 200 F.3d 203)**

to reduce a fee award on its own initiative." *Id.*

> FN9. One exception to this rule is that the district court may make *sua sponte* reductions where it has personal knowledge of the costs involved in certain aspects of the litigation, for example where the court presided over a hearing or conference and knows exactly how much time and effort that proceeding involved. *See Cunningham, 753 F.2d at 267.* For example, this exception would appear applicable in the present case to fees for the November 9, 1998 telephone conference over which the district court presided.

[8] Although cases establishing and applying this rule appear to do so in calculating the "lodestar," we believe that the rule's rationale applies with equal force to post-judgment supplemental applications for "fees for fee litigation" as it does in calculating fees due for litigating the merits of the underlying claim. Only with proper notice can the claimant know which request to defend as reasonable. Moreover, as evidenced by this case, post-judgment fee litigation remains adversarial. This circuit's precedent therefore binds the district court not to reduce the fee amount requested *sua sponte*, in the absence of a Government objection. Nevertheless, this prohibition on *sua sponte* reduction of fees applies only to challenges to the excessiveness of a fee request. Here, the Government's objections to the Ivys' supplemental fee request are more appropriately described as legal challenges to certain types of attorney work that are simply *never* compensable under the EAJA.[FN10] Thus, if the district court agrees that categories of work for which the Ivys request fees are not compensable under **\*213** the EAJA, it should prune the fees requested for this work from its fee award. Although the court could have taken this approach, it does not appear to have made any of the legal conclusions invited by the Government's challenges. On the contrary, it stated that the fees requested were "excessive, redundant and otherwise unnecessary." Therefore, on remand, the court must clarify its reasons for the supplemental reward it made in response to the fees requested by the Ivys.

> FN10. The Government's statement challenging categories of work for which the Ivys requested fees, found in its memorandum in opposition to the Ivys' supplemental request for attorney fees and

expenses, was as follows:

> The Ivys seek to be compensated for limited negotiations in which they rejected the Government's offer and then rejected the Government's offer to negotiate a settlement and for research and other post-judgment work. The Ivys even seek to be paid for giving the Government claimants' and counsel's social security numbers, required by the Treasury Department to write a check and even the time it took to answer Treasury Department's confirming phone call to counsel. (Exhibit 1, 7/22/97; 7/24/97, 7/30/97).
> Post judgment time spent bringing unsuccessful appeals is not compensable; it makes even less sense to award fees for the decision not to take such an appeal. [*Griffin v. Strong*, 827 F.Supp. 683, 687 (D.Utah 1993) ]. Further, time devoted to clerical activities and background research is normally included in overhead and not billable to clients. The Government should not be held to pay such expenses. *Id.*
> The Government placed the above-quoted passage under the heading: "No Award for Post-Judgment Work Absent Appeal."

C.

Third, the Ivys argue that the court erred in disallowing the hours worked and granting less than the requested fee without making the findings required by 28 U.S.C. § 2412(d)(1)(C), a provision of the EAJA. It provides:

The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.

28 U.S.C. § 2412(d)(1)(C). The Ivys claim that the rule required the court, in the exercise of its discretion, to make a finding of "dilatory conduct." Arguably, however, the court made just such a finding when it stated "the supplemental request involves work performed on motions for reconsideration of doubtful validity filed by both parties." *Eleven Vehicles V*, 36 F.Supp.2d at 239.

Nevertheless, it is not clear from the district court's opinion that it invoked its discretion under this provision. The opinion makes no reference to § 2412(d)(1)(C), and the court did not attempt any

200 F.3d 203
200 F.3d 203, 45 Fed.R.Serv.3d 371
**(Cite as: 200 F.3d 203)**

further explanation of its conclusion that the motions for reconsideration were "of doubtful validity." The district court, therefore, should provide on remand an adequate explanation.

