Westlaw.

Slip Copy                                                                          Page 1
Slip Copy, 2006 WL 2403442 (D.N.J.)
**(Cite as: Slip Copy)**


Briefs and Other Related Documents
Ocwen    Federal    Sav.    Bank    v.
JenningsD.N.J.,2006.Only the Westlaw citation is
currently available.
   United States District Court,D. New Jersey.
   OCWEN FEDERAL SAVINGS BANK, FSB,
                 Appellant,
                    v.
        Eddy JENNINGS, Appellee.
      **Civil Action No. 05-5106 (FLW).**
        **Bankruptcy Case No. 02-53639.**

               Aug. 17, 2006.


Joel Ackerman, Zucker, Goldberg, & Ackerman,
Esqs., Mountainside, NJ, for appellant.
Justin M. Gillman, Gillman & Gillman, Esqs.,
Edison, NJ, for appellee.

               **OPINION**
WOLFSON, District Judge.
*1 Presently before the Court is an appeal by Ocwen
Federal Savings Bank, FSB ("Appellant" or
"Ocwen") pertaining to a September 7, 2005 Order
by the Honorable Judge Raymond T. Lyons,
U.S.B.J., in Bankruptcy Case No. 02-53639 denying
Ocwen's Motion for Reconsideration or in the
Alternative to Set a Final Accounting. This Court has
jurisdiction pursuant to 28 U.S.C. § 158(a). Since the
filing of the appeal, Ocwen has failed to file a brief in
this matter. For the reasons set forth below, Ocwen's
appeal is dismissed.


            **I. BACKGROUND**

On August 4, 2005, Appellant filed a Motion for
Reconsideration of an Order Approving Refinancing
pursuant to 11 U.S.C. § 364. On September 7, 2005,
Judge Lyons filed an Order denying Ocwen's Motion
for Reconsideration or in the alternative to Set a Final
Accounting. On October 25, 2005, Ocwen appealed
Judge Lyon's September 7 Order. According to
Federal Rule of Bankruptcy Procedure 8009(a)(1),
Ocwen was required to file his brief within fifteen
days of the entry of the appeal on the docket. Plaintiff
did not timely file and did not seek an extension from
the Court. Indeed, as of August 16, 2006, Plaintiff
has not filed anything with this Court relating to his

bankruptcy appeal. On July 10, 2006, this case was
reassigned from Judge Chesler to this Court. On July
13, 2006, I ordered Appellant to show cause on
August 10, 2006 why this case should not be
dismissed as a result of his failure to file briefing in
this matter. Appellant did not file any papers with the
Court nor did Appellant appear on the designated
date.


             **II. DISCUSSION**

A district court has discretion to dismiss an appeal
from an order of the Bankruptcy Court for an
appellant's failure to file a brief in a timely fashion.
See Wallace v. Graphic Management Associates,
2006 WL 2038746 (3d Cir. July 21, 2006); In re
Jewelcor Inc., 11 F.3d 394, 397 (3d Cir.1993). The
Court may also dismiss an appeal for an appellant's
failure to prosecute his case. See Fed.R.Civ.P. 41(b).
Here, by virtue of its failure to file a brief, Ocwen has
violated Fed. R. Bankr.P. 8009(a)(1), which requires
appellant to file a brief within fifteen days after the
appeal. Moreover, on August 10, 2006, Appellant
failed to appear and show cause as to why his case
should not be dismissed, as I had ordered him to do
by way of an Order dated July 13, 2006. Therefore, in
light of Ocwen's neglect of and failure to prosecute
its appeal, his appeal is dismissed.


             **III. CONCLUSION**

For the reasons stated above, Appellant's appeal is
dismissed. The case is now closed.

D.N.J.,2006.
Ocwen Federal Sav. Bank v. Jennings
Slip Copy, 2006 WL 2403442 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 3:05cv05106 (Docket) (Oct. 25, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Hammer v. Cardio Medical Products, Inc.W.D.Pa.,2006.Only the Westlaw citation is currently available.
United States District Court,W.D. Pennsylvania.
Nancy HAMMER, Plaintiff,
v.
CARDIO MEDICAL PRODUCTS, INC., Defendant.
**No. Civ.A. 01-564.**

Jan. 11, 2006.

Nancy Hammer, pro se.

*MEMORANDUM*
STANDISH, J.

I

**\*1** In this civil action, plaintiff, Nancy Hammer, seeks damages from defendant, Cardio Medical Products, Inc., for alleged sex and age discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* respectively, arising out of the termination of her employment with defendant on March 22, 1999. Plaintiff has filed a motion for recusal of this member of the Court, alleging personal bias against her. For the reasons set forth below, the motion will be denied.

II

The protracted history of this case may be summarized as follows:

On October 24, 2000, plaintiff filed a charge of sex and age discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed plaintiff's discrimination charge on December 19, 2000, issuing a Dismissal and Notice of Rights to plaintiff which stated in relevant part: "Your charge was not timely filed with the Commission, *i.e.,* you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot

investigate your allegation ." (Docket No. 49, Exh. B).

On March 26, 2001, plaintiff, acting *pro se,* filed this civil action against defendant, and the case was assigned to former Magistrate Judge Kenneth J. Benson ("MJ Benson") for pretrial proceedings. (Docket Nos. 1 and 2). Defendant moved to dismiss plaintiff's complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, asserting that (a) plaintiff had failed to exhaust her administrative remedies and (b) plaintiff was not entitled to equitable tolling of the applicable 300-day limitations period. (Docket No. 11).

On April 12, 2002, MJ Benson issued a Report and Recommendation in which he recommended that defendant's Rule 12(b)(6) motion be granted. (Docket No. 33). Plaintiff filed objections to the Report and Recommendation on May 14, 2002 (Docket No. 38), and, on May 17, 2002, defendant filed a motion to strike plaintiff's objections as untimely. (Docket No. 39).

On May 21, 2002, MJ Benson issued the following Memorandum and Order, granting defendant's motion to strike plaintiff's objections:

*MEMORANDUM AND ORDER*

The plaintiff in this case, who is representing herself, is entitled by virtue of her *pro se* status, to a certain latitude in the court's construction of her filings. Nevertheless, even self-represented parties are required to comply with procedural rules and filing deadlines; this may be particularly true where the *pro se* litigant is not a prisoner, and faces fewer status-created impediments to timely filing. Plaintiff Hammer has been quick to invoke the Rules when it appeared to be advantageous to her to do so, as when she baselessly moved for the entry of default. But has been otherwise loath to comply with the Rules herself: she has twice been chastised about her failure to serve the defendant with copies of her filings and has twice had her filings stricken for her continued failure to serve them on the defendant.
**\*2** Here again, plaintiff has filed objections (Docket # 38) to the Report and Recommendation in violation of the Rules. The Report (Docket # 33) was filed on April 12, 2002. Objections were therefore due on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 2
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

April 26, 2002. On April 23 plaintiff filed a Request for Extension of Time to file objections (Docket # 34) which was stricken on April 25, 2002, and returned to her (Docket # 35) for her failure to serve it on the defendant. Thus, as of April 25, 2002, there was no motion for more time to object pending in the court and objections were still due on April 26, 2002. No appeal of the order striking plaintiff's request was taken.

On May 15, 2002, plaintiff filed objections (Docket # 38); as can be seen from the above, these are eighteen days late. The defendant has moved that they be stricken as untimely (Docket # 39). The defendant, of course, is correct: the objections are untimely and that they are untimely is attributable to no one but plaintiff and is consistent with her past practice in this litigation.

AND NOW, this 21st day of May, 2002,

IT IS ORDERED that the defendant's Motion to Strike Objection (Docket # 39) ought to be and hereby is, GRANTED.

IT IS FURTHER ORDERED that the parties are allowed ten (10) days from this date to appeal this order to a district judge pursuant to Local Rule 72.1.3 B. Failure to appeal within ten (10) days may constitute waiver of the right to appeal.

s/Kenneth J. Benson

KENNETH J. BENSON

UNITED STATES MAGISTRATE JUDGE

(Docket No. 40).

No appeal from MJ Benson's May 21st order was filed within 10 days, and, by order dated May 31, 2002, the Court adopted the Report and Recommendation of MJ Benson and dismissed plaintiff's complaint and the case was closed. (Docket No. 42). On June 3, 2002, an appeal to this member of the Court was filed by plaintiff. In the appeal, plaintiff challenged MJ Benson's May 21, 2002 order granting defendant's motion to strike her objections to the Report and Recommendation as untimely, as well as MJ Benson's recommendation that defendant's motion to dismiss her complaint be granted.[FN1] (Docket No. 43).

> FN1. In the appeal, plaintiff also requested the assignment of her case to another magistrate judge for pretrial proceedings, alleging that MJ Benson "exhibited extreme bias towards the plaintiff, instead of acknowledging the real facts of the plaintiff's complaint ." (Docket No. 43, p. 10).

Based on the arguments in opposition to MJ Benson's Report and Recommendation which were set forth in plaintiff's appeal, as well as plaintiff's failure to file a timely appeal from MJ Benson's May 21, 2002 order,[FN2] the Court construed plaintiff's appeal as an appeal from the Court's May 31, 2002 order adopting MJ Benson's Report and Recommendation and dismissing plaintiff's complaint, and the Court denied the appeal on June 6, 2002.[FN3] (Docket No. 44). Plaintiff filed a timely appeal from the Court's May 31st and June 6th orders with the United States Court of Appeals for the Third Circuit on June 20, 2002. (Docket No. 45).

> FN2. As noted previously, MJ Benson's May 21, 2002 order provided that any appeal from the order should be filed within 10 days from the date of the order (Docket No. 40), which would have been May 31, 2002. Plaintiff's appeal from the May 21st order was not filed with the Clerk until June 3, 2002. (Docket No. 43).

> FN3. After reviewing its June 6, 2002 order, the Court concedes that the order is confusing and appears to misconstrue the nature of plaintiff's appeal.

On May 18, 2005, the Third Circuit filed an opinion which (a) vacated the Court's May 31, 2002 order adopting the Report of Recommendation of MJ Benson and dismissing plaintiff's complaint, and (b) remanded the case for further proceedings.[FN4] Specifically, the Third Circuit held that plaintiff should be given the opportunity to demonstrate the existence of facts supporting her claim that the 300-day limitations period for filing a discrimination charge against defendant with the EEOC should be equitably tolled.[FN5] (Docket No. 46).

> FN4. In light of the necessity to remand the case for further proceedings, the Third Circuit declined to address the issue of whether the Court abused its discretion in denying plaintiff's June 3, 2002 appeal from MJ Benson's May 21, 2002 order.

> FN5. Plaintiff asserted two grounds for equitable tolling in her complaint. First, plaintiff asserted that she was entitled to equitable tolling because, after the termination of her employment by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

defendant, four of her loved ones passed away unexpectedly. Second, plaintiff asserted that she was entitled to equitable tolling because defendant "failed to post notices in its offices concerning employees' rights under Title VII and the ADEA." With respect to the first ground asserted for equitable tolling, the Third Circuit agreed with the Court that, while tragic, the events alleged by plaintiff did not justify tolling the 300-day limitations period, particularly where plaintiff did not file her discrimination charge with the EEOC until 281 days after the limitations period had expired. As to the second ground asserted for equitable tolling, the Third Circuit noted that "... equitable tolling may apply if the plaintiff can demonstrate 'excusable ignorance' of her statutory rights, where, for instance, her employer has failed to post the required notices." (Docket No. 46, p. 5). Thus, the case was remanded by the Third Circuit for further proceedings.

*3 On June 16, 2005, the case was reopened and referred to Magistrate Judge Robert C. Mitchell ("MJ Mitchell") for pretrial proceedings.[FN6] (Docket No. 47). On September 12, 2005, defendant filed a motion to compel plaintiff's deposition, which had been noticed for September 14, 2005 at 1:30 p.m. at the law offices of defense counsel. The motion indicated that on September 12th, plaintiff informed defense counsel that she would not be appearing for deposition on September 14th because she did not believe that she was required to appear for a deposition, and that, even if she was required to appear for a deposition, she was unavailable during the month of September due to her "heavy work schedule." (Docket No. 53). By order dated September 20, 2005, MJ Mitchell granted defendant's motion to compel and directed plaintiff to appear for deposition on September 22, 2005 at 10:00 a.m. at the law offices of defense counsel.[FN7] (Docket No. 54).

FN6. On July 28, 2005, MJ Mitchell held a status conference during which he directed that (a) discovery limited to the issue of equitable tolling be completed by September 30, 2005; (b) defendant's motion for summary judgment and supporting brief be filed by November 10, 2005; and (c) plaintiff's response to defendant's motion for summary judgment be filed by December

10, 2005. (Docket No. 50). On August 1, 2005, MJ Mitchell denied plaintiff's motion to strike defendant's answer to her complaint (which had been filed on July 12, 2005) as untimely. (Docket Nos. 49, 51 and 52).

FN7. In his September 20th order, MJ Mitchell indicated that plaintiff had failed to oppose defendant's motion to compel. According to plaintiff, she had, in fact, attempted to file electronically with the Court a reply in opposition to defendant's motion to compel on September 12th and 13th, but was unable to do so due to technical difficulties. On September 22, 2005, plaintiff filed a motion for leave to file, *inter alia,* a reply to the motion to compel out of time. In the motion, plaintiff represents that, when she encountered technical difficulties while attempting to file her reply to defendant's motion to compel electronically on September 12th and 13th, Court personnel suggested mailing the reply to the Court, which she did, and that she was not aware the Court had not received her reply until she received electronic notification of MJ Mitchell's order granting the motion to compel on September 20th. (Docket No. 55, pp. 1-3). In her reply, plaintiff denies the representations of defense counsel in the motion to compel and requests the Court to permit her deposition to be taken by telephone at a date and time convenient for both parties. (Docket No. 55, pp. 8-9).

On September 22, 2005, defendant filed a motion to compel and for sanctions. The motion indicated that plaintiff left a voice-mail message for defense counsel on September 21, 2005, stating that she would not comply with MJ Mitchell's September 20, 2005 order, and, further, that plaintiff did not appear for deposition at the law offices of defense counsel at 10:00 a.m. on September 22, 2005 as ordered. Defense counsel requested an order directing plaintiff to appear for deposition on September 28, 2005 at 10:00 a.m. in Room 301 of the United States Courthouse. He also requested sanctions in the form of attorneys' fees and costs associated with preparation of the initial motion to compel, appearance at the scheduled deposition on September 22, 2005,[FN8] and preparation of the motion to compel and for sanctions. (Docket No. 56).

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

FN8. Despite being informed by plaintiff that she would not appear for deposition on September 22, 2005 at 10:00 a.m. as ordered, defense counsel did not cancel the deposition. Rather, he asked the court reporter to take a statement regarding plaintiff's failure to appear and indicated that he would be filing a further motion to compel and for sanctions. (Docket No. 56-3).

On September 22, 2005, the day she failed to appear for deposition as directed by MJ Mitchell's September 20, 2005 and after defense counsel filed the motion to compel and for sanctions, plaintiff filed electronically a motion for an order permitting her deposition to be taken by telephone which is dated September 12, 2005,[FN9] as well as her reply in opposition to defendant's initial motion to compel her deposition and a reply in opposition to the discovery dispute certificate attached to the initial motion to compel. (Docket Nos. 57, 58, 59 and 60). On September 26, 2005, MJ Mitchell filed an order granting defendant's motion to compel and for sanctions. Plaintiff was directed to appear for deposition at 10:00 a.m. on September 28, 2005 in Room 301 of the United States Courthouse, and defendant was directed to submit a bill of fees and costs within 10 days.[FN10] (Docket No. 61). On September 26, 2005, MJ Mitchell also denied plaintiff's motion for an order permitting her deposition to be taken by telephone. (Docket No. 62).

FN9. In this motion, plaintiff asserts that her job requires her to travel to two States; that she generally departs on Sunday and does not return until Friday evening; and that, as a result, it would be an extreme hardship for her to return to Pittsburgh during the regular workweek for a deposition. (Docket No. 58).

FN10. On September 29, 2005, defendant submitted a bill of fees and costs seeking reimbursement in the total amount of $887.00, and, on October 4, 2005, defendant filed a motion to fix the amount of the award of attorneys' fees and costs. (Docket Nos. 66 and 68). On October 11, 2005, plaintiff filed a reply in opposition to the bill of fees and costs and motion to fix the amount of the award of attorneys' fees and costs. (Docket No. 83).

On September 26, 2005, after MJ Mitchell granted

defendant's motion to compel and for sanctions and denied plaintiff's motion for an order permitting her deposition to be taken by telephone, plaintiff filed a reply in opposition to defendant's motion to compel and for sanctions, a reply in opposition to the discovery dispute certificate attached to that motion and a second motion for an order permitting her deposition to be taken by telephone which is dated September 24, 2005. (Docket Nos. 63, 64 and 65).

*4 On October 3, 2005, defendant filed a second motion to compel and for sanctions asserting, in summary, that by means of an ex parte communication on September 27, 2005, plaintiff informed MJ Mitchell that she would not appear for deposition on September 28, 2005 as ordered; that at the request of MJ Mitchell, defense counsel left a message at a telephone number provided by plaintiff indicating that defendant was attempting to reschedule her deposition; that, when he received no response to the telephone message, defense counsel sent an email to plaintiff requesting cooperation in rescheduling her deposition; that plaintiff failed to respond to either the telephone message or the email; and that plaintiff's deposition was essential to the defense of this action. (Docket No. 67).

On October 5, 2005, plaintiff filed a reply in opposition to defendant's second motion to compel and for sanctions and a reply in opposition to the discovery dispute certificate attached to that motion (Docket Nos. 69 and 70), and defendant filed a response to plaintiff's replies.[FN11] (Docket No. 71). On the same day, MJ Mitchell denied plaintiff's second motion for an order permitting her deposition to be taken by telephone and granted defendant's second motion to compel and for sanctions. In the order granting defendant's second motion to compel and for sanctions, MJ Mitchell directed plaintiff to appear for deposition at 10:00 a.m. on October 18, 2005 in Room 301 of the United States Courthouse. The order also provided: "Failure to appear will result in sanctions, including possible dismissal being imposed." [FN12] (Docket Nos. 78 and 79).

FN11. In its response, defendant states:
4. By email sent to [plaintiff] on September 27, 2005, counsel for Cardio-Medical suggested four possibilities for [plaintiff's] deposition and advised:
If none of the 4 are possible, please leave me a message or send me an email indicating the first 4 dates and times on which you can appear at 10:00 a.m. and/or 1:00 p.m. to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

commence your deposition.

6. At approximately 4:20 p.m. on October 4, 2005, [plaintiff] called counsel for [defendant]. At no time during that call did [plaintiff] propose any date or start time for her deposition. When [plaintiff] indicated that she would not appear for deposition other than on an evening of her choosing, counsel for [defendant] advised that there appeared to be nothing to discuss and terminated the call.

(Docket No. 71-1, p. 2).

FN12. On October 13, 2005, more than a week after MJ Mitchell granted defendant's second motion to compel and for sanctions, plaintiff filed a reply to defendant's response to her original replies to the motion. (Docket No. 85). Apparently, due to technical difficulties, the exhibits to plaintiff's reply were not filed on October 13, 2005. However, the exhibits were filed on November 3, 2005. (Docket No. 95).

By order dated October 11, 2005, MJ Mitchell scheduled a telephone status conference for October 17, 2005 based on the multiple motions filed by defendant to compel plaintiff's deposition. The order indicated that failure to participate in the conference may result in the imposition of sanctions. (Docket No. 84). Both parties participated in the status conference and the memo prepared by MJ Mitchell following the status conference states:

1. Motions to recuse are denied.

2. Depositions of the plaintiff and defendant's representative are to be scheduled for October 27, 2005 at 10:00 a.m. in the U.S. Courthouse. (The plaintiff says she will not appear on that date, so she is directed to select an alternate date during the next three weeks for the depositions to be taken at 10:00 a.m. in the U.S. Courthouse. Until an alternate date is selected, the current date of October 27, 2005 for the depositions will stand.).

