# Exhibit "A"

Brief of Plaintiff Appellant-Cross Appellee

# Appeal Case No's. 05-0830 & 05-0831 (Consolidated)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD DISTRICT

**Robert K. Alber, eToys Shareholder,**

**Pro Se Appellant (0830)-Cross Appellee (0831)**

**v.**

**Morris, Nichols, Arsht & Tunnell {Appellee (0830), Cross Appellant (0831)}**
**and Traub, Bonacquist & Fox, LLP & Barry F. Gold {Appellees (0830)}**

**Appeal from the United States Bankruptcy Court**
**for the District of Delaware**

**Bankruptcy Case No's. 01-0706-0709 (Consolidated) (MFW)**

**eToys, Inc., n/k/a EBC I, Inc. (*a Delaware Corporation*)**

## BRIEF OF PLAINTIFF APPELLANT-CROSS APPELLEE

ROBERT K. ALBER
*Pro Se*
  17685 DeWitt Avenue
  Morgan Hill, CA  95037
  Tel/Fax:  (408) 778-5241
  Cell:      (928) 279-6244

Appellant-Cross Appellee

# RULE 26.1 DISCLOSURE STATEMENT

Although not specifically required by FRAP Rule 26.1, below is the corporate disclosure statement for *Pro Se* Appellant-Cross Appellee Robert K. Alber in the captioned actions:

1.    I, Robert K. Alber, am not a member of any Corporation, except as, from time to time, a shareholder in other Corporations unrelated to any of the other parties in this case, except that:

2.    I, Robert K. Alber, am a shareholder of record of eToys, Inc., a Delaware Corporation, n/k/a EBC I, Inc., a Delaware corporation.

3.    I, Robert K. Alber, am *Pro Se* and am not an Attorney, nor have I ever had any formal education toward that end.

4.    I, Robert K. Alber, understand that as a *Pro Se* I am allowed to submit a *Pro Se*, or informal, brief.

# TABLE OF CONTENTS

**Chapter Title**                                                  **Page**

RULE 26.1 DISCLOSURE STATEMENT...…………...…………ii

TABLE OF CONTENTS……………….....…………………………iii

STATEMENT OF RELATED CASES………………………...…...iv

NATURE AND STAGE OF THE PROCEEDING………………….1

STATEMENT OF ISSUES……………………………………....…2

STATEMENT OF FACTS…………………………………………...7

ARGUMENT…………………………………………….............9

     BACKGROUND……………………………………………9

     GOLD & TB&F ARE CONNECTED………………………..11

     OPINION OF OCTOBER 4th, 2005…………………………..14

     FACTS FOR SANCTIONS…………………………….....19

     ARGUMENTS FOR DISQUALIFICATION…………..……..21

RELIEF REQUESTED……………………….……………….…62

CONCLUSION……………………………………...………….70

CERTIFICATE OF SERVICE………………………………...….71

# STATEMENT OF RELATED CASES

There is one (1) pending case, a core issue material to this Appeal, before the New York State Supreme Court: *EBC I, Inc., f/k/a eToys. Inc., by the Post-Effective Date Committee vs. Goldman Sachs, Inc.*, case no. 601805-2002 E (hereafter referred to as "eToys v GS"). The case title was changed to *EBC, Inc. vs. Goldman Sachs, Inc.*. The earlier title more readily shows the relevance of the case in regards to the Defendants.

There was another case, also a core issue material to this Appeal, and also before the New York State Supreme Court, which was recently dismissed but with leave of the Court to be re-filed: *EBC I, Inc., f/k/a eToys. Inc., by the Post-Effective Date Committee, Plaintiff, vs. Banc Boston Robertson Stephens Inc., Fleet Boston Financial Corporation, Donaldson Lufkin & Jenrette Securities Corporation, Credit Suisse First Boston (USA) Inc., Merrill Lynch & Co., and Merrill Lynch, Pierce, Fenner & Smith Incorporated, Defendants*, Case No. 600727/2003 (hereafter referred to as "eToys v Fleet, et al"). The case title was changed to *EBC, Inc., Plaintiff, vs. Banc Boston Robertson Stephens Inc., Fleet Boston Financial Corporation, Donaldson Lufkin & Jenrette Securities Corporation, Credit Suisse First Boston (USA) Inc., Merrill Lynch & Co., and Merrill Lynch, Pierce, Fenner & Smith Incorporated, Defendants*. The earlier title more readily shows the relevance of the case in regards to the Defendants.

iv

# NATURE & STAGE OF THE PROCEEDING

This is not a derivative action. This Appeal is material to core proceedings of a Chapter 11 Bankruptcy Case, United States Bankruptcy Court, District of Delaware, case no. 01-0706, in which an Opinion was entered and Orders issued by the Honorable Chief Federal Judge Mary F. Walrath, on October 4th, 2005. The aforementioned Opinion and Orders were essentially in favor of Plaintiff/Appellant-Cross Appellee Robert K. Alber, Pro Se (hereafter referred to as "ALBER"); therefore this Appeal is of a limited nature. Said Bankruptcy Case is ongoing and Plaintiff Appellant-Cross Appellee, Robert K. Alber, Pro Se, has been given leave of the Court to conduct further Discovery, which may lead to further prosecution of as of yet unnamed parties. Res Judicata does not apply.

eToys, Inc., n/k/a EBC I, Inc. (both Delaware Corporations), filed its Chapter 11 Bankruptcy Petition on March 7th, 2001. The Amended Plan Of Reorganization (hereafter referred to as the "PLAN") was Approved by the Bankruptcy Court on November 1st, 2002, and is ongoing. To ALBER's knowledge, based on studying the Court records (via Pacer), most of the Creditors in this case have settled, with the majority having been paid. There is very little left in this case aside from what I, ALBER, have listed under the heading "STATEMENT OF RELATED CASES," but of which the outcome of those cases are controlled by Defendants.

**Initial Appellate Brief by Robert K. Alber**

# STATEMENT OF ISSUES

1.     Whether or not the Court Ordered sufficient Sanctions against Morris, Nichols, Arsht & Tunnell (hereafter referred to as "MNAT"), a Delaware law firm who is currently acting Debtors Counsel for the eToys Estate, and at all times during the eToys Bankruptcy Case. In its Opinion and Orders dated October 4th, 2005, the Court did find MNAT guilty of committing intentional fraud upon the Court, and upon the Estate, by not disclosing its (MNAT's) concurrent representation of investment banks Goldman Sachs (hereafter referred to as "GS"), and General Electric Credit Corporation (hereafter referred to as "GECC") in another bankruptcy case (Finova, 01-06xxxx, Del.) which were both adverse to the eToys Estate. In fact, Goldman Sachs is still adverse to the eToys Estate as is detailed under the heading "STATEMENT OF RELATED CASES" elsewhere in this document.    ALBER was requesting disgorgement, sanctions, and referral to the United States Attorney's Office for criminal prosecution of Federal felony violations, but the Court only ordered very limited disgorgement with no further sanctions.

2.     Whether or not Barry F. Gold (hereafter referred to as "GOLD") was a 'professional' within the meaning of the Bankruptcy Code; therefore required to file a statement of disinterestedness as required pursuant to rules 327(a) and 101(14). The Court found that GOLD was not a 'professional' because he was President/CEO of eToys, but did address the 'loophole' that allowed GOLD to be employed as President/CEO by the eToys Estate without disclosing his (GOLD's) business

- 2 -

relationship/partnership with Paul Traub (hereafter referred to as "TRAUB"), principle of the Manhattan law firm Traub, Bonacquist & Fox, LLP (TB&F; now defunct), Creditors Committee at the time of GOLD's hiring. The Court did Order that a new requirement be henceforth added to the Bankruptcy Code stating that the Court: "*articulates herein a new requirement that officers of a debtor must in the future disclose any connections they have with other parties in the case which create a potential or actual conflict of interest.*" (Had this 'requirement' been in place and GOLD was originally hired as President/CEO of the eToys Estate, the Court, and all parties of interest in the case, would have known of GOLD's business association with TRAUB and we would not now be facing this aspect of the ALBER Appeal because it would have been addressed at that time.) ALBER disagrees with the Court's Opinion, because, ALBER asserts, the Court failed to acknowledge that GOLD was initially hired as 'wind-down coordinator' by the eToys Estate on May 21st, 2001, a position that requires a statement of disinterestedness and a disclosure statement pursuant to 327(a) and 101(14) of the U.S. Bankruptcy Code.

3. Whether or not, predicated on this Court's Ruling on Item 2, above, if GOLD is found by this Court to have been a 'professional' within the meaning of the Bankruptcy Code, the issues would then be consideration of the ALBER Motion's requesting that GOLD be removed from any and all representation of the eToys Estate, disgorged, sanctioned, and the case referred to the United States Attorney's Office for criminal prosecution of Federal felony violations.

- 3 -

**Initial Appellate Brief by Robert K. Alber**

4.      Whether or not the Court Ordered sufficient sanctions against: a) Traub, Bonacquist & Fox, LLP (hereafter referred to as "TB&F") in approving a 9019 Settlement Motion presented to it (the Court) by the U.S. Trustee's Office.

5.      Whether or not the attorneys in that Firm could be held personally liable for their actions. ALBER presented incontrovertible evidence to the Court proving that TB&F's Corporate 'LLP' status (in the State of New York) had been revoked since March, 2002, prior to the Plan being approved, therefore the parties were not protected, individually, by New York Corporate Law.

6.      Another serious issue related to item '5,' above, is whether or not TB&F's revoked status constituted violations of Rules 2014 and 2016 since at all times TB&F did represent itself in Federal Court filings, under penalty of perjury, to be a Law Firm in good standing in its home state of New York. ALBER contends that TB&F's rules of employment were breached (by TB&F), and that since those breaches occurred prior to the Plan being approved, either taken in account by itself or jointly with TB&F's multiple Failures to Disclose the close business relationship between Paul Traub, Principal of TB&F, and Barry F. Gold, whom TB&F did help place as eToys 'wind down coordinator' and then CEO/President some time later.

7.      Additionally, after having gone from 'wind down coordinator' for eToys (with the help of members of TB&F), to CEO/President, GOLD applied directly to TB&F for approval of a substantial salary increase, which was granted by members within TB&F

- 4 -

who knew of the close business relationship between TRAUB and GOLD yet failed miserably in their ethical duties as Officers of the Court (when they did not Disclose said business relationship between TRAUB and GOLD).

8.    ALBER sees these, and other illegal and/or unethical acts (as described elsewhere within this document) by TB&F and most, if not all, of its members, as establishing a clear pattern of flaunting the Law, serving only to use their extensive knowledge of the Law and the Federal Court system for their own personal gain, and all the while using dwindling Estate funds as their personal checking account which they give freely to their friends. Nepotism at its very worst.

9.    Whether or not the U.S. Trustee's Office, under the guidance of U.S. Trustee Kelly B. Stapleton, had the authority to negotiate, and then propose to the Court, a 9019 Settlement Motion which ALBER does find is a violation of the U.S. Trustee's Office Code(s): a) **Section 5-1.2.1**, U.S. Trustee obligations, **28 U.S.C. § 586 (a)(3)(F)** which states the U. S. Trustee has the duty of "*notifying the appropriate United States Attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States.*" (emphasis mine)

10.   Whether or not the U.S. Trustee's Office committed 'Obstruction Of Justice' when it filed a Rule 9019 Settlement Motion, along with a Motion To Shorten Time For Responses, just five (5) days prior to a scheduled Trial, in which ALBER was to offer

- 5 -

additional evidence and question various parties in pursuing full disgorgement, heavy sanctions and referral to the U.S. Attorney's Office for investigation and prosecution.

11.    Perhaps the worst crime committed against the eToys Estate since the very beginning of the Bankruptcy has been the absolute refusal of MNAT to fulfill its fiduciary duty to serve and protect the Estate from all harm, and to do its best to ensure that the Estate was only staffed by ethical employees/executives. I speak here of MNAT's refusal to condemn the multiple, egregious, non-disclosures by GOLD and TRAUB/TB&F of their close business ties. To protect the Estate would have meant that MNAT should have taken action to remove GOLD from his position as virtually sole decision maker for the Estate. Instead, MNAT has refused to utter anything negative whatsoever concerning the aforementioned failures to disclose, and has chosen to help defend GOLD and TB&F throughout this entire, sordid episode.

- 6 -

**Initial Appellate Brief by Robert K. Alber**

# STATEMENT OF FACT

I.      Barry F. Gold was originally hired by the eToys Estate as 'wind down coordinator' on May 21st, 2001.  As such, he was required to file an employment application with the required 'statement of disinterestedness' pursuant to disclosure rules 327(a) and 101(14) as a 'professional.'

II.     In not taking the facts contained within 'Item I' (above) into consideration, the Bankruptcy Court based its Opinion and Orders on the much later employment of Barry F. Gold as President/CEO of eToys, which at that time did not require compliance with the required 'statement of disinterestedness' pursuant to disclosure rules 327(a) and 101(14) as a 'professional.'

III.    Paul Traub, ESQ, of Traub, Bonacquist & Fox, LLP, the Creditors Committee, was/is the business partner of Barry F. Gold.

IV.     Traub, Bonacquist & Fox, LLP, the Creditors Committee and its partners and employees therein, and the U.S. Trustee's Office knew of the relationship between Traub, TB&F & Gold yet none of them said or did anything.

V.      Wilmington, Delaware law firm Morris, Nichols, Arsht & Tunnell, chose the path of refusing to disclose conflicts of interest, in direct violation of disclosure rules 327(a) and 101(14), until said conflicts of interest were brought before the Court by ALBER.

- 7 -

The sanctions imposed by the Bankruptcy Court were vastly insufficient given the nature of the fraud committed by MNAT, their (MNAT's) continued refusals to comply, and that the failures to disclose involved two (2) investment banks, Goldman Sachs and General Electric Capital Corporation.

VI.     Manhattan law firm Traub, Bonacquist & Fox, LLP, failed to disclose conflicts of interest, pursuant to disclosure rules 327(a) and 101(14), and the sanctions imposed in the Opinion and Orders were grossly insufficient.

VII.    Despite the language used by Judge Walrath in her Opinion, precedent has been set in other cases which address the 'lateness' of imposing serious Sanctions and/or challenging the validity of the PLAN, and have held that if the 'pie' (payout distribution to the various classes) is not divided differently as described and set forth in the PLAN, then the PLAN is not affected. And since the PLAN has been largely fulfilled at this stage of the eToys Bankruptcy, the 'pie' as described in the PLAN cannot be altered in any measurable way even if this were what ALBER was seeking (which ALBER is not).

