IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ETOYS, INC., et al., | ) | Case Nos. 01-0706 (MFW) |
| | ) | through 01-0709 (MFW) |
| Debtors. | ) | |
| | | |
| ROBERT K. ALBER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-830-SLR, |
| | ) | procedurally consolidated with |
| TRAUB, BONACQUIST & FOX LLP, | ) | Civ. No. 05-831-SLR |
| BARRY GOLD, MORRIS NICHOLS | ) | |
| ARSHT & TUNNELL LLP, and | ) | |
| POST-EFFECTIVE DATE COMMITTEE | ) | |
| OF EBC I, INC., | ) | |
| | ) | |
| Appellees. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 26th day of February, 2007, having reviewed the pending motions filed in the above captioned cases, as well as the papers submitted in connection therewith;

IT IS ORDERED that the pending motion to dismiss (D.I. 42) is granted, for the reasons that follow:

1. **Background.** Appellant Robert K. Alber, according to his papers, bought stock in eToys, Inc. starting in December 2000. By March 2001, eToys, Inc. had filed for protection under Chapter

11 of the Bankruptcy Code. During the course of the following months, Mr. Alber became an active, pro se participant in the eToys bankruptcy proceedings. By October 2002, Mr. Alber had made the acquaintance of a certain Johann Hamerski and had "transferred 100,000 shares of eToys stock to Johann & Lee Ann Hamerski's Scottrade brokerage account pursuant to a mutually agreed upon price...." (D.I. 35 at 6 and ex. B) Mr. Alber reports that, at least by January 2004, his relationship with the Hamerski family had deteriorated to the point of competing lawsuits filed in Arizona and Alaska. (D.I. 35, exs. D-H, K-M, P)

2. In October 2005, Chief Judge Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware issued an opinion and order in the eToys bankruptcy case resolving, inter alia, several motions filed by Mr. Alber. Mr. Alber filed an appeal from this order on December 2, 2005. By order dated August 30, 2006, the then assigned district judge granted appellees' motions to strike certain of Mr. Alber's record designations and required appellant, Mr. Alber, to submit any amendments to his designation of record within two weeks. (D.I. 22) Mr. Alber complied with this order and the court thereafter entered a briefing schedule for the parties to follow in connection with the merits of Mr. Alber's bankruptcy appeal. (D.I. 24, 25)

3. Consistent with an amended consolidated[1] scheduling order, Mr. Alber's opening brief in support of his appeal was due to be filed on or before October 4, 2006. (D.I. 28) Mr. Alber failed to comply; appellee MNAT filed a motion requesting a status conference, which motion was joined by appellees Barry Gold ("Gold") and Traub, Bonacquist & Fox LLP ("TBF"). (D.I. 29-31) Mr. Alber filed a response to these motions, requesting an extension of time to file his opening brief due to "mental exhaustion" and "extreme stress" relating to the ongoing Hamerski litigation. (D.I. 35, ex. A) The then assigned judge held a telephonic status conference on October 16, 2006 and, on October 23, 2006, issued a second amended consolidated scheduling order whereby Mr. Alber was given until November 15, 2006 to file his opening brief in support of his appeal. (D.I. 39) When Mr. Alber failed to comply, appellees filed the pending motion to dismiss. (D.I. 42) By order dated January 5, 2007, the court gave Mr. Alber a third and final opportunity to file his opening brief by January 18, 2007; Mr. Alber was duly warned that his case would be dismissed if he failed to timely comply. (D.I. 44) Mr. Alber did not file any responsive papers on or before January 18, 2007. On January 23, 2007, however, he filed a brief which appears to address the merits of his appeal.

---

[1] A cross appeal from Judge Walrath's October 4, 2005 opinion and order was filed by Morris Nichols Arsht & Tunnell ("MNAT") and procedurally consolidated with Mr. Alber's case.

3

4.  **Legal analysis.** In determining the appropriate sanction for a party's failure to comply with multiple court orders, the court must balance the following factors set out by the Third Circuit in Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863 (3d Cir. 1984):

> (1) the extent of the party's personal responsibility;
> (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Id. at 868.

  a.  **Personal responsibility.** Mr. Alber is a pro se litigant who was an effective advocate in the bankruptcy proceedings. His motion for an extension of time was granted by this court and, despite three opportunities to pursue his appeal, he failed to do so in a timely manner.

  b.  **Prejudice.** Mr. Alber's repeated failure to comply with the court's orders, and the motion practice this repeated failure generated, imposed additional burdens on both the appellees and the court. Moreover, given the nature of Mr. Alber's complaints against appellees, timely resolution of the appeal has been thwarted by Mr. Alber's conduct.

  c.  **History of dilatoriness.** Mr. Alber has demonstrated a history of dilatory behavior in this case, starting with his improper record designations and ending with

the untimely filing of his opening brief.

d. **Bad faith.** Mr. Alber's conduct has not been consistent with an interest in, or respect for, the appellate process.

e. **Alternative sanctions.** Given the nature of the appellate process, and the ineffective threat of sanctions communicated at the October 16, 2006 status conference and through the January 5, 2007 order, no sanction short of dismissal would be effective.

f. **Meritoriousness of appeal.** In her October 4, 2005 opinion and order, Judge Walrath granted Mr. Alber's motions to the extent that she ordered MNAT to disgorge certain fees based on its having actual conflicts of interest for a limited period of time. Likewise, Judge Walrath granted Mr. Alber's motions to the extent that she found a basis in fact to conclude that TBF had failed to disclose certain relationships; she, therefore, approved a settlement agreement entered into between TBF and the United States Trustee's Office whereby TBF agreed to disgorge $750,000 of the fees received by it in the bankruptcy case. Judge Walrath denied Mr. Alber's motions to impose sanctions against appellee Gold and approved, over Mr. Alber's objection, a settlement agreement between the United States Trustee and Goldman Sachs & Co., whereby the latter agreed to remit an additional $200,000 to settle a dispute over return of certain

pre-petition fees and expenses. In his appeal, Mr. Alber, for the most part, challenges Judge Walrath's exercise of discretion in fashioning the appropriate remedies for the disinterestedness and disclosure violations she identified. It is well established, however, that the bankruptcy courts possess broad discretion to fashion appropriate remedies when confronted with such violations. See United States Trustee v. Price Waterhouse, 19 F.3d 138 (3d Cir. 1994). Likewise, it is well established that the approval of settlements under Bankruptcy Rule 9019 is committed to a bankruptcy court's discretion. See In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006). The likelihood that Mr. Alber can successfully challenge the bankruptcy court's exercise of its broad discretion as to such matters is minimal.

5. **Conclusion.** For the reasons stated above, the court concludes that the factors identified in Poulis weigh in favor of dismissal with prejudice. Therefore, appellees' motion to dismiss (D.I. 42) is granted. The appeal is dismissed with prejudice. The remaining pending motion (D.I. 51) is denied as moot.

_____
United States District Judge