### D.

Finally, the Ivys claim that the court erred in failing to look at the particulars of the supplemental request, in isolation from the prior fee award. The court noted that in analyzing the Ivys' supplemental fee request, "rather than inquiring into the particulars of the second itemized statement, as a separate and distinct event, unlinked to the factors that informed the Court's rulings in the first itemized statement, the Court will consider what overall award of fees and expenses for all work counsel has performed in this case, will yield a reasonable fee." _Eleven Vehicles V_, 36 F.Supp.2d at 239. The court considered this approach to be consistent with the Supreme Court's direction that the EAJA "favors treating the case as an inclusive whole rather than as atomized line-items." _Id_. (quoting _Jean_, 496 U.S. at 161-62, 110 S.Ct. 2316). The district court followed the Supreme Court's direction.

[9] What the district court appears to have had in mind was the need to impose some degree of proportionality between the fees for the underlying merits litigation and fees for fee litigation. At least one other court of appeals has found this to be an important consideration. _See Coulter v. Tennessee_, 805 F.2d 146, 151 (6th Cir.1986) (holding that district court did not err in limiting number of compensable attorney hours spent litigating fees to 3-5% of hours spent litigating merits), _cert. denied_, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987). At least one district court in this circuit concurs. _See Jackson v. Philadelphia Housing Auth._, 858 F.Supp. 464, 477 (E.D.Pa.1994). A trial court should be free to view a case in this pragmatic manner, subject to the guidelines we have articulated here. We see no error in the district court's global perspective of the Ivys' claims for attorney fees.

### IV.

The Ivys also assert that the court abused its discretion when it neglected to **\*214** consider their argument that the Government's memorandum in opposition to their supplemental request for fees and expenses was untimely and should not have received any consideration. The Ivys served their

supplemental request on the Government by sending it via overnight courier on Tuesday, August 26, 1997 for delivery on Wednesday, August 27, 1997. Local Rule 7.1 required that the Government's opposition to this motion be served on the Ivys within 14 days after service of the Ivys' supplemental request. E.D. Pa. R. 7.1(c). This local rule also provides that "[i]n the absence of a timely response, the motion _may_ be granted as uncontested...." _Id_. (emphasis added).

Under Rule 6(a) of the Federal Rules of Civil Procedure, the 14-day deadline for serving an opposition to the motion expired either on Wednesday, September 10, 1997, as the Ivys contend, or on Friday, September 12, 1997 if overnight courier delivery is considered service by mail under the Federal Rules, as the Government contends. As the Ivys observe, however, it does not matter which of these two dates was the true deadline. The memorandum in opposition was served on Monday, September 15, 1997, as the Government now concedes. Regardless of whether overnight courier service qualifies as service by mail, the Government's opposition was not timely.[FN11] Nevertheless, the district court appears to have considered the arguments made therein.

> FN11. We need not decide whether service by overnight courier satisfies the requirements for obtaining three additional "mail" days under Rule 6(e). _See Magnuson v. Video Yesteryear_, 85 F.3d 1424, 1430 (9th Cir.1996) (describing debate among federal courts and collecting cases).

Local court rules play a significant role in the district courts' efforts to manage themselves and their dockets. _Smith v. Oelenschlager_, 845 F.2d 1182, 1184 (3d Cir.1988). Accordingly, we have held that it is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local rule. _Id. at 1184-85._ However, this court has not written on a district court's discretion to depart from its own local rule, whether that rule is phrased in discretionary or mandatory terms.

[10] In _Smith v. Oelenschlager_, for example, the district court dismissed the plaintiff's motion for a new trial because the plaintiff failed to strictly comply with a local rule requiring him to order a trial transcript from the court reporter. _Id._ at 1182-83.

Instead, the plaintiff had sent a letter to the district judge and the magistrate to whom the case had been assigned requesting that one of them forward his request to the court reporter. *Id.* We affirmed the district court's dismissal of the motion, and found it unnecessary to reach the issue of whether a district court had discretion to entertain a new trial motion even though the plaintiff had failed to comply with the terms of the local rule. *See id.* at 1184. However, Judge Mansmann, in dissent, strenuously argued that district courts have inherent discretion to depart from their own local rules where justice so requires, and they have the responsibility to exercise that discretion. *See id.* at 1185-86 (Mansmann, J., dissenting).