(Docket No. 86).

Plaintiff failed to select an alternate date for her deposition and failed to appear for deposition on October 27, 2005. As a result, MJ Mitchell entered the following order on October 27, 2005:

*ORDER*

AND NOW, this 27th day of October, 2005, after the plaintiff again failed to appear for her scheduled deposition,

IT IS ORDERED that on or before October 28, 2005, the defendant is to file a Motion to Dismiss for failure to prosecute supported by affidavit(s) outlining the chronology of events leading to the filing of that motion;

*5 AND IT IS FURTHER ORDERED that on or before November 10, 2005, the plaintiff is to file an appropriate response to that motion.

S/ROBERT C. MITCHELL

United States Magistrate Judge

(Docket No. 90).

In accordance with the above-quoted order, defendant filed a motion for the dismissal of this action based on failure to prosecute, together with an affidavit in support, on October 28, 2005. (Docket No. 92).

On October 27, 2005, after the entry of MJ Mitchell's order directing defendant to file a motion to dismiss, plaintiff filed a motion for his recusal under 28 U.S.C. § 144, together with a purported affidavit in support, alleging that MJ Mitchell "is biased and prejudiced against her personally." FN13 On November 9, 2005, MJ Mitchell denied the motion for recusal. (Docket No. 97).

FN13. On October 30, 2005, plaintiff filed an addendum to her purported affidavit in support of the motion for recusal of MJ Mitchell. (Docket No. 93-1).

On October 31, 2005, prior to the denial of plaintiff's motion for recusal of MJ Mitchell, plaintiff filed a motion for recusal of this member of the Court, together with a purported affidavit in support. (Docket No. 94). Defendant has filed a response to the motion for recusal (Docket No. 99), and plaintiff has filed a reply to defendant's response. (Docket No. 102).

On November 14, 2005, MJ Mitchell filed a Report and Recommendation recommending that defendant's motion to dismiss plaintiff's complaint for failure to prosecute be granted. (Docket No. 98). Plaintiff filed a reply in opposition to the Report and Recommendation on November 29, 2005 (Docket No. 101), and defendant filed a response to the reply on December 8, 2005. (Docket No. 103). Thereafter, on December 9, 2005, plaintiff filed a motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

strike defendant's response to her reply (Docket No. 104), and, on December 12, 2005, defendant filed a response to the motion to strike. (Docket No. 105). On December 12, 2005, MJ Mitchell denied plaintiff's motion to strike defendant's response to her reply in opposition to the Report and Recommendation. (Docket No. 107).

On December 15, 2005, plaintiff a motion to strike MJ Mitchell's December 12, 2005 order and demanded his immediate disqualification.[FN14] (Docket No. 108). On December 16, 2005, MJ Mitchell denied plaintiff's motion to strike order and demand for immediate disqualification.[FN15] (Docket No. 109).

> FN14. On December 15, 2005, when plaintiff filed the motion to strike order and demand for immediate disqualification of MJ Mitchell, she sent an email to this member of the Court requesting that MJ Mitchell "not even be given the opportunity to [rule on] the newly filed motion." In the event the Court did not disqualify MJ Mitchell immediately, plaintiff indicated in the email that she would seek relief from the Third Circuit.

> FN15. Based on the Court's failure to disqualify MJ Mitchell immediately and prevent him from ruling on the motion to strike and demand for immediate disqualification, plaintiff sent another email to the Court on December 20, 2005, indicating that she intended to seek relief from the Third Circuit.

### III

Plaintiff seeks recusal of this member of the Court under 28 U.S.C. § 144 based on the adverse rulings issued by the Court on May 31, 2002 (adopting MJ Benson's Report and Recommendation and dismissing her complaint) and June 6, 2002 (denying plaintiff's notice of appeal).[FN16] Plaintiff contends that she "is entitled to have her case assigned to a district judge that has not previously rendered a decision in the matter at hand." (Docket No. 94-2, p. 2).

> FN16. Plaintiff's motion also seeks recusal of this member of the Court under 28 U.S.C. § 47, which provides:
> § 47. Disqualification of trial judge to hear

appeal
No judge shall hear or determine an appeal from the decision of a case or issue tried by him.
Clearly, this statute does not apply to the present situation. *See, e.g., United States v. Garramone,* 374 F.Supp. 256, 258 (E.D.Pa.1974)("The 'case or issue' language of the statute refers to a final Order of the lower court which may be appealed to a higher court."). Thus, the Court's discussion in this memorandum will be limited to 28 U.S.C. § 144.

Section 144 of Title 28 of the United States Code provides:
§ 144. Bias or prejudice of judge
Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
*6 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

With respect to the standard to be applied in considering motions for recusal under Section 144, in *United States v. Dansker,* 537 F.2d 40 (3d Cir.1976), the Third Circuit stated:

The basic rules of law governing the recusal of a trial judge for personal bias are well-settled. The mere filing of an affidavit of bias pursuant to 28 U.S.C. § 144 does not require a trial judge to disqualify himself from a particular case. *Behr v. Mine Safety Appliances Co.,* 233 F.2d 371 (3d Cir.1956). Indeed, if the affidavit submitted is legally insufficient to compel his disqualification, the judge has a duty to preside. *See Simmons v. United States,* 302 F.2d 71 (3d Cir.1962). Rather, a trial judge need only recuse himself if he determines that the facts alleged in the affidavit, taken as true, are such that they would convince a reasonable man that he harbored a personal, as opposed to a judicial, bias against the movant. *United States v. Thompson,* 483 F.2d 527

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                   Page 7
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

(3d Cir.1973).

537 F.2d at 53.

*See also* Johnson v. Trueblood, 629 F.2d 287 (3d Cir.1980)(Under Section 144, only extrajudicial bias requires disqualification of district judge, and "extrajudicial" refers to bias that is not derived from evidence or conduct of parties that judge observes in course of proceeding.); *United States v. Nehas,* 368 F.Supp. 435 (W.D.Pa.1973)("Personal" bias involves antagonism or animosity toward the affiant or favoritism towards the adverse party. Personal bias is to be distinguished from "judicial" bias, and does not include views based upon matter arising during the course of the litigation or upon general attitudes common to the public generally.).

After consideration, the Court concludes that plaintiff's motion for recusal will be denied. First, as noted by defendant (Docket No. 99, p. 2), plaintiff's motion for recusal is not supported by a proper affidavit. Specifically, the affidavit is not made under oath or subject to the penalties of perjury.[FN17] Instead, plaintiff merely indicates that the affidavit is "Respectfully submitted." (Docket No. 94-2). Second, plaintiff's motion for recusal is not timely. Plaintiff concedes that following the disposition of her appeal from the Court's May 31, 2002 and June 6, 2002 orders, she became aware that this member of the Court would continue to preside over her case on July 28, 2005. (Docket No. 102, p. 5). Nevertheless, plaintiff waited until October 31, 2005, over three months, to seek recusal. Finally, and most importantly, the factual allegations in plaintiff's purported affidavit are insufficient to establish personal or "extrajudicial" bias against plaintiff on the part of this member of the Court. Plaintiff's allegations of bias clearly relate to adverse rulings made by the Court, and, therefore, they are insufficient to require recusal.[FN18] *See, e.g., Cooney v. Booth,* 262 F.Supp.2d 494 (E.D.Pa.2003)(District judge's alleged incorrect judicial rulings did not warrant recusal on basis of bias or prejudice, absent showing that judge made any inappropriate comments from bench, engaged in rude conduct, or displayed deep-seated favoritism or antagonism that would have made fair judgment impossible; plaintiff's disagreement with judge's rulings did not reflect necessary impartiality); *United States v. El-Gabrowny,* 844 F.Supp. 955 (S.D.N.Y.1994)(Because it is in nature of judge's job to rule, and any ruling must favor one side and

disfavor other, rulings during course of case generally are not regarded as evidence of personal bias or prejudice for purposes of motion for recusal, even if it is alleged that disproportionate number of rulings favor one side).

> FN17. An affidavit is "[a] written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation. *Black's Law Dictionary* (5th ed.1983).

> FN18. It should be noted that plaintiff has never appeared before this member of the Court because the case was referred for pretrial proceedings to former MJ Benson and then to MJ Mitchell following remand by the Third Circuit. In this connection, in *United States v. Nehas,* 368 F.Supp. 435 (W.D.Pa.1973), the district court noted that "lack of personal acquaintance with the affiant may be a significant circumstance negating existence of personal bias." *Id .* at 437 n. 5.

*7 Based on the foregoing, plaintiff's motion for recusal will be denied.

*ORDER*

AND NOW, this *11th* day of January, 2006, in accordance with the foregoing memorandum, it is ORDERED that the motion of plaintiff, Nancy Hammer, for recusal (Docket No. 94) be, and hereby is, denied.

W.D.Pa.,2006.
Hammer v. Cardio Medical Products, Inc.
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:01cv00564 (Docket) (Mar. 26, 2001)
• 2001 WL 34836167 (Trial Motion, Memorandum

Not Reported in F.Supp.2d                                                    Page 8
Not Reported in F.Supp.2d, 2006 WL 89927 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

and Affidavit) Reply in Opposition to Defendant's
Reply to the Replies in Opposition to Defendant's
Motion to Compel Discovery and for Sanctions
(2001) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

964 F.2d 1369                                                                                          Page 1
964 F.2d 1369, 23 Fed.R.Serv.3d 201
**(Cite as: 964 F.2d 1369)**

**H**
Briefs and Other Related Documents
Mindek v. RigattiC.A.3 (Pa.),1992.
        United States Court of Appeals,Third Circuit.
        Ronald L. MINDEK; Ben Mindek, Appellants
                                    v.
Thomas G. RIGATTI; Harold Purdy; Mark Dorsey;
Samuel J. Secreet; Mark Joyce; Michael Bowen;
        Michael Phillips; Lyman Bellaire, Mayor of
        McDonald Borough, Washington County,
        Commonwealth of Pennsylvania; Borough of
        McDonald, Washington County, Commonwealth of
        Pennsylvania; William Tohey; Bryan Barbour;
        Cecil Township, Washington County,
        Commonwealth of Pennsylvania; James Garove;
James Horvath; Chartiers Township, Washington
        County, Commonwealth of Pennsylvania; June
Lilley, District Justice, Managerial District 27-3-8 of
the Commonwealth of Pennsylvania; Paul Pozonsky,
        District Justice, Magisterial District 27-3-6 of the
        Commonwealth of Pennsylvania; John C. Pettit,
        District Attorney, Washington County,
        Commonwealth of Pennsylvania; Michael Fagella,
        Assistant District Attorney, Washington County,
        Commonwealth of Pennsylvania; Thomas D.
Cladden, Judge, Washington County, Commonwealth
                        of Pennsylvania.
                        **No. 92-3040.**

        Submitted Under Third Circuit Rule 12(6)on May 1,
                                1992.
                        Decided May 29, 1992.

Plaintiffs brought § 1983 suit against police officers
alleging excessive force, and motion to dismiss was
made.    The United States District Court for the
Western District of Pennsylvania, Donald J. Lee, J.,
recommended dismissal as result of plaintiff's failure
to file amended complaint or obey court orders.
Appeal was taken.    The Court of Appeals, Garth,
Circuit Judge, held that dismissal was appropriate
response to deliberate defiance of court orders where
district court judge determined that no other sanction
would adequately insure future compliance.

Affirmed.
West Headnotes
**[1] Federal Civil Procedure 170A** ⚷1741

170A Federal Civil Procedure
    170AXI Dismissal

        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1741 k. In General.  Most Cited
Cases

**Federal Courts 170B** ⚷818

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk818 k. Dismissal.  Most Cited
Cases
Decision to dismiss complaint with prejudice as
sanction for flagrant violation of court orders is
exercise of district court's discretion and is subject to
great deference by Court of Appeals.  Fed.Rules
Civ.Proc.Rules 16(f), 37(b)(2), 41(b), 28 U.S.C.A.

**[2] Federal Courts 170B** ⚷818

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk818 k. Dismissal.  Most Cited
Cases
While dismissal is harsh remedy which should be
resorted to only in extreme cases, scope of appellate
review of order of dismissal is narrow and is confined
solely to whether trial court has abused its discretion.

**[3] Federal Civil Procedure 170A** ⚷2734

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2732 Deposit or Security
            170Ak2734 k. Forma Pauperis Proceedings.
Most Cited Cases
Dismissal of § 1983 in forma pauperis action was
appropriate response to plaintiff's deliberate defiance
of court orders, in light of determination by district
court that no other sanction would adequately insure
future compliance.  Fed.Rules Civ.Proc.Rules 16(f),
37(b)(2), 41(b), 28 U.S.C.A.

**\*1370** Ronald L. Mindek, pro se.
Ben Mindek, pro se.
Roger J. Ecker, Barbara A. Rizzo, Peacock, Keller,
Yohe, Day & Ecker, Washington, Pa., for appellees

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

964 F.2d 1369                                                                                            Page 2
964 F.2d 1369, 23 Fed.R.Serv.3d 201
**(Cite as: 964 F.2d 1369)**

Rigatti, Purdy, Dorsey, Secreet, and Borough of McDonald.

Peter J. Taylor, Murphy, Taylor & Trout, Pittsburgh, Pa., for appellee Barbour.

A. Taylor Williams, Supreme Court of Pennsylvania Administrative Office of Pa. Courts, Philadelphia, Pa., for appellees Lilley and Pozonsky.

Melvin B. Bassi, Bassi & Rega, Charleroi, Pa., for appellees Pettit and Fagella.

Before: BECKER, ALITO, and GARTH, Circuit Judges.

### OPINION OF THE COURT
GARTH, Circuit Judge:
For the second time in four years, and after the labors of a federal magistrate judge, two district court judges and four panels of this Court, we must once again consider the case of two plaintiffs who, virtually from the commencement of their suit four years ago, have continually flouted court orders and denigrated the authority of the magistrate judge to whom their case was assigned. Judicial resources are too valuable to be squandered on wasteful proceedings such as the Mindeks have instituted. We emphasize, therefore, that the dismissal of a complaint is an entirely appropriate response to deliberate defiance of court orders where the district court judge has properly determined that no other sanction would adequately ensure future compliance.

*1371 I.

A.

On January 28, 1988, Ronald and Ben Mindek brought a section 1983 suit in the Western District of Pennsylvania alleging that police officers had used excessive force and had performed an unconstitutional seizure of their tape-recorder in connection with the enforcement of an allegedly unconstitutional anti-loitering ordinance. The Mindeks brought suit not only against the officers who had allegedly used excessive force but also against other police officers, McDonald Borough, and various government officials, including two magistrates and a judge.

After initially dismissing claims against several of the defendants on June 3, 1988 as frivolous, the district court dismissed the entire complaint on June 11, 1988 because the Mindeks had refused to comply with the magistrate judge's order. The magistrate judge had

directed the Mindeks to file an amended complaint which would detail their alleged injury in more specific terms. The Mindeks, asserting that orders of magistrate judges need not be obeyed, refused to do so.

On appeal to this Court, the Mindeks argued that the magistrate judge, not being an Article III judge, had no authority over their case. This argument was unanimously rejected by the entire panel. The panel then divided on the issue of the dismissal of the Mindeks' complaint. See Mindek v. Rigatti, 877 F.2d 56 (3d Cir.1989) (unpublished opinion). The majority of the panel identified those claims of the Mindeks which had stated a cause of action and determined that the Mindeks' failure to file an amended complaint regarding those claims, as per the magistrate judge's instructions, may have resulted from the Mindeks' ignorance and confusion regarding the role of federal magistrate. The majority therefore outlined for the Mindeks the validity and statutory basis for the magistrate judge's involvement, and then remanded the case to the district court for entry of an order permitting the Mindeks to file an amended complaint as respects the few claims which ostensibly stated a cause of action. The majority also directed the district court to allow the Mindeks to join additional defendants only with respect to the tape-recorder seizure claim.

The dissent criticized the majority's indulgence of the Mindeks' behavior and contended that dismissal had been entirely appropriate in light of the Mindeks' obdurate refusal to obey court orders. The dissent asserted that
[t]he plaintiffs had their opportunity to set forth their claims as to excessive force and to do it with specificity, as the district court properly required, and they refused to do so. Rather, as I have noted, they raised issues as to magisterial jurisdiction and other nonsubstantive issues, all of which ignored the district court's directions, and, as the majority opinion points out, were meritless. I do not believe that litigants can play that fast and loose with court processes. When a district court requires an action to be taken in order to preserve a right, it seems to me that even a *pro se* litigant must comply with that direction. Because these *pro se* litigants did not, I would affirm the district court's action in dismissing the complaints for excessive force against Officers Rigatti, Purdy and Barber.

*Id.* The dissent also predicted that the Mindeks' obstinance would once again require the district court to dismiss their complaint. Noting that, in an

964 F.2d 1369
964 F.2d 1369, 23 Fed.R.Serv.3d 201
**(Cite as: 964 F.2d 1369)**

unrelated case, a reversal of a district court's dismissal of a recalcitrant plaintiff's complaint, *see Titus v. Mercedes Benz of North America,* 695 F.2d 746 (3d Cir.1982), had led to a second dismissal of the complaint by the district court and an affirmance of that second dismissal on appeal, *see Titus v. Mercedes Benz of North America,* 723 F.2d 898 (3d Cir.1983), the dissent urged that "I see no reason why, having marched the king's horses up the hill so that we could march them back down again in *Titus,* this court should repeat the same exercise here." *Id.*

B.

On July 25, 1989, the Mindeks filed an amended complaint in the district court, *1372 joining additional defendants and raising new claims. On June 26, 1990, the district court adopted the magistrate judge's recommendation to dismiss all newly added claims and parties that did not fall within the scope of the Mindeks' limited right to amend as prescribed in our earlier opinion. The district court also adopted the magistrate judge's recommendation to dismiss frivolous new claims, relating to the seizure of the tape-recorder, against Cecil Township and the Mayor of McDonald Borough.

On October 9, 1990, the magistrate judge directed the Mindeks to file a pretrial narrative statement on or before December 1, 1990. The Mindeks failed to comply with the magistrate judge's request because, once again, they refused to recognize the magistrate judge's authority. Instead, they filed a series of frivolous motions, including a "Motion and Demand for Plaintiffs to be Afforded Opportunity to File a Response to Defendant's Answer and to Complete Discovery," a "Motion for Protective Order and for Default," and a "Motion to Strike Insufficient Defenses."

On December 10, 1990, the magistrate judge notified the Mindeks by letter that they had failed to file a Pre-Trial Narrative Statement, as per the October 9, 1990 order. The Mindeks were advised that their failure to cure this delinquency by December 20, 1990 could result in the imposition of sanctions.

Rather than complying with this pre-trial directive, the Mindeks filed still another frivolous motion requesting the entry of a default judgment against the defendants. By letter dated January 8, 1991, the magistrate judge once again notified the Mindeks that they were delinquent in filing a Pre-trial Narrative

Statement. The Mindeks were once again advised that their failure to comply with the court's order by January 18, 1991 could result in the imposition of sanctions.

The Mindeks appealed the magistrate judge's denial of their motions to the district court. On January 15, 1991, the district court affirmed the denial of their motions. On January 28, 1991, the Mindeks appealed to this Court from the district court's order. That appeal was dismissed for lack of appellate jurisdiction. *See Mindek v. Rigatti,* No. 91-3067 (3d Cir. April 11, 1991). On May 8, 1991, the Mindeks filed a Petition to this Court for Writ of Mandamus and/or Prohibition, referencing the Mindeks' objections to the role of the magistrate judge as well as the actions of the district court. We denied the Mindeks' petition. *See Mindek v. Rigatti,* No. 91-8040 (3d Cir. July 31, 1991).