- 8 -

**Initial Appellate Brief by Robert K. Alber**

# ARGUMENT

On October 4, 2005 the Court issued an Opinion and corresponding Order stating that the firm for the Debtor in the eToys Estate (Del. Bankr. 01-706) Morris, Nichols, Arsht & Tunnel ("MNAT" as eToys Debtors Counsel) did deliberately fail to disclose "conflicts of interest" to the Court and parties of interest.    The Opinion and corresponding Order also addressed the "non-disclosures" of Traub Bonacquist & Fox, LLP ("TB&F" as counsel for the Creditors Committee) and their "*undisclosed*" associate Barry F. Gold ("GOLD" who was hired as eToys "*wind-down coordinator*" and later appointed CEO/President) and finally the Confirmed Plan Administrator per the suggestion of TB&F and a hiring letter drafted by all parties. The Court concluded, in the Opinion of October 4, 2005 that GOLD was not required to apply for approval per **327(a), 101(14) & 2014,** that no one was to be disqualified and the Court stated that no referral to the United States Attorney office would occur. It is the contention of Plaintiff Robert K. Alber ("ALBER" an eToys shareholder) that the "Finding of Fact" and "Conclusions of Law" by the Court is clearly erroneous and does not impose any penalties worthy of the crimes committed against the eToys Estate, and ultimately ALBER, by the Defendants (both individually and as a group).

# BACKGROUND

1.      This plaintiff, a security equity holder of the eToys estate since December 8th, 2000, ALBER ("ALBER"), appearing "pro se" stated in the past and avers this day,

"*under penalty of perjury*" that in the eToys bankruptcy case (Del. Bankr. Dist 01-706 thru 01-709) (the "DEBTOR"), where the DEBTOR was formerly an internet retailer that filed a bankruptcy petition on or about March 7, 2001.

Subsequently the Court approved the hiring of Creditor Committee counsel TB&F, where TB&F submitted an application for employment per **327(a)** & **2014** (D.I. 89), and where TB&F partner Michael Fox submitted an affidavit pursuant to **Fed.R.Bankr.P. 2014**, that the U.S. Trustee verified in a Motion to Disgorge TB&F on February 15th, 2005, where TB&F represented that:

(a)    neither TB&F nor any partners or associates thereof held any interest adverse to the estate;

(b)    neither he nor TB&F represented or held any interest adverse to the Committee or the debtors or their officers, directors or attorneys or any individual creditors of the debtors' estates;

(c)    neither he, nor TB&F, nor any partner or associate thereof had any connection with the debtors, their creditors, the U.S. TRUSTEE or any other parties in interest except as disclosed in the affidavit; and

(d)    neither TB&F nor any partner or associate thereof was related to the debtors or their officers or directors, nor had TB&F represented or provided services to the debtors, their officers or directors.

The Court approved TB&F's employment as Committee counsel by Order dated April 25, 2001 (D.I. 246).

2.    MNAT applied to be DEBTORS counsel (D.I. 133) and was approved (original NIBS D.I. 248, D.I. 252). The MNAT employment affidavit/Disclosure gave a less than candid (sic) remark concerning a potential conflict of the Learning Center, stating it was a matter not related to the Debtor. (D.I. 133). MNAT failed to mention issues of Goldman Sachs, Mattel or BAIN: a relevant point addressed by ALBER and a member of the Court approved liquidation entity, Collateral Logistics, Inc. ("CLI") and the principal thereof Steven Haas ("HAAS").

3.    GOLD became the "*wind-down coordinator*" and then, subsequently, the CEO/President of the DEBTOR, then the PLAN Administrator. Unlike MNAT or TB&F, GOLD never applied for Court approval for retention. GOLD stated he simply felt no reason to apply. In his defense, GOLD simply provided the proof of the documented acceptance of that fact (by all of the other parties administering over the case; i.e. TB&F, MNAT, Richard Cartoon, Scott Henkin, CrossRoads LLC, Mark Kenney as attorney for the U.S. Trustee, the Court and other professionals of the DEBTOR's estate.) with an exhibit within his January 25th, 2005, response. (D.I. 2189)

## **PROOF THAT GOLD AND TB&F HAVE A CONNECTION**

4.    In the fall of 2004, HAAS submitted proof that an "*un-disclosed*" connection between GOLD and TB&F existed: an entity TB&F and GOLD co-principled entitled Asset Disposition Advisors ("ADA") documented in, among other cases, In re:

- 11 -

HomeLife (Del. Bankr. 01-2412) and In re: Bonus Sales (Del. Bankr. 03-12284), along with multiple Affidavits by the ex-Chairman of the Creditors Committee stating that everyone was deceived. I, ALBER, submitted Motions for the Court to address these issues and others. These emergency Motions (by CLI and ALBER) were discussed during the hearing of December 22nd, 2004, and the transcript thereof is in the record (D.I. 2151).

5.     With the proof of ADA being Court D.I.s such as the ADA applications in the cases of In re: HomeLife 01-2412 and In re: Bonus Sales 03-12284, both Delaware Bankruptcy Court issues, the U.S. Trustee representative of Region 3, Frank Perch, remarked that the issues appeared to address "*non-disclosure*" from the early part of the case, up until final fee application and that the U.S. Trustee did not become aware of such until 3 years from the start of the case and 2 years after Plan confirmation. (please see Transcript of December 22, 2005 hearing)(D.I.2151)

6.     The Court Ordered responses to the allegations by January 25, 2005 in accordance with Local Rules (Transcript of December 22, 2005 hearing)(D.I. 2151) (the "RESPONSES").

7.     Within the responses GOLD presented as a part of his (GOLD's) Response of January 25, 2005 (the "GOLD RESPONSE") (D.I. 2169) an "Exhibit A"

- 12 -

thereof which contained an "Exhibit 1" thereof which was the first evidence anyone not party to the subterfuge of the intent to circumvent the Code, which is the GOLD hiring letter. (the "HIRING LETTER"). The Court and the U.S. Trustee have accepted the proofs of ADA, acknowledged that there were "*non-disclosed*" "conflicts of interests" where the U.S. Trustee petitioned the Court to DISGORGE TB&F (D.I. 2195), and the Court held an evidentiary hearing on the issues March 1st, 2005, whereupon TRAUB, of TB&F, and GOLD, each testified to the details of how TB&F paid GOLD four (4) separate payments of $30,000.00 each from January, 2001, through May, 2001. Coincidentally (sic), these payments by TB&F directly to GOLD stopped when GOLD was hired by the DEBTOR in May, 2001. The transcript of the March 1st, 2005, hearing is in the record. (D.I. 2230). The Court took these and other matters under advisement until 7 months later, whereupon the Court issued the Opinion of October 4th, 2005 (the "OPINION") (D.I. 2319) that is being appealed here today. The U.S. Trustee's DISGORGEMENT MOTION mentions the GOLD HIRING LETTER, which documents the **incontrovertible fact** that GOLD was hired by the Debtor as "*wind-down coordinator*". The Court addresses the same review of the issue of "*wind-down coordinator*" that is documented by the GOLD HIRING LETTER in the OPINION. (see the DISGORGEMENT MOTION part 6, and the OPINION on page 35 Part C, 1).


8.    The GOLD RESPONSE also contained an "Exhibit 2" of the "Exhibit A" which contains GOLD's Declaration in support of his being appointed Plan Administrator (D.I. 1312). GOLD states therein that the Plan was drafted in extensive "*good faith*" and (at) "*arms length*" negotiations between DEBTOR and Creditors.

- 13 -

## **BACKGROUND REGARDING THE OPINION OF OCTOBER 4th, 2005**

9.      Upon the Court hearing of December 22nd, 2004, and after the RESPONSES by the Defendants were submitted which confirmed the allegations by ALBER and CLI, a hearing was held on February 1st, 2005, which transcript is in the record. (D.I. 2191).

10.      During the hearing of February 1st, 2005, the Court heard testimony and opinions by Defendants Counsel and the U.S. Trustee (as represented by Frank Perch) in support of dismissing the allegations by CLI and ALBER.    This was contested, whereupon the Court permitted ALBER and HAAS to depose GOLD and TB&F.    (The date finally settled on was February 9th, 2005, with the Depositions to be held in an empty Courtroom in the Federal Bankruptcy Court building.)

11.      MNAT, also the subject of multiple Failures to Disclose (with investment bankers Goldman Sachs and GE Capital in the Finova Bankruptcy Case) volunteered to be deposed (in an ultimately unsuccessful attempt to escape culpability).

12.      The depositions occurred on February 9, 2005, being conducted solely by ALBER since HAAS was unable to attend, and were entered into the record for the hearing of March 1st, 2005, which transcript thereof is in the record. (D.I. 2230).

- 14 -

13.     The Court, as the allegations were of extreme importance and the damage done the DEBTOR potentially severe, requested that the U.S. Trustee makes their position known on the issues. Frank Perch as Asst. U.S. Trustee stated he had scheduled travel plans for February 16th, 2005, but would comply with the Courts' request prior to that time. That response, due to the overwhelming evidence of "*non-disclosed*" "*conflicts of interest*", came in the form of a Motion for full DISGORGEMENT of TB&F on February 15th, 2005. (the "DISGORGEMENT MOTION") (D.I. 2195).

14.     The DISGORGEMENT MOTION stated that both TB&F and GOLD failed to disclose their close business ties/relationship. (D.I. 2195 part 7).

15.     The DISGORGEMENT MOTION mentioned that the parties failed to disclose any of 3 connections or conflicts (D.I.2195 part 8).

16.     The DISGORGEMENT MOTION also mentioned that GOLD was initially hired as "*wind-down coordinator*" and not appointed CEO until later in the Bankruptcy (D.I. 2169 part 6).

17.     The DISGORGEMENT MOTION detailed the fact that TB&F compounded the failure to disclose in an Application to expand the duties of TB&F where TB&F affirmatively misrepresented no adverse interests. The U.S. Trustee remarked that TB&F "breached that duty" [To Disclose] (D.I. 2169 part 17).

- 15 -

**Initial Appellate Brief by Robert K. Alber**

18. More demonstrative of a "*scienter*" is the U.S. Trustee remarked in part 19 of the DISGORGEMENT MOTION that "*in the context of TB&F's experience, the multiple connections between TB&F and Gold, and the facts surrounding Gold's employment, TB&F's failure to disclose any of its three distinct connections with Gold is difficult to understand as inadvertent rather than deliberate.*"

19. The U.S. Trustee continued in part 19 of the DISGORGEMENT MOTION to iterate how TB&F was a vastly experienced bankruptcy attorney fully knowledgeable of the disclosure and retention application requirements.

20. Then, in what is the most compelling evidence, one could ever present, demonstrative of "*mens rea*" the U.S. Trustee remarks that the Trustee forewarned the parties about replacing corporate officers of the DEBTOR with individuals related to any of the retained professionals in the case (D.I. 2169 part 19).

21. The U.S. Trustee iterated this point twice in the DISGORGEMENT MOTION in parts 19 & part 35 where the U.S. Trustee remarked:

*"More significantly, TB&F was specifically aware in this matter, from discussions with the Office of the U.S. Trustee, of the U.S. Trustee's concern about replacing corporate officers with individuals related to any of the retained professionals in the case."*

22. Then Frank Perch traveled and Mark Kenney filed the DISGORGEMENT MOTION on February 24, 2005.

- 16 -

**Initial Appellate Brief by Robert K. Alber**

23.     The DISGORGEMENT MOTION sought to DISGORGE TB&F the
$1.68 million TB&F had received pre-plan confirmation.   The DISGORGEMENT
MOTION remarked that the plan was more than 180 days confirmed and that **Rule 1144**
placed a burden on "*adequate*" justice of all the $3.5 million TB&F has admittedly
received from the DEBTOR estate.

24.     The Stipulation to Settle is part of the docket record (the
"STIPULATION") (D.I. 2201) and the STIPULATION was approved by the OPINION
and corresponding Order of October 4th, 2005.

25.     The STIPULATION sought to settle for far less than the "*adequate*"
DISGORGEMENT as originally demanded by the Trustee (of $1.68 million) due to **Rule
1144**, instead now seeking only $750,000.

26.     Demonstrative of collaborative spirit to dispense of these issues quietly the
STIPULATION actually contains a clause that states:

> "*WHEREAS, the U.S. Trustee shall not seek to compel TB&F to
> make additional disclosures: and -----*
>
> *"WHEREAS, this Stipulation is intended by TB&F and the U.S.
> Trustee to be a complete and final resolution of the Motion upon the Court's
> approval hereof;*"

- 17 -

**Initial Appellate Brief by Robert K. Alber**

27.     ALBER here contends that the U.S. Trustee's Office was seeking only to deter and, in fact, obstruct Justice by short-circuiting ALBER's prosecution of TB&F and GOLD at the March 1st, 2005, Evidentiary Hearing previously scheduled by the Court.

28.     The Court in its OPINION of October 4th, 2005, remarked that it had instructed the parties (ALBER and CLI) to cease placing any further motions in the record.

29.     MNAT did finally admit to the Court its own Failures to Disclose its (MNAT's) concurrent representation of Goldman Sachs and GE Capital in the Finova Bankruptcy Case while its duty to DEBTOR eToys required it (MNAT) to be adverse to those very same Investment Bankers in the eToys Bankruptcy Case.

30.     The U.S. Trustee provided no Motions that dealt with, or even mentioned, MNAT's numerous Failures to Disclose, even though MNAT's (admitted) crimes also carry extremely stiff penalties.

31.     The OPINION addressed the MNAT issues, stating that such was "intentional" and Ordered MNAT to DISGORGE all fees related **only** to the "non-disclosure" issues.

32.     MNAT has appealed the issue in the District Court (Del. Dist. Ct. 05-831, jointly administered with the ALBER Appeal).

- 18 -

**Initial Appellate Brief by Robert K. Alber**

## FACTS FOR DISQUALIFICATION AND DISGORGEMENT

33.    The U.S. Trustee stated that the parties were forewarned about parties replacing the officers of the DEBTOR with anyone associated with the professionals in the estate (D.I. 2195 part 19 & part 35).