Although the language of Local Rule 7.1(c) is phrased in mandatory terms requiring a party opposing a motion to file a response and opposing brief within fourteen days after service of the motion, the subsequent language of the rule does not mandate the grant of the motion in the absence of a timely motion and brief. The court, under the rule, "may," but is not mandated, to grant the motion as uncontested. Other courts of appeal that have addressed the authority of a district court to depart from its local rule have uniformly determined that district courts possess inherent discretion to depart. *See* **\*215**Somlyo v. J. Lu-Rob Enter., Inc., 932 F.2d 1043, 1048 (2d Cir.1991); United States v. Diaz-Villafane, 874 F.2d 43, 45-46 (1st Cir.) (noting and applying "widely-accepted idea that a district court should be accorded considerable latitude in applying local procedural rules of its own making, and in departing from them."), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); Braxton v. Bi-State Dev. Agency, 728 F.2d 1105, 1107 (8th Cir.1984) ("It is for the district court to determine what departures from its rules may be overlooked.").[FN12] Some of these courts have permitted district courts to depart from local rules even when the local rule is phrased in mandatory language. In *Somlyo,* Chief Judge Oakes of the Second Circuit, in the face of a mandatory local rule, held: "The district court's inherent discretion to depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule." 932 F.2d at 1048. *See also* Braxton, 728 F.2d at 1107.

---

FN12. Other cases supporting the power of a court to depart from its own rule are: *Allen v. United States Fidelity & Guar. Co.,* 342

F.2d 951, 954 (9th Cir.1965) ("It is for the court in which a case is pending to determine, except as it is bound by precedents set by higher authority in its own judicial hierarchy, what departures from statutory prescription or rules of court are so slight and unimportant that the sensible treatment is to overlook them."); Slanina v. William Penn Parking Corp., Inc., 106 F.R.D. 419, 422 (W.D.Pa.1984) ("noncompliance with the local rules may be excused by the court in its discretion").

Several of these courts have made clear, however, that this discretion is not unfettered. For example, the Second Circuit in *Somlyo* stated that the district court "should ask whether the application of the letter of Local Rules to a particular case would cause an unjust result." 932 F.2d at 1049. The First Circuit in *Diaz-Villafane* stated that to depart from its rules, a court "(1) must have a sound reason for doing so, and (2) must ensure that no party's substantial rights are unfairly jeopardized." 874 F.2d at 46.

We believe these courts are generally correct in their approach permitting a district court to waive a requirement of its local rules in appropriate circumstances. We therefore hold that a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment.

In the instant case, the court failed to address the Ivys' argument that the Government's response was untimely filed. Thus, we are unable to determine whether the court abused its discretion. Therefore, on remand the district court should explain its apparent decision to waive the 14-day service requirement of Local Rule 7.1(c).

V.

Accordingly, the order of the district court will be vacated, and the case remanded for findings and explanatory statements consistent with this opinion. Each side to bear its own costs on this appeal.

ALITO, Circuit Judge, concurring:

I concur in the Court's judgment, but I write separately to explain my understanding of certain threshold jurisdictional questions and of the District Court's task on remand.

I.

I cannot agree with the majority's implicit conclusion that the issue of whether a Rule 59(e) motion is timely filed must be noticed *sua sponte* by this Court. The District Court rejected the government's Rule 59 argument and the government did not appeal this issue. Therefore, unless the question of timely filing implicated the District Court's subject matter jurisdiction, it is not properly before this Court. I believe that Rule 59 is merely a procedural bar, akin to a statute of limitations, that **\*216** curtails a District Court's authority to permit an untimely motion to amend but does not deprive it of subject matter jurisdiction. Accordingly, I think that we need not reach the merits of this question.

Rule 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). Rule 6 further provides that a district court "may not extend the time for taking any action" under Rule 59(e). Fed.R.Civ.P. 6(d). In this sense, the time limit imposed by the rule is "mandatory and jurisdictional." *de la Fuente v. Central Elec. Coop., Inc.*, 703 F.2d 63, 64 n. 1 (3d Cir.1983) (quoting *White v. New Hampshire Dep't of Employment Sec.*, 629 F.2d 697, 699-700 (1st Cir.1980)).