On May 22, 1991, the magistrate judge directed the Mindeks to show cause, within ten days, why they should not be sanctioned for refusal to obey court orders. The Mindeks requested an extension of time to respond, and the magistrate judge promptly afforded them an additional thirty days. Instead of responding within the allotted 30 days, however, the Mindeks filed another motion with the district court, seeking review of the magistrate judge's May 22, 1991 order. In response, the district court issued an order requiring the remaining defendants to respond to the Mindeks' appeal on or before June 18, 1991. The defendants responded by moving to quash the appeal. The district court then directed the Mindeks to file a response to the defendants' Motion to Quash the Appeal. They did not. Rather, they requested an extension of time within which to respond. The district court granted their request by advancing the deadline from July 1, 1991 to July 31, 1991. On July 31, 1991, the Mindeks, rather than answering the motion of the defendants, once again challenged the role of the magistrate in conducting these proceedings.

On October 9, 1991, the magistrate judge issued yet another order directing the Mindeks to file a Pre-Trial Narrative Statement by October 19, 1991. The Mindeks were again notified that their failure to comply with that order could result in the imposition of sanctions. In response, the Mindeks filed another objection to the jurisdiction of the magistrate judge, which was denied. The magistrate judge then ordered the Mindeks to show cause why the court should not impose sanctions or dismiss the *1373 complaint. Again, the Mindeks objected to this

964 F.2d 1369                                                                                  Page 4
964 F.2d 1369, 23 Fed.R.Serv.3d 201
**(Cite as: 964 F.2d 1369)**

order and argued that the magistrate judge had no jurisdiction to act in this case.

On November 22, 1991, the magistrate judge, finding that no lesser sanction was appropriate and that dismissal was warranted under *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863 (3d Cir.1984), issued a Report and Recommendation recommending that the Mindeks' complaint be dismissed. The magistrate judge advised all parties that they had ten days from that date to file objections to his Report and Recommendation. On December 2, 1991, the Mindeks filed an objection, once again challenging the magistrate judge's authority to act in this case. At that time, the Mindeks also moved for leave to amend and supplement their complaint.

On January 6, 1992, approximately four years after the initiation of this case and more than two and one half years after remand, the district court judge adopted the magistrate judge's Report and Recommendation and dismissed the Mindeks' complaint.

                              II.

                              A.


District court judges, confronted with litigants who flagrantly violate or ignore court orders, often have no appropriate or efficacious recourse other than dismissal of the complaint with prejudice. The Federal Rules of Civil Procedure and the United States Supreme Court have recognized and provided for this practice. *See Link v. Wabash Railroad,* 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962); Fed.R.Civ.P. 16(f), 37(b)(2), 41(b). The present case exemplifies the very kind of situation that warrants dismissal.

[1] In this circuit, we have held that district court judges should determine the propriety of punitive dismissals in light of the factors outlined in *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863 (3d Cir.1984). [FN1] However, *Poulis* did not provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation easily reviewed by this Court. As we have already recognized, not all of the *Poulis* factors need be satisfied in order to dismiss a complaint. *See C.T. Bedwell & Sons, Inc. v. Int'l. Fidelity Ins. Co.,* 843 F.2d 683, 696 (3d Cir.1988). Instead, the decision must be made in the context of

the district court's extended contact with the litigant. Ultimately, the decision to dismiss constitutes an exercise of the district court judge's discretion and must be given great deference by this Court-a court which has had no direct contact with the litigants and whose orders, calendar, docket and authority have not been violated or disrupted.

> FN1. The six factors identified in *Poulis* are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
> 747 F.2d at 868.

[2] Although we have held that "[d]ismissal is a harsh remedy and should be resorted to only in extreme cases," we nevertheless have recognized that "the scope of appellate review of an order of dismissal is extremely narrow, confined solely to whether the trial court has abused its discretion." *Marshall v. Sielaff,* 492 F.2d 917 (3d Cir.1974). *See also C.T. Bedwell,* 843 F.2d at 691; *Titus v. Mercedes Benz of North America,* 695 F.2d at 757, 761 (Garth, J. dissenting). Perhaps some judges, for reasons which we could not comprehend, would not have dismissed the Mindeks' complaint had those judges themselves sat at the trial level. But that potential difference in trial management approach demonstrates, rather than obviates, the need to leave such decisions within the discretion of the district court judge. The scope of *our* review is restricted to determining whether the district court abused *its* discretion. How we imagine we might have exercised our own discretion had we **\*1374** been in the district court judge's robe is entirely irrelevant.

The United States Supreme Court has recognized the importance of leaving the decision to dismiss firmly within the discretion of the district court judge. In *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1975), the Supreme Court reversed a decision of this Court after we had reversed a district court judge's dismissal of a unmanageable plaintiff's complaint. The Supreme Court explained that [t]he question, of course, is not whether this Court, or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

964 F.2d 1369                                                                                      Page 5
964 F.2d 1369, 23 Fed.R.Serv.3d 201
**(Cite as: 964 F.2d 1369)**

whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.

There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.

But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

_Id._ at 642-43, 96 S.Ct. at 2780-81.


                          B.


[3] We cannot even hope to quantify the extent to which cases such as the one before us clog our judicial system and interfere with the ability of diligent litigants to obtain prompt judicial resolution of their disputes. To overcome that interference, we must discipline ourselves not to engage in Monday-morning-quarterbacking which second-guesses conscientious district court judges. It is the district court judge who must strive to manage his or her calendar efficiently and, in so doing, may find it necessary to dismiss a litigant's complaint as a sanction for repeated failure to satisfy court orders.

To tolerate the delays caused by the Mindeks, or to equivocate over lesser sanctions, would make a mockery of the very objectives of the "civil justice expense and delay reduction plans" which the district courts have developed and implemented pursuant to the Civil Justice Reform Act of 1990, 28 U.S.C. 471 _et seq_ (supp. 1991). Congress enacted the Civil Justice Reform Act of 1990 after having found that unnecessary costs and delays in the federal judicial system had seriously decreased access to the courts and that "solutions to problems of cost and delay must include significant contributions by the courts, the litigants, the litigants' attorneys, and by the Congress and the executive branch." Pub.L. No. 101-650 § 102(3), 104 Stat. 5089 (1990) (finding # 3).[FN2] The district court *1375 plans, which require

review by the chief judges of the relevant district and circuit courts and by the Judicial Conference of the United States, _see_ 28 U.S.C. § 474, are designed to proscribe delay and to reduce expense by encouraging early judicial intervention and efficient judicial management of litigation. _See_ 28 U.S.C. § 473.

> FN2. As here relevant, Congress made the following findings:
> (1) The problems of cost and delay in civil litigation in any United States district court must be addressed in the context of the full range of demands made on the district court's resources by both civil and criminal matters.
> (2) The courts, the litigants, the litigants' attorneys, and the Congress and the executive branch, share responsibility for cost and delay in civil litigation and its impact on access to the courts, adjudication of cases on the merits, and the ability of the civil justice system to provide proper and timely judicial relief for aggrieved parties.
> (3) The solutions to problems of cost and delay must include significant contributions by the courts, the litigants, the litigants' attorneys, and by the Congress and the executive branch.
> * * * * * *
> (6) Because the increasing volume and complexity of civil and criminal cases imposes increasingly heavy workload burdens on judicial officers, clerks of court, and other court personnel, it is necessary to create an effective administrative structure to ensure ongoing consultation and communication regarding effective litigation management and cost and delay reduction principles and techniques.
> Pub.L. No. 101-650 § 102(3), 104 Stat. 5089 (1990).

Although the Mindeks filed their complaints before the Civil Justice Reform Act became law, they have engaged in the types of practices sought to be corrected by that Act's passage. Especially now, after Congress has expressed its dissatisfaction with the delay and costs that have hampered the federal judicial system, we in the Court of Appeals should not add to the burdens of the district courts by suffering the behavior of litigants who, like the Mindeks, refuse to abide by prescribed rules of court. The district courts cannot, and should not, tolerate

964 F.2d 1369
964 F.2d 1369, 23 Fed.R.Serv.3d 201
**(Cite as: 964 F.2d 1369)**

Page 6

unjustifiable delays and the expenditure of irreplaceable judicial resources caused by litigants, *pro-se* or represented, who will not obey court orders. Nor will we.

We observe that the district court chose not to impose monetary sanctions against the Mindeks, apparently because the magistrate judge had deemed such sanctions inappropriate in light of the Mindeks' *in forma pauperis* status. This decision not to impose monetary sanctions, like the decision to dismiss the Mindeks' complaint, falls squarely within the district court's discretion and, once again, requires our deference.

III.

We will affirm the order of the District Court dismissing the Mindeks' complaint. Costs are to be taxed against the Mindeks.

C.A.3 (Pa.),1992.
Mindek v. Rigatti
964 F.2d 1369, 23 Fed.R.Serv.3d 201

Briefs and Other Related Documents (Back to top)

• 1992 WL 12132499 (Appellate Brief) Brief of Appellees, Thomas G. Rigatti, Harold Purdy, Mark Dorsey, Samuel J. Secreet, and the Borough of McDonald (Apr. 10, 1992) Original Image of this Document with Appendix (PDF)
• 1992 WL 12132500 (Appellate Brief) Brief of Appellee Bryan Barbour (Apr. 10, 1992) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

17 F.3d 1276                                                                                          Page 1
17 F.3d 1276, 25 Bankr.Ct.Dec. 442
**(Cite as: 17 F.3d 1276)**

**H**

Nielsen v. PriceC.A.10 (Utah),1994.
United States Court of Appeals,Tenth Circuit.
Elwood L. NIELSEN and Lynn Nielsen, Plaintiffs-
Appellants,
v.
Lois PRICE, Trustee;  Lois L. Nielsen Estate;  Grant
Thornton, appointed trustee for Chapter 7 Bankruptcy
case of Elwood and Lynn Nielsen, Defendants-
Appellees,
Dunford Weston;  Dunford M. Weston Family
Partnership, Intervenors-Appellees.
**No. 93-4072.**

Feb. 23, 1994.

Chapter 7 debtors brought adversary proceeding, and
adverse judgment was entered against them by the
United States Bankruptcy Court for the District of
Utah. Debtors appealed. The District Court, Dee V.
Benson, J., entered order dismissing debtors' appeal
for failure to prosecute, and debtors appealed. The
Court of Appeals, Tacha, Circuit Judge, held that:
(1) debtors would be held to same rules of
bankruptcy procedure as governed other litigants,
notwithstanding their pro se status, and (2) debtors'
obligation to designate record on appeal, and to file
timely brief, were not stayed by automatic stay in
effect in second bankruptcy case filed by debtors
during pendency of their appeal.

Affirmed.
West Headnotes
**[1] Bankruptcy 51 ☜⟶3777**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3777 k. Record;  Assignments of Error;
Briefs. Most Cited Cases
Dismissal of Chapter 7 debtors' pro se appeal from
adverse judgment of bankruptcy court, based on
debtors' unexplained failure to designate record or to
timely file a brief, was not abuse of discretion,
though debtors did not have attorney's assistance.
Fed.Rules Bankr.Proc.Rules 8001, 8006, 8009(a), 11
U.S.C.A.

**[2] Bankruptcy 51 ☜⟶3784**

51 Bankruptcy

51XIX Review
    51XIX(B) Review of Bankruptcy Court
        51k3784 k. Discretion. Most Cited Cases
Court of Appeals reviews district court's decision
dismissing bankruptcy appeal for failure to prosecute
under abuse of discretion standard. Fed.Rules
Bankr.Proc.Rule 8001, 11 U.S.C.A.

**[3] Bankruptcy 51 ☜⟶2127.1**

51 Bankruptcy
    51II Courts;  Proceedings in General
        51II(A) In General
            51k2127 Procedure
                51k2127.1 k. In General. Most Cited
Cases
Pro se litigants must follow same rules of bankruptcy
procedure as govern other litigants.

**[4] Bankruptcy 51 ☜⟶2395**

51 Bankruptcy
    51IV Effect of Bankruptcy Relief;  Injunction and
Stay
        51IV(B) Automatic Stay
            51k2394 Proceedings, Acts, or Persons
Affected
                51k2395 k. Judicial Proceedings in
General. Most Cited Cases
Chapter 7 debtors' obligation to designate record on
appeal, and to file a brief within time designated by
district court, was not stayed as a result of their filing
of second bankruptcy case during pendency of their
appeal from adverse judgment of bankruptcy court in
prior adversary proceeding commenced by debtors.
Bankr.Code, 11 U.S.C.A. § 362(a)(1);  Fed.Rules
Bankr.Proc.Rules 8006, 8009(a), 11 U.S.C.A.

**[5] Bankruptcy 51 ☜⟶2395**

51 Bankruptcy
    51IV Effect of Bankruptcy Relief;  Injunction and
Stay
        51IV(B) Automatic Stay
            51k2394 Proceedings, Acts, or Persons
Affected
                51k2395 k. Judicial Proceedings in
General. Most Cited Cases
Automatic stay applies to actions which are against
debtor at their inception, regardless of subsequent
appellate posture of case. Bankr.Code, 11 U.S.C.A. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

17 F.3d 1276
17 F.3d 1276, 25 Bankr.Ct.Dec. 442
**(Cite as: 17 F.3d 1276)**

Page 2

362(a)(1).

*1276 Elwood L. Nielsen and Lynn Nielsen, pro se.
James C. Jenkins of Jenkins and Burbank, Logan, Utah, for Defendant-Appellee Lois Price.
Harriet E. Styler and Kevin R. Anderson of Kruse, Landa & Maycock, Salt Lake City, Utah, for Defendant-Appellee Grant Thornton.
*1277 Gregory Skabelund, Logan, Utah, for Intervenors-Appellees Dunford Weston and The Dunford Weston Family Partnership.

Before TACHA and BRORBY, Circuit Judges, and BROWN,<sup>FN*</sup> Senior District Judge.

> FN* Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

TACHA, Circuit Judge.

[1][2] Plaintiffs, acting pro se, seek review of a district court order dismissing their appeal from an adverse judgment of the bankruptcy court.<sup>FN1</sup> The district court concluded that, "[a]lthough [plaintiffs] filed a timely Notice of Appeal ..., they have failed to comply with any of the other pertinent rules governing an appeal from the Bankruptcy Court." R. Vol. I tab 7, at 1. Specifically, the district court found plaintiffs had failed both to designate the record on appeal and to file a statement of the issues to be raised. See Bankr.R. 8006. Plaintiffs also did not file a brief within the time designated by the district court. See Bankr.R. 8009(a). Accordingly, the court exercised its discretionary authority under D.Utah R. 413 and Bankr.R. 8001 to dismiss the case for failure to prosecute. R. Vol. I tab 7, at 3. We review this ruling for an abuse of discretion. Balaber-Strauss v. Reichard (In re Tampa Chain Co.), 835 F.2d 54, 55 (2d Cir.1987); International Bhd. of Teamsters v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 774 F.2d 1303, 1305 (5th Cir.1985).

> FN1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

[3][4][5] This court has repeatedly insisted that pro se

parties "follow the same rules of procedure that govern other litigants." Green v. Dorrell, 969 F.2d 915, 917 (10th Cir.1992), cert. denied, 507 U.S. 940, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993); see Casper v. Commissioner, 805 F.2d 902, 906 n. 3 (10th Cir.1986); Bradenburg v. Beaman, 632 F.2d 120, 122 (10th Cir.1980), cert. denied, 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981). Plaintiffs do not dispute the cited rule violations. Indeed, plaintiffs do not even attempt to present an explanation or excuse for their noncompliance.<sup>FN2</sup> Under the circumstances, we will not disturb the district court's determination that dismissal was warranted. See Balaber-Strauss, 835 F.2d at 56 (affirming district court's dismissal of appeal where appellants "argue[d] only the merits of their bankruptcy appeal, which of course are not before us, and d[id] not even address the failure-to-prosecute ground of the district court's dismissal of that appeal").

> FN2. We note that, after filing their appeal with the district court, plaintiffs each commenced a second bankruptcy action, this time in the District of Nevada, and then invoked the existence of the latter actions to seek a stay, presumably under 11 U.S.C. § 362(a)(1), to postpone their already tardy appellate responsibilities in this case. The district court properly rejected this gambit when it dismissed plaintiffs' appeal. The § 362(a)(1) stay applies to actions that are "against the debtor" at their inception, regardless of the subsequent appellate posture of the case. See Ellis v. Consolidated Diesel Elec. Corp., 894 F.2d 371, 373 (10th Cir.1990). Moreover, we are concerned with the parties' alignment with respect to this particular adversary proceeding, not the underlying petition. O'Neill v. Continental Airlines, Inc. (In re Continental Airlines), 928 F.2d 127, 129 (5th Cir.1991). Accordingly, § 362(a)(1) did not operate to stay this adversary proceeding commenced by the debtor-plaintiffs.

The judgment of the United States District Court for the District of Utah is AFFIRMED. Appellants' ex parte motion to supplement the record with the file from appellant Elwood Leslie Nielsen's 1978 divorce proceeding is denied.

C.A.10 (Utah),1994.
Nielsen v. Price

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

17 F.3d 1276
17 F.3d 1276, 25 Bankr.Ct.Dec. 442
**(Cite as: 17 F.3d 1276)**


17 F.3d 1276, 25 Bankr.Ct.Dec. 442

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

73 Fed.Appx. 183                                                                        Page 1
73 Fed.Appx. 183, 2003 WL 21949582 (C.A.7 (Wis.))
**(Cite as: 73 Fed.Appx. 183)**

Briefs and Other Related Documents
In re ANR-Advance Transp. Co., Inc.C.A.7
(Wis.),2003.This case was not selected for
publication in the Federal Reporter.UNPUBLISHED
ORDERNot to be cited per Circuit Rule 53Please use
FIND to look at the applicable circuit court rule
before citing this opinion. Seventh Circuit Rule 53.
(FIND CTA7 Rule 53.)
    United States Court of Appeals,Seventh Circuit.
In re: ANR-ADVANCE TRANSPORTATION CO.,
                    INC., Debtor,
        Appeal of: Michael J. PAPA, Sr.
                    **No. 03-1337.**

            Submitted Aug. 12, 2003.[FN*]

        FN* After an examination of the briefs and
        the record, we have concluded that oral
        argument is unnecessary. Thus, the appeal
        is submitted on the briefs and the record.
        See Fed. R.App. P. 34(a)(2).
            Decided Aug. 12, 2003.

Trustee in involuntary Chapter 7 proceedings moved
to compromise and settle certain adversary
proceedings. The Bankruptcy Court granted motion.
Employee of debtor appealed pro se. The United
States District Court for the Eastern District of
Wisconsin, Charles N. Clevert, Jr., J., dismissed
appeal with prejudice for failure to prosecute.
Employee appealed. The Court of Appeals held that:
(1) notice of appeal was timely, and (2) denial of
employee's motion for extension of time to file brief,
and dismissal with prejudice of his appeal for failure
to prosecute, was not abuse of discretion.

Affirmed.
West Headnotes
**[1] Bankruptcy 51 ☞3774.1**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3774 Notice of Appeal; Time
                51k3774.1 k. In General. Most Cited
Cases
Crucial date for determining timeliness of pro se
litigant's notice of appeal was date on which district
court's order dismissing litigant's appeal from

bankruptcy court decision was entered on district
court's docket sheet, not date on which order was
signed, and therefore notice of appeal that was filed
29 days after entry of final judgment, but 31 days
after order was signed, was timely. F.R.A.P.Rules
4(a)(1)(A), 6(b)(1), 28 U.S.C.A.