34.    The U.S. Trustee provided evidence that it totally reviewed the GOLD HIRING LETTER and was aware that GOLD was hired as "*wind-down coordinator*" and only later appointed CEO/President of the DEBTOR (please see DISGORGEMENT MOTION) (D.I. 2169 part 6).

35.    The Court, in the OPINION, provided proof that it reviewed the GOLD HIRING LETTER issue, mentioning that GOLD was "wind-down coordinator," then CEO/President of the DEBTOR after obtaining D&O insurance. (please see the OPINION page 35, part C, 1.).

36.    The U.S. Trustee DISGORGEMENT MOTION states that TB&F perpetrated "Fraud upon the Court" and defined "fraud upon the Court" as "an intentional deflecting of the Court from knowing all the facts necessary" (please see the DISGORGEMENT MOTION part 29 -30).

37.    The U.S. Trustee remarked that TB&F's violation(s) were as egregious as that of the case of *Pearson v. First NH Mortgage Corp., 200 F.3d 30, 37 (1st Cir. 1999),*

- 19 -

**Initial Appellate Brief by Robert K. Alber**

quoting *In re Pearson, 210 B.R. 500, 510 (Bankr. D. NH 1997) reflected upon In re R&R*
*Associates of Hampton, 2003 WL 1233047 (Bankr. D. N.H. January 31, 2003).*
(DISGORGEMENT MOTION part 31).

38.    In part 35 of the DISGORGEMENT MOTION the U.S. Trustee remarked
how in R&R that counsel was inexperienced unlike this DEBTOR case where TB&F is a
vastly experienced bankruptcy attorney firm extensively knowledgeable of application
requirements having doing so as "*counsel in numerous large and sophisticated Chapter*
*11 cases, both in Delaware and elsewhere.*"

39.    The U.S. Trustee continued to remark in the DISGORGEMENT
MOTION that;

> "*TB&F's partners are well-versed in the comprehensive and ongoing*
> *relationships analysis required of a professional employed at estate*
> *expense. And as discussed earlier in this Motion, TB&F had engaged in*
> *discussions with the Office of the U.S. Trustee about replacement officers of*
> *the debtors, and was aware of the U.S. Trustee's concern that replacement*
> *officers not be related to any of the professionals employed in the case.*"

Then the U.S. Trustee concluded part 35 of the DISGORGEMENT MOTION with the
statement:

> "*This, it is respectfully submitted, is all of the intent needed to demonstrate*
> *that TB&F's Rule 2014 disclosure violation was a fraud upon the court.*"

- 20 -

40.    The U.S. Trustee remarked that TB&F's "non-disclosure" "harmed the integrity of the Court and of the judicial process." (please see DISGORGEMENT MOTION part 36).


41.    The U.S. Trustee remarked in part 25 of the DISGORGEMENT MOTION that *"TB&F and Gold had a clear interest in maintaining and enhancing the business relationship among themselves."*


42.    The U.S. Trustee continued to remark that *"Thus, TB&F's relationship with Gold was materially adverse to the interests of the Committee and its constituents."* (please see DISGORGEMENT MOTION part 25).


## ARGUMENTS FOR DISQUALIFICATION OF TB&F, MNAT & GOLD


43.    TB&F and MNAT, after being forewarned by the U.S. Trustee to not engage in such behavior did position, *"inter alia"*, in *"secret"*,  within the debtor, *"post-petition,"* TB&F's paid, long time associate, GOLD *"without disclosure"* as *"wind-down coordinator"* & subsequently, CEO/President of the DEBTOR. (please see the U.S. Trustee Motion to DISGORGE TB&F, D.I. 2195; the "DISGORGEMENT MOTION").


44.    The position of *"wind-down coordinator"* was duplicative of the CLI liquidation functions, and, as such, was therefore prohibited by the Code.    This

duplication of efforts was well known to **_all_** parties administering over the DEBTOR, yet
nobody ever disputed the drain on the Estates limited assets and the resultant smaller
payout to be realized by both Creditors and security equity holders (such as ALBER).

45.      Both the Court and the U.S. Trustee have refused to disqualify or refer, the
more than 100 documented offenses, to the United States Attorney Office (please see the
Opinion of the Court on October 4th, 2005, again, inclusive but not exclusive to the
GOLD issue).

46.      Within the OPINION the Court did state three (3) items, three (3)
conclusions of Law that are correct. The Court remarked on page 15 & page 16 of the
OPINION the following:

> "*In re Southmark Corp., 181 B.R. 291, 295 (Bankr. N.D. Tex. 1995)
> (granting relief under Rule 60(b)(6) from final fee order which had been
> entered nearly three years earlier). See also Hazel-Atlas Galss Co. v.
> Hartford Empire Co., 322 U.S. 238, 244-45 (1944) (holding that fraud upon
> the court equitably tolls the time for seeking to set aside a judgment or
> order); Pearson v. First HN Mort. Corp., 200 F.3d 30, 35-41 (1st Cir. 1999)
> (holding that attorney's false disclosure which denied any connection with
> creditors could support a finding that attorney had committed a fraud on the
> court); Benjamis's-Arnold, 1997 WL 86463, at \*10 (holding that "the
> failure of an attorney employed by the estate to disclose a disqualifying
> conflict of interest, whether intentional or not, constitutes sufficient
> 'extraordinary circumstances' to justify relief under Rule 60(b)(6). To hold
> otherwise would only serve to penalize the [Plaintiff] for delay that was
> beyond his control and to reward conflicted attorneys for failing to disclose
> their conflicts beyond the one-year period.").*"

47.      A plethora of "*non-disclosures*" and "*conflicts of interest*" have been
committed by the Defendants (MNAT, TB&F and GOLD): this is not in dispute as all

- 22 -

have admitted to breaking Federal Bankruptcy Laws, which, I might add, are Federal Felony violations which, if found Guilty in a Criminal Court of Law carry with them many, many years of jail time. As ALBER is not a legal professional, it is most important that those reviewing this case/Appeal understand the validity of the issues at hand. Therefore, as it offers both proof and authoritative documentation of the facts at hand this plaintiff request, for the sake of clarity, that a detailed read of the U.S. Trustee Motion to DISGORGE (the "DISGORGEMENT MOTION") (D.I.2195) the Transcript of the March 1, 2005 hearing (D.I. 2228) ("MARCH 1 TRANSCRIPT") and the OPINION (D.I. 2319) which all document the foreknowledge of the "*prima facie*" evidence provided by ALBER and CLI that GOLD in the GOLD RESPONSE (D.I. 2169, which contains the clandestine GOLD HIRING LETTER that was not provided to parties of interest that did not participate in the subterfuge until the RESPONSES in January, 2005).

48.     As GOLD counsel stated in the GOLD RESPONSE "*but in GOLD's mind, there was simply no reason to make, or not make, such disclosure.*"

49.     This is directly countered by the GOLD HIRING LETTER supplied as an exhibit in the GOLD RESPONSE (D.I. 2169) which contained a contractual term that permits GOLD to choose, of his own volition, whether or not he desired to apply to the Court for approval.

- 23 -

**Initial Appellate Brief by Robert K. Alber**

50.     The GOLD HIRING LETTER provided a contractual option for GOLD

to apply for the Court's approval. The HIRING LETTER is documented as *"nunc pro*

*tunc"* as it is signed in June, 2001, after GOLD became the *"wind-down coordinator"* in

May, 2001. The HIRING LETTER, in and of itself, documents a clandestine endeavor,

which is all the *"male fides"* demonstrative of intent such maliciousness to circumvent

the Code and is made greatly more egregious by the fact that the U.S. Trustee testifies in

the DISGORGEMENT MOTION that the parties were forewarned "not" to engage in

placing persons connected to professionals as key officers of the DEBTOR (reference

again the DISGORGEMENT MOTION part 19 and part 35).


51.     GOLD was the "sole" decision making authority of the DEBTOR

establishing and meeting all of the *"quantitative"* ***and*** *"qualitative"* requirements of who

must apply. In re: First Merchants Acceptance Corp., No. 97-1500(JJF), 1997 WL

873551, at*2 and at*3 (D.Del.Dec. 15, 1997) established the *"quantitative"* and

*"qualitative"* standards for who is defined as a professional, with said *"quantitative"* and

*"qualitative"* standards being used to this date throughout Federal Bankruptcy Courts as

the guideline establishing who shall, or shall not, have to Disclose. As established in the

case In re: Stahl v Bartley Lindsay 137 B.R. 305, 309 (D. Minn. 1991) "Courts have

concluded that financial advisors must be retained under **11 USC § 327(a).**


52.     In the March 1st, 2005, hearing, TB&F admitted to the Court that they

(TB&F) paid GOLD four (4) separate payments, from January, 2001, till May, 2001, of

$30,000.00 each, ending at the same time GOLD was hired as "wind-down coordinator"

- 24 -

**Initial Appellate Brief by Robert K. Alber**

of the DEBTOR. The transcript of the March 1st, 2005, hearing is in the record. (D.l.
2230)

53.     A hearing was scheduled, and subsequently held, on December 1st, 2005,
whereupon numerous Motions to Dismiss filed by the Defendants (in this Appeal) were
to be heard.   For security purposes ALBER traveled via automobile to attend this
Hearing.

54.     As an additional security precaution ALBER and HAAS did not
communicate during ALBER's cross country trek to the Court Hearing in Delaware.

Upon arriving at the Court Hearing on December 1st, 2005, ALBER was met by,
and escorted into, said Hearing by two (2) U.S. Marshals. ALBER was unaware of the
U.S. Marshal's presence and intent until after the Court hearing was concluded.

55.     HAAS later told ALBER that he (HAAS) had been threatened to "back
off" (of the eToys Case) and had then contacted the FBI, thus causing the presence of the
armed U.S. Marshals which escorted ALBER into the December 1st, 2005, hearing.

56.     The overwhelming documentation of Fraud, "non-disclosure" and Perjury
reveals that the System has gone amiss, in this Delaware Bankruptcy case of eToys, the
DEBTOR. The perpetrators were "*forewarned*" not to engage in replacing any of the

- 25 -

debtor's key employees personnel with anyone connected to the professionals in the case (D.I. 2195 part 19 & part 35).

57.     After such authoritative instruction by the U.S. Trustee the offending parties disregarded the cautionary instruction and proceeded to violate such with a ruse of a surreptitious nature, the HIRING LETTER, that permitted a professional, (the *"key"* & *"sole"* bankruptcy authority of the DEBTOR) connected to other professionals, to choose, of his own volition, whether or not to apply, for Court approval. This ploy, having a designed initial success, existed on a stealthy pathway which affords an opportunity of strength and vigor to subterfuge, that has caused real harm to parties of interest in the many millions of dollars.

58.     Such placement is, as the U.S. Trustee remarked in the DISGORGEMENT MOTION, most assuredly *"materially adverse"* and a serious *"fraud perpetrated upon the Court"* by a gravely, designed and premeditated egregious *"conflict of interest"*. *(Where there is an actual conflict of interest, ------ disqualification is* mandatory. In re Marvel Entertainment Group, 140 F.3d at 476.) (ALBER here interjects that not enough emphasis can be added, especially in a *"non-disclosed"* premeditated endeavor to circumvent the Code after being forewarned *"not"* to engage in such ventures.) Disinterest issues are clear-cut. *See In re BH&P* In order for counsel to be retained, *"counsel must not hold or represent an interest adverse to the estate' and must be a `disinterested person.'* "In re BH&P Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D. N.J. 1988).

- 26 -

59.    The documented and grave violations of statutory language, which is most certainly barred behavior, can only breathe and exist in a society or system that is rooted in anarchy. The well established precedents, Constitutional guidelines and procedures of **327(a), 101(14), 2014** and **2016**, are inappropriately applied thereby becoming inadequate and failing miserably to be a sufficient policing endeavor or deterrent.

60.    Having refused, repeatedly, to punish this serious, egregious, premeditated, fraudulent behavior, even after the U.S. Trustee testified in the DISGORGEMENT Motion of February 15, 2005 that the parties were forewarned, the Court, the U.S. Trustee, the General Counsel of the U.S. Trustee, as well as others, have all shown a proclivity toward negligence at the very least (D.I.2195 part 19 & part 35).

61.    The U.S. Trustee stated in the DISGORGEMENT MOTION, that TB&F supplied an affidavit as required by **Rule 2014** verifying no conflicts existed (part 5 of the DISGORGEMENT MOTION) (TB&F **Rule 2014** is D.I. 89) (the Court approved TB&F application in D.I. 246).

62.    Both the Court and the U.S. Trustee have documented that they were aware of the "*wind-down coordinator*" issues (The Court's Opinion page 35 thereof, D.I. 2319) (the DISGORGEMENT MOTION D.I. 2195 part 5).

- 27 -

63.    Appellant ALBER is forced to address the issues in a "*pro se*" manner as counsels for the U.S. Trustee, Mark Kenney, and the Court refuse to address the statutory violations, violating, deliberately, **18 U.S.C § 4 MisPrison**,

64.    The U.S. Trustee Guidelines requires that Trustees, individual trustees [and their representatives] are obliged to report any criminal activities and assist in any subsequent prosecutions. The Law states that the Judge and the United States Trustee are to do so also per **18 U.S.C. § 3057(a); 28 U.S.C. § 586(a)(3)(F)**.

65.    The trustee must also investigate the debtor's financial affairs, **11 U.S.C. §§ 704(4), 1106(a)(3), 1202(b)(2)**. The requirements of **28 U.S.C. § 586(a)(3)(F)** are so mandated that the U.S. Trustee is given "no" latitude in the decision to refer. The Code specifically states that if the U.S. Trustee feels no prosecution is warranted the U.S. Trustee must refer the matter, along with a Memo of Declination stating why no prosecution is warranted and await a response from the United States Attorney Office to see if they concur with such a conclusion.

66.    The Court is compelled by the **Federal Judicial Canons of Conduct 3(B)3** and **18 U.S.C. § 3057(a)** to disqualify, DISGORGE and notify the United States Attorney of all illicit behavior by officers of the Court or attorneys under their authority. The Court stated, in spite of the overwhelming evidence of premeditated subterfuge, that the entity the offending parties owned had no benefit; therefore in the Opinion of October

- 28 -

**Initial Appellate Brief by Robert K. Alber**

4, 2005 <u>the Court stated it will not</u> notify the United States Attorney or disqualify anyone

(D.I. 2319 that part on GOLD)

67.    On page 52 of the Opinion of October 4, 2005, part 4 thereof under

<u>Perjury and Bankruptcy Crimes</u>, the Court states, erroneously, that "*no rule existed at*

*that time requiring an officer of the debtor to disclose any relationship in a case.*

*Therefore, the failure to disclose cannot be considered perjury or any other bankruptcy*

*crime. Consequently, the Court finds no reason to refer this matter to the U.S. Attorney.*"

This is clearly erroneous as all the established guidelines for the U.S. Trustee and the

Court spell out who must apply.