Simply because the District Court has no power to extend the Rule 59 filing period, however, does not mean that the rule implicates *subject matter jurisdiction*.[FN1] By its terms, Rule 59 does not govern subject matter, but rather sets a mandatory *procedural* limitation on the District Court's discretion to entertain a motion to amend. *Cf. Curacao Drydock v. M/V Akritas*, 710 F.2d 204, 206 (5th Cir.1983) (construing Fed.R.Civ.P. 4(a), governing timely notice of appeals, as procedural but not implicating subject matter jurisdiction). Viewing Rule 59 as a merely procedural bar accords with Rule 82's mandate that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States District Courts." Fed.R.Civ.P. 82. *See also* 14 Moore's *Federal Practice* § 82.02 (1999) ("For the purpose of [Rule 82], *jurisdiction* means subject matter jurisdiction" (emphasis in original); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) ("It is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."). Judge Flaum, writing for six judges in an evenly-split Seventh Circuit decision, elucidated this point:

> FN1. Although this Court has occasionally referred to Rule 59 as "jurisdictional," none of these cases discussed whether the rule implicates subject matter jurisdiction. *See, e.g., Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Employees*, 960 F.2d 1187, 1192 (3d Cir.1992); *Kraus v. Consolidated Rail Corp.*, 899 F.2d 1360, 1362 (3d Cir.1990). I believe that these opinions used the language of "jurisdiction" only to emphasize the mandatory nature of the 10-day time limit, not to imply some connection with Article III subject matter jurisdiction.

> Subject matter jurisdiction is not ... necessarily the appropriate approach to the 10-day timeline of [Rule 59]. Subject matter jurisdiction is controlled by a statute explicitly labeled as such. Neither Rule 59 not Rule 6 are styled jurisdictional. Moreover, subject matter jurisdiction is informed by concerns for federalism. No such concern is present here.... Had Congress intended the 10-day time period to be interpreted like subject matter jurisdiction, it would have said so; yet it was silent.
> *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1569 (7th Cir.1990) (en banc) (Flaum, J., concurring).

Finally, I would note that both the Supreme Court and this Court have recognized an equitable exception to Rule 59. This "unique circumstances" exception, first announced in *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam), permits a litigant who relies on an extension improperly issued by the District Court to perfect his appellate rights by filing a Rule 59 motion within the period extended by the court's order. *See Kraus*, 899 F.2d at 1362. Although this narrow exception does not apply to the present case, the mere fact that there is an equitable exception shows that Rule 59's strictures do not implicate Article III subject matter jurisdiction: "[e]quitable tolling or estoppel simply is not available when there are jurisdictional limitations." *Shendock v. Director, Office of Workers' Compensation Programs*, 893 F.2d 1458, 1466 (3d Cir.1990) (en banc).

**\*217** If, as I conclude, Rule 59 does not implicate subject matter jurisdiction, then this Court is not required to notice the issue of untimely filing on its own initiative. While I have no substantive disagreement with the Court's conclusion that Rule 59(e) does not apply to supplemental fee requests, I

200 F.3d 203
200 F.3d 203, 45 Fed.R.Serv.3d 371
**(Cite as: 200 F.3d 203)**

Page 13

believe that we need not reach this issue because the government failed to preserve it for appeal.

### II.

I agree with the Court that the District Court had jurisdiction under the Equal Access to Justice Act (EAJA) to consider the Ivys' supplemental request for attorney fees and expenses. I would, however, employ a somewhat different analysis in reaching this conclusion.

The EAJA requires that a party seeking a fee award submit its application to the court "within thirty days of final judgment in the action." 28 U.S.C. S 2412(d)(1)(B). The majority holds that "the underlying 'action' here is the Government's forfeiture proceeding.... The 'final judgment' contemplated by the statute ... is the[March 26, 1996] judgment dismissing that forfeiture proceeding." Maj. Op. at 209. The majority then dismisses the District Court's August 30, 1996 ruling awarding, *inter alia*, a certificate of reasonable cause to the government as "ancillary" and "involv[ing] only post-judgment residual proceedings." Maj. Op. at 209.