**[2] Bankruptcy 51 ☞3777**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3777 k. Record; Assignments of Error;
Briefs. Most Cited Cases

    **Bankruptcy 51 ☞3778**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3778 k. Dismissal; Hearing. Most Cited
Cases
Denying pro se litigant's motion for extension of time
to file brief on appeal from bankruptcy court order,
and dismissing appeal with prejudice under
bankruptcy rules for failure to prosecute, was not
abuse of discretion when district court afforded
litigant notice of consequences of failing to comply
with procedural rules and ample opportunity to
remedy his noncompliance, but litigant, who did not
designate the record on appeal or identify specific
order he was appealing, did not accept court's
invitation to explain why he had not filed brief or
why he should receive extension of time to do so, and
failed to demonstrate that he had basis to appeal.
Fed.Rules Bankr.Proc.Rules 8001(a), 8006, 8009(a),
11 U.S.C.A.

**[3] Bankruptcy 51 ☞3777**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3777 k. Record; Assignments of Error;
Briefs. Most Cited Cases
Pro se appellant's professed inability to find attorney
and his ignorance of the law did not excuse his
neglect in failing to file timely brief on appeal from
bankruptcy court order and to designate the record on
appeal. Fed.Rules Bankr.Proc.Rules 8006, 8009(a),
11 U.S.C.A.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

73 Fed.Appx. 183                                                                                      Page 2
73 Fed.Appx. 183, 2003 WL 21949582 (C.A.7 (Wis.))
**(Cite as: 73 Fed.Appx. 183)**

**\*184** Appeal from the United States District Court for the Eastern District of Wisconsin.    No. 02-C-0904.    Charles N. Clevert, Jr. Judge.

Before MANION, ROVNER, and DIANE P. WOOD, Circuit Judges.

ORDER

**\*\*1** Local Union No. 710, International Brotherhood of Teamsters, along with numerous other creditors, filed a proof of claim against the assets of ANR-Advance Transportation, an involuntary petitioner under Chapter 7 of the Bankruptcy Code. Michael Papa, Sr., was an employee of ANR-Advance Transportation and a dues-paying member of Local Union No. 710.   Having received notice of a motion filed by the Trustee for ANR-Advance to compromise and settle certain adversary proceedings, Papa attended the motion hearing.   According to Papa, he wanted to object to the motion, but the bankruptcy judge would not allow him to speak. The docket sheet for the bankruptcy includes no entry to show that either Local Union No. 710 or Papa himself ever filed any response to the motion.

The bankruptcy court granted the motion to compromise, and Papa appealed to the United States District Court for the Eastern District of Wisconsin. But Papa did not file a brief within 15 days of the notice of appeal, see Fed. R. Bankr.P. 8009(a), nor did he designate the record on appeal, see Fed. R. Bankr.P. 8006.   Accordingly, the district court issued a conditional dismissal order with an order to **\*185** show cause inviting Papa to explain why he did not file a brief on time.   Instead of responding to the order to show cause, Papa asked the court for an extension of time to file his brief.   The court conducted a telephone hearing on the matter and concluded that Papa had no excuse for not filing his brief, that he had "no factual or legal basis for his appeal, and that he [had] not attempted to hire counsel or otherwise prosecute his case."   The court denied Papa's request for an extension and dismissed his case with prejudice for failure to prosecute, see Fed. R. Bankr.P. 8001(a).   Papa appeals, arguing that, because he was proceeding *pro se* and knew nothing about the law, the district court erred when it refused to grant him more time to file his brief.

[1] We must first consider the Trustee's contention that we lack jurisdiction in this case because Papa's notice of appeal was untimely.   Papa was required to file his notice of appeal within 30 days after the dismissal of his case.   Fed. R.App. P. 4(a)(1)(A), 6(b)(1).   The Trustee observes that the district court's final order dismissing Papa's appeal was signed on January 6, 2006 and that Papa did not file his notice of appeal until February 6, 2003, 31 days later.   But the crucial date for determining timeliness is the date the order was entered on the district court's docket sheet, not the date it was signed.   *Darne v. State of Wis.,* 137 F.3d 484, 486 n. 1 (7th Cir.1998).   The docket sheet reveals that, although the dismissal order was signed on January 6, it was not docketed until January 8. Thus, Papa timely filed his notice of appeal 29 days after entry of final judgment, and we do have jurisdiction to consider this case.   *See id.*

[2][3] We review for abuse of discretion the district court's decision to deny Papa's motion for an extension of time and dismiss his appeal under Rule 8001(a) of the Federal Rules of Bankruptcy Procedure.   *In re: Telesphere Comms., Inc.,* 177 F.3d 612, 616 (7th Cir.1999).   Applying this deferential standard, we conclude that the court did not err.   It is within a district court's sound discretion to dismiss an appeal from a bankruptcy court order when the appellant negligently fails to comply with procedural rules requiring him to file a timely brief and designate the record.   *See In re: Scheri,* 51 F.3d 71, 73-74 (7th Cir.1995); *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994); *In re: Bulic,* 997 F.2d 299, 301-02 (7th Cir.1993).   Here the district court afforded Papa notice of the consequences of his failure to comply with procedural rules and ample opportunity to remedy his noncompliance.   The court's original dismissal order, filed October 9, 2002, allowed Papa until October 30 to show good cause in writing why he had failed to prosecute his appeal.   Papa, however, did not accept the court's invitation to explain why he had not filed his brief and why he should receive an extension of time. Papa's professed inability to find an attorney and his ignorance of the law do not excuse his neglect. Even parties who proceed *pro se* are bound by procedural rules and court orders.   *Downs v. Westphal,* 78 F.3d 1252, 1257 (7th Cir.1996).

**\*\*2** Moreover, Papa failed to demonstrate that he had basis to appeal in the first place.   Because Papa failed to designate the record on appeal, the district court had to rely heavily on Papa's hearing testimony to piece together much of what had happened in the bankruptcy court.   But Papa could not identify for the judge the specific court order he was appealing, and he admitted that he had never filed anything in the bankruptcy court regarding his objection to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

73 Fed.Appx. 183
73 Fed.Appx. 183, 2003 WL 21949582 (C.A.7 (Wis.))
**(Cite as: 73 Fed.Appx. 183)**

Page 3

motion to compromise.   When the judge asked Papa what issues he hoped to raise on appeal, Papa said that Coastal Corporation, which had submitted a proof of claim against ANR-Advance's assets, was actually an owner of the company and that therefore its claims should **\*186** not be paid until after the claims of the other creditors had been satisfied. Papa, however, offered the court no basis upon which to evaluate his arguments concerning Coastal.    In response to the judge's questions, Papa said that he had "no idea" whether Coastal had filed a claim or received anything in the case.   In short, Papa gave the district court no reason to believe that an extension of time would enable him to prosecute a nonfrivolous appeal.

Ultimately, Papa could not articulate to the court the basis of his appeal or even what decision he was appealing from, and he has failed to clarify these issues in the brief he filed in this court.   We therefore AFFIRM the judgment of the district court dismissing Papa's appeal from the bankruptcy court's order granting the motion to compromise.

C.A.7 (Wis.),2003.
In re ANR-Advance Transp. Co., Inc.
73 Fed.Appx. 183, 2003 WL 21949582 (C.A.7 (Wis.))

Briefs and Other Related Documents (Back to top)

• 2003 WL 22232455 (Appellate Brief) Brief and Short Appendix of Appellee Bruce A. Lanser, Trustee in Bankruptcy (May. 30, 2003) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

835 F.2d 54                                                                                                        Page 1
835 F.2d 54, 17 Bankr.Ct.Dec. 407, Bankr. L. Rep. P 72,163
**(Cite as: 835 F.2d 54)**

▷

In re Tampa Chain Co., Inc.C.A.2 (N.Y.),1987.
United States Court of Appeals,Second Circuit.
In re TAMPA CHAIN COMPANY, INC., Debtor.
Barbara BALABER-STRAUSS, As trustee Tampa
Chain Company, Inc., Plaintiff-Appellee,
v.
Wolf REICHARD and Leslie Blond, Defendants-
Appellants.
**No. 122, Docket 87-5017.**

Submitted Nov. 17, 1987.
Decided Dec. 14, 1987.

The Bankruptcy Court entered order holding
defendants liable to debtor's estate for approximately
$1.5 million in damages. Defendants appealed. The
United States District Court, Southern District of
New York, Robert L. Carter, J., dismissed for failure
to prosecute. Defendants appealed. The Court of
Appeals held that: (1) Chapter 13 petition filed by
one defendant stayed appeal as to that defendant, and
(2) the district court did not abuse its discretion by
dismissing appeal.

Affirmed in part and stayed in part.
West Headnotes
[1] **Bankruptcy 51** ☜═══2395

51 Bankruptcy
    51IV Effect of Bankruptcy Relief; Injunction and
Stay
        51IV(B) Automatic Stay
            51k2394 Proceedings, Acts, or Persons
Affected
                51k2395 k. Judicial Proceedings in
General. Most Cited Cases
Chapter 13 petition automatically stayed continuation
of appeal from previous bankruptcy court order
finding debtor liable to another debtor's estate for
$1.5 million. Bankr.Code, 11 U.S.C.A. § §
362(a)(1), 1301 et seq.

[2] **Bankruptcy 51** ☜═══3777

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3777 k. Record; Assignments of Error;
Briefs. Most Cited Cases
Time limitations imposed in rule concerning filing

and service of appellate briefs are not jurisdictional;
therefore, failure to meet deadlines imposed in rule
does not automatically require dismissal of appeal.
Rules Bankr.Proc.Rule 8009, 11 U.S.C.A.

[3] **Bankruptcy 51** ☜═══3778

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3778 k. Dismissal; Hearing. Most Cited
Cases
The district court did not abuse its discretion by
dismissing, for failure to prosecute, appeal from
bankruptcy court order, which held defendants liable
to debtor's estate for $1.5 million in damages;
defendants had failed to file any brief for
approximately seven months after due date, and the
district court had dismissed the appeal only after
inquiring as to reason for failure to file and being
given no explanation. Rules Bankr.Proc.Rule 8009,
11 U.S.C.A.

**\*55** Kaye, Scholer, Fierman, Hays & Handler (Arthur
J. Steinberg, New York City, of counsel), for
plaintiff-appellee Barbara Balaber-Strauss.
Wolf Reichard and Leslie Blond, defendants-
appellants pro se.

Before LUMBARD, TIMBERS, and KEARSE,
Circuit Judges.
PER CURIAM:
Defendants Wolf Reichard and Leslie Blond appeal
*pro se* from an order of the United States District
Court for the Southern District of New York, Robert
L. Carter, *Judge,* dismissing for lack of prosecution
their appeal to that court from an order of the United
States Bankruptcy Court. For the reasons below, we
stay the present appeal as to Reichard and affirm the
order of the district court as to Blond.

*The Stay as to Reichard*

[1] Defendants filed their appeal to this Court in
April 1987. On June 22, 1987, Reichard filed a
Chapter 13 bankruptcy petition in bankruptcy court.
That petition automatically operated to stay the
continuation of this appeal as to Reichard. *See* 11
U.S.C. § 362(a)(1) (1982); *Ostano Commerzanstalt*

835 F.2d 54                                                                                      Page 2
835 F.2d 54, 17 Bankr.Ct.Dec. 407, Bankr. L. Rep. P 72,163
**(Cite as: 835 F.2d 54)**

*v. Telewide Systems, Inc.,* 790 F.2d 206, 207 (2d Cir.1986). Relief from the effect of the automatic stay provisions of § 362(a)(1) may be granted only by the bankruptcy court. *See* 11 U.S.C. § § 362(d) and (f) (1982); *Ostano Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d at 207. Reichard and the Plaintiff Trustee ("Trustee") are instructed to inform this Court when the bankruptcy court grants relief from the automatic stay or that stay lapses; until we receive such information, all proceedings herein with respect to Reichard are stayed.

### The Merits of the Present Appeal

Defendants' appeal to the district court from the order of the bankruptcy court, which held defendants liable to the bankruptcy debtor's estate for approximately $1.5 million in damages, was filed in July 1986. At that time, defendants were represented by counsel. The bankruptcy appeal was docketed in the district court on September 3, 1986, and defendants were thus, under Fed.R.Bankr.P. 8009, required to file in the district court a brief in support of that appeal on or before September 18, 1986. No such brief was filed, and in April 1987, the Trustee urged the district court to dismiss the bankruptcy appeal on that ground. The Trustee has represented in her brief on the present appeal that at a conference held on April 9, 1987, the district court inquired as to why defendants had filed no brief on the bankruptcy appeal, and their attorney offered no reason or excuse for the failure to file. On April 13, 1987, noting that no brief had been filed as required by Rule 8009, the district court dismissed the bankruptcy appeal for failure to prosecute. The present appeal followed.

[2] The time limitations imposed by Rule 8009 are not jurisdictional, and hence the district court is not required automatically to dismiss the appeal of a party who has failed to meet those deadlines. *See, e.g., In re Beverly Manufacturing Corp.,* 778 F.2d 666 (11th Cir.1985). Rather, the court should exercise discretion to determine whether dismissal is appropriate in the circumstances, and its decision to dismiss will be affirmed unless it has abused its discretion. *See In re Braniff Airways, Inc.,* 774 F.2d 1303, 1305 (5th Cir.1985); *In re Beverly Manufacturing Corp.,* 778 F.2d at 667-68 (accepting appellant's argument that dismissal would be an abuse of discretion in absence of a showing of bad faith, negligence, or indifference). Whether or not, as suggested by *Beverly Manufacturing,* bad faith, negligence, and indifference are the only proper bases for a district court's exercise of its discretion to

dismiss *56 a bankruptcy appeal, we see no abuse of discretion in the present case.

[3] On appeal to this Court, defendants have not disputed the Trustee's description of the proceedings in the district court, to wit, that defendants filed no brief for some seven months after the due date, that their attorney offered no explanation or excuse for their failure to file a brief, and that the district court dismissed for failure to prosecute only after it had inquired as to the reason for the failure to file and was given no explanation. Nor do defendants suggest in this Court that any excuse or explanation is or was available. Indeed, their brief in this Court argues only the merits of their bankruptcy appeal, which of course are not before us, and does not even address the failure-to-prosecute ground of the district court's dismissal of that appeal.

In all the circumstances, there is no basis to conclude that the district court's dismissal of defendants' bankruptcy appeal was an abuse of discretion.

### CONCLUSION

The order of the district court dismissing defendants' bankruptcy appeal is affirmed as to Blond; the appeal is stayed as to Reichard in accordance with the terms of the present opinion.

C.A.2 (N.Y.),1987.
In re Tampa Chain Co., Inc.
835 F.2d 54, 17 Bankr.Ct.Dec. 407, Bankr. L. Rep. P 72,163

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

895 F.2d 490                                                    Page 1
895 F.2d 490, 15 Fed.R.Serv.3d 1362, 20 Bankr.Ct.Dec. 340
**(Cite as: 895 F.2d 490)**

▷

In re ChampionC.A.8 (Neb.),1990.
United States Court of Appeals,Eighth Circuit.
In re Lucille Anne CHAMPION, Appellant.
**No. 89-1860.**

Submitted Nov. 22, 1989.
Decided Feb. 6, 1990.

Following bankruptcy proceedings, party filed notice of appeal and motion for temporary restraining order in District Court. The United States District Court for the District of Nebraska, William G. Cambridge, J., entered order dismissing appeal and declined to vacate dismissal, and party appealed. The Court of Appeals held that: (1) motion to vacate did not toll running of 30-day period for filing notice of appeal, and (2) denial of motion to vacate was not abuse of discretion, given party's failure to file designation of record or statement of issues as required by Bankruptcy Rule.

So ordered.
West Headnotes
**[1] Federal Courts 170B ⬅⬆558**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(C) Decisions Reviewable
            170BVIII(C)1 In General
                170Bk554 Nature, Scope and Effect of Decision
                    170Bk558 k. Injunction and Provisional Remedies. Most Cited Cases
Order denying motion for temporary restraining order is ordinarily not appealable.

**[2] Federal Courts 170B ⬅⬆669**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(E) Proceedings for Transfer of Case
            170Bk665 Notice, Writ of Error or Citation
                170Bk669 k. Commencement and Running of Time for Filing; Extension of Time. Most Cited Cases
Motion to vacate dismissal order, which was not filed until more than ten days thereafter, did not serve to toll running of 30-day period on notice of appeal. F.R.A.P.Rule 4(a)(1, 4), 28 U.S.C.A.

**[3] Federal Courts 170B ⬅⬆829**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk829 k. Amendment, Vacation, or Relief from Judgment. Most Cited Cases
Court of Appeals reviews order denying motion to vacate under "abuse of discretion" standard. Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.

**[4] Bankruptcy 51 ⬅⬆3778**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3778 k. Dismissal; Hearing. Most Cited Cases
Denial of motion to vacate dismissal of bankruptcy appeal was not abuse of discretion, given movant's failure to file designation of record or statement of issues as required by Bankruptcy Rule. Rules Bankr.Proc.Rule 8006, 11 U.S.C.A.; Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.

**\*491** Lucille Anne Champion, pro se.
No Appearances for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.
PER CURIAM.
Lucille Anne Champion appeals pro se from orders entered in the District Court [FN1] for the District of Nebraska denying her request for a temporary restraining order, dismissing her bankruptcy appeal, and denying her motion to vacate the dismissal of her bankruptcy appeal. For reversal Champion argues that she is the victim of fraud and attorney malpractice and challenges the jurisdiction of the bankruptcy and district courts. For the reasons discussed below, we dismiss for lack of appellate jurisdiction the part of the appeal challenging the orders denying the request for a temporary restraining order and dismissing the bankruptcy appeal. We do have jurisdiction over the order denying the motion to vacate the dismissal of the bankruptcy appeal and summarily affirm that order. Champion's requests for an expedited hearing, for a stay pending appeal and for other relief, including permission to sell a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

895 F.2d 490                                                                                                         Page 2
895 F.2d 490, 15 Fed.R.Serv.3d 1362, 20 Bankr.Ct.Dec. 340
**(Cite as: 895 F.2d 490)**

building that is part of the bankruptcy estate and removal of the receiver, are dismissed as moot.

> FN1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

Following bankruptcy proceedings, Champion filed a notice of appeal and a motion for a temporary restraining order in the district court. On February 21, 1989, the district court denied the motion for a temporary restraining order. On March 23, 1989, the district court dismissed the bankruptcy appeal because Champion failed to file a designation of the items to be included in the record on appeal and a statement of the issues to be presented as required by Bankruptcy Rule 8006.

On April 11, 1989, Champion filed a motion to vacate the dismissal of the bankruptcy appeal, arguing that she had "ten days to make attachments." Champion submitted various items which she believed were the correct attachments under Bankruptcy Rule 8006, including copies of her previously filed motion for a temporary restraining order, a district court order appointing a receiver in the bankruptcy case, a description of the real estate that is part *492 of the bankruptcy estate, items of correspondence from opposing counsel, canceled checks, an appraisal of real estate in the bankruptcy case, her pro se motion for new trial, a private investigator's report, stipulations entered prior to trial in the bankruptcy court, correspondence from a collection agency, a report from a roofer concerning needed repairs to a building in the bankruptcy estate, and a description of title insurance issued on property that is part of the bankruptcy estate. On April 24, 1989, the district court found that Champion's various attachments were not the items required by Bankruptcy Rule 8006 and denied the motion to vacate.

On May 9, 1989, Champion filed a notice of appeal from the denial of the temporary restraining order, the dismissal of the bankruptcy appeal, and the denial of the motion to vacate the dismissal of the bankruptcy appeal.

[1] We do not have appellate jurisdiction over the order denying the motion for a temporary restraining order. Such orders are ordinarily not appealable. *See, e.g., Educata Corp. v. Scientific Computers, Inc., 746 F.2d 429, 430 (8th Cir.1984)* (per curiam).

[2] Nor do we have appellate jurisdiction over the order dismissing the bankruptcy appeal. The May 9, 1989, notice of appeal was not timely filed within 30 days of the March 23, 1989, dismissal order. *See* Fed.R.App.P. 4(a)(1). We have treated the motion to vacate as one made under Fed.R.Civ.P. 59(e). *See Foman v. Davis, 371 U.S. 178, 179, 83 S.Ct. 227, 228-29, 9 L.Ed.2d 222 (1962)*. Because the motion to vacate was not served until April 11, 1989, more than 10 days after the March 23, 1989, dismissal order was filed, the motion to vacate did not toll the running of the 30-day period for filing the notice of appeal. Fed.R.App.P. 4(a)(4).