> Professional persons employed pursuant to 11 U.S.C. § 327 or 1103
> may be awarded compensation pursuant to 11 U.S.C. §§ 330 and 331.
> Clearly, the statute recognizes that attorneys, accountants, appraisers, and
> auctioneers are professional persons for whom prior court approval of
> employment would be required. Occasionally, it is necessary for the trustee,
> debtor in possession, or committee to contract with outside firms or
> individuals who do not fall within these categories for assistance in the
> performance of their statutory duties. In these circumstances, the question
> sometimes arises whether an order of employment is required. The classic
> definition of professional person for purposes of 11 U.S.C. § 327(a) limits
> the term to "persons in those occupations which play a central role in the
> administration of the debtor proceeding." <u>In re Marion Carefree Ltd.</u>
> <u>Partnership</u>, 171 B.R 584 (Bankr. N.D. Ohio 1994); <u>In re Seatrain Lines,</u>
> <u>Inc.</u>, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981). The degree of autonomy and
> discretion exercised by the firm or individual in question is also a relevant
> consideration in determining whether the requirements of 11 U.S.C. §
> 327(a) apply. <u>In re Bicoastal Corp.</u>, 149 B.R. 216 (Bankr. M.D. Fla. 1993);
> <u>In re Park Ave. Partners Ltd. Partnership</u>, 95 B.R. 605 (Bankr. E.D. Wis.
> 1988). See U.S. Trustee Manual 3-2.8.2.1

68.    Even if, "*arguendo*", you give the Court the latitude, (which **18 U.S.C. 3057(a)** does not permit), that no Rule existed requiring a "pre-petition" officer to disclose any relationship (which is an incorrect "*conclusion of law*"). The Court and U.S. Trustee fail to address the facts of the "collaborative", "clandestine" HIRING LETTER, which is "post-petition." (In re: First Merchants Acceptance Corp., No. 97-1500(JJF), 1997 WL 873551, at*2 and at*3 (D.Del.Dec. 15, 1997) establishing the "*quantitative*" and "*qualitativ*e" standards for who is defined as a professional). As established in the case In re: Stahl v Bartley Lindsay 137 B.R. 305, 309 (D. Minn. 1991) "Courts have concluded that financial advisors must be retained under **11 USC § 327(a).**) The prevailing correct issue the Court did not address in the OPINION is the Declaration of the "plan administrator" which mandates disclosure.

69.    The Court, in stating that no proof of the Perjury of GOLD exists boggles the mind. Many volumes of intentional Perjury violations committed by Defendants have been, and continue to be, documented. The fundamental in the statement(s) by the "plan administrator" in the Plan Declaration (D.I. 1312) (the "GOLD DECLARATION") which stated, "*under penalty of perjury*", that the Plan was negotiated in "*good faith*" "*arms length*" negotiations between creditors and debtor demonstrates that GOLD, having success in the original ruse of the HIRING LETTER, decided to state that the DEBTOR and Creditors were "arms length." (An impossibility given the facts now known of TB&F and GOLD.) (D.I. 1312 page 15, part 7(36).)

- 30 -

**Initial Appellate Brief by Robert K. Alber**

70.    The GOLD DECLARATION states remarks that are also false in nature concerning the Officers **1123(a)(7),** part B.(39) **1129(a)(2),** part C. Plan Proposed in Good Faith **1129(a)(3)** where, among the many perjury acts and ploys committed in D.I. 1312 it was remarked in part C. (43) that the plan was proposed in "*good faith*" and continuing in part C. of D.I. 1312 (44) it states all items were negotiated "*arms length.*" with the compounding stating of part E Post Confirmation Directors, Officers and Insiders **1129(a)(5).**

71.    The crimes are self evident. The punishment thereof is lacking. Such statements in the GOLD DECLARATION placement as Plan Administrator is most assuredly "*materially adverse*" and a serious "*fraud perpetrated upon the Court*" by a seriously egregious "*conflict of interest*". (*Where there is an actual conflict of interest, --- --- disqualification* is mandatory.   In re Marvel Entertainment Group, 140 F.3d at 476.) (here again, ALBER remarks that not enough emphasis can be added.   Especially considering the "non-disclosed" premeditated endeavor to circumvent the Code after being forewarned, "not" to engage in such ventures.) Disinterest issues are clear-cut. *See In re BH&P* In order for counsel to be retained, "*counsel must not hold or represent an interest adverse to the estate' and must be a `disinterested person.'* "In re BH&P Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D. N.J. 1988).

72.    The U.S. Trustee is appointed, by the Janet Reno Reform Act of 1994, as "*watchdog*" for the sake of equity holders of public companies. The U.S. Trustee

remarked in the Motion to DISGORGE TB&F of February 15, 2005 part 2 thereof that *"This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts"*. *"See U.S. Trustee v. Columbia Gas. Sys., Inc. (In re Columbia Gas sys. Inc.)*, 33 F.3d 294, 295-96 (3d. Cir. 1994) (noting that the U.S. TRUSTEE has "public interest standing" under **11 U.S.C. § 307**, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S. Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. TRUSTEE as a "watchdog").

73.    The sale of the DEBTOR assets occurred at an auction price to BAIN/KB Toys, for a percentage less than the price offered by a competitor to BAIN. (Consolidated Stores, Big Lots). Both TB&F and GOLD mentioned their work just prior to the petition of this DEBTOR, in January 2001 and the year of 2000 for Stage Stores, Inc. ("STAGE") (Bankr. S.D. Texas 00-35080). The offending parties failed to disclose that STAGE is owned by BAIN and that GOLD testified that he (GOLD) had been hired by Jack Bush in other assignments (Jack Bush is/was a BAIN entity CEO and Director.)

74.    In the same, disingenuous, less than candid disclosure, MNAT states, in the original Motion to apply for Court approval, that the Learning Center may be a conflict issue, MNAT fails to mention that the Learning Center is owned by Bain while also failing to disclose the immediately disqualifying issue that the Learning Center was merged with Mattel Toys. Mattel was a major creditor and the co-chair of this DEBTOR Creditor Committee. (MNAT currently works for BAIN in the KB Toys bankruptcy case)

- 32 -

(Bankr. Del. Dist. 04-10120.) TB&F was working for the "unofficial" Creditors' Committee of this DEBTOR prior to the filing of the DEBTOR petition while also working in the STAGE case.

75.    GOLD was the "sole" decision making authority of the DEBTOR establishing all the "quantitative" and "qualitative" requirements of who must apply. In re: First Merchants Acceptance Corp., No. 97-1500(JJF), 1997 WL 873551, at*2 and at*3 (D.Del.Dec. 15, 1997) establishing the "*quantitative*" and "*qualitative*" standards for who is defined as a professional). As established in the case In re: Stahl v Bartley Lindsay 137 B.R. 305, 309 (D. Minn. 1991) "Courts have concluded that financial advisors must be retained under **11 USC § 327(a).** As such GOLD was required to apply per **327(a), 101(14), 2014, 2016** and **Local Rule 2014-1(a)** (on ordinary course professionals) that detail the statutory requirements for professionals to be approved by the Court. GOLD could not apply as he would either have to commit Perjury or disclose his conflicts, at a minimum, with TB&F, Paul Traub and BAIN. (Where there is an actual conflict of interest, however, disqualification is mandatory. See In re Marvel Entertainment Group, 140 F.3d at 476.) (emphasis added.) . In re Middleton Arms, L.P., 934 F.2d 723, 724 (6ᵗʰ Cir. 1991) the Sixth Circuit found that the prohibition against disinterestedness was "*unambiguous*" and held that "*[section] 327 prevents individual bankruptcy courts from having to make determinations as to the best interest of the debtors.*"

- 33 -

**Initial Appellate Brief by Robert K. Alber**

76.     The U.S. Trustee in the STIPULATION seeks to "not compel any additional disclosures." Neither the Trustee, nor the Court, has the Constitutional latitude to place arbitrary statute of limitations upon offenses. Such latitude would most certainly only serve to encourage fraudulent endeavors (see the matter of U.S. Trustee v. Price Waterhouse, 19 F.3d 138 (3rd Cir. 1994) where the Third Circuit referred to the adoption of the Sixth Circuits well established standard that "*bankruptcy courts cannot use equitable [any] principles to disregard unambiguous statutory language*." Id, at 142.).

77.     The OPINION (D.I. 2319) addressed part of the issues stating that the OPINION, (in the first footnote of the OPINION), was a "*finding of fact*" and "*conclusion of Law*". The Court stated that GOLD did not have to apply, that no one would be disqualified, no replacement of the Plan Administrator or the parties thereof were material and that the Court would not refer the matter to the United States Attorney's Office.

78.     The issues are compounded by the failures to come clean, even after being Ordered to do so by the RESPONSES as continuous "*non-disclosures*" remain ongoing and occur with reckless abandon by a refusal to comply with ethical or statutory observance and in defiance of the ABA Model Rules of Professional Conduct. Current "*non-disclosed*" issues continue with BAIN/KB Toys, who acquired major assets of the debtor, at significant discounts in the millions where the debtor counsel, the creditors counsel and the "*non-approved*" "*wind-down coordinator*" of the debtor all have continuous connections that remain "*un-disclosed*" to BAIN/KB Toys. This has already

- 34 -

accomplished serious "*material adversity*" upon the estate and parties of interest in the millions. One specific example is the debtor sold the IP asset of BabyCenter.com to Johnson & Johnson for $10 million, (pre-petition) while the primary asset of eToys.com which was originally $10 million with BAIN/KB Toys and then was sold to BAIN/KB Toys for a purported $3 million. As well as Foothill Capital, who had issued eToys a $40 million revolving credit facility in November, 2000, that transacted more than $200 million in the four (4) months prior to eToys filing bankruptcy, without preferential review, and the Goldman Sachs issue where there is an estimated $600 million law suit which the NY Supreme Court has permitted to go forward.

79.    All items, all "*connections*" to BAIN, KB Toys, Foothill/Wells Fargo, Goldman Sachs and Fleet Bank remain "*un-disclosed*" with efforts by Defendants, thus far unsuccessful, to have said proof of additional "*non-disclosures*" expunged from the official Court record, and to arrest to the documentation of the volumes of additional Perjury items that occurred during and after the hearings of December 22nd, 2004, February 1st, 2005, the Depositions of TB&F, MNAT & GOLD on February 9th, 2005 and the consummate hearing of March 1st, 2005. All of which are transcribed into the record (transcripts: (D.I. 2151) (D.I. 2191) (D.I. 2228) respectively).

80.    The egregiousness of the collaborative endeavor to circumvent the Code by the HIRING LETTER is actually compounded, even more, by the fact that GOLD was questioned, pre plan confirmation, about his relationship to TB&F. We are now aware of the HIRING LETTER that multiple parties, (MNAT, TB&F, GOLD and Dave Gatto

(who signed it)) participated upon. This is in the Transcripts of November 1st and November 18th 2002 which detail the inquiries by the shareholders, by ALBER, "*pre-plan*" confirmation of GOLD concerning GOLD possible "*un-disclosed*" relationship with TB&F. (D.l. 2152) (D.I. 2153) Her Honor Walrath specifically Ordered the Plan to be amended so that the exculpatory language would not permit a "*get out of jail free card*" which the shareholder, could pursue actions later, where ALBER was concerned about in November 2002.

81.     In item 12 of the GOLD RESPONSE it specifically states GOLD was hired first "*as the Debtor's wind down coordinator and on July 23, 2001 became the Debtor's President and chief Executive Officer*." The HIRING LETTER states, in a "*nunc pro tunc*" manner, (as it was signed on June 12, 2001 by Dave Gatto and GOLD), that GOLD would initially be "*wind-down coordinator*" in May till July of 2001 and then become CEO/President once a new D&O insurance policy becomes effective.

82.     MNAT, TB&F and GOLD basically, covertly, circumvented the CODE, the Court, the U.S. Trustee, this plaintiff, equity holders, along with all other parties of interest by the HIRING LETTER. The HIRING LETTER contains a clause that states GOLD can choose whether or not, of his own volition, to apply to the Court for hiring approval. The HIRING LETTER was drafted by several, vastly experienced bankruptcy professional attorneys. Audacious as that term is, of itself, reflective, it is just the tip of the proverbial iceberg. The "actus reus" which provides for criminal prosecution as it gives, at the barest of minimums, the first concrete prosecution of the Janet Reno Reform

Act of 1994 18 U.S.C. 155 Fee Fixing. All the elements of statutory violation have

already been admitted. The violations mandate disqualification. See Michael v Federated

Dep't Stores, Inc (In re: Federated Dep't Stores, Inc.), 44 F.3d at 1319 (holding that the

debtor's retention of a professional who was not disinterested, as required under the

Code, was invalid from day one despite the bankruptcy court's approval based upon

equitable concerns). See also the matter of U.S. Trustee v. Price Waterhouse, 19 F.3d 138

(3rd Cir. 1994) where the Third Circuit referred to the adoption of the Sixth Circuit's well

established standard that "*bankruptcy courts cannot use equitable principles to disregard

unambiguous statutory language.*" Id, at 142.

83.    Both the Court and the U.S. Trustee concluded that the "*non –disclosures*"

had occurred, the Court acknowledged many of the details in an OPINION (D.I. 2319)

and the U.S. Trustee had initially acknowledged the "*non-disclosures*" when the U.S.

Trustee submitted the DISGORGEMENT MOTION (D.I. 2195).

84.    With the most persuasive requisite fact for DISGORGEMENT and

disqualification being that the U.S. Trustee states by testimony, documenting

overwhelmingly the blatant egregiousness of the parties, in part 19 and part 35 of the

DISGORGEMENT MOTION, as the U.S. Trustee confirms the deliberateness of the

deception when the U.S. Trustee remarked "*More significantly, TB&F was specifically

aware in this matter, from discussion with the Office of the U.S. Trustee, of the U.S.