I disagree. In my view, the order granting a certificate of reasonable cause was an " 'integral part' of the final judgment on the merits even though not entered concurrently with that judgment." *United States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1185 (9th Cir.1995) (per curiam). The Supreme Court has emphasized that the finality requirement should be given "a practical rather than a technical construction." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (citation omitted). Under this functional standard, "a 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). As the *Ford Pickup* court noted, the decision whether to grant a certificate of reasonable cause is functionally part of the merits judgment: a certificate may be granted only by the judge presiding over the forfeiture action; it is binding on the parties and bars any future action for damages; and it must be issued soon after the entry of judgment, before costs are taxed. *See* 56 F.3d at 1185. Most importantly, the decision of whether or not to grant the certificate involves questions of fact and law that are intimately tied to the merits of the underlying forfeiture action.[FN2] On this basis, I

believe that the relevant "judgment" in this case-the one "which end[ed] the litigation on the merits," *Catlin*, 324 U.S. at 233, 65 S.Ct. 631-was the August 30, 1996 order granting the certificate of reasonable cause.

> FN2. The litigation over the certificate of reasonable cause cannot be dismissed as mere "cost litigation." Although the grant of the certificate did preclude Ivy from recovering costs for the forfeiture claim, it also addressed substantive issues of liability that would be highly relevant if Ivy chose to file a § 1983 claim against the seizing officers or prosecutors in the case. *See* 28 U.S.C. § 2465 (if certificate is issued, neither the person who made the seizure nor the prosecutor shall "be liable to suit or judgment on account of such suit or prosecution").

Under the EAJA, a "final judgment" is "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). The 30-day period for filing an EAJA attorneys fee claim does not begin to run "until the time for filing a notice of appeal [has] expired." *Baker v. Sullivan*, 956 F.2d 234, 235 (11th Cir.1992) (per curiam). Because the parties filed Rule 59(e) motions for reconsideration of the District Court's August 30 judgment, the time for appeal did not begin to run until "the entry of the order disposing of the last such motion outstanding." Fed. R.App. P. 4(a)(4)(C).

**\*218** Thus, the appellate door in this case did not close until 60 days after the May 30, 1997, adverse ruling on the motions for reconsideration. *See* Fed. R.App. P. 4(a)(1) (setting 60-day limit for appeal in cases where United States is a party). The Ivys' motion for supplemental fees was filed within 30 days of the end of the appeals period, placing it well within the EAJA's statutory window of opportunity. Because I believe that the supplemental motion was filed within the statute's 30-day time limit, I see no need to consider whether the District Court could, in its discretion, entertain a later-filed supplemental fee request.

### III.

Finally, I am in general agreement with part III of the opinion of the Court.[FN3] I write separately, however, to express my view that the "proportionality review"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 203
200 F.3d 203, 45 Fed.R.Serv.3d 371
(Cite as: 200 F.3d 203)

Page 14

alluded to in part IIID is necessarily limited in scope. Once an adverse party has made a sufficiently specific challenge to a particular expense area, a District Court should certainly look back to previous awards in the same area in determining the reasonableness of the requested supplemental fee. In this sense, every supplemental fee request entails a "global" review of the entire fee award.

> FN3. For the reasons stated above, I do not agree with the majority's conclusion in part III(A) that the motion to reconsider the grant of a certificate of reasonable cause merely "litigated the issue of the Ivy's entitlement to costs for the underlying forfeiture claim." Maj. Op. at 211. I agree, however, with the majority's general point that the District Court may decline to award fees for unsuccessful litigation on particular issues, *see, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), especially when, as the District Court found here, the party was merely "rehashing" previous arguments "of doubtful validity." *United States v. Eleven Vehicles*, 36 F.Supp.2d 237, 239 (E.D.Pa.1999).