[3][4] We do have appellate jurisdiction over the order denying the motion to vacate because the May 9, 1989, notice of appeal was timely filed within 30 days of the April 24, 1989, order. However, our standard of review is limited to abuse of discretion. In the present case, the district court dismissed the appeal because Champion failed to file either a designation of the record or a statement of issues as required by Bankruptcy Rule 8006. She did not file the missing items with the motion to vacate and has yet to do so. We hold the district court did not abuse its discretion in denying the motion to vacate the dismissal under these circumstances.

Accordingly, we dismiss for lack of appellate jurisdiction the part of the appeal challenging the orders denying the request for a temporary restraining order and dismissing the bankruptcy appeal and summarily affirm the order denying the motion to vacate the dismissal. The requests for an expedited hearing, for a stay pending appeal and for other relief, including permission to sell a building that is part of the bankruptcy estate and removal of the receiver, are dismissed as moot.

Champion's motion for stay pending appeal filed January 25, 1990, has been considered by the court and is denied.

C.A.8 (Neb.),1990.
In re Champion
895 F.2d 490, 15 Fed.R.Serv.3d 1362, 20 Bankr.Ct.Dec. 340

END OF DOCUMENT

Westlaw.

17 F.3d 1276                                                                          Page 1
17 F.3d 1276, 25 Bankr.Ct.Dec. 442
**(Cite as: 17 F.3d 1276)**

**H**

Nielsen v. PriceC.A.10 (Utah),1994.
United States Court of Appeals,Tenth Circuit.
Elwood L. NIELSEN and Lynn Nielsen, Plaintiffs-
Appellants,
v.
Lois PRICE, Trustee; Lois L. Nielsen Estate; Grant
Thornton, appointed trustee for Chapter 7 Bankruptcy
case of Elwood and Lynn Nielsen, Defendants-
Appellees,
Dunford Weston; Dunford M. Weston Family
Partnership, Intervenors-Appellees.
**No. 93-4072.**

Feb. 23, 1994.

Chapter 7 debtors brought adversary proceeding, and
adverse judgment was entered against them by the
United States Bankruptcy Court for the District of
Utah. Debtors appealed. The District Court, Dee V.
Benson, J., entered order dismissing debtors' appeal
for failure to prosecute, and debtors appealed. The
Court of Appeals, Tacha, Circuit Judge, held that:
(1) debtors would be held to same rules of
bankruptcy procedure as governed other litigants,
notwithstanding their pro se status, and (2) debtors'
obligation to designate record on appeal, and to file
timely brief, were not stayed by automatic stay in
effect in second bankruptcy case filed by debtors
during pendency of their appeal.

Affirmed.
West Headnotes
**[1] Bankruptcy 51 ⚖️3777**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3777 k. Record; Assignments of Error;
Briefs. Most Cited Cases
Dismissal of Chapter 7 debtors' pro se appeal from
adverse judgment of bankruptcy court, based on
debtors' unexplained failure to designate record or to
timely file a brief, was not abuse of discretion,
though debtors did not have attorney's assistance.
Fed.Rules Bankr.Proc.Rules 8001, 8006, 8009(a), 11
U.S.C.A.

**[2] Bankruptcy 51 ⚖️3784**

51 Bankruptcy

51XIX Review
    51XIX(B) Review of Bankruptcy Court
        51k3784 k. Discretion. Most Cited Cases
Court of Appeals reviews district court's decision
dismissing bankruptcy appeal for failure to prosecute
under abuse of discretion standard. Fed.Rules
Bankr.Proc.Rule 8001, 11 U.S.C.A.

**[3] Bankruptcy 51 ⚖️2127.1**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(A) In General
            51k2127 Procedure
                51k2127.1 k. In General. Most Cited
Cases
Pro se litigants must follow same rules of bankruptcy
procedure as govern other litigants.

**[4] Bankruptcy 51 ⚖️2395**

51 Bankruptcy
    51IV Effect of Bankruptcy Relief; Injunction and
Stay
        51IV(B) Automatic Stay
            51k2394 Proceedings, Acts, or Persons
Affected
                51k2395 k. Judicial Proceedings in
General. Most Cited Cases
Chapter 7 debtors' obligation to designate record on
appeal, and to file a brief within time designated by
district court, was not stayed as a result of their filing
of second bankruptcy case during pendency of their
appeal from adverse judgment of bankruptcy court in
prior adversary proceeding commenced by debtors.
Bankr.Code, 11 U.S.C.A. § 362(a)(1); Fed.Rules
Bankr.Proc.Rules 8006, 8009(a), 11 U.S.C.A.

**[5] Bankruptcy 51 ⚖️2395**

51 Bankruptcy
    51IV Effect of Bankruptcy Relief; Injunction and
Stay
        51IV(B) Automatic Stay
            51k2394 Proceedings, Acts, or Persons
Affected
                51k2395 k. Judicial Proceedings in
General. Most Cited Cases
Automatic stay applies to actions which are against
debtor at their inception, regardless of subsequent
appellate posture of case. Bankr.Code, 11 U.S.C.A. §

17 F.3d 1276                                                                                                    Page 2
17 F.3d 1276, 25 Bankr.Ct.Dec. 442
**(Cite as: 17 F.3d 1276)**

362(a)(1).

**\*1276** Elwood L. Nielsen and Lynn Nielsen, pro se.
James C. Jenkins of Jenkins and Burbank, Logan, Utah, for Defendant-Appellee Lois Price.
Harriet E. Styler and Kevin R. Anderson of Kruse, Landa & Maycock, Salt Lake City, Utah, for Defendant-Appellee Grant Thornton.
**\*1277** Gregory Skabelund, Logan, Utah, for Intervenors-Appellees Dunford Weston and The Dunford Weston Family Partnership.

Before TACHA and BRORBY, Circuit Judges, and BROWN,[FN*] Senior District Judge.

> FN* Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

TACHA, Circuit Judge.
[1][2] Plaintiffs, acting pro se, seek review of a district court order dismissing their appeal from an adverse judgment of the bankruptcy court.[FN1] The district court concluded that, "[a]lthough [plaintiffs] filed a timely Notice of Appeal ..., they have failed to comply with any of the other pertinent rules governing an appeal from the Bankruptcy Court." R. Vol. I tab 7, at 1. Specifically, the district court found plaintiffs had failed both to designate the record on appeal and to file a statement of the issues to be raised. See Bankr.R. 8006. Plaintiffs also did not file a brief within the time designated by the district court. See Bankr.R. 8009(a). Accordingly, the court exercised its discretionary authority under D.Utah R. 413 and Bankr.R. 8001 to dismiss the case for failure to prosecute. R. Vol. I tab 7, at 3. We review this ruling for an abuse of discretion. Balaber-Strauss v. Reichard (In re Tampa Chain Co.), 835 F.2d 54, 55 (2d Cir.1987); International Bhd. of Teamsters v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 774 F.2d 1303, 1305 (5th Cir.1985).

> FN1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

[3][4][5] This court has repeatedly insisted that pro se parties "follow the same rules of procedure that govern other litigants." Green v. Dorrell, 969 F.2d 915, 917 (10th Cir.1992), cert. denied, 507 U.S. 940, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993); see Casper v. Commissioner, 805 F.2d 902, 906 n. 3 (10th Cir.1986); Bradenburg v. Beaman, 632 F.2d 120, 122 (10th Cir.1980), cert. denied, 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981). Plaintiffs do not dispute the cited rule violations. Indeed, plaintiffs do not even attempt to present an explanation or excuse for their noncompliance.[FN2] Under the circumstances, we will not disturb the district court's determination that dismissal was warranted. See Balaber-Strauss, 835 F.2d at 56 (affirming district court's dismissal of appeal where appellants "argue [d] only the merits of their bankruptcy appeal, which of course are not before us, and d[id] not even address the failure-to-prosecute ground of the district court's dismissal of that appeal").

> FN2. We note that, after filing their appeal with the district court, plaintiffs each commenced a second bankruptcy action, this time in the District of Nevada, and then invoked the existence of the latter actions to seek a stay, presumably under 11 U.S.C. § 362(a)(1), to postpone their already tardy appellate responsibilities in this case. The district court properly rejected this gambit when it dismissed plaintiffs' appeal. The § 362(a)(1) stay applies to actions that are "against the debtor" at their inception, regardless of the subsequent appellate posture of the case. See Ellis v. Consolidated Diesel Elec. Corp., 894 F.2d 371, 373 (10th Cir.1990). Moreover, we are concerned with the parties' alignment with respect to this particular adversary proceeding, not the underlying petition. O'Neill v. Continental Airlines, Inc. (In re Continental Airlines), 928 F.2d 127, 129 (5th Cir.1991). Accordingly, § 362(a)(1) did not operate to stay this adversary proceeding commenced by the debtor-plaintiffs.

The judgment of the United States District Court for the District of Utah is AFFIRMED. Appellants' ex parte motion to supplement the record with the file from appellant Elwood Leslie Nielsen's 1978 divorce proceeding is denied.

C.A.10 (Utah),1994.
Nielsen v. Price

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

17 F.3d 1276                                                                                                           Page 3
17 F.3d 1276, 25 Bankr.Ct.Dec. 442
**(Cite as: 17 F.3d 1276)**


17 F.3d 1276, 25 Bankr.Ct.Dec. 442

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in B.R.                                                        Page 1
Not Reported in B.R., 2004 WL 1166652 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 17
**(Cite as: 2004 WL 1166652 (Bankr.D.Del.))**

H

United States Bankruptcy Court,
D. Delaware.
In re: BRAC GROUP, INC. (f/k/a Budget Group,
Inc., et al., Debtors.
BRAC GROUP, INC. (f/k/a Budget Group, Inc., et
al., Plaintiffs and Counterclaim
Defendants,
v.
JAEBAN (U.K.) LIMITED, Defendant and
Counterclaim Plaintiff.
**No. 02-12152(CGC), 03-54271(CGC).**

May 25, 2004.

Robert S. Brady, Edmon L. Morton, Joseph A.
Malfitano, Matthew B. Lunn, Young Conaway
Stargatt & Taylor, LLP, Wilmington, DE, and Larry
J. Nyhan, Kenneth E. Wile, Sidley Austin Brown &
Wood LLP, Chicago, IL, for Debtors and Debtors-in-
Possession.

Brian A. Sullivan, Amy D. Brown, Werb & Sullivan,
Wilmington, DE, for Ibrahiem Jaeban, Assignee of
Defendant Jaeban (U.K.) Limited.

*MEMORANDUM OPINION*

CASE, Bankruptcy J.

I. *INTRODUCTION*

**\*1** Debtors, including BRAC Rent-A-Car
International, Inc. ("BRACII"), [FN1] sued Jaeban
(U.K.) Limited ("Jaeban"), a Budget licensee in the
United Kingdom, to resolve outstanding issues on
"cure" amounts under an assumed executory contract
and for affirmative relief. Jaeban counterclaimed.
BRACII now seeks to strike Jaeban's answer,
affirmative defenses and counterclaims as a sanction
for wilful failure to participate in this proceeding.
(Docket No. 27).

> FN1. All plaintiffs will be collectively
> referred to as "BRAC."

II. *FACTS*

A. *Background*

Debtors filed their respective voluntary petitions for
relief under Chapter 11 of the Bankruptcy Code on

July 29, 2002. Shortly thereafter, on August 22, 2002,
Debtors and Cherokee entered into an agreement of
sale of Debtors' North American assets (the
"Cherokee ASPA"). This sale excluded Debtors'
business in Europe, the Middle East and Africa
("EMEA"). The sale was approved on November 8,
2002, and closed on November 22, 2002.

On January 7, 2003, BRAC began insolvency
proceedings in England and an administrator was
appointed on January 14, 2003. BRACII is a U.S.
company, a direct subsidiary of BRAC Rent-A-Car
Corporation, and an indirect subsidiary of BRAC
Group, Inc.

B. *The BRAC/Jaeban Agreements*

Pursuant to an Umbrella Agreement dated May 5,
2001, which included an International Prime License
Agreement (the "IPLA"), BRAC (as licensor) agreed
to license the Budget trademark to Jaeban in return
for certain royalties and other payments (airport
concessions, rent, insurance, and customer
complaints for the years 2001, 2002 and 2003
[FN2]). Mr. Ibrahiem Jaeban ("Mr.Jaeban"), a
principal of Jaeban, signed a personal guarantee in
the amount of £500,000 in favor of BRAC arising out
of obligations of Jaeban to BRAC.

> FN2. Set out in the Budget Operating
> Manual and incorporated in Article III of the
> IPLA, p. 13.

C. *The Sale to Avis Europe plc*

On January 10, 2003, Debtors entered into an
agreement with Avis Europe plc ("Avis") to sell its
EMEA assets, including the assignment of its license
and related agreements with Jaeban. BRAC sent
notice of the proposed assumption and assignment to
Jaeban, citing £0 owing as a "cure amount" and an
unspecified amount of damages owed by Jaeban to
BRAC for breach of contract. Jaeban objected on the
grounds that BRAC owed it a net amount "not to
exceed $4.5 million." The sale was approved on
February 23, 2003, and closed on March 11, 2003,
and included the assumption of the Jaeban contract
by BRAC and its assignment to Avis. At the time of
closing, the Jaeban "cure" amount was unresolved;
therefore, BRAC put $4.5 million in escrow to secure
payment of the maximum amount claimed by Jaeban.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                                                Page 2
Not Reported in B.R., 2004 WL 1166652 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 17
(Cite as: 2004 WL 1166652 (Bankr.D.Del.))

D. *The Adversary Proceeding*

1. *The Filing of the Adversary Proceeding*

On July 9, 2003, BRAC filed this adversary proceeding against Jaeban seeking an order compelling Jaeban to turn over the amounts due under the IPLA in the amount of £3,006,009.10, plus interest and costs (approximately $5.4 million, U.S. dollars) (£812,484.91 for 2001; £2,034,454.81 for 2002; and £159,150.38 for 2003), overruling Jaeban's objection that BRAC owes net cure amounts, and releasing to BRAC the amounts held in escrow.

**\*2** Jaeban answered and counterclaimed on August 22, 2003, denying all substantive allegations of the complaint, and asserting various affirmative defenses, including that BRAC may not recover its claim to the extent that Jaeban (1) has a right to set off; (2) has a right of recoupment; (3) has paid/satisfied the amount allegedly owed; (4) was required to cover for BRAC's breaches; and (5) has suffered consequential and incidental damages and lost profits.

Jaeban asserted the following Counterclaims: Counterclaim I alleges that BRAC breached the ILPA by failing to (1) adequately market the Budget trademark, (2) perform administrative functions, and (3) provide integrated services across critical territories; Counterclaim II alleges that BRAC failed to remit payment mistakenly made to them but owed to Jaeban in the amount of £49,724.47; and Counterclaim III alleges that BRAC provided a guaranty to Jaeban, whereby BRAC, as primary obligor, guaranteed the obligation of BRAC's subsidiary BTI (U.K.) Plc ("BTI") for leasing vehicles. Jaeban alleges it leased vehicles to BTI for which BTI owes at least £351,180.82. In addition, Jaeban asserts damages of £70,000 arising out of BTI's alleged failure to return the vehicles. Thus, Jaeban's damage claim is £470,904.49 plus unspecified general damages. [FN3]

> FN3. Jaeban's alleged entitlement to £4.5 million is not further specified beyond this general claim.

BRAC denies owing any amount to Jaeban, and asserts the following affirmative defenses: (1) BRAC's right to set off exceeds the full amount of Jaeban's claim; (2) BRAC's right to recoupment exceeds Jaeban's claim; (3) any valid claims have been paid or satisfied by BRAC; and (4) Jaeban cannot recover because BRAC was required to cover

for Jaeban's breaches.

BRAC served its First Request for Production of Documents to Jaeban on September 23, 2003. The parties agreed to extend the response deadline to November 3, 2003. [FN4] BRAC alleges that Jaeban provided an incomplete set of documents. Jaeban counters that it listed 2,500 pages of documents (10 lever arch files) in its original disclosures and forwarded the documents to BRAC on November 17, 2003.

> FN4. This extension arose from the appointment of the Administrative Receiver described *infra.*

On November 26, 2003, BRAC served its Second Request for Production of Documents on Jaeban, due January 5, 2004. Jaeban indicated that it would provide documents and deposition dates, but did not. BRAC alleges that Jaeban did not respond in writing to the Second Request for Production of Documents; however, Jaeban claims to have responded on December 30, 2003. January 30, 2004 was the discovery deadline.

2. *The January 12, 2004 Hearing*

Up to this point, Jaeban had been represented by Delaware counsel Morris, Nichols, Arsht & Tunnell and the matter was proceeding fairly routinely. However, the landscape changed on October 20, 2003, when, due to Jaeban's own financial difficulties, an Administrative Receiver was appointed by its secured creditors. [FN5] On January 7, 2004, Delaware counsel for Jaeban moved to withdraw, on the grounds that Jaeban had "failed substantially to fulfill its obligations regarding the firm's services." The Motion stated that the U.K. solicitors, Wragge & Company, would continue to represent Jaeban. At a hearing on January 12, 2004, the withdrawal motion was granted and Jaeban was directed to retain Delaware counsel. In addition, BRAC advised the Court that by January 16, 2004, it would file a Motion for Partial Summary Judgment seeking an allegedly agreed upon amount. Jaeban was ordered by the Court to file a response to the motion by January 30, 2004, advised that failure to file a response would be taken as consent to the relief requested, and further advised that a response by U.K. counsel would not be acceptable. (Transcript p. 36). Mr. Allen, a U.K. solicitor with Wragge & Company, attended the hearing telephonically and stated that he understood the terms of the orders issued to Jaeban.

Not Reported in B.R.                                                                                          Page 3
Not Reported in B.R., 2004 WL 1166652 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 17
(Cite as: 2004 WL 1166652 (Bankr.D.Del.))

FN5. The appointment of an Administrative Receiver is a non-judicial procedure permitted under applicable English law.

*3 BRAC's counsel inquired if they should proceed by a Motion to Compel with respect to documents and depositions. The Court responded "yes ... one of two things will happen: Either the documents and deposition will take place or you will be able to ask for sanctions [to] render that not necessary. But you can only ... get that kind of sanction in the context of ... disobeying an Order to compel, frankly. So, you should proceed on that same basis.... [T]hey're still entitled to their due process that comes from motion [practice] and discovery disputes and I think that would be the best way to proceed." (Transcript p. 37--38).

Although, BRAC filed a Motion for Partial Summary Judgment which was set for hearing on February 4, 2004, it did not file a Motion to Compel.

3. *The February 4, 2004 Hearing*

The Motion for Partial Summary Judgment was unopposed. Consistent with the directions of the Court on January 12, 2004, the motion was granted. Mr. Allen, the U.K. solicitor for Jaeban, attended the hearing telephonically. He informed the Court that Jaeban was still in the hands of the Administrative Receiver, that few funds remained, and that this matter is being assigned to a third party. (Transcript p. 44).

At the February 4, 2004, hearing, BRAC stated that, on February 3, 2004, it had filed a Motion for Sanctions seeking to strike Jaeban's Counterclaims-- the basis for its cure objection thereby allowing the escrow account to be released. (Transcript p. 50). The Court ordered Jaeban to respond, through Delaware counsel, to the Motion for Sanctions, and set a March 10, 2004 hearing and stated that failure to respond could lead to the motion being granted for lack of opposition. (Transcript p. 48--49).