Trustee's concern about replacing corporate officers with individuals related to any of

the retained professionals in the case.*" (Where there is an actual conflict of interest,

- 37 -

**Initial Appellate Brief by Robert K. Alber**

however, <u>disqualification is mandatory</u>. See In<u> re Marvel Entertainment Group,</u> 140 F.3d at 476.) (emphasis added.) The Circuit court remarked of Schilling in reference of <u>In re Downs</u> 103 F.3d at 479-80. "*The authority to decline all fees, we concluded, "is inherent, and in the face of such infractions should be wielded forcefully.*'" Id. At 479. and "*Section **329** and **Rule 2016** are fundamentally rooted in the fiduciary relationship between the attorneys and the courts,*" The Court then continued to remark that "*While <u>In re Downs</u> did not involve a "simple technical breach" of Rule 2016 --- the attorney there "acted affirmatively to conceal --------and mislead" the trustee and other creditors id. at 479*'" which is exact on with this DEBTOR case, the subterfuge is brazenly flagrant, blatant and performed in a collusive, collaborative manner, the egregiousness thereof is immense and alarming.

85.      Even after the proof of Perjury, "*non-disclosure*" and conflicts, that are apparent as premeditated (D.I. 2169), the offending parties continuously perpetrate "*non-disclosure*" aided by the staunch refusal to disqualify and DISGORGE, at a minimum 100% of all fees, by the placing in writing, to the Court, that the U.S. Trustee will not compel any additional disclosures. (please see <u>U.S. Trustee Stipulation of Settlement between U.S. Trustee and Traub Bonacquist & Fox LLP</u>) (submitted February 24, 2005) (D.I. 2201). Within Exhibit A of the U.S. Trustee Stipulation of Settlement, signed by Mark Kenney as attorney for the U.S. Trustee, it specifically states on page 2 thereof:

> **"WHEREAS, the U.S. Trustee shall not seek to compel TB&F to make additional disclosures;"**

and Mark Kenney continued with;

- 38 -

"**WHEREAS, this Stipulation is intended by TB&F and the U.S. Trustee to be a complete and final resolution of the [DISGORGEMENT] Motion upon the Court's approval hereof;**"

86.    The U.S. Trustee seeks to violate **28 U.S.C. 586(a)(3)(F),** the Oath of Office and the **Janet Reno Reform Act of 1994** which appointed the U.S. Trustee as "*watchdog*" to protect equity holders from the very acts perpetrated in this debtor's case. The remarks signed by Mark Kenney also are in violation of the U.S. Dept. Of Justice U.S. Trustee Handbook and Guidelines that forbids a Trustee from making settlements of this type or immunity offers as such without direct written permission of the Deputy Director of the U.S. Attorney's Office. Trustees are obliged to report any criminal activities and assist in any subsequent prosecutions.

87.    As the Court is instructed by **18 U.S.C. § 3057**; U.S. Trustees are instructed by **28 U.S.C. § 586(a)(3)(F).** The trustee must also (a) investigate the debtor's financial affairs, **11 U.S.C. §§ 704(4), 1106(a)(3);** (b) oppose discharge where appropriate, **11 U.S.C. §§ 704(6), 1202(b)(1), 1302(b)(1);** and (c) furnish information concerning the estate as requested by party in interest, **11 U.S.C. § 704(7).**

88.    The offending parties have been granted the authority to "*destroy*" books and records. (D.I. 375). This destruction was objected to by the IRS and the Atty. General of Texas. The U.S. Trustee has taken a stand of pomposity that because ALBER is "*pro se,*" ALBER is not worthy of enforcing statutory compliance or "*aggrieved person*

- 39 -

*status*" or even of "standing" to petition the Court to effect compliance to integrity of the Judicial Process.

89.    The U.S. DOJ U.S. Trustee Civil Resource Manual, which is online, states that "*Interested parties*" are defined as "*The Code and the Rules use the term* "party in interest*" throughout, including numerous provisions in Chapter 11. See, e.g., 11 U.S.C. § 1109(b) (*"a party in interest ... may raise and may appear and be heard on any issue") and the U.S. Trustee Resource manual continue to state that it is "*'generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" Thirteen Chapter 7 Cases Of Former Trustee Germain, 182 B.R. 375, 377-78 (Bankr. D. Conn. 1995) (quoting In re Hutchinson, 5 F.3d 750, 756 (4th Cir. 1993)). It also includes entities which are not creditors but which have a "practical" or "sufficient" stake in the outcome of the proceedings so that "fundamental fairness requires ... [they] be afforded an opportunity to be heard on the issues that affect them." Peachtree Lane Assocs., 188 B.R. at 827 (*non-creditor which is the defendant in an adversary proceeding may challenge the venue of a bankruptcy case because the creditor "has a legally protectable interest in the venue of the adversary proceeding .... *[which] in turn, gives them a direct interest in the proper venue of the underlying ... case* ...."). ALBER here states that it is simply amazing how those that would engage in premeditated "*non-disclosure*" and therefore "*perpetrate fraud upon the Court*" would be afforded the ability to summarily dismiss, under perverse pretense of doctrine endeavors, without "*adjudication on merits*", those that would bring to the Court's attention the collaborative endeavors to defraud! It simply boggles the mind how justice has walked a path in this

case. HAAS testified that he had bidders for the public entity of the DEBTOR, but that GOLD and TB&F refused to entertain any of those offers. If this is indeed true, and ALBER has no reason to doubt CLI's integrity in this matter, then ALBER is most definitely an aggrieved person.

90.     The failure, to DISGORGE and disqualify, to act properly is violating statutory instruction and ABA Model Conduct Rules. In re Pierce, 809 F.2d 1356 (8th Cir. 1986) The Eighth Circuit stated that any complaint regarding prohibition issues of section 327(a) "*lies with Congress, and not the courts.*" Id. at 1363. In determining whether a conflict of interest exists in a law firm's representation of parties in a bankruptcy proceeding, courts have relied on, in addition to section **327(a)**, the Rules of Professional Conduct. See, e.g., In re Glenn Elec. Sales Corp., 99 B.R. 596, 598 (D.N.J. 1988) (citing ABA Rules). (Model Rule 1.7 and 1.9 are issues discussed repetitively throughout bankruptcy proceedings.)

91.     The HIRING LETTER of itself is an apparent endeavor to "*dodge*" complicity in perjury, through serious egregious conduct, as the U.S. Trustee had forewarned TB&F and MNAT against doing the very violation of **327(a)** they schemed and ultimately performed, the U.S. Trustee had discussed the issue of placing a "*connected*" party in as [The] key officer of the DEBTOR. In order for the ruse to be successful, to avoid perjury, a tool such as the HIRING LETTER had to be utilized to accomplish such, along with items of much greater formulation, such as the BAIN issue(s). In re BH & P Inc., 949 F.2d 1300, 1317-18 (3rd Cir. 1991) (holding that a

- 41 -

**Initial Appellate Brief by Robert K. Alber**

trustee "breache[s] the duty of disclosure" when he "contemplate[s] and discuses[s] a specific situation involving a potentiality for conflict" but fails to disclose it.) In re BH&P is cited within In re First Jersey Securities (appeal cases 98-5236 and 98-5290 3rd Circuit Opinion filed June 10 1999) where the 3rd Circuit stated "*In summary, § 327(a) mandates disqualification when there is an actual conflict of interest.*"

92.    The hiring letter was not presented publicly until the Court Ordered RESPONSES, providing the GOLD Response (D.I. 2169), while other issues of "*non-disclosure*" were discussed and defended by the Post Effective Date Committee Response whose counsel was Fredrick Rosner (the self described local counsel for TB&F) (D.I. 2170), the Omnibus Response by MNAT (D.I. 2173) and Objection to Motions seeking DISGORGEMENT by TB&F (D.I. 2171). The hiring letter was an exhibit of the GOLD Response (D.I. 2169).

93.    The RESPONSES were Ordered by the Court, to bring forth all facts, to come clean as it were, after this plaintiff's allegations were discussed by the U.S. Trustee with the Court during the hearing of December 22, 2005, the Transcript thereof is within the record (D.I. 2151) which was submitted by an individual noted as "(BJM)" on January 4, 2005 where (BJM) also submitted the Transcripts of the November 1, 2002 hearing and the November 18, 2002 hearing which show that GOLD was questioned "*pre-plan*" confirmation about his connections to TB&F, where, as we are now aware, everyone in the room had knowledge of the relationship and remained, assisting the perjury, by keeping silent!  ALBER had questioned GOLD about his connections to

- 42 -

**Initial Appellate Brief by Robert K. Alber**

TB&F and GOLD responded by denying that he was at cases in the past during the same time TB&F was on the case. This is now established as Fraud by the TB&F supplemental disclosure in the Stage Stores Bankruptcy Case (TX S.D. 00-35078, D.I. 206 therein).

94. No disqualification of this most devastating errant behavior has occurred. Even though the Court took the matter, under advisement, for 6 months and concluded with the Opinion of October 4, 2005, (the "OPINION") (D.I. 2319) after the U.S. Trustee initially issued a Motion to DISGORGE TB&F on February 15th, 2005. (the "DISGORGEMENT MOTION".) (D.I. 2195) This is simply one of the most clearly erroneous decisions that can transpire.

95. The egregious behavior should be punished in the most severe manner possible. In re Kurawa, 256 B.R. 598 (8th Cir. 2000) A lawyer who appeared for creditors in a bankruptcy proceeding in which the lawyer's client was of the debtor was successfully removed and the Court punished severely when the Court awarded fees to the debtor of $65,000 (cost of the disqualification battle) and added an additional sanction of $100,000.00 to deter any counsel from endeavoring such again. The volume of dollars involved and the vast amount of premeditated offenses here warrant much more severity than DISGORGEMENT and disqualification.

96. This plaintiff has made repeated requests from each level of court thus far under **Fed.R.Civ.P. 201 Judicial Notice.** The request(s) have repeatedly been summarily ignored. The appeal process is to rule on judgments, not opinions or the OPINION of the

- 43 -

Court or U.S. Trustee. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984) ("[T]his Court reviews judgments, not opinions.")

97.     Incredibly the egregious placement of GOLD within the DEBTOR was fostered by TB&F through TB&F affirmatively stating to the at that time Chairman of the Creditors Committee, Lee Castillo, that no relationship existed between TB&F & GOLD. (Please see the ex-Chairman's Affidavits, D.I. ##, EXHIBIT 2). TB&F, MNAT & GOLD engaged in multiple acts of deception where each and every single statutory violation mandates disqualification efforts by both the Court and the U.S. Trustee! TB&F, MNAT & GOLD have committed perjury in a clandestine manner; such is perpetration of "*fraud upon the Court*". ("There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation."); In re Tri-Cran , 98 B.R. at 616 ("'Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court.'") (citation omitted); cf. Burns v. Windsor Ins. Co. , 31 F.3d 1092, 1095 (11th Cir. 1994) ("Every lawyer is an officer of the court . . . [and] he always has a duty of candor to the tribunal."); United States v. Shaffer Equip. Co. , 11 F.3d 450, 457 (4th Cir. 1993) ("[A] general duty of candor to the court exists in connection with an attorney's role as an officer of the court."); cf. also Erickson v. Newmar Corp. , 87 F.3d 298, 303 (9th Cir. 1996) ("[I]t is th[e] court which is authorized to supervise the conduct of the members of its bar . . . [and has] a responsibility to maintain public confidence in the legal profession.").

98.    The U.S. Trustee remarked in the Bonus Sales case a statement that holds true here in this DEBTOR concerning TB&F, MNAT and GOLD, where the U.S. Trustee (again, Mark Kenney) remarked In re Bonus Sales (Del. Bankr. 03-12284) in an Objection to the employment of TB&F that "*TB&F's lack of disinterestedness cannot be cured, nor can it be waived* ".In re American Printers & Lithographers, 148, B.R. 862, 867 (Bankr. N.D. Ill. 1992)". *Ross v. Kirschenbaum (In re Beck Ind.),* 605 F.2d 624, 636 (2nd Cir. 1979) ("Courts do not take kindly to arguments by fiduciaries who breached their obligations that, if they had not done this, everything would have been the same.") (Friendly, J.).

99.    Disqualification is mandatory, the Court and the U.S. Trustee superbly confirms the deliberateness of the subterfuge when the U.S. Trustee remarked "*More significantly, TB&F was specifically aware in this matter, from discussion with the Office of the U.S. Trustee, of the U.S. Trustee's concern about replacing corporate officers with individuals related to any of the retained professionals in the case.*" (Where there is an actual conflict of interest, however, disqualification is mandatory. See In re Marvel Entertainment Group, 140 F.3d at 476.) (emphasis added.) The Circuit court remarked of Schilling in reference of In re Downs 103 F.3d at 479-80. "*The authority to decline all fees, we concluded, "is inherent, and in the face of such infractions should be wielded forcefully.*'" Id. At 479. and "*Section 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between the attorneys and the courts,*" The Court then continued to remark that "*While In re Downs did not involve a "simple technical breach" of Rule*

- 45 -

**Initial Appellate Brief by Robert K. Alber**

*2016 --- the attorney there "acted affirmatively to conceal --------and mislead" the trustee and other creditors id. at 479 "* which is exact on with this DEBTOR case.

100.    This case is similar to In re Granite Partners, L.P., 219 B.R. 22, 28 (Bankr. S.D.N.Y. 1998) where a fee examiner was appointed "*post-plan*" confirmation upon revelations of conflicts and the examiner remarked that the disclosures was not inadvertent and represented a "*conscious decision to not specifically refer to known connections with potential litigation targets.*" The Third Circuit has long established the fiduciary requirements of counsels in bankruptcy as in the matter of Felheimer Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1228-29 (3rd Cir. 1995) (affirming denial of entire amount of fees claimed by Chapter 11 debtor's attorneys on basis of evidence indicating that attorneys, in attempt to deter creditors' effort to remove president from management of debtor's affairs, had undertaken representation of debtor's president). Here we have MNAT defending GOLD, TB&F defending GOLD, and TB&F & MNAT attacking Appellant in defense of each other, along with the confirmed PEDC all ignoring their respective fiduciary duties to their individual clients.