I do not, however, read the opinion of the Court to authorize a District Court to conduct a plenary review of an entire EAJA fee award for "proportionality" based on a general allegation of unreasonableness by the objecting party. Such a reading would vitiate the well-established principle that a District Court cannot *sua sponte* order a reduction of what it perceives to be an excessive fee. *See, e.g., McDonald v. McCarthy*, 966 F.2d 112, 118-19 (3d Cir.1992); *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir.1990); *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir.1989). Permitting such free-ranging discretion would unwisely abandon "the carefully crafted set of rules for the exercise of district court discretion in fee shifting cases" for "some standardless rule of district court gestalt." *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985).

On remand, the District Court should be free to consider (and explain in its opinion) whether properly-challenged fee categories were "excessive" in light of both the initial and the supplemental fee requests. However, the government's bare allegation "in general terms that the time spent was excessive" is not, in my view, enough to empower the District Court to conduct a generalized proportionality review

of the entire fee award. *See Bell*, 884 F.2d at 720.

C.A.3 (Pa.),2000.
U.S. v. Eleven Vehicles, Their Equipment and Accessories
200 F.3d 203, 45 Fed.R.Serv.3d 371

Briefs and Other Related Documents (Back to top)

• 1999 WL 33613627 (Appellate Brief) Appellants' Reply Brief (Jul. 16, 1999) Original Image of this Document (PDF)
• 1999 WL 33613626 (Appellate Brief) Brief for Appellee United States of America (Jun. 28, 1999) Original Image of this Document (PDF)
• 1999 WL 33615173 (Appellate Brief) Appellants' Principal Brief (May. 24, 1999) Original Image of this Document with Appendix (PDF)
• 99-1241 (Docket) (Mar. 26, 1999)

END OF DOCUMENT

Westlaw.

Slip Copy                                                                                            Page 1
Slip Copy, 2006 WL 2331108 (D.N.J.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Tellewoyan    v.    Wells    Fargo    Home
Mortg.D.N.J.,2006.Only the Westlaw citation is
currently available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
Joseph TELLEWOYAN, Appellant-Debtor, Pro Se,
v.
WELLS FARGO HOME MORTGAGE, Appellee.
**Civil Action No. 05-4653 (FLW).**
**Bankruptcy Case No. 05-27045.**

Aug. 10, 2006.

Joseph Tellewoyan, Pro Se, Roebling, NJ, for
Appellant-Debtor.
Michael S. Ackerman, Zucker, Goldberg &
Ackerman, Mountainside, NJ, for Appellee.

**OPINION**
WOLFSON, District Judge.
*1 Appellant-Debtor pro se Joseph Tellewoyan
("Appellant", "Debtor" or "Tellewoyan") has
appealed orders entered by the Honorable Raymond
T. Lyons, U.S.B.J., on July 20, 2005 and August 17,
2005 in Bankruptcy Case No. 05-27045. This Court
has jurisdiction pursuant to 28 U.S.C. § 158(a).
Since the filing of his appeal, Tellewoyan has failed
to file a brief in this matter and did not notify the
Court that he had changed his address. For the
reasons set forth below, Tellewoyan's appeal is
dismissed.

**I. BACKGROUND**

On July 20 2005, Judge Lyons filed an Order
vacating the automatic stay to permit Appellee Wells
Fargo Home Mortgage ("Appellee" or "Wells
Fargo") "to institute or resume prosecute to
conclusion one or more actions in the court(s) of
appropriate jurisdiction to pursue movant's rights in
... Real property more fully described as 8 River
Bank Drive, Roebling, NJ 08554." In Re Tellewoyan,
05-27045(RTL), Order (July 20, 2005). On August 1,
2005, Tellewoyan filed a motion to reinstate the
automatic stay. On August 17, 2005, Judge Lyons
filed an Order denying Tellewoyan's motion. In Re
Tellewoyan, 05-27045(RTL), Order (Aug. 17, 2005).
On September 25, 2005, Tellewoyan appealed Judge