At the hearing, the Court made it clear that it had not yet reviewed the Motion for Sanctions. The Motion asks the Court to strike Jaeban's answer, affirmative defenses and counterclaims for "failing to obtain Delaware counsel, comply with the Court's scheduling order, or advance this proceeding." The specific offensive acts are:
    a. Failure to obtain Delaware counsel; and
    b. "Repudiation" of the Revised Scheduling Order

setting January 30, 2004, as the deadline for completion of discovery.

Debtors contends there are no sanctions other than dismissal that can adequately address these failures by Jaeban, relying primarily upon *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863 (3d Cir.1984).

4. *Jaeban Assigns its Counterclaims*

On February 20, 2004, the Jaeban Receiver purportedly assigned its claim against BRAC to Mr. Jaeban, the former Managing Director and principal shareholder in Jaeban. Mr. Jaeban paid £5,000 (plus VAT), 10% of any settlement, waived certain claims, and completely indemnified the Receiver for any loss. Although Mr. Jaeban was assigned Jaeban's claim, he has not assumed Jaeban's liability to BRAC. Mr. Jaeban thereafter retained Delaware counsel and opposed the Motion to Strike on the grounds that the counsel issue had now been resolved and that the six *Poulis* factors, as applied to Mr. Jaeban as assignee, did not support the "drastic" remedy of dismissal.

*4 Mr. Jaeban argues that the Jaeban's failure to actively participate in this litigation was not Jaeban's fault. According to Mr. Jaeban, once the Administrative Receiver was appointed for Jaeban in October 2003, control of Jaeban lay with the Receiver, who under English law only owes a duty to the charge holder responsible for their appointment (i.e., the creditor, Close Invoice Finance Limited) and not other potential creditors. Over the first few months of the appointment of the Administrative Receivers, Jaeban and its U.S. counsel lacked any authority or direction from the Administrative Receivers to proceed with the case. In fact, U.S. counsel ultimately withdrew from the case because it was made clear to counsel that the Receiver would probably not be pursuing the case or that counsel would not be paid for its work.

Ultimately, in early 2004, the Administrative Receiver for Jaeban decided to assign the Jaeban counterclaims to Mr. Jaeban. Mr. Jaeban states he is ready to proceed with this case and has hired Delaware counsel for that purpose. Based on this factual history, therefore, Mr. Jaeban contends that dismissal of Jaeban's answer and counterclaims is unwarranted.

Such a drastic sanction "should be reserved for those cases where there is a clear record of delay or contumacious conduct" by the offending party. *See*

Not Reported in B.R.                                                                                                   Page 4
Not Reported in B.R., 2004 WL 1166652 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 17
**(Cite as: 2004 WL 1166652 (Bankr.D.Del.))**

*Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 866 (3d Cir.1984) (citing *Donnelly v. Johns-Manville Sales Corp.,* 677 F.2d 339, 342 (3d Cir.1982)). According to Mr. Jaeban, neither he nor Jaeban engaged in any wrongful conduct. The failure to participate in the case, respond to discovery, and comply with Court orders was the result of the Administrative Receiver in England, over which Jaeban and Mr. Jaeban had no control.

BRAC replied, arguing that the true defendant, Jaeban, has yet to respond to the Motion to Strike, that Mr. Jaeban has no standing to file an objection because the assignment is invalid, [FN6] and that even if the assignment is valid, Mr. Jaeban is legally bound by his assignor's conduct.

> FN6. There are three anti-assignment provisions in the various contracts between the parties: (1) Umbrella Agreement Clause 4.3; (2) Umbrella Agreement Clause 2.6; and (3) IPLA paragraph 12.2(a).

The Motion was heard on the March 10, 2004, calendar, at which time it was taken under advisement.

III. *DISCUSSION*

BRAC now seeks an order striking Jaeban's Answer, Affirmative Defenses and Counterclaims as a sanction for Jaeban's failure to obtain Delaware counsel, comply with the Court's scheduling order, or otherwise advance this adversary proceeding.

BRAC seeks sanctions under a variety of legal theories, including Rules 37(b)(2)(C), 41(b) and 16(f) of the Federal Rules of Civil Procedure and 11 U.S.C. § 105(a). The Debtors also urge that sanctions should be awarded under D. Del. R. 1.3(a) and 85.3(d) against Jaeban for its failure to maintain Delaware counsel, as directed by the Court. BRAC seeks the harshest possible sanctions against Jaeban-- complete dismissal of Jaeban's answer, affirmative defenses and counterclaims.

Clearly, there has been a failure on the part of Jaeban to prosecute this case in a responsible way. The issue presented is not whether sanctions of some sort are appropriate but rather whether the drastic sanction of dismissal is proper remedy. The holding in *Poulis* clearly states that dismissal is a sanction of last resort and should be issued only in cases of "flagrant bad faith" by the offending party. *Id.* at 868. The Third Circuit has enumerated six nonexclusive factors to

consider in determining whether to impose the ultimate sanction:
**\*5**  1. the extent of the party's personal responsibility;
2. the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
3. a history of dilatoriness;
4. whether the conduct of the party or the attorney was willful or in bad faith;
5. the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
6. the meritoriousness of the claim or defense.
*Id.* at 868 (original emphasis omitted). Here, while there has been misconduct, it is a stretch to label it "flagrant." The defense and prosecution of this case by Jaeban got caught up in a proceeding over which neither this Court nor Jaeban itself had any control. An administrative receivership under English law is, to the U.S. lawyer's eye, an odd proceeding because it materially affects a debtor's rights and interests without any judicial oversight or due process. [FN7] Up until the time of the receivership, the litigation was proceeding normally and no threats (or at least certainly no motions) of sanctions had been made. Thus, there has been no personal misconduct by either Defendant Jaeban itself or Mr. Jaeban as principal or, later, as assignee. Any "fault" for the delays and failures to respond and comply, if that is how it should be characterized, lies with the Administrative Receiver and not Jaeban, which in practical terms effectively ceased to exist as an independent entity once it went into receivership.

> FN7. A secured creditor with a floating charge is given the unilateral right under the loan documents to appoint a receiver who will take possession of the borrower's assets when the creditor itself determines that there has been a default. The procedure has been largely abolished, other than for existing loan documents and certain capital market transactions. See *http://www.insolvency.gov .uk/reform.htm*

Prior to receivership, Jaeban did appropriately participate in the proceedings. Similarly, Mr. Jaeban now seeks to participate upon assignment to him of the claims. Nothing in the case indicates that counsel for Jaeban or Mr. Jaeban has engaged in any willful misconduct or bad faith.

However, Debtors argue that by the assignment (even assuming it to be valid), Mr. Jaeban stands in

Not Reported in B.R.                                                                                        Page 5
Not Reported in B.R., 2004 WL 1166652 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 17
(Cite as: 2004 WL 1166652 (Bankr.D.Del.))

the shoes of the assignor and cannot stand on better legal footing than the assignor would. While this proposition may be generally true, the argument assumes that this Court would have agreed with Debtors to dismiss the answer, affirmative defenses and counterclaims as a sanction against Jaeban and/or the Administrative Receiver if they were in fact present before this Court. While not pleased with the fact that the Receiver failed to communicate forthrightly with Debtors and inform them it needed time to decide whether to pursue the matter, assign it or do otherwise, the Court does not find that the Receiver's conduct was in bad faith as spelled out in *Poulis* or that the facts of this case satisfy any of the other elements of *Poulis* justifying dismissal as the appropriate sanction. The reality is that the hiatus between the beginning of "radio silence" and the assignment was relatively short. And, because of the unusual circumstances of the receivership, attributing any bad acts to the assignee here would be manifestly unfair.

Debtors' argument that it is has been "prejudiced by the continuing segregation of $4,500,000 of their funds in escrow" is underwhelming. As Debtors acknowledge, the funds are in escrow and are not being diminished in any way. Beyond having to wait for these funds and to suffer delay in this case, no other prejudice has been alleged.

*6 Perhaps more importantly, there are other, less drastic sanctions available. Debtors recognize that sanctions are available under Rules 16(f), 37(a), (b), and (g) of the Federal Rules of Civil Procedure, which permit a court to award as sanctions the reasonable expenses incurred, including attorney's fees, as a result of a party's failure to obey a scheduling or pretrial order (Rule 16(f)), to comply with a discovery order (37(b)), or to participate in the framing of a discovery plan (37(g)). [FN8]

> FN8. The nature of the sanctions to be imposed will be set forth *infra.*

Finally, Rule 37(a)(4) expressly requires Debtors to file a motion to compel before the sanction of dismissal can be invoked. Debtors never filed a motion to compel, despite this Court's clear instruction to the Debtors to do so. Rules 16(f) and 37(b) counsel against sanctions where the failure to comply was "substantially justified or that other circumstances make an award of expenses unjust." The Court returns to the fact that the problems suffered here were the result of a unique situation whereby the administrative receivership left Jaeban

(and now Mr. Jaeban) without any real course of action until the assignment of the counterclaims. In the end, Debtors are complaining about the failures of the Administrative Receiver for Jaeban; it makes no argument that Mr. Jaeban failed to comply with the Court's orders or actively sought to delay these proceedings.

The issue that remains, however, is whether the assignment was valid. BRAC argues it was not. BRAC and Jaeban's business relationship was one of licensor and licensee, respectively, under two separate agreements—an Umbrella Agreement and an International Prime License Agreement. Under these agreements, Debtors agreed to license the Budget trademark to Jaeban in return for certain royalties and other payments, such as airport concessions, rent, insurance and customer complaints. Within those agreements, there are three different anti-assignment clauses upon which the Debtors rely. Clause 4.3 of the Umbrella Agreement provides that "[t]he parties to this Agreement other than Budget shall not have the right to assign or otherwise dispose of this Agreement or their interest in this Agreement without prior written consent of Budget." Clause 2.6 of the Umbrella Agreement similarly provides that "[e]ach party agrees to procure that, without prejudice to the provisions of Clause 4.3, its transferees and assignees, shall as a condition precedent to any transfer or assignment to them execute a document in such form as Budget may reasonably require by which such transferee or assignee effectively assumes all its assignor's and transferor's obligations and undertakings hereunder in favour of the other Parties hereto with effect from the date of assignment or transfer." And, last, Paragraph 12.2(a) of the International Prime License Agreement provides that "[n]one of this Agreement, the Beneficial Ownership of Licensee or Licensee's BRAC business, or any company within the Group of which Licensee is a member, may be voluntarily, involuntarily, directly or indirectly sold, actually or contingently, assigned or otherwise transferred by Licensee ..., without the prior written consent of Budget in accordance with this Agreement."

*7 The anti-assignment provisions are not applicable to the situation here. The most obvious problem is that these anti-assignment provisions apply to the assignment of the agreements themselves; the underlying purpose is to allow the Debtors to control who may use its trademarks and under what terms. However, a review of the Deed of Assignment of Claim Against BRAC Group Inc., between Jaeban and Mr. Jaeban, expressly assigns only Jaeban's

Not Reported in B.R.                                                                                                     Page 6
Not Reported in B.R., 2004 WL 1166652 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 17
**(Cite as: 2004 WL 1166652 (Bankr.D.Del.))**

*claims* to Mr. Jaeban and not any of the actual provisions or rights and obligations under the licensing agreements: "[T]he Assignor will, subject to the terms of this Deed, assign to the Assignee its claim against BRAC Group Inc, et al ... and the benefits and proceeds arising from such claim." While Debtors contend otherwise, the Court does not agree. Mr. Jaeban is not seeking to step into Jaeban's shoes under these agreements and become Debtors' UK licensee.

And, of course, that would be impossible as Debtors no longer own the assets that would be licensed, having sold them over a year ago. The fundamental purpose of the anti-assignment clauses no longer exists. To enforce those clauses now would exalt form over substance. Therefore, to summarize how the *Poulis* factors apply to this case:

1. The current holder of the claim, Mr. Jaeban, is not personally responsible for the delays and failures to abide by the discovery schedule. Under these circumstances, the actions of the Receiver should not be attributed to Jaeban or to him.

2. The prejudice to BRAC is minimal. If Debtors prevail, they will receive the funds in escrow which are fully protected. Debtors' claims against Jaeban (which have not been assumed by Mr. Jaeban) will be protected as set forth below.

3. The assignee has no history of dilatoriness and the inaction of the Receiver occurred during a relatively limited time period.

4. Neither Jaeban nor Mr. Jaeban has acted in bad faith. The facts are not sufficient to support a finding of bad faith on the part of the Receiver. For example, Mr. Allen, the U.K. solicitor, did appear at hearings and explain the status of the receivership and the reasons for failure to comply.

5. There are other sanctions that will adequately protect the interests of BRAC.

6. There is no record on the meritoriousness of the claim of Jaeban. This factor is in BRAC's favor.

Under *Poulis,* therefore, dismissal is not an appropriate sanction.

IV. *Sanctions to be Imposed*

The issue remains how to get this matter to conclusion and what sanctions are appropriate for the failure to comply with the existing discovery schedules. The Court has wide discretion in this area.

1. BRAC already has a judgment against Jaeban for approximately £328,000 plus remaining unliquidated claims. The separation of Jaeban's claim against BRAC (assigned to Mr. Jaeban) and the liability of Jaeban to BRAC (not assumed by

Mr. Jaeban) should not prejudice BRAC's rights. Therefore, Mr. Jaeban's further participation in this proceeding shall be expressly conditioned upon BRAC's ability to offset its current judgment, and any future judgment, against any affirmative recovery obtained by Mr. Jaeban, as assignee, against BRAC. Further, Mr. Jaeban's affirmative recovery will be limited to a maximum of the $4.5 million currently in escrow, less the amounts set forth in this order. Therefore, BRAC is entitled to the immediate release of the dollar equivalent of its existing judgment from the escrow and Jaeban's maximum potential recovery shall be reduced accordingly. This is without prejudice to BRAC's ability to assert any such claim affirmatively against Jaeban in the event the counterclaims are unsuccessful and it is thereafter otherwise entitled to the full release of the escrow.

**\*8** 2. BRAC is entitled to its attorney's fees and costs incurred specifically in this matter from October 20, 2003 to the present. Upon submitting a detailed statement of such fees under certification of counsel, and approval by the Court, BRAC is entitled to the immediate release of an amount equal to such fees and costs from the escrow and Jaeban's maximum potential recovery shall be reduced accordingly. This is without prejudice to BRAC's ability to assert any such claim affirmatively against Jaeban in the event the counterclaims are unsuccessful and it is thereafter otherwise entitled to the full release of the escrow.

3. The discovery cutoff is extended from January 30, 2004 to June 18, 2004. By that time, Mr. Jaeban is to:

a. Provide documents in response to Plaintiffs' Second Requests for Production of Documents (served on November 26, 2003);

b. Respond to concerns raised by Plaintiffs in a letter dated December 12, 2003 regarding apparent gaps in Jaeban's November production of documents;

c. Schedule depositions of any Jaeban personnel and the Jaeban Receiver.

Failure to meet this deadline will result in an order prohibiting Mr. Jaeban from introducing into evidence (or using in any other way) any documents not so produced and prohibiting testimony from any witnesses not produced for deposition. This is without prejudice to BRAC seeking other sanctions that may be appropriate under the circumstances after the discovery period has lapsed.

The Court will conduct a final scheduling conference on June 21, 2004 at 10:30 a.m. in Wilmington,

Not Reported in B.R.                                                                                Page 7
Not Reported in B.R., 2004 WL 1166652 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 17
**(Cite as: 2004 WL 1166652 (Bankr.D.Del.))**

Delaware.

It is so ORDERED.

Not Reported in B.R., 2004 WL 1166652
(Bankr.D.Del.), 43 Bankr.Ct.Dec. 17

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                      Page 1
Slip Copy, 2006 WL 1683653 (C.A.3 (N.J.))
**(Cite as: Slip Copy)**

**H**

Briefs and Other Related Documents
In re Richardson Indus. Contractors, Inc.C.A.3
(N.J.),2006.Only the Westlaw citation is currently
available.This case was not selected for publication
in the Federal Reporter.NOT PRECEDENTIAL
Please use FIND to look at the applicable circuit
court rule before citing this opinion. Third Circuit
Local Appellate Rule 28.3(a) and Internal Operating
Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3
IOP APP I 5.3.)
United States Court of Appeals,Third Circuit.
In re RICHARDSON INDUSTRIAL
CONTRACTORS, INC., Debtor.
Harry A. Richardson, Appellant
v.
Treacy, Shaffel, Moore & Mueller; Deanne Arnone;
Larry Blumenstyk; State of New Jersey; Salvatore
Arnone Andrea Dobin; US Trustee, Trustees.
**No. 05-3868.**

Submitted Under Third Circuit LAR 34.1(a) June 1,
2006.
Filed June 20, 2006.

**Background:** In bankruptcy proceedings, the
Bankruptcy Court denied debtor's majority
shareholder's motion for reconsideration of its order
denying his application for designation of new
independent counsel to prosecute debtor's claim.
Shareholder appealed. The United States District
Court for the District of New Jersey, Garrett E.
Brown, Jr., J., dismissed appeal, and shareholder
appealed.

**Holding:** The Court of Appeals held that dismissal of
appeal was abuse of discretion.

Vacated and remanded.
West Headnotes
**Bankruptcy 51 ⟜3778**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3778 k. Dismissal; Hearing. Most Cited
Cases
District court abused its discretion in dismissing
creditor's appeal of bankruptcy court order as
sanction for dilatory conduct, even though creditor

requested second extension of time to file brief at
eleventh hour and part of his difficulty in obtaining
transcripts in timely manner could be traced to his
failure to take immediate steps to file request, where
creditor timely requested extensions of time in which
to file his brief, and did file his brief prior to issuance
of district court's dismissal order.    Fed.Rules
Bankr.Proc.Rule 8006, 11 U.S.C.A.

Appeal from the United States District Court for the
District of New Jersey, (D.C. Civil No. 05-cv-
00501), District Judge: Honorable Garrett E. Brown,
Jr.

Harry A. Richardson, Staatsburg, NY, pro se.
Deirdre W. Pacheco, Wilentz, Goldman & Spitzer,
Woodbridge, NJ, for Trustees.
Larry Blumenstyk, Morristown, NJ, pro se.

Before RENDELL, AMBRO and ROTH, Circuit
Judges.

OPINION OF THE COURT
PER CURIAM.
**\*1** This appeal represents one of several cases arising
from disputes over a Federal Bureau of Prisons
construction contract on the New York Metropolitan
Detention Center (MDC). Appellant Harry
Richardson appeals from the District Court's order
dismissing his appeal with prejudice for failure to
follow the mandates of the Federal Rules of
Bankruptcy Procedure. For the reasons that follow
we will vacate and remand for further proceedings.

I.

After more than a decade of litigation, the parties are
now quite familiar with the facts and, thus, we only
briefly recite them here. In 2003, Richardson
Industrial Contractors, Inc. (RICI), commenced a
bankruptcy action in which Richardson, as RICI's
principal shareholder, joined as a creditor. See In re
Richardson Indus. Contractors, Inc., No. 03-26318
(Bankr.D.N.J.). On December 6, 2004, the
Bankruptcy Court entered an order denying
Richardson's motion for reconsideration of its order
denying his application for designation of a new
independent counsel to prosecute RICI's claim in the
United States District Court for the Eastern District

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 1683653 (C.A.3 (N.J.))

(Cite as: Slip Copy)

of New York. Richardson timely appealed to the United States District Court for the District of New Jersey.

Pursuant to the briefing schedule set by the District Court in accordance with Bankruptcy Rule 8009, Appellant's brief was due on February 10, 2005.[FN1] When the briefing schedule was issued, Appellant was also directed to furnish paper copies of all of the documents listed in the designation of the record. On February 4, 2005, Appellant sent a letter to the District Court Clerk requesting that the Clerk establish "a reasonable schedule and method of payment" for him to provide the documents and grant an extension of time until May 10, 2005 to submit his brief. On February 10, 2005, Appellant filed a letter motion with the Court requesting that it grant the extension of time requested in his February 4 letter.