101.    There is a readily apparent "*blind eye*" of justice at work here that cannot be simply or cleanly explained. Statutory language cannot be circumvented. (Where there is an actual conflict of interest, however, disqualification is mandatory. See In re Marvel Entertainment Group, 140 F.3d at 476.) (emphasis added.) While the self dealing of TB&F, MNAT and GOLD by the HIRING LETTER is a grave violation, the collusive efforts involving the "*non-disclosure*" of the BAIN issues is extensively more severe.

- 46 -

**Initial Appellate Brief by Robert K. Alber**

The DEBTOR owes the duties of care, loyalty and impartiality among the beneficiaries to the estate and its creditors. In re: Bellevue Place Assocs., 171 B.R. 615, 623-24 (Bankr. N.D. Ill. 1994).

102.    To express the point(s) this pleading did utilize, continually, the U.S. Trustee "*original*" Motion to DISGORGE Traub Bonacquist & Fox of February 15, 2005. (the "DISGORGEMENT MOTION") to eliminate the necessity to debate over already accepted facts. As well as the OPINION of Her Honor Walrath that endeavors to conclude the matter on October 4. 2005 with a corresponding Order on October 4, 2005.

103.    The    documentation    of    the    statutory    violations    within    the DISGORGEMENT MOTION is overwhelming and the case citing therein generally watertight. The OPINION, however, efforts more on testimony on behalf of expunging of Appellant. The OPINION concludes by approving the STIPULATION with minor sanctions against TB&F & MNAT, given the amount of the offenses perpetrated by the offending parties, with no sanction, whatsoever, against GOLD. The Court and U.S. Trustee astoundingly, just simply ignore the issues! (See Neben & Starbett, Inc. v. Chartwell Fin. Corp. (In re Park Helena Corp.), 63 F.3d 877, 881-82 (9th Cir. 1995) (citing numerous authorities); see also In re EWC, Inc., 138 B.R. 276, 280-81 (Bankr. W.D. Okla. 1992) ("The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest .... They cannot pick and choose which connections are irrelevant or trivial. ... No matter how old the connection no matter how trivial it appears, the professional seeking employment must

- 47 -

disclose it.") (cited favorably in In re Park-Helena Corp.); In re B.E.S. Concrete Prods.,
93 B.R. 228, 236 (Bankr. E.D. Cal. 1998) ("Appearances count. Even conflicts more
theoretical than real will be scrutinized."). Even a negligent or inadvertent failure to
disclose may result in the denial of fees; see In re Park-Helena Corp., 63 F.3d at 882. "A
disclosure violation may result in sanctions 'regardless of actual harm to the estate.'" Id.
(quoting In re Maui 14K, Ltd., 133 B.R. 657, 660 (Bankr. D. Haw. 1991)).


104.    Where the Court even goes so far off the path of logic as to remark, in
defense of the decision to permit GOLD to remain as Plan Administrator, that it simply
doesn't matter who the people are that fill the positions of the PLAN. This is stating that
committing these violations in "*bad faith*" and not at "*arms length*" is of no consequence
and therefore they can remain at their ill gotten positions while continuing to be paid their
ill-gotten wages. In re: First Jersey Securities the 3rd Cir. stated '*where there is an actual
conflict of interest, however, disqualification is mandatory*'. (citing In re Marvel
Entertainment Group, 140 F.3d at 476.) In re Crivello. 134 F.3d at 839 ("*a bankruptcy
court should punish a willful failure to disclose the connections required by **Fed. R.
Bankr. P. 2014** as an attempt to put forth a fraud upon the court*"); Rome v. Braunstein,
19 F.3d at 57; In re: Jore Corp, 298 B.R. 703, 725 (Bankr. D. Mont. 2003); quoting In re:
Park-Helena Corp, 63 F.3d at 877, 881 (9th Cir. 1995) (disclosure rules under the Code
"*are applied literally even if the results are sometimes harsh*"); In re: Enron Corp, 2002
WL 32034346 at *5 (Bankr. S.D.N.Y. 2002) ("*courts have ruled that **Rule 2014**
disclosures are to be strictly construed*"), affirmed 2003 WL 223455 (S.D.N.Y.); In re:
Midway Indus. Contractors, 272 B.R. 651, 663 (Bankr. N.D. ILL. 2001).

- 48 -

**Initial Appellate Brief by Robert K. Alber**

105.    This mindset is contravening of the Code **327(a)** and **2014** that mandates
the offending parties are to be disqualified, and the matter(s) referred to the U.S.
Attorney's Office for investigation into criminal prosecution. GOLD committed Perjury
in the Plan Declaration stating that "good faith" "arms length" negotiations were
completed between DEBTOR (GOLD) and the Creditors (TB&F). The Bankruptcy
Court's findings of fact are reviewable for clear error. In re Continental Airlines, 125 F.3d
120, 128 (3dCir. 1997). Legal determinations are subject to plenary review. Id. The
Bankruptcy Court's exercise of discretion is reviewed for abuse thereof. In re Engel, 124
F.3d 567, 571 (3d Cir. 1997).

106.    The resonant documentation by the U.S. Trustee of the premeditated "*non-disclosure*" violation(s) of **327(a)** & **2014**, with the failure to disqualify or address the
many other "*non-disclosures*" that have been brought to the attention of the Court and
U.S. Trustee will leave any reader with the same question this plaintiff & parties of
interest has, which is WHY? In re: Middleton Arms, Ltd Partners, 934 F.2d 723 (6th Cir.
1991) which long established the mandate where "courts cannot use § 105 powers to
disregard disinterestedness criterion". (emphasis added). ! In re: First Jersey Securities
the 3rd Cir. stated '*where there is an actual conflict of interest, however, disqualification
is mandatory*'. (citing In re Marvel Entertainment Group, 140 F.3d at 476.)

107.    As this case is obviously profuse with detailed planned endeavors to
circumvent, such is well beyond the "*single act*" doctrine. Therefore U.S. Attorney

- 49 -

**Initial Appellate Brief by Robert K. Alber**

prosecution is warranted. United States v. Marcello, 13 F.3d 752 (3d Cir. 1994) (single act of aberrant behavior requires a spontaneous, thoughtless, single act involving lack of planning); United States v. Glick, 946 F.2d 335 (4th Cir. 1992) (conduct over a ten-week period involving a number of actions and extensive planning was not "single act of aberrant behavior"); United States v. Williams, 974 F.2d 25 (5th Cir. 1991), *cert. denied*, 507 U.S. 934 (1993) (a single act of aberrant behavior is generally spontaneous or thoughtless; a demand note dated several days before the robbery is neither); United States v. Carey, 895 F.2d 318 (7th Cir. 1990) (single act of aberrant behavior contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning); United States v. Garlich, 951 F.2d 161 (8th Cir. 1991) (fraud spanning one year and several transactions was not a "single act of aberrant behavior").

108.    The dilemma is the more than 100 statutory violation(s) which have been documented by this plaintiff as a "*pro se*" as well as other parties to the Court, which ordinarily, (*one would think*), should have "*unambiguous*" statutory, precedent remedies within the Code; remain, for the most part, without reprimand sufficient enough to deter auxiliary events of premeditated Fraud.

109.    The monies distributed by the perpetrators are to be immediately returned, especially any monies to connected parties, which by such very [Fraud] definition require subordination under Code **510(c).** (Section **510(c)** of the Bankruptcy Code provides that, after notice and a hearing, a court may under principles of equitable subordination,

- 50 -

**Initial Appellate Brief by Robert K. Alber**

subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest...). As well as **502(d).** (Section **502(d)** of the Bankruptcy Code provides for disallowance of "any claim of any entity" from which property is recoverable under certain provisions of the Bankruptcy Code or that is a transferee of a voidable transfer, until such property has been turned over or voidable transfer repaid.)

110.    The application of 502(d) and 510(c), as well as any other statue applies to many millions of dollars of issues such as BabyCenter.com, Wells Fargo/Foothill Capital, TB&F, MNAT, GOLD, Richard Cartoon, CrossRoads LLC, as well as any other items that are of a "*connected*" or "*non-disclosed*" nature.

111.    The amounts earned by the professionals, illegitimately, is more than $14 million to date. This ill gotten gain establishes the "unclean hands" doctrine. United States v. Michalek, 54 F.3d 325 (7th Cir. 1995) (bankruptcy fraud a "special procedure"; it is a violation of a specific adjudicatory process); United States v. Lloyd, 947 F.2d 339 (8th Cir. 1991) (knowing concealment of assets in bankruptcy fraud violates "judicial process"); United States v. Welch, 103 F.3d 906 (9th Cir. 1996) (knowing concealment of assets in bankruptcy fraud violates "judicial process"); United States v. Messner, 107 F.3d 1448 (10th Cir. 1997) (bankruptcy fraud constitutes violation of "judicial process"); United States v. Bellew, 35 F.3d 518 (11th Cir. 1994) (knowing concealment of assets during bankruptcy proceedings qualifies as a violation of a "judicial order").

- 51 -

**Initial Appellate Brief by Robert K. Alber**

112.    As is indicated by the apparent lack of the "*wheel of assignment*" for appeals Del. Dist. Ct. 05-728, 05-829, 05-830 and 05-831, the gap of time to assign, with other abnormal appeal procedures, it appears that powerful influence is the key component to the perversion of the "judicial process." Wayward acts such as the refusal to transmit appeal in the manner the **Fed.R.App.Proc.** commands, demonstrates something is amiss. (The bankruptcy Court Clerk in Delaware, having timely received the fees and "intent to appeal", actually refused to transmit appeals, until a hearing was held on December 1, 2005, to seek the Court to dismiss the appeals from going forward. Through arduous effort the appeals became case nos. 05-829 & 05-830). Such violations of Federal Rules of Appellate Procedure exhibits that there are powerful influential forces at work here.

113.    While the retention of GOLD is addressed In re: United Color Press 129 B.R. 143, 145 (Bankr. S.D. Ohio 1991) "professionals are those that play a central/intimate role –estate". Also stated In re: Stahl v Bartley Lindsay 137 B.R. 305, 309 (D. Minn. 1991) "Courts have concluded that financial advisors must be retained under **11 USC § 327(a).** The disqualification of all parties involved is mandatory, for the sake of the Integrity of the Judicial Process.

114.    The failure to disqualify and DISGORGE violates "*unambiguous*" statutory language and the well established principles of both the 3rd Circuit and the Supreme Court concerning **327(a).** His Honor Alito stated in the Matter of U.S. Trustee v Price Waterhouse, Sharon Steel Corp., (*Lexsee 19 F.3d 138, 1994 App. LEXIS 4605*

- 52 -

**Initial Appellate Brief by Robert K. Alber**

*Bankr. L. Rev. (CCH) P75, 763; 30 Collier Bankr. Cas. 2d (MB) 1522; 25 Bankr. Ct. Dec. 618 (Case 93-3337). "When statutory language is clear and unambiguous it ordinarily must be followed. See e.g. [\*\*8]* Rake v Wade, *124 L. Ed. 2d 424, 113 S. St. 2187, 2191 (1993);* Patterson v. Shumate, *119 L. Ed. 2d 519, 112 S. Ct. 2242, 2246-47 (1992);* Prisco v. Talty, *993 F.2d 21, 24 (3rd Cir. 1993);* Virgin islands v. Knight, *989 F.2d 619, 633 (cert. denied, 126 L. Ed. 2d 457, 114 S. Ct. 556 (1993).* Here, the relevant statutory provisions are clear and unambiguous.


115.    Both the Court and U.S. Trustee have remarked that such "fraud upon the courts" has occurred by TB&F, GOLD and MNAT. The acts of Conspiracy to Defraud and Scheme to Fix Fees, inclusive and exclusive of the dozens of False Oaths, False Declarations and Perjury, all mandate disqualification. In re Envirodyne, 150 B.R. at 1022 ("if the professional sought to be employed does not satisfy one prong of this standard, the Code prohibits the court from authorizing his or her employment"). His Honor Judge Alito stated In the Matter of Price Waterhouse 19. F.3d 138, 140 (3rd Cir. 1994) that the 3rd Circuit rejects the endeavor to misappropriate the Language that the Court may take a "*flexible approach*" in reference of In re BH&P, 949 F.2d at 1315 [\*\*12] stating that *"in the current case, we must interpret and apply Section **327(a)** ----- as we have explained, we find no ambiguity in the relevant language of Section **327(a)**."* (It should be noted that none of the debtor's creditors objected to the proposed retention in the Price Waterhouse case.)

116.     Disallowance of fees and DISGORGEMENT should be the least of their problems. See e.g., U.S. v. Gellence, 24 F.Supp. 2d 922 (E.D. Wis. 1998) (criminal charges under **18 U.S.C. §§152** and 1**623** regarding false and fraudulent declarations in connection with retention and fee applications).

117.     The Gellene and Milbank & Tweed firm matter from In re: Bucyrus 94-20786 (Wisc. 1994) is so on point with this DEBTOR because the Gellene issue was concerning a pre-petition loan of $35 million to that debtor that was paid off pre-petition without preferential review. In this DEBTOR the non review of the preferential of Foothill Capital loan, pre-petition to the DEBTOR, of $40 million, which transacted over $100 million and was, paid off pre-petition, remains an "*undisclosed*" issue even in the RESPONSES. This additional proof of "non-disclosure" and Perjury has been repeatedly overlooked by the Court and U.S. Trustee. This violates the "*universally*" adopted precedent of In re Middleton Arms, L.P. 934 F.2d 723, 724 (6th Cir. 1991) the Sixth Circuit found that the prohibition against disinterestedness was "*unambiguous*" and held that "*[section] 327 prevents individual bankruptcy courts from having to make determinations as to the best interest of the debtors in these situations.*" Id. At 724 "*Section 105(a) cannot be used to circumvent the clear directive of section 327(a)*". Id. At 725.