Lyons's Orders of July 20, 2005 and August 17,
2005. According to Federal Rule of Bankruptcy
Procedure 8009(a)(1), Tellewoyan was to file his
brief within fifteen days of the entry of the appeal on
the docket. Plaintiff, however, sought an extension,
which was ultimately granted by the Honorable
Stanley R. Chesler, U.S.D.J. According to Judge
Chesler's Order dated March 3 2006, Tellewoyan was
to file his brief by March 27, 2006. The docket also
reflects that on October 20, 2005, Judge Lyons
dismissed Tellewoyan's bankruptcy case, 05-
27045(RTL). On July 10, 2006, this case was
reassigned from Judge Chesler to this Court. On July
13, 2006, I ordered Tellewoyan to show cause why
his case should not be dismissed as a result of his
failure to file briefing in this matter and as a result of
the dismissal of the underlying bankruptcy case. Both
the Reassignment Order and the Order to Show
Cause were mailed to Tellewoyan, but were
ultimately returned to the Clerk by the Postal Service
as "undeliverable."

**II. DISCUSSION**

Under Article III, § 2, of the United States
Constitution, federal courts have the ability to
entertain only cases and controversies. Article III
requires that an actual controversy exist through all
stages of litigation, including appellate review.
United States v. Kissinger, 309 F.3d 179, 180 (3d
Cir.2002). As a result, a case should be dismissed as
moot where "developments occur during the course
of adjudication that eliminate a plaintiff's personal
stake in the outcome of a suit or prevent a court from
being able to grant the requested relief." Morris v.
Nationalist Movement, 273 F.3d 527, 533 (3d
Cir.2001).

"In the bankruptcy context the determination of
whether a case becomes moot on the dismissal of the
bankruptcy hinges on the question of how closely the
issue in the case is connected to the underlying
bankruptcy." In re Pattullo, 271 F.3d 898, 901 (9th
Cir.2001)(citing In re Universal Farming Industries,
873 F.2d 1334, 1335 (9th Cir.1989)). "When the
issue being litigated directly involves the debtor's
reorganization, the case is mooted by the dismissal of
the bankruptcy." Id. (citing In re Universal Farming
Industries, 873 F.2d at 1335). "[I]f the issue is
ancillary to the bankruptcy, the dismissal of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2
Slip Copy, 2006 WL 2331108 (D.N.J.)
**(Cite as: Slip Copy)**

petition does not necessarily cause the case to become moot." *Id.* (citing *In re Universal Farming Industries,* 873 F.2d at 1335 and citing *Dahlquist v. First Nat'l Bank (In re Dahlquist),* 751 F.2d 295, 298 (8th Cir.1985).

**\*2** Here, the automatic stay is intimately connected to the bankruptcy case that was dismissed and is entirely dependant on the existence of a bankruptcy proceeding. Therefore, the Court finds that the dismissal of the underlying bankruptcy case has rendered Tellewoyan's appeal moot.

Furthermore, it is within the Court's discretion to dismiss an appeal from an order of the Bankruptcy Court for an appellant's failure to file a brief in a timely fashion. *See In re Jewelcor Inc.,* 11 F.3d 394, 397 (3d Cir.1993). The Court may also dismiss an appeal for an appellant's failure to prosecute his case. *See Fed.R.Civ.P.* 41(b). Here, by virtue of his failure to file a brief, Tellewoyan has violated both *Fed. R. Bankr.P.* 8009(a)(1), which requires appellant to file a brief within fifteen days after the appeal is entered on the docket, and Judge Chesler's Order that he was to file his brief by March 27, 2006. Moreover, he failed to notify the Court of his address change, as required by *Local Civ. R.* 10.1(a). Finally, on August 10, 2006, Tellewoyan failed to appear and show cause as to why his case should not be dismissed, as I had ordered him to do by way of an Order dated July 13, 2006. Therefore, in light of Tellewoyan's neglect of his own appeal and the dismissal of the underlying bankruptcy matter, his appeal is dismissed.

### III. CONCLUSION

For the reasons stated above, Appellant's appeal is dismissed. The case is now closed.

D.N.J.,2006.
Tellewoyan v. Wells Fargo Home Mortg.
Slip Copy, 2006 WL 2331108 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 3:05cv04653 (Docket) (Sep. 27, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.