Appellees Larry Blumenstyk and Salvatore and Deanna Arnone objected to Appellant's request, arguing that the motion was filed for the sole purpose of delay and that Appellant had not set forth any legitimate basis for extending the time to file his brief. On March 21, 2005, the District Court granted Appellant's motion, finding Appellant's request for a 90-day extension to be excessive, but granting Appellant a 60-day extension, until April 8, 2005, to file his brief.

On April 5, 2005, three days before the brief was due, Appellant filed a second request for an extension of time until May 10, the date the District Court had previously rejected as excessive. Appellant argued that upon receiving the Court's order granting him an extension of time, he contacted the Bankruptcy Court regarding the transcripts noticed in the designated record and was informed that, even with expedition, the transcripts would not be available until shortly after April 8. It appears from this statement that Appellant did not attempt to acquire these transcripts until after March 21 despite having filed his notice of appeal in the Bankruptcy Court on December 10, 2004. Appellant supplemented his motion with a letter to the Court dated April 6, 2005 indicating that the Bankruptcy Court had provided a disc to the transcription service containing incorrect data, thereby further delaying production of the transcripts.

*2 Appellees opposed Richardson's second motion, arguing that it did not differ substantially from his first, that it was merely a delaying tactic, and that Appellant had failed to promptly order transcripts after filing the designation of record as required by Federal Rule of Bankruptcy Procedure 8006.[FN2]

On May 9, 2005, while his motion for an extension of time was still pending, Richardson filed his appeal brief. On May 24, 2005, the District Court issued an order denying Richardson's motion for an extension of time and dismissing his appeal for failure to follow the Bankruptcy Rules and to timely file an appellate brief. The Court held that Appellant had intentionally disregarded its original order rejecting his request for a 90-day extension of time to file his brief and instead granting a 60-day extension; that while the Federal Rules of Bankruptcy Procedure provide 15 days in which to file an appellate brief, Appellant had been allowed more than two months in which to do so; and that Appellant had failed to take immediate steps after the filing of the designation of record to file a written request for transcripts as required by Federal Rule of Bankruptcy Procedure 8006. The Court concluded that Richardson's failure to honor the previously extended deadline of April 8, 2005, as well as his failure to comply with Federal Rule of Bankruptcy Procedure 8006, constituted egregious behavior and bad faith, and could not be considered excusable neglect. The Court further found that Richardson's actions could not satisfactorily be addressed by discovery sanctions or barring participation in oral argument, and therefore concluded that dismissal of the appeal pursuant to Federal Rule of Bankruptcy Procedure 8001 was warranted.

On June 6, 2005, Richardson timely moved for reconsideration, arguing that the District Court had misapplied the relevant case law and had not accorded sufficient consideration to Appellant's *pro se* and financial status in concluding that his appeal should be dismissed. The District Court held that Appellant had not met the stringent standard governing motions for reconsideration, and for the reasons stated in its initial order, denied Appellant's motion for reconsideration.[FN3] Richardson timely filed a notice of appeal.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a dismissal for failure to prosecute for abuse of discretion. *In re Jewelcor Inc.,* 11 F.3d 394, 397 (3d Cir.1993).

Appellant argues that the District Court erred in concluding that he had engaged in egregious behavior by failing to comply with the time limitations for filing his brief "due to the failure of the Bankruptcy

Court to forward the proper discs to the Court Reporter, due to the myriad of motions at that time and due to the complexity of the conflict la[w] that has to be researched." He maintains that he filed his brief "within the realistic period of time that he originally requested" and before the District Court had ruled on his brief. Appellant argues that he exhibited no bad faith or egregious conduct, that he in fact filed his brief 15 days before the District Court issued its decision, and that the Court failed to indicate what "other sanctions" it considered before deciding to dismiss his appeal. According to Appellant, at best his conduct may be characterized as "excusable neglect" and his late filing should be excused. While Appellee Larry Blumenstyk filed a response in which the Arnones joined, the response addresses the merits of the underlying appeal, rather than the District Court's dismissal of the appeal, and therefore we do not discuss it here.

**\*3** Under Rule 8001(a) of the Federal Rules of Bankruptcy Procedure, the District Court is empowered to dismiss an appeal for failure to prosecute or otherwise follow the procedures set out in the Bankruptcy Rules. In assessing the propriety of such an action, we have stated that:
we will be guided by the manner in which the trial court balanced the following factors, which have been enumerated in the earlier cases, and whether the record supports its findings: (1) the extent of the *party'* s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984). We have previously held that the failure of a district court to consider all of these factors prior to dismissing an action for failure to prosecute constitutes an abuse of discretion. *See Livera v. First Nat'l State Bank of New Jersey,* 879 F.2d 1186, 1188 (3d Cir.1989); *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 73-74 (3d Cir.1987).

In its initial order dismissing the appeal, the District Court concluded:
appellant's failure to honor the previously extended deadline of April 8, 2005 as set by this Court to file his appellate brief, as well as his failure to comply with the aforementioned requirement of Fed. R. Bankr.P. 8006 satisfies the egregious behavior, bad

faith and excusable neglect requirements which support dismissal of the appeal; and the Court further finding that less severe sanctions, which would include discovery sanctions, barring participation in oral argument and the like, fail to adequately address the utter failure of Appellant to follow the mandates of the Federal Rules of Bankruptcy Procedure, and as such, are rejected by this Court as viable alternatives to dismissal.

As we have explained, in reviewing a dismissal for failure to prosecute, we will be guided by the way in which the District Court balanced all six of the *Poulis* factors. *See Poulis,* 747 F.2d at 868; *see also United States v. $8,221,877.16 in United States Currency,* 330 F.3d 141, 162 (3d Cir.2003) (explaining that "we have always required consideration and balancing of *all six* of the factors, and have recommended the resolution of any doubts in favor of adjudication on the merits"). Here, the District Court considered only two of the six factors: Richardson's bad faith in requesting a second extension of time in which to file his brief and the ineffectiveness of alternative sanctions. Furthermore, the Court's discussion of these two factors was limited and did not set out the basis for its conclusions in such a way as to permit meaningful review of its decision. *See In re MacMeekin,* 722 F.2d 32, 35 (3d Cir.1983) (concluding that district court's mere description of counsel's conduct as " 'inexcusable neglect' " and "a 'conscious failure to comply' with discovery" does not adequately provide reviewing court with rationale for lower court's decision); *Quality Prefabrication, Inc. v. Daniel J. Keating Co.,* 675 F.2d 77, 80 (3d Cir.1982) (explaining that there must be some "articulation of the basis for the [district court's] action ... [to] enable the reviewing court to determine whether the relevant factors were considered and assigned appropriate weight in making the decision").

**\*4** As observed by the Eleventh Circuit, "[d]ismissal typically occurs in cases showing consistently dilatory conduct or the complete failure to take any steps other than the mere filing of a notice of appeal." *In re Beverly Mfg. Corp.,* 778 F.2d 666, 667 (11th Cir.1985). *see also Ware v. Rodale Press, Inc.,* 322 F.3d 218, 222 (3d Cir.2003) (approving use of dismissal as sanction for "utter failure" of plaintiff to provide defendant with damages calculation until eve of trial); *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994) (upholding dismissal of bankruptcy appeal for failure to follow Bankruptcy Rules or timely file appeal brief where plaintiffs provided no explanation or excuse for noncompliance); *In re Champion,* 895 F.2d 490, 492 (8th Cir.1990) (finding no abuse of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 4
Slip Copy, 2006 WL 1683653 (C.A.3 (N.J.))
**(Cite as: Slip Copy)**

discretion in dismissing appeal where appellant had not filed designation of record or statement of issues required by Bankruptcy Rule 8006); *In re Tampa Chain Co.,* 835 F.2d 54, 56 (2d Cir.1987) (affirming dismissal of bankruptcy appeal for failure to file brief for seven months after due date or provide any explanation for failure, even after court's inquiry into delinquency). By contrast, Appellant twice requested extensions of time in which to file his brief, citing difficulties in obtaining transcripts from the Bankruptcy Court proceedings. This is in line with our recommendation that when compliance with deadlines imposed either by the district court or court rules is not feasible, the litigant should timely request an extension. *See Poulis,* 747 F.2d at 868.

We recognize that Richardson did request the second extension of time at the eleventh hour and that part of his difficulty in obtaining the transcripts in a timely manner can be traced to his failure to comply with Bankruptcy Rule 8006. Such behavior is not excusable, and it is well within the authority of the District Court to impose an appropriate sanction. However, we have repeatedly held that "dismissals with prejudice ... are drastic sanctions, termed 'extreme' by the Supreme Court, and are to be reserved for comparable cases." *Poulis,* 747 F.2d at 867-68 (citation omitted). Under the present circumstances, where Appellant timely requested extensions of time in which to file his brief, and in fact did file his brief prior to issuance of the District Court's order, we conclude that dismissal was not appropriate.

Accordingly, we will vacate the District Court's order and remand for further proceedings.

> FN1. Richardson filed his notice of appeal in the Bankruptcy Court on December 10, 2004. The Bankruptcy Rules anticipate that a complete record will be assembled before being transmitted to the District Court for appeal. Thus, an appeal is not formally docketed until the record has been transmitted to the District Court, which in this case occurred on January 26, 2005. See Fed. R. Bankr.P. 8007(b). The time in which to file appeal briefs begins to run from the date the appeal is entered on the District Court docket. See Fed. R. Bankr.P. 8009(a).

> FN2. The Bankruptcy Rules require that, within ten days of filing a notice of appeal, an appellant file and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented. See Fed. R. Bankr.P. 8006. In addition, "[i]f the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost." *Id.*

> FN3. By the same opinion and order, the District Court also denied Richardson's motion for a stay pending appeal. Because Richardson does not address this issue in his appellate brief, we do not consider it here.

C.A.3 (N.J.),2006.
In re Richardson Indus. Contractors, Inc.
Slip Copy, 2006 WL 1683653 (C.A.3 (N.J.))

Briefs and Other Related Documents (Back to top)

• 05-3868 (Docket) (Aug. 30, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

747 F.2d 863                                                                   Page 1
747 F.2d 863, 40 Fed.R.Serv.2d 313
**(Cite as: 747 F.2d 863)**

▷

Briefs and Other Related Documents
Poulis v. State Farm Fire and Cas. Co.C.A.Pa.,1984.
United States Court of Appeals, Third Circuit.
Lefteri POULIS and Athena Poulis, his wife,
Appellants,
v.
STATE FARM FIRE AND CASUALTY
COMPANY.
No. 83-5600.

Argued April 3, 1984.
Decided Nov. 5, 1984.

On remand after prior appeal, 714 F.2d 124, a final order of the United States District Court for the Western District of Pennsylvania, at Pittsburgh, Alan N. Bloch, J., dismissed complaint with prejudice due to counsel's failure to meet court-imposed deadlines and other procedural requisites. On appeal by the plaintiffs, the Court of Appeals, Sloviter, Circuit Judge, held that: (1) evidence failed to sustain District Court's terming counsel's conduct "contumacious"; and (2) District Court could have imposed on plaintiffs' counsel personally costs, including attorney's fees, of preparing motion to compel answers to interrogatories and brief on alternative sanctions, all of which were incurred because of dilatoriness of plaintiffs' counsel, and thus District Court's conclusion that it had no alternative but dismissal because no other sanctions were appropriate was erroneous; but (3) on record, District Court was not shown to have abused its discretion in ordering dismissal as sanction for failure to comply with time limits, though Court of Appeals might not have reached same result as did the District Court judge.

Affirmed.
West Headnotes
**[1] Courts 106 🔑96(4)**

106 Courts
   106II Establishment, Organization, and Procedure
     106II(G) Rules of Decision
      106k88 Previous Decisions as Controlling or as Precedents
        106k96 Decisions of United States Courts as Authority in Other United States Courts
         106k96(4) k. Conclusiveness of Decisions of Court of Appeals Within Its Circuit.

Most Cited Cases
Whatever may be the personal views of the district court as to the merits vel non of decision of Court of Appeals, the district court is not free to "adopt" the dissent. U.S.Ct. of App. 3rd Cir. App. I, Internal Operating Procedures, Ch. 8, subd. C, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A 🔑1723.1**

170A Federal Civil Procedure
   170AXI Dismissal
     170AXI(B) Involuntary Dismissal
      170AXI(B)1 In General
        170Ak1723 Other Remedy, Availability or Prior Use of
         170Ak1723.1 k. In General. Most Cited Cases
      (Formerly 170Ak1723, 170Ak2, 170Ak11)

**Federal Civil Procedure 170A 🔑2412**

170A Federal Civil Procedure
   170AXVII Judgment
     170AXVII(B) By Default
      170AXVII(B)1 In General
        170Ak2412 k. Actions in Which Default Judgment Is Authorized. Most Cited Cases
Dismissals with prejudice, or defaults, are drastic sanctions, termed "extreme" by the Supreme Court in *National Hockey League*, and are to be reserved for comparable cases.

**[3] Federal Courts 170B 🔑820**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)4 Discretion of Lower Court
        170Bk820 k. Depositions and Discovery.
Most Cited Cases
Court of Appeals in determining whether there was abuse of discretion in dismissing, or in refusing to lift default, will be guided by manner in which trial court balanced: extent of party's personal responsibility; prejudice to adversary caused by failure to meet scheduling orders and to respond to discovery; history of dilatoriness; whether conduct of party or attorney was willful or in bad faith; effectiveness of sanctions other than dismissal, which entails analysis of alternative sanctions; and meritoriousness of claim or defense.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

747 F.2d 863                                                                                                          Page 2
747 F.2d 863, 40 Fed.R.Serv.2d 313
**(Cite as: 747 F.2d 863)**

[4] **Attorney and Client 45 ☞77**

45 Attorney and Client
    45II Retainer and Authority
       45k77 k. Scope of Authority in General. Most
Cited Cases

**Federal Civil Procedure 170A ☞1758.1**

170A Federal Civil Procedure
    170AXI Dismissal
      170AXI(B) Involuntary Dismissal
        170AXI(B)2 Grounds in General
          170Ak1758 Failure to Prosecute
            170Ak1758.1 k. In General. Most
Cited Cases
      (Formerly 170Ak1758)
Client cannot always avoid consequences of acts or
omissions of its counsel, and thus client's lack of
responsibility for counsel's dilatory conduct is not
dispositive of question of whether dismissal with
prejudice is appropriate sanction for delay in pretrial
procedures.

[5] **Attorney and Client 45 ☞32(7)**

45 Attorney and Client
    45I The Office of Attorney
      45I(B) Privileges, Disabilities, and Liabilities
        45k32 Regulation of Professional Conduct,
in General
          45k32(7) k. Miscellaneous Particular
Acts or Omissions. Most Cited Cases
Evidence failed to sustain district court's terming
counsel's conduct, in failing to observe time limits in
pretrial proceedings, as "contumacious."

[6] **Federal Civil Procedure 170A ☞1537.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
      170AX(D) Written Interrogatories to Parties
       170AX(D)3 Answers; Failure to Answer
        170Ak1537 Failure to Answer;
Sanctions
          170Ak1537.1 k. In General. Most
Cited Cases
      (Formerly       170Ak1537,       378k1537,
378k1539)

**Federal Civil Procedure 170A ☞1539**

170A Federal Civil Procedure

170AX Depositions and Discovery
    170AX(D) Written Interrogatories to Parties
      170AX(D)3 Answers; Failure to Answer
       170Ak1537    Failure    to    Answer;
Sanctions
        170Ak1539 k. Payment of Expenses.
Most Cited Cases
District court could have imposed on plaintiffs'
counsel personally costs, including attorney's fees, of
preparing    motion    to    compel    answers    to
interrogatories and brief on alternative sanctions, as
well as attorney fees on appeal on prior dismissal, all
of which were incurred because of dilatoriness of
plaintiffs' counsel, and thus district court's conclusion
that it had no alternative but dismissal because no
other sanctions were appropriate was erroneous.
Fed.Rules Civ.Proc.Rules 16(f), 37(a)(4), (b, d, g), 28
U.S.C.A.; 28 U.S.C.A. § 1927.

[7] **Federal Civil Procedure 170A ☞1723.1**

170A Federal Civil Procedure
    170AXI Dismissal
      170AXI(B) Involuntary Dismissal
        170AXI(B)1 In General
          170Ak1723 Other Remedy, Availability
or Prior Use of
            170Ak1723.1 k. In General. Most
Cited Cases
      (Formerly 170Ak1723)

**Federal Civil Procedure 170A ☞2816**

170A Federal Civil Procedure
    170AXX Sanctions
      170AXX(D) Type and Amount
        170Ak2811 Monetary Sanctions
          170Ak2816    k.    Multiplication    of
Proceedings. Most Cited Cases
      (Formerly 45k24)
Dismissal must be sanction of last, not first, resort,
and the most direct and therefore preferable sanction
for pattern of attorney delays would be to impose
excess costs caused by such conduct directly upon
attorney, with order that such costs are not to be
passed on to client, directly or indirectly. Fed.Rules
Civ.Proc.Rules 16(f), 37(a)(4), (b, d, g), 28 U.S.C.A.;
28 U.S.C.A. § 1927.

[8] **Federal Courts 170B ☞816**

170B Federal Courts
    170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

747 F.2d 863
747 F.2d 863, 40 Fed.R.Serv.2d 313
**(Cite as: 747 F.2d 863)**

Page 3

170BVIII(K)4 Discretion of Lower Court
    170Bk816  k.  Default  and  Opening
Thereof. Most Cited Cases

**Federal Courts 170B** 👉**818**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk818  k.  Dismissal.  Most Cited
Cases
In considering whether claim or defense appears to
be meritorious, for purpose of inquiry as to whether
there was abuse of discretion in dismissing for
pretrial delays, or in refusing to lift a default, Court
of Appeal does not purport to use summary judgment
standards, but, rather, claim or defense will be
deemed meritorious when allegations of pleadings, if
established at trial, would support recovery by
plaintiff or would constitute complete defense.

**[9] Federal Civil Procedure 170A** 👉**1822.1**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
           170AXI(B)5 Proceedings
                170Ak1822 Time for Motion; Condition
of Cause
                    170Ak1822.1  k.  In  General.  Most
Cited Cases
        (Formerly 170Ak1822)
Motion to dismiss was timely under rule filed more
than three weeks after close of discovery, where it
was pleaded in answer. Fed.Rules Civ.Proc.Rule
12(h), (h)(2), 28 U.S.C.A.

**[10] Federal Civil Procedure 170A** 👉**1278**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1278  k.  Failure  to  Respond;
Sanctions. Most Cited Cases
On record, district court was not shown to have
abused its discretion in ordering dismissal as sanction
for failure to comply with time limits in pretrial
proceedings, though Court of Appeals might not have
reached same result as did the district court judge,
where there was pattern of dilatory behavior, some
prejudice to defendant, and a prima facie defense.
U.S.Ct. of App. 3rd Cir.App. I, Internal Operating
Procedures, Ch. 8, subd. C, 28 U.S.C.A.; Fed.Rules

Civ.Proc.Rules 16(f), 26(f), 37(a)(4), (b, d, g), 28
U.S.C.A.; 28 U.S.C.A. § 1927.

***865** George Retos, Jr. (Argued), Retos, Held &
Associates, Washington, Pa., for appellants.
Paul K. Geer (Argued), Jones, Gregg, Creehan &
Gerace, Pittsburgh, Pa., for appellee.

Before GIBBONS, SLOVITER, Circuit Judges, and
BISSELL, District Judge [FN*].

        FN* Hon. John W. Bissell, United States
        District Court for the District of New Jersey,
        sitting by designation.

**OPINION OF THE COURT**
SLOVITER, Circuit Judge.
This appeal, as well as another decided today
involving the same attorney and district court judge,
*Scarborough v. Eubanks,* 747 F.2d 871, is brought
from a final order dismissing the complaint with
prejudice due to counsel's failure to meet court-
imposed deadlines and other procedural requisites.