118.     The Court cited on such on page 12 & 13 of the OPINION in part 6 **Exculpations** In re United Artists Theatre Co., 315 F.3d 217, 230 (3rd Cir. 2003); and In re PWS Holding Corp., 228 F.3d 224, 246 (3rd Cir. 2000). Certainly when the

- 54 -

perpetrators seek to defend their "*unclean hands*" as actions of mere neglect or oversight, any "*aggrieved persons*" or "*parties of interest*" should be permitted rebuttal with every additional offense that remains "*non-disclosed.*"

119.    It cannot be possible that those who would perpetrate "fraud upon the court" would be permitted to confess to one violation and thereby draw immunity to every other egregious endeavor or subterfuge. Items such as the fact that MNAT failed to disclose Goldman Sachs, stating incorrectly that all matters concerning Goldman Sachs in the DEBTOR's case was handed over to TB&F (D.l. 689, which the Court did rule in its Opinion did not meet the Disclosure requirements for DEBTOR's Counsel). An undisclosed issue that also documents additional perjury violations of TB&F, GOLD as the entity Goldman Sachs is the  controlling unit of <u>In re Cosmetics Plus </u>(01-14471, SDNY) by whom TB&F & GOLD were employed. While TB&F & GOLD disclosed many other cases they were working upon, this one failed to make the list during the RESPONSES, the depositions and the hearings on the matters of 'non-disclosure" as TB&F testified repeatedly that eToys was the only case in which TB&F did not disclose their employment of GOLD after ADA was formed (in April, 2001).  The Cosmetics Plus case is evidence of yet more perjury counts to be considered by the U.S. Attorneys' Office, <u>but most relevant to this Appeal is the blatant disregard of the Opinion and Orders of the Court (under Judge Walrath) that the matter of full Disclosure is ongoing.</u>

120.    MNAT, TB&F and GOLD all have continuing "non-disclosures" with BAIN, the entity who acquired the bulk of the assets of the DEBTOR in April, 2001, and

whom the DEBTOR continued to do business with through at least 2003 (well after the
PLAN Confirmation date in November, 2002).

121.    TB&F & GOLD works(ed) with Foothill Capital _and_ their parent
company Wells Fargo. This is extensively similar to the Gellene matter. Violating the
disclosure statutes and the "come clean" Order of the RESPONSES. In re: Plaza Hotel
Corp. 111 B.R. 882, 883 (Bankr. E. D. Cal 1990) which was affirmed 123, B.R. 466
(Bankr. 9th Cir 1990) "The duty [of the professional] is one of complete disclosure of all
facts. Including the fact that GOLD had to apply by **327(a).**  In re Martin 817 F 2d 175
180 (1st Cir1987) addressing both the "*unclean hands*" doctrine and listing the 12 factors
to consider in application of who must apply and disclose by **327(a).**

122.    The Court stated on page 14&15 of the OPINION that **Fed.R.Civ.P.**
**60(b)(6)** did apply reflecting that "*extra-ordinary circumstances*" did exist. Citing In re
Benjamin's Arnolds, Inc., No. 4-90-6127, 1997 WL 86463. at *10 (Bankr. D. Minn. Feb
28, 1997). While the OPINION continued to remark that relief can be granted from a
final fee order which had been entered nearly three years earlier. In re Southmark Corp.,
181 B.R. 291, 295 (Bankr. N.D. Tex. 1995).  The OPINION remarked:

>        "*The failure of an attorney employed by the estate to disclose a*
> *disqualifying conflict of interest, whether intentional or not, constitutes*
> *sufficient 'extraordinary circumstances' to justify relief under* **Rule 60(b)**
> **(6).** *To hold otherwise would only serve to penalize the [Plaintiff] for delay*
> *that was beyond his control and to reward conflicted attorneys for failing to*
> *disclose*"

123.    The repetitive refusals to apply the Code fashions additional disobedience to statutory language such as the violation of **18 USC § 3057(a).** The Court along with the U.S. Trustee {who knowingly violated(s) **28 U.S.C. § 586(a)(3)(F)}** stated, **(**without properly reflecting that the clandestine hiring of a "*wind-down coordinator*" [GOLD]), that GOLD, who remains within the DEBTOR and is still connected to TB&F, was not required to apply by **327(a).** Even though GOLD was the "*sole*" executive authority of the DEBTOR, with 100% autonomy on all bankruptcy related matters being placed therein "post-petition". The U.S. Trustee Manual cites In TWI Int'L., Inc., v. Vanguard Oil and Service Co., 162 B.R. 672 (S.D.N.Y. 1994), the district court noted that given the parameters of sections **327(a)** and **101(14);** "[d]isqualification should be mandated when an actual, as opposed to a hypothetical or theoretical, conflict is present". 165 B.R. at 675 (quoting In re O'Connor, 52 B.R. 892, 897 (Bankr. W.D. Okla. 1985) In re: First Merchants Acceptance Corp., No. 97-1500(JJF), 1997 WL 873551, at*2 and at*3 (D.Del.Dec. 15, 1997) establishing the "*quantitative*" and "*qualitativ*e" standards for who is defined as a professional). (based upon autonomy and bankruptcy issue related authority). GOLD as the "*sole*" chief executive of the DEBTOR and the "*only*" bankruptcy authority was initially brought upon the DEBTOR as "*wind-down coordinator*" at the direct request of TB&F. GOLD meets or exceeds all the criteria harmonized by the First Merchants case. ("*wind-down coordinator*" could never be considered an OCP.)  GOLD complies with the entire list of factors to determine whether an entity to be employed by a debtor is a professional within the meaning of **327(a).** In re Martin 817 F 2d 175 180 (1st Cir1987) addressing both the "*unclean hands*" doctrine and listing the 12 factors to consider in application of who must apply and disclose by **327(a).**

See also In re Seatrain Lines, Inc., 13 B.R. 980, 981 (S.D.N.Y. 1981) and In re Fretheim, 102 B.R. 298, 299 (D. Conn. 1989). In re Twinton Properties 27 B.R. 817 Bankr. (CCH) 69096 (MD. Tenn. 1983) *listing the 9 elements to be clear and convincing of no conflict.* In re Kraft v Aetna (appraiser cannot bypass **327(a)** by stating mechanical services.) In re: Childress v. Middleton Arms ("Bankruptcy Court may not authorize even if the (Plan) debtor would be better served".)

124.   Even minor inadvertent issues of "*non-disclosure*" when no conflict of interests occurs are punishable, demonstrating how serious the Courts take the issue. In re: Olsen Industries, Inc., 222 B.R. 49, 60 (Bankr. Del. 1997) ("The court may find a disclosure violation even where it would not have found a disinterest".) In re: Life Services 279, B.R. 503, 513 (Bankr. W.D. Penn 2002) which quotes In re: Nationwide Sports Distributors, Inc., 227 B.R. 455, 463 (Bankr. E.D. Pa 1998) ("Committee's counsel must provide impartial detached advise"); Westmoreland Human Opport. Inc. v. Walsh 246 F.3d 233, 256 (3rd Circ. 2001). Here conflicting interest exists such as GOLD was to maximize returns and endeavor to preserve, as a fiduciary thereof, the DEBTOR public entity, TB&F was to endeavor to maximize Creditors return irrespective of any thought or obligation to equity holders or DEBTOR surviving. The U.S. Trustee Manual states that **11 U.S.C. § 101(14)(A)-(D)** "*mandates a literal approach to the disinterested person requirement and sets forth in detail a series of characteristics that disqualify a person.*" While continuing it states "*If a professional has the characteristic then disqualification is automatic.*" And "*Since the language of the statute is clear, it must be applied as writte*n" citing In re: Middleton Arms, Ltd. Partnership, 934 F.2d 723 (6ht Cir.

- 58 -

1991). Financial Advisor/workout consultant [wind-down coordinator] is a professional subject to **327(a)** especially with any degree of autonomy In re: Riker Industries, Inc., 122 B.R. 964, 973 (Bankr N.D. Ohio 1991), Stahl v. Bartley Lindsay co. 137 B.R. 305, 309 (D. Minn 1991); In re: Marion Carefree Ltd. Partnership 171 B.R. 584, 588 (Bankr. N.D. Ohio 1994); In re: First Jersey Securities 180 F.3d 504, 509 (3rd Cir. 1999).

125.    By violation of the root issue at hand all other pathways, as well as all endeavors by GOLD, TB&F & MNAT should be, void *"ab initio!"* The disqualifying attribute is specifically set forth in the Code, "courts tend to read the statutory requirements literally". See In re S.S. Retail Stores Corp., No. c98-3794, 1999 WL 281304,*2 (Bankr. N.D. Ca April 30, 1999); U.S.Trustee v. Price Waterhouse, 19 F.3d 138 (3rd Cir. 1994) (cases cited therein); In re: Middleton Arms, Ltd Partners, 934 F.2d 723 (6th Cir. 1991) which long established the mandate where "courts cannot use § 105 powers to disregard disinterestedness criterion" (emphasis added again and again).

126.    Giving the *"prima face"* evidence of the degree that TB&F & GOLD disrespect the Code/Rule of LAW, the PLAN declaration by GOLD (D.I. 1312) states in Section C part 44 thereof, that the PLAN was *"extensively"* negotiated *"arms length"* in *"good faith"* between DEBTOR and Creditors. A task which is simply impossible to accomplish as the DEBTOR is GOLD and the Creditors negotiator is TB&F.  GOLD testified to such 'under penalty of perjury". Even Roberta DeAngelis, in a report to the "Subcommittee on Commercial and Administrative Law" to the Committee on the Judiciary cited cases demonstrative of her detailed knowledge of such scenarios, as this

- 59 -

was quoted by Roberta DeAngelis In re: Harnischfeger, case 99-02171 (Bankr. D. Del. 1999) The U.S. Trustee [successfully] moved to disqualify the [financial advisor] firm for failure to disclose its sub connections to one of the investment affiliates and the failure by that financial advisor to disclose the appointment of one of the firms principals to the board of one of the debtors.

127.    The Courts apply such provisions strictly. See In re Petralux, Stainless, Ltd. 78 B.R. 738 (E.D. Pa. 1987); In re Tojer J. Au & Son., Inc., 65 B.R. 322 (Bankr. N.D. Ohio 1984), aff'd, 64 B.R. 600 (N.D. Ohio 1986) (counsel disqualified where attorney held only ceremonial and uncompensated position); In re GHR Energy Corp., 60 B.R. 52 (Bankr. S.D. Tex. 1985) (counsel disqualified where firm-attorney was an officer of the debtor); B.E.T. Genetics, Inc. 35 B.R. 269 (Bankr. N.D. Cal. 1983) (counsel disqualified where attorney held assistant secretary position with no decision making authority.) Unlike this case where TB&F is directly connected to GOLD, with direct working relationships with BAIN by MNAT (Mattel-Learning Center acquisition) as well as GOLD hiring TB&F while working for BAIN (Stage Stores, Eastern District of Texas, Houston). With GOLD as the "*sole*" decision making authority of the DEBTOR.

128.    The count of offenses by the perpetrators against parties "*aggrieved*" just in D.l., 1312, the GOLD DECLARATION, is voluminous, such as Section 7 part 36 thereof remarks upon Rule **1123(a)(7)** stating such is satisfied by the Plan where GOLD assures the Court that the Plan is "*consistent with interest of creditors and equity security holders and with public policy ... ...*"! As a equity security holder ALBER most assuredly

- 60 -

**Initial Appellate Brief by Robert K. Alber**

disagrees. As the Court remarks that the PLAN, (which is now evident to have been drafted in subterfuge), by TB&F, MNAT & GOLD extinguished the equity security holders' positions (as if the collaborators would do anything other than to guard the power of their inner sanctum).

129.    Quoted In re: Hartford "Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals [322 U.S. 238, 246]  . Cf. Marshall v. Holmes, supra. Proof of the scheme, and of its complete success up to date, is conclusive. Cf. United States v. Throckmorton, supra. And no equities have intervened through transfer of the fraudulently procured patent or judgment to an innocent purchaser. Cf. Ibid; Hopkins v. Hebard, 235 U.S. 287, 35 S.Ct. 26." Referenced of 3rd Circuit authority to review bankruptcy abuse In re Continental Airlines, 125 F.3d 120, 128 (3rd Cir. 1997). Legal determinations are subject to plenary review. Id. The Bankruptcy Court's exercise of discretion is reviewed for abuse thereof. In re Engel, 124 F.3d 567, 571(3d Cir. 1997).

130.    It is established that disclosure is not just of items this past week but of several years. TB&F states, in their response of January 25th, 2005, that TB&F knew little of GOLD prior to the year 2000.  The issues are did TB&F have a relationship with

- 61 -

GOLD prior and during the DEBTOR estate. The answer is Yes! Was the relationship disclosed? The answer is No! Neben & Starbett, Inc. v. Chartwell Fin. Corp. (In re Park Helena Corp.), 63 F.3d 877, 881-82 (9th Cir. 1995) (citing numerous authorities); see also In re EWC, Inc., 138 B.R. 276, 280-81 (Bankr. W.D. Okla. 1992) ("The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest .... They cannot pick and choose which connections are irrelevant or trivial. ... No matter how old the connection no matter how trivial it appears, the professional seeking employment must disclose it.") (cited favorably in In re Park-Helena Corp.); In re B.E.S. Concrete Prods., 93 B.R. 228, 236 (Bankr. E.D. Cal. 1998) ("Appearances count. Even conflicts more theoretical than real will be scrutinized."). Even a negligent or inadvertent failure to disclose may result in the denial of fees; see In re Park-Helena Corp., 63 F.3d at 882. "A disclosure violation may result in sanctions 'regardless of actual harm to the estate.'" Id. (quoting In re Maui 14K, Ltd., 133 B.R. 657, 660 (Bankr. D. Haw. 1991)).

# RELIEF REQUESTED

131.    The issue of "non-disclosures" of "conflicts of interest" are undisputed. The Court and the U.S. Trustee have stated that "non-disclosures" have occurred.

132.    The Court and the U.S. Trustee have violated, in a clearly erroneous manner, the statutory requirements of the Code and Rule of Law. Specifically that 327(a) mandates disqualification when "non-disclosed" "conflicts of interests" occur.

133.    GOLD committed Perjury as part of the GOLD DECLARATION and has "unclean hands" in his endeavor to assist the cover up by the HIRING LETTER.

134.    GOLD was questioned Pre Plan confirmation on his relationship with TB&F and testified falsely.

135.    TB&F committed Perjury many times by submitting false 2014 & 2016 affidavits.

136.    MNAT repeatedly committed Perjury and the Court has already Ruled that their failure to Disclose was intentional.

137.    The Court and the U.S. Trustee are mandated by the Judicial Canons of Conduct, 18 U.S.C. § 3057(a) and 28 U.S.C. 586(a)(3)(F) to DISGORGE, disqualify and refer the matter to the United States Attorney's Office.

138.    The Court stated "extra-ordinary" circumstances existed (while imposing the mildest of Sanctions upon Defendants to the dismay of many).