I.

*Background*

Lefteri and Athena Poulis filed suit against State
Farm Fire and Casualty Company (State Farm) in
November 1981, in the Court of Common Pleas of
Washington County, Pennsylvania, to recover under
an insurance policy after fire damaged their home.
State Farm removed the case to the United States
District Court for the Western District of
Pennsylvania based on diversity of citizenship. In its
answer, it denied liability, asserting that plaintiffs had
intentionally caused the fire, had concealed and
misrepresented information, and had not filed their
action in time.

On March 12, 1982, the district court ordered that
discovery would close June 14, 1982; that plaintiffs'
pre-trial statement would be due July 5; and that
defendant's statement would be due July 26. A pre-
trial conference was set for August 13. The docket
reveals no action by plaintiffs seeking discovery. On
April 15, State Farm filed notice of service of
interrogatories on plaintiffs. No answers to these
interrogatories were or have ever been filed, and
plaintiffs did not file their pre-trial statement by July

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

747 F.2d 863
747 F.2d 863, 40 Fed.R.Serv.2d 313
(Cite as: 747 F.2d 863)

Page 4

5 as required. Therefore defendant filed its pre-trial statement first, on July 28, together with a motion to compel answers to interrogatories. A member of the district judge's staff advised plaintiffs' counsel, George Retos, Jr., that the statement was overdue and Retos promised to submit a statement by the next day. He neither did so nor requested any extension. On August 5 the district court, *sua sponte,* dismissed the case with prejudice for plaintiffs' failure to comply with the orders to file the pre-trial statement.

Retos filed a pre-trial statement on August 9, together with a motion under Rule 60(b) to reconsider and set aside the dismissal, alleging that an illness prevented him from working between July 6 through July 17; that other attorneys could not have taken over because only Retos spoke Greek and could communicate with plaintiff Lefteri Poulis; that Retos' pregnant wife went into false labor on July 29 and 30, and that he had "inadvertently set aside the required work for the instant case on July 29, 1982, due to his concern for his wife" and was "render[ed] unable to prepare the necessary Pre-Trial Statement;" that on his return to work other tasks had backlogged; and that although he had dictated a statement on August 4, it had been mailed on August 6 when it was typed and ready.

**866** The district court denied reconsideration. On appeal, this court vacated the order of dismissal. *Poulis v. State Farm Fire & Casualty Co.,* 714 F.2d 124 (3d Cir.1983) (*Poulis I* ) (per curiam). We noted there was "no allegation that plaintiffs, as distinguished from their counsel, were in any way responsible for the failure to comply with the court's order." We recognized that in *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2278, 49 L.Ed.2d 747 (1976), a dismissal was upheld where plaintiffs had acted in "flagrant bad faith" and counsel "had behaved with 'callous disregard' of [his] responsibilities," *id.* at 643, 96 S.Ct. at 2781, but observed that "[t]he case at hand is not as extreme."

We pointed out that in an earlier opinion, *Donnelly v. Johns-Manville Sales Corp.,* 677 F.2d 339, 342 (3d Cir.1982), we had stated that "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." However, because Retos' excuses failed to account for many days on which a pre-trial statement could have been filed, we observed that some sanction was "amply justified." Accordingly, we vacated the dismissal and remanded to permit the district court to consider

alternatives to dismissal, stating, "Alternatives are particularly appropriate when the plaintiff has not personally contributed to the delinquency."

On remand, the district court ordered the parties to file briefs on appropriate alternative sanctions. Plaintiffs' brief, filed four days late, stated that such sanctions would be costs, attorneys' fees, and monetary penalties imposed on him, but argued that "[s]ince the Third Circuit has specifically assessed the costs of the appeal in this matter against plaintiffs' counsel personally, it has ruled on the sanctions which are to be applied in the instant matter [and] alternative sanctions are now inappropriate." App. at 10-11.

In its brief State Farm took a more reasonable position. It noted that "[i]n this case the defendant has been more prejudiced by plaintiffs' failure to answer interrogatories then [sic] by its counsel's failure to file the Pre-Trial Statement on time." App. at 16. State Farm urged the court to reopen discovery so that it could "have the opportunity to examine plaintiffs' Answers to Interrogatories, conduct further investigation if necessary, and depose the plaintiffs or other witnesses known to plaintiffs if such action is deemed necessary and appropriate." App. at 15. State Farm suggested, "If discovery is reopened, State Farm believes there would be no need to utilize the *somewhat harsh remedy* of limiting or restricting plaintiffs' witnesses at trial." App. at 16 (emphasis added). In light of this court's order, State Farm requested an award of $750.00 in attorneys' fees which it incurred because of the dismissal and appeal, and sought a prospective limitation on interest due should it ultimately be held liable on plaintiffs' claim.

Significantly, in its brief State Farm further stated, "State Farm strongly believes that the most expeditious manner of disposing of this case can be provided by ruling on the Defendant's Motion to Dismiss which was filed on July 7, 1982," approximately three weeks following the close of discovery and which was denied by the district court because of its policy not to consider motions to dismiss filed more than two weeks after the close of discovery. App. at 16.

Notwithstanding the defendant's submission, the district court reinstated its *sua sponte* sanction of dismissal, stating that there was no appropriate alternative:
There are no costs which can be charged to plaintiffs' counsel at this point. Further, this was not a

747 F.2d 863
747 F.2d 863, 40 Fed.R.Serv.2d 313
**(Cite as: 747 F.2d 863)**

Page 5

situation in which defense counsel was forced to make an unnecessary trip to court because of plaintiffs' counsel's failure to appear. The defendant has only been required to incur fees in an amount that would have been incurred if the case normally proceeded to this point. Thus, this is not an appropriate case for attorney's fees. Finally, the court finds no authority for **\*867** levying a fine against plaintiffs' counsel as a penalty. Rather than imposing fines and costs of [sic] other sanctions prior to dismissal, plaintiffs' counsel was afforded many opportunities to cure the problems, but he has failed to do so. Sanctions not being appropriate, the court has no alternative but dismissal to motivate plaintiff's counsel to comply with deadlines.

App. at 3-4 (footnotes and citation omitted). The district court intimated its displeasure with the remand in *Poulis I* but it was unequivocal in its disagreement with the remand in a similar case from another district, *Titus v. Mercedez Benz of North America,* 695 F.2d 746 (3d Cir.1982). The district court stated: "Judge Garth's dissent in *Titus,* indicates that deliberate, dilatory action is a basis for dismissal, even under *Donnelly,* and further indicates that the Circuit Court should only reverse such a decision for abuse of discretion.... [T]his Court *finds Judge Garth's dissent persuasive and adopts his dissent,* and the cases cited therein, as further support for this decision." App. at 5 (emphasis added).

[1] We treat this extraordinary statement at the outset. Whatever may be the personal views of the district court as to the merits *vel non* of a decision of this court, the district court is not free to "adopt" the dissent. This court is strict in its adherence to the precedent of its earlier opinions. Our own Internal Operating Procedures are explicit and provide,
It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court.

Internal Operating Procedures of the Court of Appeals for the Third Circuit, Chapter 8.C. If the judges of this court are bound by earlier panels, *a fortiori* district court judges are similarly bound. Recognition of the hierarchical nature of the federal judiciary requires no less.

Moreover the reported decisions of this court over the past two years evidence the consistency of this court's rulings emphasizing the extreme nature of a dismissal with prejudice or default judgment. *See Hritz v.*

*Woma Corp.,* 732 F.2d 1178 (3d Cir.1984); *In re MacMeekin,* 722 F.2d 32 (3d Cir.1983); *Madesky v. Campbell,* 705 F.2d 703 (3d Cir.1983); *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120 (3d Cir.1983); *Titus v. Mercedez Benz of North America,* 695 F.2d 746 (3d Cir.1982); *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653 (3d Cir.1982); *Farnese v. Bagnasco,* 687 F.2d 761 (3d Cir.1982); *Donnelly v. Johns-Manville Sales Corp.,* 677 F.2d 339 (3d Cir.1982).[FN1]

> FN1. We believe it important to point out that we have not hesitated to affirm the district court's imposition of sanctions, including dismissals in appropriate cases, *cf. United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192 (3d Cir.1984) (default judgment) (in which Judge Garth dissented on the ground that the dispute was prematurely ended without being reviewed on the merits), although under our procedures that is often done by judgment order affirmance.

We recognize that recent literature exhorting the district judges to move litigation expeditiously by taking firm control and the 1983 amendments of the Federal Rules of Civil Procedure with their numerous references to sanctions may have contributed to premature dismissals or defaults. Although sanctions are a necessary part of any court system, we are concerned that the recent preoccupation with sanctions and the use of dismissal as a necessary "weapon" in the trial court's "arsenal" may be contributing to or effecting an atmosphere in which the meritorious claims or defenses of innocent parties are no longer the central issue. It does not further the goal of a court system, that of delivering evenhanded justice to litigants, to suggest, as did the district court here, that the plaintiffs would have a remedy by suing their counsel for malpractice, App. at 5, since this would only multiply rather than dispose of litigation.

[2] We reiterate what we have said on numerous occasions: that dismissals with prejudice or defaults are drastic sanctions, **\*868** termed "extreme" by the Supreme Court, *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781, and are to be reserved for comparable cases.

II.

747 F.2d 863                                                                                                      Page 6
747 F.2d 863, 40 Fed.R.Serv.2d 313
**(Cite as: 747 F.2d 863)**

*Analysis*

[3] In exercising our appellate function to determine
whether the trial court has abused its discretion in
dismissing, or refusing to lift a default, we will be
guided by the manner in which the trial court
balanced the following factors, which have been
enumerated in the earlier cases, and whether the
record supports its findings: (1) the extent of the
*party* 's personal *responsibility;* (2) the *prejudice* to
the adversary caused by the failure to meet
scheduling orders and respond to discovery; (3) a
*history* of dilatoriness; (4) whether the conduct of the
party or the attorney was *willful* or in *bad faith;* (5)
the effectiveness of sanctions other than dismissal,
which entails an analysis of *alternative sanctions;*
and (6) the *meritoriousness* of the claim or defense.

We turn to apply these factors in the circumstances of
this case.

1. The extent of the party's personal responsibility.

[4] There has been no suggestion by any party or by
the district court that the Poulis plaintiffs are
personally responsible for the late pretrial statement,
which was the basis for the dismissal. Indeed, Retos
has acknowledged the delays were his responsibility
and assigned as the reason his illness from July 6
through 17 and the subsequent false labor of his wife
on July 29 and 30.

This is therefore unlike the *National Hockey League*
case where the Supreme Court upheld the "extreme
sanction of dismissal" after noting that there had been
"flagrant bad faith" on the part of the plaintiffs as
well as "callous disregard" by their counsel of their
responsibilities. 427 U.S. at 643, 96 S.Ct. at 2781.
However, the Poulis' lack of responsibility for their
counsel's dilatory conduct is not dispositive, because
a client cannot always avoid the consequences of the
acts or omissions of its counsel. *See Link v. Wabash
Railroad,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8
L.Ed.2d 734 (1962).

2. Prejudice to the adversary.

As the district court stated, there has been prejudice
to the defendant by the plaintiffs' counsel's conduct.
The interrogatories were never answered nor were
objections filed; defense counsel was obliged to file
a motion to compel answers, and was obliged to file

its pretrial statement without the opportunity to
review plaintiffs' pretrial statement which was due to
be filed first. App. at 4. The court's finding that
"defendant encountered lack of cooperation from the
plaintiff in areas where the plaintiff should cooperate
under the spirit of the federal procedural rules," *id.,* is
supported by the record.

3. A history of dilatoriness.

As noted above, this litigation has been characterized
by a consistent delay by plaintiffs' counsel. Unlike
the *Donnelly* case, for example, where there was only
one failure to comply in a timely manner, *i.e.* in
obtaining local counsel, in this case there has been a
pattern of dilatoriness. Time limits imposed by the
rules and the court serve an important purpose for the
expeditious processing of litigation. If compliance is
not feasible, a timely request for an extension should
be made to the court. A history by counsel of
ignoring these time limits is intolerable.

4. Whether the attorney's conduct was willful or in
bad faith.

[5] Although the district court concluded that
"plaintiffs' counsel's conduct [was] of such a dilatory
and contumacious nature to require dismissal," App.
at 5, there is nothing in the record to support the
"contumacious" finding. Nothing in the court's
discussion preceding this conclusion is directed
toward the willfulness issue but only toward
dilatoriness. There has been **\*869** no suggestion or
indication that counsel's illness during July 1982 and
his wife's late pregnancy and false labor at the end of
that month did not occur as he represented.

In the appellants' brief, counsel characterizes his
conduct as "excusable neglect" and seeks to explain
the district court's characterization of his conduct as
"deliberate" and "contumacious" as the result of a
"personality conflict" between counsel and the
district judge. Appellants' brief at 8. He refers us to
four recent appeals in which he allegedly "clashed"
with the same district judge.[FN2] However, even in
those cases in which we vacated the dismissal, the
record showed that counsel failed to comply with the
rules and deadlines imposed by the district court.
Thus, while some disaffinity has apparently been
engendered between the district judge and counsel we
see no basis to hold the district judge responsible.
Nonetheless, as noted at the beginning of this section,
we also find no basis for terming counsel's conduct in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

747 F.2d 863                                                                                                          Page 7
747 F.2d 863, 40 Fed.R.Serv.2d 313
**(Cite as: 747 F.2d 863)**

this case "contumacious".

> FN2. In two of these cases, this one and *Scarborough v. Eubanks,* also decided today, 747 F.2d 871 (3d Cir.1984), the district court dismissed the complaint, and in the third, the court entered a default judgment against Retos' client, *Miller v. Blower,* No. 82-0757 (W.D.Pa. Feb. 2, 1983), *vacated and remanded,* 732 F.2d 146 (3d Cir.1984) (unreported). The fourth case, *United States v. Golna,* No. 81-179 (W.D.Pa.) *aff'd,* 714 F.2d 125 (3d Cir.1983) (unreported), was not appealed on the basis of any sanctions imposed by the district court.

5. Alternative sanctions.

[6] The district court concluded that it had "no alternative but dismissal" because no other sanctions were appropriate. The district court stated that there was no authority for levying a fine against plaintiffs' counsel as a penalty. *See Gamble v. Pope & Talbot, Inc.,* 307 F.2d 729 (3d Cir.) (in banc), *cert. denied,* 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962).[FN3] However, the court also stated that "there are no costs which can be charged to plaintiffs' counsel at this point." This finding was erroneous. Defendant's counsel had asked the court to impose as a sanction the $750 attorney fee which it had incurred in defending the appeal in *Poulis I.* The district court apparently assumed that the costs of that appeal had already been charged to plaintiffs' counsel. However, we had not assessed any attorney's fee as part of our imposition of appeal costs on plaintiffs' counsel personally.[FN4] The district court also could have imposed on plaintiffs' counsel the costs, including attorney's fees, of preparing the motion to compel answers to interrogatories and the brief on alternative sanctions, all of which were incurred because of the dilatoriness of plaintiffs' counsel.

> FN3. This issue is presently pending before this court in *Eash v. Riggins Trucking, Inc.,* No. 83-5664 (order for in banc consideration filed Oct. 11, 1984).

> FN4. It was a *non sequitur* for plaintiff to have argued in his brief on alternative sanctions filed with the district court that since we specifically assessed the costs of the appeal against him personally, we

already ruled on the sanctions to be applied. If so, there would have been no basis for us to have remanded for precisely this purpose.

[7] Under the Federal Rules of Civil Procedure and the 1983 amendments, the district court is specifically authorized to impose on an attorney those expenses, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders. *See* Fed.R.Civ.P. 16(f), 37(a)(4), 37(b), 37(d) and 37(g). *See also* 28 U.S.C. § 1927. The most direct and therefore preferable sanction for the pattern of attorney delay such as that which the district court encountered in this case would be to impose the excess costs caused by such conduct directly upon the attorney, with an order that such costs are not to be passed on to the client, directly or indirectly. This would avoid compelling an innocent party to bear the brunt of its counsel's dereliction. Dismissal must be a sanction of last, not first, resort.

6. Meritoriousness of the claim.

[8] In considering whether a claim or defense appears to be meritorious for this inquiry, we do not purport to use summary judgment standards. A claim, or defense, **\*870** will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense. *See United States v. $55,518.05 in U.S. Currency,* 728 F.2d at 195; *Feliciano v. Reliant Tooling Co.,* 691 F.2d at 657; *Farnese v. Bagnasco,* 687 F.2d at 764.

[9] In this case, the defendant suggested to the district court that the most expeditious way to process this litigation was to rule on its motion to dismiss plaintiffs' claim as untimely because it was not brought within a year of the loss, as required by the policy. The district court's denial of that motion because of its "policy ... not to consider motions to dismiss filed more than two weeks after the close of discovery," Order of August 2, 1982, appears to conflict with Fed.R.Civ.P. 12(h)(2) which permits a defense of failure to state a claim upon which relief can be granted to be raised by motion as late as at the trial on the merits. Since the motion was timely under Rule 12(h) because it was pleaded in the answer, its consideration by the district court might have avoided the entire controversy regarding the pretrial proceedings and the two appeals to this court, and could have given the parties a disposition on the merits.[FN5]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

747 F.2d 863
747 F.2d 863, 40 Fed.R.Serv.2d 313
**(Cite as: 747 F.2d 863)**

Page 8

FN5. In this connection we note the commendable procedure followed by Judge Grady of the U.S. District Court for the Northern District of Illinois, who has found that attention to some of the legal issues during a discovery conference called under Rule 26(f) has substantially reduced the need for discovery. *See* Grady, *Finding Our Way Through the Discovery Jungle,* 21 The Judges' Journal 4, 42-43 (1982).

Certainly, the defense that the plaintiffs' claim must fail because it has not been brought within the one year limitation provision of the policy is, on its face, compelling. *See Schreiber v. Pennsylvania Lumberman's Mutual Ins. Co.,* 498 Pa. 21, 444 A.2d 647 (1982). In their complaint plaintiffs made no allegation that would avoid this facial untimeliness by invoking Pennsylvania's law of waiver of the time limit set forth in an insurance policy. *See Commonwealth v. Transamerica Ins. Co.,* 462 Pa. 268, 341 A.2d 74 (1975). Moreover, plaintiffs filed no answer to the motion to dismiss. For the purpose of evaluating the facial validity of the claim or defense, we cannot rely on the vague and nonspecific statements in plaintiffs' pretrial memorandum that they would produce witnesses to show that defendant led them to believe they would not be barred from filing an action on the claim more than 12 months from the date of the fire. While we express no opinion on whether summary judgment or dismissal would have been warranted on this ground, the existence of a prima facie defense is a factor to be weighed along with the foregoing factors.

III.

*Conclusion*

[10] The above factors should be weighed by the district courts in order to assure that the "extreme" sanction of dismissal or default is reserved for the instances in which it is justly merited. In this case, although there was no contumacious behavior, the pattern of dilatory behavior is compounded by the plaintiffs' failure to file any answers to interrogatories, defendant was compelled to file its pretrial statement without such answers and without seeing plaintiffs' pretrial statement, and there is a prima facie defense to the claim. Under these circumstances, although we might not have reached the same result as did this district court judge, we cannot say that the district court abused its discretion in ordering the dismissal. Therefore, we will affirm the judgment of the district court.

C.A.Pa.,1984.
Poulis v. State Farm Fire and Cas. Co.
747 F.2d 863, 40 Fed.R.Serv.2d 313

Briefs and Other Related Documents (Back to top)

• 1983 WL 486579 (Appellate Brief) Brief for the Appellees State Farm Fire & Casualty Co. (Nov. 25, 1983) Original Image of this Document (PDF)
• 1983 WL 486578 (Appellate Brief) Brief for the Appellants, Lefteri Poulis, et al. (Oct. 27, 1983) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.