139.    The U.S. Trustee stated the "non-disclosure" of TB&F was materially adverse to the DEBTOR.

- 63 -

**Initial Appellate Brief by Robert K. Alber**

140.   ALBER prays the Court apply the statutory language of 327(a) correctly and Order the Bankruptcy Court to disqualify TB&F, MNAT & GOLD.

141.   ALBER prays the Court condemns the U.S. Trustee endeavor to "not seek to compel any additional disclosures" and Order that everyone come clean 100% and disclose everything.

142.   ALBER prays the Court Order the removal of GOLD as Plan Administrator and that a replacement administrator be held to the legal standard.

143.   ALBER prays the Court Order that ALBER be allowed a full and unfettered review of the Books and Records of the DEBTOR.

144.   ALBER prays that the Court Order a complete statement of all financial transactions of the DEBTOR, both in and out, to whom, for how much and why. (CrossRoads LLC has been paid millions in fees to handle the financial affairs of the DEBTOR and should be able to print this out immediately).

145.   ALBER prays the Court refer this matter to the United States Attorneys Office and seek a Special Prosecutor as this case is demonstrative of a syndicate weilding extreme power and influence, in and out of Court.

- 64 -

146.   ALBER prays for justice. The evidence of intentional circumvention of the Code is overwhelmingly documented. The refusal to apply statutory language is also documented irrefutably.

147.   Fed. R. Bankr. P. 2014 disclosure requirements are to be strictly construed. Rome v. Braunstein, 19 F.3d 54, 59 (1st Cir. 1994); In re Arlan's Dep't Stores, Inc., 615 F.2d 925, 933 (2d Cir. 1979) (decided under substantially similar predecessor to Fed. R. Bankr. P. 2014). All facts that may have any bearing on the disinterestedness of a professional must be disclosed. It is the responsibility of the professional, not of the court, to ensure that all relevant connections have been brought to light. See, e.g., Rome v. Braunstein, 19 F. 3d at 58-60; In re Glenn Elec. Sales, 99 B.R. 596, 599 (D.N.J. 1988); Diamond Lumber, Inc. v. Unsecured Creditors' Committee, 88 B.R. 773, 776 (N.D. Tex. 1988). Failure to disclose relevant connections is an independent basis for the disallowance of fees or disqualification. See In re Futuronics Corp., 655 F.2d 463, 469 (2d Cir. 1981), cert. denied, 455 U.S. 941 (1982); In re Arlan's Dep't Stores, Inc., 615 F.2d at 933; Rome v. Braunstein, 19 F.3d at 59; In re Leslie Fay Cos., Inc., 175 B.R. 525 (Bankr. S.D.N.Y. 1994); In re Granite Sheet Metal Works, Inc., 159 B.R. 840, 847 (Bankr. S.D. Ill. 1993); In re Envirodyne Indus., Inc., 150 B.R. 1008, 1021 (Bankr. N.D. Ill. 1993).

148.   Matter of Codesco, Inc., 18 B.R. 997, 999 (Bankr. S.D.N.Y. 1982) For example, in Codesco, the court stated that: [t]here is no question that the purpose of the incorporation of the disinterest requirement in 11 U.S.C. § 327 was to prevent even the

- 65 -

**Initial Appellate Brief by Robert K. Alber**

appearance of a conflict irrespective of the integrity of the person or firm under consideration. Certainly, a "disinterested" person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters. 18 B.R. at 999 (citing In re Realty Assoc. Sec. Corp., 56 F. Supp. 1007 (E.D.N.Y. 1944)). In TWI Int'l., Inc. v. Vanguard Oil and Service Co., 162 B.R. 672 (S.D.N.Y. 1994), the district court noted that given the parameters of sections 327(a) and 101(14): [d]isqualification should be mandated when an actual, as opposed to hypothetical or theoretical, conflict is present. This in no way precludes disqualification for a potential conflict. The test is merely one of a potential actual conflict 162 B.R. at 675 (quoting In re O'Connor, 52 B.R. 892, 897 (Bankr. W.D. Okla. 1985)).

149.     Court approval of a professional person's employment is contingent upon a finding that the applicant has met a two-pronged test: (1) the professional must be disinterested, 11 U.S.C. § 327(a) (see USTM 3-6.2); and (2) must not hold an interest adverse to the estate. The question of whether a professional meets the standards of the law is one for the court to adjudicate after a full disclosure of the facts. In re Leslie Fay Cos., Inc., 175 B.R. 525 (Bankr. S.D.N.Y. 1994). A failure to disclose constitutes an independent basis for disqualification. In re Diamond Mortgage Corp., 135 B.R. 78 (Bankr. N.D. Ill. 1996).

150.     U.S. Trustee Manual provides in >> Volume 3: Chapter 11 Case Administration >> Chapter 3-6: Employment Issues:

### Chapter 3-6: Employment Issues

### 3-6.1.1 - 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014

the requirements of 11 U.S.C. § 327 "*serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.*" Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994).

The U.S. DOJ Trustee notes additionally that:

"The contents of an employment application are dictated by Fed. R. Bankr. P. 2014. It must contain all of the following elements:

1. specific facts showing the necessity of the employment;

2. the name of the person to be employed;

3. the reasons for the selection;

4. the professional services to be rendered;

5. any proposed arrangement for compensation; and

6. all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the Office of the U.S. Trustee.

151.     The **Fed. R. Bankr. P. 2014** disclosure requirements are to be strictly construed. Rome v. Braunstein, 19 F.3d 54, 59 (1st Cir. 1994); In re Arlan's Dep't Stores,

- 67 -

**Initial Appellate Brief by Robert K. Alber**

Inc., 615 F.2d 925, 933 (2d Cir. 1979) (decided under substantially similar predecessor to Fed. R. Bankr. P. 2014). All facts that may have any bearing on the disinterestedness of a professional must be disclosed. It is the responsibility of the professional, not of the court, to ensure that all relevant connections have been brought to light. See, e.g., Rome v. Braunstein, 19 F. 3d at 58-60; In re Glenn Elec. Sales, 99 B.R. 596, 599 (D.N.J. 1988); Diamond Lumber, Inc. v. Unsecured Creditors' Committee, 88 B.R. 773, 776 (N.D. Tex. 1988). Failure to disclose relevant connections is an independent basis for the disallowance of fees or disqualification. See In re Futuronics Corp., 655 F.2d 463, 469 (2d Cir. 1981), cert. denied, 455 U.S. 941 (1982); In re Arlan's Dep't Stores, Inc., 615 F.2d at 933; Rome v. Braunstein, 19 F.3d at 59; In re Leslie Fay Cos., Inc., 175 B.R. 525 (Bankr. S.D.N.Y. 1994); In re Granite Sheet Metal Works, Inc., 159 B.R. 840, 847 (Bankr. S.D. Ill. 1993); In re Envirodyne Indus., Inc., 150 B.R. 1008, 1021 (Bankr. N.D. Ill. 1993).

152.    A Trustee is required to monitor the estate **28 USC 586(a)(3)(H)** In re R & R Associates of Hamption, 402 F.3d 257, 44 Bankr. Ct. Dec. (CRR) 145 (1st Circuit. 2005) the First Circuit found that where counsel to a debtor partnership had also acted as counsel to the individual partners in the past (and failed to disclose the same to the court), the firm was not only required to DISGORGE its fees, but could also be held liable for damages to the debtor partnership based on a breach of fiduciary duty.

153.    **The U.S. Trustee is instructed that** "There may be an issue as to whether or not the person to be employed is a professional and thus subject to the employment

and compensation requirements of the Bankruptcy Code. See USTM 3-6.1.3. If the person to be employed will be actively involved in case administration, the U.S. Trustee should assert that they are professionals. See, e.g., In re Bartley Lindsay Co., 120 B.R. 507 (Bankr. D. Minn. 1990), aff'd, 137 B.R. 305 (D. Minn. 1991) (management compensation and required to DISGORGE amounts paid); In re WFDR, Inc., 22 B.R. 266 (Bankr. N.D. Ga. 1982) (management consultant denied compensation when employment not approved). Other decisions regarding classification as a professional include United States ex rel Kraft v. Aetna Casualty and Sur. Co., 43 B.R. 119 (M.D. Tenn. 1984)(appraiser); In re Neidig Corp., 117 B.R. 625 (Bankr. D. Colo. 1990)(operator of radio station was a professional person -- the operator provided specialized services and acted with relatively unfettered autonomy and discretion);"

154.     GOLD was the "sole" "autonomous" bankruptcy authority of the DEBTOR, placed there by the subterfuge of the clandestine HIRING LETTER, drafted by MNAT, TB&F, GOLD and Dave Gatto at a minimum.     Therefore it is a "collaborative" endeavor to "conspire" to circumvent the Code as the U.S. Trustee had specific discussions about parties connected to the professionals in the case. (The DISGORGEMENT MOTION part 19 and part 35). To permit this subterfuge to continue sets a precedent for "male fides" to build itself into full fledged corruption of the Judicial Process and destruction of the public's faith in the Integrity of the Court.

155.    ALBER prays this Court grant a Comfort Order that permits all the Justice one can remedy against this scheme to defraud, as well as any other relief the Court can muster and/or considers appropriate.

# **CONCLUSION**

Having shown that the sentences handed down in Judge Walrath's Opinion & Orders, dated October 4th, 2005, against MNAT, TB&F and GOLD, are insufficient to deter violations of Federal Bankruptcy Laws by said parties in the future, and that the violations of said parties was of such magnitude as to undermine the integrity of the Federal Bankruptcy System if not sanctioned to the fullest extent of the Law, and in turn referred to the United States Attorney's Office for investigation, review and prosecution, ALBER does respectfully assert that this Appeals Court therefore issue its Opinion and Rulings in a manner favorable to the ALBER Appeal.

RESPECTFULLY SUBMITTED,

ROBERT K. ALBER
*Pro Se*
*17685 DeWitt Avenue*
*Morgan Hill, CA  95037*
*Tel/Fax:    (408) 778-5241*
*Cell:        (928) 279-6244*

*Appellant-Cross Appellee*

**Initial Appellate Brief by Robert K. Alber**

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of January, 2007, I served copies of the foregoing

brief, in the manner so indicated, on the parties as listed below at the following addresses:


*(Original and one (1) copy mailed)*
Office of the Clerk
United States District Court
844 N. King Street, Lockbox 18
Wilmington, Delaware  19801-3570


*(Original and one (1) copy mailed)*
Office of the Clerk
Court of the United States Bankruptcy Court
District of Delaware
824 Market Street, 5th Floor
Wilmington, Delaware  19801


*(Served by mail and e-mail)*
Robert J. Dehney, ESQ
Derek Abbott, ESQ
Gregory W. Werkheiser, ESQ
Michael Busenkell, ESQ
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
Tel:    (302) 575-7229
Fax:    (302) 425-4663
RDehney@MNAT.com
dabbott@mnat.com
gwerkheiser@mnat.com


- 71 -

**Initial Appellate Brief by Robert K. Alber**

*(Served by mail and e-mail)*
James L. Garrity, Jr., ESQ
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Tel:    (212) 848-4879
Fax:    (212) 848-4879
Defense Counsel for Traub, Bonacquist & Fox LLP (now defunct)
jgarrity@shearman.com

*(Served by mail and e-mail)*
Ronald R. Sussman, ESQ
Kronish, Lieb, Weiner & Hellman LLP
1114 Avenue of the Americas
New York, NY 10036-7798
Tel:    (212) 479-6063
Fax:    (212) 820-9785
Defense Counsel for Traub, Bonacquist & Fox, LLP (now defunct)
rsussman@kronishlieb.com

*(Served by mail and e-mail)*
Mark Minuti, ESQ
Barry F. Gold
Saul Ewing LLP
222 Delaware Avenue
Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Tel:    (724) 413-5783
Fax:    (724) 898-0015
Defense Counsel for Barry Gold
mminuti@saul.com
barrygold@aol.com

*(Served by mail and e-mail)*
G. David Dean, ESQ
Saul Ewing LLP
100 South Charles Street
Baltimore, MD 21202
Tel:    (410) 332-8704
Fax:    (410) 332-8163
Defense Counsel for Barry F. Gold
gdean@saul.com

- 72 -

**Initial Appellate Brief by Robert K. Alber**

*(Served by mail and e-mail)*
Paul R. Traub, ESQ
Susan F. Balaschak, ESQ
Steven E. Fox, ESQ
Maura I. Russell, ESQ
Wendy G. Marcari, ESQ
Dreier, LLP/The Traub Group, f/k/a Traub, Bonacquist & Fox, LLP (defunct)
499 Park Avenue
New York, NY  10022
Tel:    (212) 328-6100
Fax:    (212) 328-6101
pt@tbfesq.com


*(Served by mail and e-mail)*
Michael S. Fox, ESQ
Olshan, Grundman, Frome, Rosenzweig & Wolosky, LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022
Tel:    (212) 451-2277
Fax:    (212) 451-2222
Formerly of Traub, Bonacquist & Fox, LLP (now defunct)
mfox@olshanlaw.com


*(Served by mail and e-mail)*
U.S. Securities and Exchange Commission (SEC)
Susan Sherrill-Beard
E. Gordon Robinson
3475 Lenox Road
Suite 1000
Atlanta, GA  30326
Tel:    (404) 842-7625
Fax:    (404) 842-7633
Investigators for the SEC
sherrill-beards@sec.gov

**Initial Appellate Brief by Robert K. Alber**

*(Served by mail and e-mail)*
Kelly Beaudin Stapleton, ESQ
U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107
Tel:    (215) 597-4411
Fax:    (215) 597-5795
Office of the U.S. Trustee
kelly.b.stapleton@usdoj.gov

*(Served by mail and e-mail)*
Mark S. Kenney, ESQ
J. Caleb Boggs Federal Building
844 King Street,
Suite 2313
Lockbox 35
Wilmington, DE  19801
Tel:    (302) 573-6565
Fax:    (302) 573-6497
Office of the U.S. Trustee
mark.kenney@usdoj.gov

*(Served by mail and e-mail)*
Frederick Rosner, ESQ
Duane, Morris, LLP
1100 North Market Street
Suite 1200
Wilmington, DE 19801-1246
Tel:    (302) 657-4943
Fax:    (302) 657-4901
Local Counsel for Traub, Bonacquist & Fox (now defunct)
Formerly of Jaspan Schlesinger Hoffman, LLP
FBRosner@duanemorris.com

**Initial Appellate Brief by Robert K. Alber**