## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| ETOYS, INC., <u>et al.</u>, | Case Nos. **01-0706** (MFW) |
| Debtors. | through 01-0709  (MFW) |
| | (Jointly Administered) |

_____X

Steven Haas (a/k/a Laser Haas)
        Appellee

    &

ROBERT K. ALBER, *Pro Se*,

        Appellant,


    v.

        Civil Action No. 05-0830
(SLR)
Procedurally Consolidated with
Civil Action No. 05-0831

TRAUB, BONACQUIST & FOX, LLP,
BARRY GOLD, MORRIS, NICHOLS,
ARSHT & TUNNELL, LLP, BARRY F.
GOLD and the POST-EFFECTIVE DATE
COMMITTEE OF EBC I, INC.,

        Appellees.

-----------------------------------------------------X

## EMERGENCY MOTION TO RECONSIDER MOTION ALBER APPEAL DISMISSAL FOR WRIT OF MANDAMUS TO ORDER REFERRAL TO US ATTORNEY OFFICE PER 18 U.S.C. § 3057(a) RECUSAL OF JUDGE PER RULE 5004 REVIEW OF FAILURE TO ACT BY UNITED STATES TRUSTEE AND DIRECTIVE TO REMOVE BARRY GOLD AS PLAN ADMINISTRATOR WHILE GRANTING REVIEW OF BOOKS AND RECORDS PER RULE 2004 TO SPECIFICALLY BE A FISHING EXPEDITION AND A

**DIRECTIVE TO APPOINT A COMMITTEE FOR EQUITY HOLDERS WITH COUNSEL THEREOF AS PART OF THE REQUIREMENT OF THE MOTION TO RECONSIDER DISMISSAL OF ALBER APPEAL WHILE ALSO GRANTING RIGHTS FOR DISCOVERY WITH A CHANGE OF VENUE REVIEW AS AN ALTERNATIVE MEASURE** .

## STATEMENT

WHEREAS this day, this petitioner, Steven Haas, (a/k/a Laser Haas) ("HAAS") does come before this Court for reconsideration of dismissal of the Robert Alber appeal with prejudice, due to the fact that "fraud upon the court" is continuously being perpetrated and the dismissal of the Robert Alber appeal is an endeavor to "cover up" these matters where the Clerk of this Court appears to be complicit by providing for "Sealed" letters of outside parties, the "sealing" of documents without Motion or justification, while fabricating timeline issues to justify such dismissal.  These matters are being referred to the US Attorney and the Office of Administration of the Courts, Bankruptcy Division in Washington DC as well as the FBI, the US DOJ and others to prevent the proper administration of justice by harassing, intimidation of Appellant and others for the expressed endeavor to cover up felonious violations by long term esteemed colleagues and officers of the court.  As such a Writ of Mandamus is justified to prevent "manifest injustice" that seeks to perpetrate great "materially adverse" harm to "parties of interest" under the "color of law" in violation of 18 U.S.C. § 3057(a). 18 U.S.C. § 1512 and fraud sections 152, statutory violations of 155 Fee Fixing and 157 that must be halted for the sake of the "integrity of the judicial process"!

## DETAILS OF STATUTORY VIOLATIONS AND HISTORIES

1.    In the bankruptcy case of <u>In re eToys</u> (Del Bankr. 01-706) (the "DEBTOR") allegations of Perjury, Fraud, False oaths, Collusion to Defraud, Scheme to Fix Fees, False Declarations, Intimidation of Victim/Witness and Conspiracy to circumvent the Code has occurred by the liquidation entity of Collateral Logistics ("CLI") and the CEO/President/Sole Shareholder thereof Steven Haas (a/k/a Laser) ("HAAS") which were joined and supplemented in detail by an equity holder Robert Alber ("Mr. ALBER"). The allegations have a foundation that has been affirmed by the offending parties through the responses of January 25, 2005 and on the stand testimonies, that the perpetrators thereof seek to dismiss by disrespectful excuses of inadvertent neglect. The violations are by Barry Gold (the "*wind down coordinator*" of the DEBTOR) who was placed within the DEBTOR by a referral of the court approved counsel for the "*official*" committee of unsecured creditors, Traub Bonacquist & Fox ("TBF") and collaboratively assisted by the court approved counsel for the DEBTOR of Morris Nichols Arsht & Tunnel ("MNAT") whereby Barry Gold was made a "*post-petition*" "*wind-down coordinator*" that became the "*sole*" authority of the DEBTOR as subsequent CEO/President of the DEBTOR who now holds the position of confirmed Plan Administrator, which was accomplished by "*surreptitious*" endeavors to circumvent the Code by MNAT, TBF and Barry Gold, that was explained upon the discovery of the "*non-disclosures*" by cheeky excuses of involuntary disregard for the Code and Rule of Law.

2.    The "non-disclosure" of "*conflicts of interest*" that are "*materially adverse*" to "*persons aggrieved*" and "*parties of interest*" are abundantly documented by irrefutable evidence, provided solely by court docket and other "official" records that remain "insurmountable" as is referenced in the United States Trustee Motion to Disgorge Traub

Bonacquist & Fox on February 15, 2005 which is attached hereto as "EXHIBIT 1". A document

that is irrefutable of itself which is required reading to prevent any further "manifest injustice"!

    3.    However, the statutory violations have been assisted by clearly erroneous

"*findings of facts*" and "*conclusions of law*". The allegations occurred in the fall of 2004 which

resulted in "*admitted*" "*non-disclosed*" issues that the United States Trustee (the "UST") stated

on February 15, 2005 in a Motion to Disgorge TBF (the "DISGORGE MOTION") (D.I. 2195)

that "*non-disclosures*" did occur, while the UST also stated such was "*materially adverse*"

(DISGORGE MOTION part 22) after the UST had forewarned the parties not to engage in

replacing key personnel of the debtor. (DISGORGE MOTION part 19 and part 35). The UST

made the following points in the respective parts of the DISGORGE MOTION that, while a

person may fault this "pro se" petitioner for being somewhat repetitive, it is readily apparent that

not enough has been stated when "continuous perjury occurs, with collaborative endeavors to

intimidate and Obstruct Justice by repeated endeavors against HAAS and Mr. ALBER that at the

barest of minimums any one could argue is of a retaliatory nature,

    a.    The UST is charged with Oversight per 28 USC § 586.
    b.    THE UST has standing per 11 USC § 307
    c.    The Janet Reno Reform Act of 1994 appointed the UST as "watchdog".
    d.    Part 5 states Traub and Michael Fox affirmed no conflicts
    e.    Part 6 Barry Gold was "wind down coordinator".
    f.    In Jan. 2002 TBF applied to expand services submitting 2014 schedule.
    g.    Plan was confirmed in November 2002.
    h.    Part 12 states they had a duty to disclose.
    i.    Part 12 also states Local Rule 2014-1(a) disclosure is a continuing duty
    j.    Part 12 also states a [single] violation is independent basis for disgorgement
    k.    Part 14 states professional may not pic n choose
    l.    Part 14 also states parties are not required to search or ferret out violations
    m.    Part 15 states even if no harm disqualification can occur
    n.    Part 15 reflected upon the AC&S Del decision that such failures to disclose should be punished as severely as "fraud upon the court".
    o.    Part 15 also reflected the non-disclosures were "intentional".
    p.    Part 17 stated TBF breached its [fiduciary] duties.

q.  Part 17 also stated that TBFF compounded the violations when it affirmatively continued to falsely state the facts.

r.  Part 18 remarked upon the Bonus Sales, prior knowledge where the parties admitted discussing the fact that the "non-disclosures" were now public and that the [perpetrating] parties continued to remain silent.

s.  Part 19 of the DISGORGE MOTION states that TBF is [vastly] experienced practitioners in bankruptcy matters and TBF is not a stranger to the disclosure/reporting process.

t.  The UST specifically remarked about the parties being forewarned [against] engaging in such behavior as the UST stated *"more significantly TBF was specifically ware, after discussions with the UST of replacing key officers --- related to any professionals."*

u.  Part 19 also stated that the placement of Barry Gold was not an accident, but directly per the request of TBF.

v.  Part 21 states that TBF failure to disclose directly , "seriously" affected the integrity of the judicial process!

w.  Part 22 stated that the items were "materially adverse"  --such that TBF was no longer qualified under 101(14).

x.  Part 23 stated that TBF and Barry Gold had competition of economic interest against [fiduciary responsibilities] that would tend to diminish estate values.

y.  Part 25 stated that Gold's --- impaired TBF and that there was "no independent DEBTOR v. creditor relationship." That it was "unrealistic - would not influence matters, that TBF and Barry Gold had clear [self interest]

z.  Part 29 stated that this is ----"fraud upon the court" where the Supreme Court has always determined whether the alleged fraud "harmed the judicial process"

aa.  Part 31 states [W]here a judgement is obtained by fraud perpetrated by an attorney ---such is "fraud upon the court" and it is done by attorney's who are "officers of the court".

bb.  Part 32 applies to the Robert Alber appeal dismissal as it stated citing the Pearson case that "[W]hatever safeguards counsel may realize in remaining silent "does not" extend to deliberate efforts to mislead."

cc.  Part 33 states that "in this case, as in Pearson, a grave miscarriage of justice took place"

dd.  Part 35 reiterated the statement the UST made in the DISGORGE MOTION part 19 where the parties were "forewarned" not tot engage in such behavior by specific discussions with the UST office.

ee.  Part 36 states that this is all that is necessary to conclude that "fraud upon the court" by the Rule 2014 violations by TBF.

ff.  Part 36 also remarked that "TBF Rule 2014 violation harmed the integrity of the Court and the judicial process. In this case, it also undermined public confidence in the integrity of the bankruptcy process."

gg.  Part 37 stated TBF should be disgorged of $1.6 million {sufficient deterrent]

hh.    When the UST finally remarked in part 39 that "anything less would simply be viewed as a cost of doing business".

### STATUTORY VIOLATIONS NOT YET ADDRESSED OF SERIOUS CONSEQUNCE

4.    Adversely affected parties are shareholders by the scheme to dismiss Mr. ALBER appeal that is assisted by continuous, ongoing, statutory violations as well as creditors and particular persons such as Mr. ALBER, CLI, a court approved liquidation entity owned in whole byu HAAS. Whereupon the Court did issue an Opinion on October 4, 2005 (the "OPINION") (D.I.2319) with a corresponding Order that approved a February 24, 2005 Stipulation to Settle (the "STIPULATION") (D.I. 2201) by Mark Kenney, the attorney for the United States Trustee which seeks to cover up the offenses alleged by engaging in <u>illegal contract obligations</u> such as stating;

"***WHEREAS*** *the United States Trustee will not seek to compel any additional disclosures*".

5.    Such abusive contractual statements are in direct violation of **28 USC 586(A)(3)(F)** as well as Oath of office and **18 USC 3057(a).** The statutory abuse has laid the flawed foundation for the OPINION to state that there was no perjury (even though more than 20 separate counts have occurred by more than half a dozen parties with continued, unaddressed perjury matters being stricken or expunged due to the "*doctrine*" of "*scienter*" as "*unclean hands*" are overwhelmingly documented, which the UST STIPULATION signed by Mark Kenney seeks to utilize in abating statutory requirements.) (an example of perjury not addressed is the simple matter of the Barry Gold Plan Declaration (D.I. 1312) stating that the PLAN was negotiated in "*good faith*" "*arms length*" negotiations between DEBTOR (Barry Gold) and Creditor (TBF), which is impossible to accomplish as Paul Traub did testify on the Stand, March 1, 2005, during direct examination by the Court, (the transcript of which is in the record)(D.I.

2228) that TBF had paid Barry Gold 4 separate payments of $30,000 each from January to May of 2001. (which is both "*pre and post*" petition). Only to halt such payments by TBF to Barry Gold once Barry Gold became the "*wind-down coordinator*" for the DEBTOR at $40,000 per month. This admittance meets all 3 requirements for proof of the violation of the **Janet Reno Reform Act of 1994 18 U.S.C. § 155 Fee Fixing**. Which is, of itself, a misdemeanor that becomes a full-blown list of felony violations when it is assisted by the collaborative endeavor of MNAT, TBF and Barry Gold, with others to circumvent the Code, after being forewarned by the UST not to engage in such matters? (DISGORGE MOTION part 19 and part 35) Not only is "Conspiracy" a probable successful prosecution, RICO has foundation also!

6.    The OPINION continued along illicit avenues of statutory application where the OPINION stated no referral to the United States Attorney would occur, as no perjury occurred by Barry Gold who was "**not**" required to apply as "*wind down coordinator*" post-petition by any law or 327(a) in direct violation of **18 USC 3057(a)** and the **Judicial Canon of Conduct 3(B)3**. No "honorable" review of the facts at hand, on this planet, in compliance with the Code and precedents established by the 3d Circuit can come to the same [erroneous] conclusions.

7.    The illegitimate foundations gives the "*precedent*" impression that the System, the Court and UST will disregard abuse of process which is exhibited, as it has been erroneously stated Mr. ALBER did not submit his brief on time, which is substantiated by false testimonial of facts that have specious events in the extreme warranting investigations in of it's own. It is a simple premise, they must, "*at all cost*", under any and all means of "*power, influence, persuasion or graft*" endeavor to halt these items from being addressed by any authority with integrity above "reproach" or everyone will, at the barest of minimums, be <u>disbarred</u>.

8.     These endeavors to "*cover up*" by dismissing "*good faith*" parties without "*adjudication on merits*" violates the very "**Poulis**" standard the Court seeks to dismiss Mr. ALBER upon. There is uncommon, undeniable, illustration(s) of manipulate which apparently disregards the fact that "*covering up*" these affairs, to assist established colleagues, also becomes complicit by framework with "*unclean hands*" in willful, premeditated "*fraud upon the court*" at the direct "*materially adverse*" harm, not only to the above mentioned parties, also upon the Public as a whole, through direct butchery of the Integrity of the System and the Public's faith in the Courts'.

9.     After allegations asserted by HAAS, whose company CLI was represented by counsels that repeatedly refused, to address the "*non-disclosure*" issues, having, at a minimum violated **18 USC § 4 MisPrison** and other guidelines, such mandated of HAAS "*extra-ordinary*" measures be taken due to fiduciary responsibility. This has been retaliated against by the perpetrators and abandoned by the Counsels of CLI and/or HAAS. Along with the simple plausible issue that all parties are being permitted retaliatory actions against Mr. ALBER and HAAS. Again, such, of itself, is grounds for Writ of Mandamus when the UST as "*watchdog*" and the Court allow even the appearance of retaliatory measures under the "*color of law*". Such is most certainly prohibited behavior and a perversion of justice!

10.     Mr. ALBER joined HAAS notices of failure to disclose as Mr. ALBER had deposed the parties during PLAN confirmation hearings, about possible *"non-disclosed"* relationships. The transcripts of which are in the record (D.I 2152 & 2153). Also Mr. ALBER had discovered additional items through research that became substantiated once HAAS provided the irrefutable proof that Barry Gold and TBF partner Paul Traub were affiliated by the

discovery of Asset Disposition Advisors ("ADA") a company co-principal by Paul Traub and Barry Gold.

11.     The Court, on December 22, 2004 (transcript D.I.2151) did Order responses to occur by January 25, 2005, per local Rules.  Such responses, by their very nature, are to be a "*total*" "*come clean*" episode. Yet the Court, which did the specious maneuver, after HAAS filed an appeal concerning dismissal of the CLI and HAAS claims worth more than $3 million, which was "Court approved" "good faith" endeavors that did "substantial contribution" for the DEBTOR, where the Court issued the OPINION stating ADA did not benefit and ADA was not connected to the DEBTOR issues.  This, of it self is specious as it seeks to divert from the issues. Which is (1) Did TBF and Barry Gold have a relationship [the answer is yes]. (2) Was the relationship disclosed [the answer is a resounding NO], (3) was it materially adverse [even without addressing the BAIN, Foothill, Goldman Sachs, CLI issues, the UST stated in the DISGORGE MOTION  --YES] with the fact that there are continuous "non-disclosed" "conflicts of interest" that any one can see has potential for unethical endeavors, the OPINION is clearly erroneous and the amount of participation in the effort to justify the erroneous conclusions demonstrates the need for Higher Authority to "sufficiently deter" the efforts to Obstruct Justice!

12.     The responses were received and within the Barry Gold response was an Exhibit A, Exhibit 1, which contained the Barry Gold hiring letter (the "HIRING LETTER"). (D.I 2169) that detailed a contractual option for Barry Gold as "*wind down coordinator*" of the DEBTOR, post-petition (the HIRING LETTER is signed in June 2001 stating Barry Gold begins May 2001), where the "*wind down coordinator*" can choose, of his own volition, whether or not, to seek court approval. That one act alone mandates swift, harsh, judicial administration to "*sufficiently deter*" any such subterfuge being contemplated, ever again! This is compounded by

multiple perjury **2014, 330** endeavors of both MNAT & TBF that occurred every time a fee application was submitted, stating, affirmatively, that nothing need be reported to the Court or parties of interest.

13.    Mr. GOLD was the "*sole*" decision making authority of the DEBTOR establishing all the "*quantitative*" and "*qualitative*" requirements of who must apply. In re: First Merchants Acceptance Corp., No. 97-1500(JJF), 1997 WL 873551, at*2 and at*3 (D.Del.Dec. 15, 1997) establishing the "*quantitative*" and "*qualitativ*e" standards for who is defined as a professional). As established in the case In re: Stahl v Bartley Lindsay 137 B.R. 305, 309 (D. Minn. 1991) "Courts have concluded that financial advisors must be retained under **11 USC § 327(a)**.

14.    A "*prima facie*" case, by irrefutable docket records is established against a collaborative collective of professionals engaged in such "*male fides*" acts, so maliciously designed, by uniformed diligent "*mens rea*" that has drafted confirmed PLAN clauses that permit the Administrator to hire without Court approval and pay any issue under $1 million without Court approval, including payments to claims acquired by Liquidity Solutions that is affiliated with BAIN. However, [deplorably], the System seems bent on ignoring the offenses, as the offending parties are well established comrades that are part of the "*inner circle*" elite. Both the Court and the United States Trustee have refused to disqualify or refer, more than 100 statutory infractions, to the United States Attorney Office in violation of **18 U.S.C.§ 3057(a)**.

15.    Whereupon Appellant HAAS and the CLI claim, in the millions, were summarily dismissed, in August 2005, by the substitute justice who stated that Appellant HAAS had reached a $400,000 settlement of the issue. (Judge Baxter Order & Transcript D.I. 2302 & D.I. 2322). The extreme the endeavors go to cover up the issue, while dismissing HAAS or CLI

without adjudication on merits, has such power, that the Court flagrantly and blatantly forbid newly acquired counsel for CLI / Appellant HAAS, to put in his "*pro hac vice*" during the hearing to dismiss, defrauding Appellant HAAS and CLI of "due process" Constitutional rights. (please read transcript of Judge Baxter Order to dismiss D.I. 2322).(The corresponding Order to dismiss with 20 errors for if HAAS had been given $400,000 at the conclusion of 2001 in all probability we would not be discussing these issues today) (D.I. 2312).

16.    HAAS was represented by many counsels who all withdrew refusing to address the "*fraud upon the court*" which of itself is justification for a Writ of Mandamus. Compounded more so by the staunch refusal of the UST and the Courts to address the statutory violations correctly. The perpetrators will argue that HAAS ran out of funds, however, the CLI contract states "*net of all expense*" and HAAS has testified to the fact that MNAT, Barry Gold and TBF were acting as HAAS or CLI counsel by Court Order (please see CLI contracts approved by the Court) (D.I.523). There is also Affidavits which have been submitted, only to be ignored, by the former Chairman of the Creditors Committee which stated that HAAS was entitled to hourly pay and that CLI was owed commissions duly earned. The Chairman Affidavits also stated that the Chairman was deceived by TBF concerning the Barry Gold issue. (D.I. 1481)(Exhibits of HAAS that are sticken)

17.    The Court approved Creditor Committee counsel of TBF did position, "*inter alia*", in "*secret*", within the debtor, "*post-petition*", TBF's paid, long time associate, Barry Gold "*without disclosure*" as "*wind-down coordinator*" & subsequently, CEO/President of the DEBTOR. (part 19 & part 35 of the DISGORGE MOTION which testifies that the parties were forewarned.) Such placement is most assuredly "*materially adverse*" and a serious "*fraud perpetrated upon the Court*" by a gravely, designed and premeditated egregious "*conflict of*

interest". (*Where there is an actual conflict of interest, ------ disqualification* is mandatory. In re Marvel Entertainment Group, 140 F.3d at 476.) ( this plaintiff remarks that not enough emphasis can be added.) (Especially in a "*non-disclosed*" premeditated endeavor to circumvent the Code after being forewarned, "*not*" to engage in such ventures by the UST.) Disinterest issues are clear-cut. *See In re BH&P*   In order for counsel to be retained, "*counsel must`not hold or represent an interest adverse to the estate' and must be a `disinterested person.'* " In re BH&P Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re StarBroadcasting, Inc., 81 B.R. 835, 838 (Bankr. D. N.J. 1988)

18.     The US Trustee and the Court refuse to disqualify, as the Court and US Trustee also fail to do "sufficient deterrent" which is demonstrated by the KB Toys case (04-10120) where TBF petitioned the Court to be appointed the party to prosecute the $100 million preferential Michael Glazer of KB Toys and Stage Stores had received. This issue, of itself, is sufficient enough to warrant Writ of Mandamus.

19.     This failure to correct the matters at hand despite the United States Trustee Guidelines requires that Trustees, individual trustees [and their representatives] are obliged to report any criminal activities and assist in any subsequent prosecutions. **18 U.S.C. § 3057; 28 U.S.C. § 586(a)(3)(F)**. The trustee must also investigate the debtor's financial affairs, **11 U.S.C. §§ 704(4), 1106(a)(3), 1202(b)(2)**. HAAS has testified to "unreported" assets discovered overseas in excess of $2 million. Repeated request for review of books & records are simply ignored which is another foundation for Writ of Mandamus.

20.     The requirements of **28 U.S.C. § 586(a)(3)(F)** are so mandated that the United States Trustee is given "no" latitude in the decision to refer.  The Code specifically states that if the United States Trustee feels no prosecution is warranted the United States Trustee must refer

the matter, along with a Memo of Declination stating why no prosecution is warranted and await a response from the United States Attorney Office to see if they concur with such a conclusion. The Court is not permitted such latitude as both the **Judicial Canon's of Conduct**, specifically **3(B)3** and **18 U.S.C. § 3057(a)** are clearly "*unambiguous*" in mandating referral to the US Attorney office.

21.     On page 52 of the Opinion of October 4, 2005, part 4 thereof under <u>Perjury and Bankruptcy Crimes</u>, the Court states, erroneously, that "*no rule existed at that time requiring an officer of the debtor to disclose any relationship in a case. Therefore, the failure to disclose cannot be considered perjury or any other bankruptcy crime. Consequently, the Court finds no reason to refer this matter to the U.S. Attorney.*" Even if, "*arguendo*", you give the Court the latitude, (which **18 U.S.C. 3057(a)** does not permit), that no Rule existed requiring an officer to disclose any relationship (which is an incorrect "*conclusion of law*"). Ample precedents exist as "*Jurisprudence constante*" (<u>In re: First Merchants Acceptance Corp.</u>, No. 97-1500(JJF), 1997 WL 873551, at*2 and at*3 (D.Del.Dec. 15, 1997) establishing the "*quantitative*" and "*qualitativ*e" standards for who is defined as a professional). As established in the case <u>In re: Stahl v Bartley Lindsay</u> 137 B.R. 305, 309 (D. Minn. 1991) "Courts have concluded that financial advisors must be retained under **11 USC § 327(a).**)

22.     The prevailing issue the Court did not address in the OPINION is the Declaration of the "*plan administrator*" along with the HIRING LETTER, which mandates disclosure. Addressing such issues also mandates the Perjury thereof is insurmountable. That can only be dodged by acts of erroneous "*finding of facts*" and "*conclusions of Law*".. The fact that the OPINION states the premise in vindicating Barry Gold while citing archaic cases inferring thereby that Barry Gold was a "*pre-petition*" officer of the DEBTOR demonstrates unmitigated

gall on behalf of the parties who drafted the OPINION for Her Honor complicit in the scheme to circumvent administration of justice.

23.    This plaintiff understands the difference between idealistic Law application and real world daily endeavors. One can be urged to be lenient, to long term, established colleagues, when a "*single*" "*simple*" overt act occurs by such established contemporaries, (an "OOPS"). However, when extensively experienced bankruptcy professional attorney's whose mainstay mandates appointment by the Court, where such mandate exists, Constitutionally, for the expressed reason to prohibit errant behavior. While the Court seeks to slap the wrist of the "OOPS" by punishing "*good faith*" work of others, then the Court has become complicit in wayward anarchism, especially given the fact the OOPS is not a single act, but multiple subversive acts of a "collaborative" conspired nature!

24.    Whereby this petition seeks referral to the United States Attorney office as mandated by **18 U.S.C. § 3057(a),** along with the **Recusal** of Her Honor Judge Walrath per **Rule 5004,** as well as a "*directive*" for **Review of the Failure to Act of Trustee,** by the UST office per **Rule 2020** with the directive for review of books & records per **Rule 2004,** specifying that such is to be a detailed, "fishing" expedition, permitting discovery and subpoenas of such persons as Susan Balaschak, Ellen Gordon, Richard Cartoon, Scott Henkin, David Haddad, David Gatto and all others that may have knowledge. As the Code specifically states there is "*no attorney client*" privilege in estate matters. Also Barry Gold is to be immediate removed as Plan Administrator which is provided for in the PLAN as clause 5.2 "for cause" of "willful misconduct". That the letters in the District Court record are to become "unsealed" or at the barest of minimums a hearing with all parties present concerning the validity of "seal" application is mandated. If necessary, to assure justice, the transfer of venue of these proceedings

to the Central California District where the DEBTOR domicile exists as it is readily apparent no one in Delaware desires to conform to statutory, unambiguous, decrees. This day this petitioner, Steven Haas (a/k/a Laser Haas) (HAAS) documents and states the following under penalty of perjury.

## Standard of Review

25.     The right to Writ of Mandamus is stated as follows;

**TITLE 28 > PART V > CHAPTER 111 > § 1651**

# § 1651. Writs

**(a)** The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
**(b)** An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction

26.     The function of the Writ of Mandamus can be utilized when Justices refuse to address matters of recusal. A Writ of Mandamus is "*drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to a judicial usurpation of power*". In re: Mwanze, 242 F.3d 521, 524 (3d Cir. 2001). A Writ for Mandamus may not be used to circumvent the appeal process. As this is within an appeal concerning erroneous "*finding of facts*" that is complicit with erroneous " *conclusions of law*" with ongoing Perjury violations, assisting "fraud upon the court" seeking to dismiss "*erroneously*" with "*prejudice*" the standard is not only met, it is exceeded abundantly when both the UST and the Court certify unlawful

contract clauses that permit circumvention of "*unambiguous*" statutory provisions, such as "the United States Trustee will not seek to compel any additional disclosures" (please see the STIPULATION (D.I. 2201))

27.    The 3rd Circuit cites repeatedly the matter of  In re Middleton Arms, L.P., 934 F.2d 723, 724 (6th Cir. 1991) where the Sixth Circuit found that the prohibition against disinterestedness was "*unambiguous*" and held that "*[section] 327 prevents individual bankruptcy courts from having to make determinations as to the best interest of the debtors*". As pecuniary issues cannot be utilized as a statutory forbearance tool, neither can issues of time, especially the clandestine endeavor to dismiss Mr. ALBER appeal.

28.    The proof of statutory violations is overwhelming, as is readily apparent to any first year student, which is partially documented in the DISGORGE MOTION.  There are many "*non-disclosures*" already acknowledged by the Court and US Trustee. It appears however, that due to the alarming growth in either the "*courting*" doctrine, an unnamed "*brotherhood*", or at a minimum a solidarity between established professionals that there is "collaborative" defiance to the Code/Rule of Law, that disqualification, though mandated, shall not be occurring. (Where there is an actual conflict of interest, however, disqualification is mandatory. See  In re Marvel Entertainment Group, 140 F.3d at 476.) (emphasis added.) .  In re Middleton Arms, L.P., 934 F.2d 723, 724 (6th Cir. 1991) the Sixth Circuit found that the prohibition against disinterestedness was "*unambiguous*" and held that "*[section] 327 prevents individual bankruptcy courts from having to make determinations as to the best interest of the debtors*".

29.    The US Trustee DISGORGE MOTION does not mention disqualification, while stating that **RULE 1144** makes it difficult to properly punish the "*non-disclosure*" being that it was more than 3 years before the United States Trustee became aware of the statutory violations.

The Trustee, nor the Court, has the Constitutional latitude to place arbitrary statue of limitations upon offenses. Such latitude, most certainly, would only serve to encourage fraudulent endeavors. (See the matter of <u>United States Trustee v. Price Waterhouse,</u> 19 F.3d 138 (3rd Cir. 1994) where the Third Circuit referred to the adoption of the Sixth Circuits well established standard that "*bankruptcy courts cannot use equitable [any] principles to disregard unambiguous statutory language.*" <u>Id</u>, at 142.)

30.    The staunch refusal to disqualify warrants detailed explanation or resignations, especially given the fact that there are "sting" operations to halt fraud within the bankruptcy court. Such items as the "Truth or Consequences" endeavors spends hundreds of man hours in prosecution of many, many cases which combined together have less violations and less aggravated total amounts than those that exist here in eToys, KB Toys and Stage Stores. (All which benefit BAIN and their associates).

31.    You have a virus of white collar criminal activities which is fostered by billion dollar entities, where all one has to do is loan funds to average established entities, place your associates within and without, such as Barry Gold, TBF & MNAT, after petition is filed, you acquire claims (Stage Stores is Co-debtor with Liquidity Solutions, Liquidity Solutions acquired many claims and votes of this DEBTOR which reduces the amount of Creditor Committee "power centers" and little resistance can be mounted, except by inadvertent, insignificant, "pro se" parties or equity holders. <u>In re Envirodyne</u>, 150 B.R. at 1022 ("if the professional sought to be employed does not satisfy one prong of this standard, the Code prohibits the court from authorizing his or her employment"). His Honor Judge Alito stated In the <u>Matter of Price Waterhouse</u> 19. F.3d 138, 140 (3rd Cir. 1994) that the 3rd Circuit rejects the endeavor to misappropriate the Language that the Court may take a "*flexible approach*" in reference of <u>In re</u>

BH&P, 949 F.2d at 1315 [**12] stating that *"in the current case, we must interpret and apply Section 327(a)* ----- as we have explained, we find no ambiguity in the relevant language of Section 327(a)." (*It should be noted that none of the debtors' creditors objected to the proposed retention in the Price Waterhouse case.*)

32.    Yet with blatant disregard for justice occurs in this DEBTOR as no party is disqualified and the Court summarily dismisses all additional proofs of all other intentional fraud perpetrated that has not been disclosed by the offending parties which has been subsequently discovered. (D.I. 2238, 2240, 2241, 2242, 2246, 2247, 2248, 2249, 2251, 2258, 2286, 2292, 2294, 2296, 2297, 2302, 2312, 2319, 2338, 2339, 2341, 2344, 2346, 2349,2351, 2320) (along with the KB Toys case 04-10120 where Mark Kenney defended the perpetrators by asking the Court to expunge and strike the items Mr. ALBER and HAAS placed therein.) (KB TOYS D.I. 2228, 2336) this is <u>Obstruction of Justice</u> by the very party assigned as "watchdog" as policing agent of the bankruptcy court to protect the integrity of the judicial process and public Trust!

33.    The failure to disqualify and disgorge violates "*unambiguous*" statutory language and the well-established principles of both the 3rd Circuit and the Supreme Court concerning **327(a).**  His Honor Alito stated in the Matter of <u>United States Trustee v Price Waterhouse, Sharon Steel Corp.,</u> (*Lexsee 19 F.3d 138, 1994 App. LEXIS 4605 Bankr. L. Rev.(CCH) P75,763; 30 Collier Bankr. Cas. 2d (MB) 1522; 25 Bankr. Ct. Dec. 618 (Case 93-3337). "When statutory language is clear and unambiguous it ordinarily must be followed. See e.g. [**8]* <u>Rake v Wade,</u> *124 L. Ed. 2d 424, 113 S. St. 2187, 2191 (1993);* <u>Patterson v. Shumate,</u> *119 L. Ed. 2d 519, 112 S. Ct. 2242, 2246-47 (1992);* <u>Prisco v. Talty,</u> *993 F.2d 21, 24 (3rd Cir. 1993);* <u>Virgin islands v. Knight,</u> *989 F.2d 619, 633 (cert. denied, 126 L. Ed. 2d 457, 114 S. Ct. 556 (1993).* Here, the relevant statutory provisions are clear and unambiguous.

34.     Disallowance of fee's and disgorgement should be the least of their problems. See e.g., U.S. v. Gellence, 24 F.Supp. 2d 922 (E.D. Wis. 1998) (criminal charges under **18 U.S.C. §§152** and **1623** regarding false and fraudulent declarations in connection with retention and fee applications). The Gellene and Milbank & Tweed firm matter from In re: Bucyrus 94-20786 (Wisc. 1994) is so on point with this DEBTOR because the Gellene issue was concerning a pre-petition loan of $35 million to that debtor that was paid off pre-petition without preferential review. In this DEBTOR the non review of the preferential of Foothill Capital loan, pre-petition to the DEBTOR, of $40 million, which transacted over $100 million and was paid off pre-petition, remains an "*undisclosed*" issue even in the responses of January 25, 2005. Yet the issue of such is repeatedly ignored by the Court and UST, which again demonstrates the need for the Writ of Mandamus.

35.     The Court also stated in the OPINION that exculpations would not apply "*for acts constituting willful misconduct or gross negligence.*" While Her Honor Walrath cited on such on page 12 & 13 of the OPINION in part 6 **Exculpations** In re United Artists Theatre Co., 315 F.3d 217, 230 (3rd Cir. 2003); and In re PWS Holding Corp., 228 F.3d 224, 246 (3rd Cir. 2000).

36.     The existence of "*unclean hands*" here is irrefutable. In re: Plaza Hotel Corp. 111 B.R. 882, 883 (Bankr. E. D. Cal 1990) which was affirmed 123, B.R. 466 (Bankr. 9th Cir 1990) "The duty [of the professional] is one of complete disclosure of all facts. Including the fact that Mr. GOLD had to apply by **327(a).** In re Martin 817 F 2d 175 180 (1st Cir1987) addressing both the "*unclean hands*" doctrine and listing the 12 factors to consider in application of who must apply and disclose by **327(a).**

37.     The right for items to be reconsidered are specified within the Fed R App Proc and a "*motion to reconsider will only succeed where dispositive factual matters or controlling*

*decisions of law were presented to the Court but not considered."* Hatco Corp. v. W. R. Grace &

Co., Conn. <u>843 F Supp. 987, 990 (D.N. J. 1994).</u>

38.    A motion to reconsider is appropriate where there has been *"(1) an intervening*

*change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear*

*error [of law] or prevent manifest injustice."* N. River Ins. Co. v. CIGNA Reinsurance Co., 52

F.3d 1194, 1218 (3d Cir. 1995).

39.    The dismissal of Mr. ALBER appeal meets all 3 standards where (1) the Courts

have overlooked the controlling provisions of the Code – specifically sections **541, 704, 1106,**

**1107, 1129, 327(a), 101(14), 2014, 152** and the **Reform Act of 2005** enforcement of the

provisions of **18 USC § 3057(a)** and (2) the Perjury, False statements which have occurred, pre-

post January 25, 2005 Court Ordered *"come clean"* Responses, specifically concerning *"non-*

*disclosed"* connections to BAIN by MNAT, TBF and Barry Gold, as well as the failure to

disclose the pre-petition $100 million transactions with Foothill Capital/Wells Fargo while Barry

Gold, TBF and CrossRoads LLC all continue to have undisclosed connections with said

preferential that has never come under review. (please see <u>In re Bucyrus 94-20786</u> (E D Wisc

Bankr 1994) the matter of Milbank & Tweed and the incarceration of Gellene for an *"on point"*

issue so similar the Gellene matter also had a former member of Goldman Sachs where the

DEBTOR has $300 million on going litigation with Goldman Sachs while TBF and Barry Gold

have also failed to disclose that they worked with Goldman Sachs in the case of <u>In re Cosmetics</u>

<u>Plus</u> E.D.N.Y Bankr.)) and finally (3) to prevent *"clear error"* and *"manifest injustice"* as it has

been stated that Mr. ALBER submitted a Certificate of Service stating that the brief was filed on

January 18, 2007, with back up, hand delivered copies received by parties on January 19, 2007,

while the OPINION, which does not address the BAIN, Foothill, Liquidity Solution, Mattel

matters, has already stated in  of the less significant offenses the OPINION does acknowledge that "*extra-ordinary*" circumstances exist and that **Fed.R.Civ.Proc. 60(b)(6)** did apply as to do otherwise "*would only serve to punish [plaintiff(s)] and reward conflicting attorney's*."

40.    The Court has a fiduciary obligation to halt corruptive practices before it, especially when plausible evidence exists to demonstrate a bias mindset, that is supported by erroneous "*finding of facts*" and "*conclusions of law*". The Supreme Court stated "the Court does not consider the harm to a party, rather the harm to the Judicial Process" In Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 64 S.Ct. 997 (1944).

41.    The UST states a Supreme Court case precedent that is so important here the Matter of United States v. Beggerley, 524 U.S. 38, 46-47, 118 S.Ct. 1862 (1998) ("Independent actions must, if **Rule 60(b)** is to be interpreted as coherent whole, be reserved for those cases of "*injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata.*")(the Supreme Court *citing* Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244, 64 S.Ct. 997 (1944).

42.    The Supreme Court of the United States has Referenced the 3d Circuit authority to review bankruptcy abuse In re Continental Airlines, 125 F.3d 120, 128 (3d Cir. 1997). Legal determinations are subject to plenary review. Id. The Bankruptcy Court's exercise of discretion is reviewed for abuse thereof. In re Engel, 124 F.3d 567, 571 (3d Cir. 1997).

43.    The failure to disqualify and disgorge violates "*unambiguous*" statutory language and the well established principles of both the 3rd Circuit and the Supreme Court concerning **327(a).** His Honor Alito stated in the Matter of  United States Trustee v Price Waterhouse, Sharon Steel Corp., (*Lexsee 19 F.3d 138, 1994 App. LEXIS 4605 Bankr. L. Rev.(CCH) P75,763; 30 Collier Bankr. Cas. 2d (MB) 1522; 25 Bankr. Ct. Dec. 618 (Case 93-3337). "When statutory*

*language is clear and unambiguous it ordinarily must be followed. See e.g. [**8]* <u>*Rake v Wade,*</u>

<u>*124 L. Ed. 2d 424, 113 S. St. 2187, 2191 (1993);*</u> <u>*Patterson v. Shumate,*</u> *119 L. Ed. 2d 519, 112 S.*

*Ct. 2242, 2246-47 (1992);* <u>*Prisco v. Talty,*</u> *993 F.2d 21, 24 (3rd Cir. 1993);* <u>*Virgin islands v.*</u>

<u>*Knight,*</u> *989 F.2d 619, 633 (cert. denied, 126 L. Ed. 2d 457, 114 S. Ct. 556 (1993).* Here, the

relevant statutory provisions are clear and unambiguous.

      44.    The Supreme Court itself made reference in the case of <u>In the Supreme Court of</u>

<u>the</u> <u>United States Maier, Mcilnay & Kerkman, Ltd., Petitioner v. Ira Bodenstein, U.S. Trustee &</u>

<u>Milwauke Engraving Co., Inc.,</u> restating the principal established <u>In re Middleton Arms</u> where

the ultimate Court remarked that "the Courts equitable powers cannot contravene the plain and

unambiguous language of the statue. [327(**a**)].

      45.    Adopted case histories reflect correctly, that *A debtor in possession is bound by a*

*duty of loyalty that includes an obligation to refrain from self dealing, to avoid conflicts of*

*interests and [even] the appearance of impropriety* <u>See e.g., Lopez-Stubbe v. Rodriguez-Estrada</u>

<u>(In re San Jaun Hotel Corp.,)</u> 847 F.2d 931, 950 (1st Cir. 1988); <u>Bennitt v. Gremmill</u> (<u>In re</u>

<u>Combined Metals Reduction Co.),</u> 557 F.2d 179, 196-97 (9th Cir. 1977).  An ongoing issue, by

breach of fiduciary duty to their respective clients, is it has been ignored in this case thus far that

those who have admitted "*non-disclosure*" are constantly defending one another concerning such

issues of "*non-disclosure*" at the direct harm to their respective clients, in clear violation of their

fiduciary duty to their respective clients where there has been more than $14 million in fee's paid

thus far that are rescindable, with the Bankruptcy Court addressing the issues of "*non-*

*disclosure*" during pre PLAN hearings where the Court assured Mr. ALBER that actions against

parties remained intact, that exculpatory language would "not" cover "willful" acts of

misconduct.

46. It was not 

46.    It was noted by Her Honor Walrath in the Coram Opinion while discussing the

issue under Section C of Her Opinion therein:

> "liability may be imposed, notwithstanding lack of fraudulent intent or harm. <u>See</u>
> <u>Woods v. City Nat. Bank & Trust Co. of Chicago</u>, 312 U.S. 262, 268 (1941)
> ("Only strict adherence to these equitable principles can keep the standard of
> conduct for fiduciaries 'at a level higher than that trodden by the crowd'.").
> In <u>Woods</u>, the Supreme Court denied compensation to an attorney who had a
> Conflict of interest, notwithstanding that no actual harm was shown."

**Her Honor Walrath continued by reflecting**:

> In <u>Mosser v. Darrow,</u> the Supreme Court stated that "Equity tolerates in
> Bankruptcy trustees no interest adverse to the trust. This is not because
> Such interest are always corrupt but because they are always corrupting."
> <u>Mosser v. Darrow</u>, 341 U.S. 267, 271 (1951).

47.    Her Honor Walrath concluded the Opinion of Coram with the conclusion that the

Plan section **1129(a)** requirements of "*good faith*" conditions were not met and therefore the Plan

was denied in Coram.

48.    The purpose here is not only to avoid prejudice and injustice to the rights of

parties but to protect the "*integrity of the court.*"    The US Trustee in the part 29 of the

DISGORGE MOTION even remarked upon these issues in that the United States Supreme Court

"In Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 64 S.Ct. 997 (1944), the

Supreme Court explained that the inquiry focuses on whether the alleged fraud harmed the

judicial process, not on whether it harmed a party:

> [T]ampering with the administration of justice in the manner indisputably shown
> here [counsel fraudulently created evidence and introduced it trial] involves far
> more than an inquiry to [by] a single litigant. [Appellant HAAS] or [Mr. ALBER] It is a
> wrong against the institutions set up to protect and safeguard the public, institutions in
> which fraud cannot complacently be tolerated consistently with the good order of society
> surely it cannot be that preservation of the integrity of the judicial process must always
> await upon the diligence of litigants.  The public welfare demands that the Agencies of
> public justice be not so impotent that the must always be mute and helpless victims of
> deception and fraud."

49.     The courts retain the power to remedy an injustice caused by fraud with damages after the 180-day deadline, without upsetting a confirmed plan or the finality of the confirmation order. See 8 Collier, supra, ¶ 1144.04[2][a], at 1144-7 (citing cases); S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.), 181 B.R. 457, 462 (Bankr. D. Ariz. 1995) (fraud action for money damages).  This was also cited in See 8 Collier, supra, ¶ 1144.04[2][a], at 1144-7 (citing cases); S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.), 181 B.R. 457, 462 (Bankr. D. Wash) 9th Circuit Ruling.

50.     Here we have overwhelming "*Malum in se*" as the countinuous acts of "*non-disclosure*" assisting the issue of "*undisclosed*" connections to BAIN/KB Toys to MNAT, TBF and Barry Gold  which is Collusion to Defraud and the consistent effort to falsely state Mr. ALBER or HAAS lack standing, right to raise issues as "*persons aggrieved*" is a mockery of justice in an endeavor to protect perpetrators of "*fraud upon the court*" so that they may not face the consequences of their actions. This manipulation of every level of the System is a terrorism upon the foundation of Justice that cannot be allowed.  Or a greater evil shall occur where this case is utilized as a precedent that collusion to defraud, to circumvent the Code, after being forewarned by the UST not to engage in such actions,  is of no dire consequence.

51.     Mr. ALBER and HAAS did not make a federal case of these issues, those that failed to disclose made the case in the Federal Court, while engaging in Perjury and deception of such a large nature the very fabric of Integrity in the Judicial Process has a chance to be slaughtered.  Instead the perpetrators stated that HAAS signed a waiver to millions in success fee's and expenses.  There also remains the fact that HAAS testified that parties were interested in acquiring the "public equities" and entity of the DEBTOR and TBF, MNAT, Barry Gold and Ellen Gordon of CrossRoads LLC warned HAAS to back off or face insider trading legalities. A

crime of **Blackmail** and **Extortion**, in and of itself, which also has resulted in direct harm to the shareholders of the DEBTOR.

## The dismissal of the ALBER appeal is clearly erroneous

52.     Mr. ALBER submitted an affidavit stating that his brief was filed on January 18, 2007. No evidence has been presented to prove that the Certificate of Service is fraudulent.

53.     The actions by the Clerk of Court are specious in both the District Court and Bankruptcy Court. The District Court shows a deceitful sequence of events, which borders upon being criminal and the Bankruptcy Court clerk refused to place a copy of the brief supplied by Mr. ALBER into the record which is scandalous.

54.     Even though Mr. ALBER caused hand delivered copies of the appeal brief to be delivered to the Court on January 19th as a back up measure.  The Clerk of Court has placed a "copy" of the Appeal brief in the record with typing upon the top of each and every page stating received "January 23".  This maneuver seeks to assist in the dismissal of the Mr. Alber District Court appeal by giving [erroneous] factual premise for grounds to dismiss on a timing issue.  It is a simple fact that the parties cannot face the allegations without severe consequence, so there is elaborate subterfuge engaged upon which is like a whirlpool drawing in every party it can to save well established colleagues from corollary results.

55.     This staunch refusal to disqualify or contact the US Attorney has placed those that are charged with the public trust in the precarious position of finding against their well established, long term contemporaries or going the much lesser challenging path against this plaintiff.     The Court remarked on page 15 & page 16 of the OPINION the following:

*"In re Southmark Corp., 181 B.R. 291, 295 (Bankr. N.D. Tex. 1995) (granting relief under Rule 60(b)(6) from final fee order which had been entered nearly three years earlier). See also Hazel-Atlas Galss Co. v. Hartford Empire Co., 322 U.S. 238, 244-45 (1944) (holding that fraud upon the court equitably tolls the time for seeking to set aside a judgment or order); Pearson v. First HN Mort. Corp., 200 F.3d 30, 35-41 (1st Cir. 1999) (holding that attorney's false disclosure which denied any connection with creditors could support a finding that attorney had committed a fraud on the court); Benjamis's-Arnold, 1997 WL 86463, at *10 (holding that "the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient 'extraordinary circumstances' to justify relief under Rule 60(b)(6). To hold otherwise would only serve to penalize the [Plaintiff] for delay that was beyond his control and to reward conflicted attorneys for failing to disclose their conflicts beyond the one-year period.")."*

56.    No one really desires to become part of the risk, however, when all parties are made aware that the Chief Justice, UST and even the General Counsel of the US DOJ US Trustee Office in Washington D.C. is willing to turn a "*blind eye*" to infractions to save the hides of those that everyone knows, additional "*faux pas*" occur such as Mark Kenney, as attorney for the United States Trustee office in Region 3 stating repeatedly, that there was no violation, even though the United States Trustee office had engaged, numerous times, with issues related to the offending parties in the cases of In re: HomeLife 01-2412 and In re: Bonus Sales 03-12884

57.    Mark Kenney even called Mr. ALBER to discourage him. The Securities and Exchange Commission, Bankruptcy Fraud Unit in Atlanta, one Gordon Robinson, reflected that Mark Kenney discouraged the SEC from sending an "Official Inter Governmental Letter for Official Investigation". Where will it end?

58.    His Honor Kent Jordan did state in the hearing, in Chambers, which granted Mr. Alber additional time, that if additional time was needed for Mr. Alber medical situation, it would be considered. Then everyone was confused by the fast tracking of His Honor Kent Jordan to the 3d Circuit. Extensive discussions occurred between Mr. ALBER and the appellee's who asked, themselves, for additional time from Mr. ALBER, who granted such, begrudgingly.

Additionally His Honor Kent Jordan was not permitted to hear Mr. Alber appeal as His Honor was associated with the firm of Morris James at a time when an attorney for Morris James handled issues concerning the DEBTOR by representing HAAS entity CLI on matters directly related to these issues.  As such His Honor Kent Jordan should have recused himself  per **28 U.S.C. § 455 (2)** *Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it*;

59.    Furthermore, the Order to mandate Mr. Alber to submit his appeal brief was done by a Magistrate Justice who has no standing in Bankruptcy and such issue of whether the Magistrate had authority was mentioned, without review, by the Counsels for appellee's in the District Court as docket item 48, where it was specifically remarked

> *"But for cases filed under 28 U.S.C. sections 158, 1334, 2254 and 2255, all such civil cases, and all such cases henceforth assigned to the vacant judicial position, shall be referred to Magistrate Judge Mary Pat Thynge for all pretrial proceedings, pursuant to 28 U.S.C. 636(b)."*

and the Mark Minuti letter continued by stating:

> *"Accordingly, and pursuant to the express provisions of the Standing Order, these bankruptcy Appeals <u>do not appear to be the type</u> of case referred to Your Honor for pretrial proceedings."*

60.    Whereby this petitioner does state that the dismissal of Mr. Alber appeal is abundant with so many flaws in procedure, which demonstrate bias against Mr. ALBER, combined with the fact that His Honor Kent Jordan was required to recuse himself, with issues of timeliness being under a cloud of surreptitious nature, disregarding the fact of  testimony by Mr. ALBER Certificate of Service to have been mailed on January 18th, combined with the fact that the transition of multiple justices now rushing to conclusion where Mr. ALBER had filed his

appeal in November 2005 and no briefing schedule occurs for over a year, until he is physically incapacitated and had undergone surgery that necessitated repeated returns for additional tests and medicines. Also there remains a "hypocrisy" of the highest order where His Honor Kent Jordan, during the Chambers telephonic hearing addressing Mr. ALBER and the appellee's briefs where appellee's did ask His Honor about the "cross appeal" of Dist Court 05-831 and His Honor instructed them to file their brief also. They did not supply their brief or respond to Mr. ALBER yet, a bias exist to dismiss Mr. ALBER and this is specious as the MNAT cross appeal addressed the issue that the bankruptcy Court had stated MNAT acts were "intentional" thereby mandating BAR proceedings! How is it that such is now moot!

61.     The endeavors against Mr. ALBER who himself had pushed for a time line, that the appellee's responded of, is of grave cause for concern that "*manifest injustice*" is irrefutably evident, whereby even the fact that the current justice was assigned to this case, on February 2, 2007, after all the issues transpired, in a muddled fashion, after an assigned Justice is transferred to a higher court, after a justice under "no authority" per Fed Rules as Magistrate lashes out at Mr. ALBER, when there are clandestine "sealed" letters within the Court records without Motion or even reflection upon who placed such in the record, while Her Honor Robinson seeks to dismiss Mr. Alber under the "**Poulis**" standard which the 3d Circuit has stated repeatedly in precedent rulings, that dismissal, by Prejudice, is the last resort and yet it  is the very first action taken by Her Honor.

62     With the fact that the counsels for appellee's never served items upon HAAS while Mr. Alber was found in deficit by the Clerk for not serving HAAS. Which would also make the matter of the appellee Motion(s) to dismiss in defect. All such combined with the fact that the Order to dismiss Mr. Alber contains details of facts and issues demonstrating extensive

review of the arguments against Mr. Alber by Appellee's while ignoring the facts that Mr. Alber and HAAS allege that continuing perjury offenses, fraud, collusions and hidden assets are on going. Makes the need for Writ of Mandamus unquestionable.

63.    All such combined with the fact that you have documented, admitted, violations of disclosure regulations, which the 3d Circuit has repeatedly stated, mandates disqualification. With the very fact that additional proofs of perjury speak volumes about the "*non-disclosure*" by the appellee's concerning connections to the sale/acquirement of DEBTOR assets, which is "Collusion" that even Her Honor Sue L Robinson stated in dismissing Mr. Alber appeal that;

> "*The likelihood that Mr. Alber can successfully challenge the bankruptcy court's exercise of its broad discretion as to such matters is minimal*"

This clearly states there is the possibility and as such dismissal of Mr. Alber under timeline issues falsely stated as the 23rd of January is clearly egregious erring on the side of betrothed biased behavior while stating the "Poulis" standard which the 3d Circuit asserts is a last resort and all such dismissals are done under "*color of law*" that is furtive in design.

## United States Trustee Motion to Disgorge stating Fraud Upon the Court.

64.    After allegations asserted by HAAS, whose company CLI was represented by counsels who refused, repeatedly, to address the "*non-disclosure*" issues, having, at a minimum **18 USC § 4 MisPrison** and other guidelines, such as a fiduciary responsibility to the DEBTOR, Mr. ALBER joined HAAS notices of failure to disclose as Mr. ALBER had deposed the parties

during PLAN confirmation hearings, about possible "non-disclosed" relationships. Also Mr. ALBER had discovered additional items through research that became substantiated once HAAS provided the irrefutable proof that Barry Gold and TBF partner Paul Traub were affiliated by the discovery of Asset Disposition Advisors ("ADA") a company co-principal by Paul Traub and Barry Gold. The OPINION states that ADA did not receive this and is of no consequence.

65.    The UST had stated to the Court during the February 1, 2005 hearing, that before Asst United States Trustee Frank Perch would begin scheduled travel, he would cause a statement to the court reflecting the UST position. That position was clarified in the DISGORGE MOTION, which stated in part 19 and part 35 that the parties were aware by specific discussion with the UST that replacement of key personnel of the DEBTOR had to be "arms length" of any of the professionals involved in the DEBTOR Estate.

66.    The UST also reflected that the actions of TBF were more probable as deliberate, rather than inadvertent. (DISGORGE MOTION part 19). That the "non-disclosed" connections was "materially adverse" (DISGORGE MOTION part 22,25), that TBF was a vastly experienced bankruptcy attorney familiar with all reporting requirements (DISGORGE MOTION part 19) and affirmed to the court that the violations was "fraud upon the Court" (DISGORGE MOTION part 35,36,39).

67.    While the UST neglects to specifically mention the HIRING LETTER, the UST does reflect review of such stating that Barry Gold was "*wind down coordinator*" and subsequently CEO/President of the DEBTOR, to be finally confirmed as PLAN Administrator which demonstrates review of the HIRING LETTER and neglect in addressing such.

68.    The UST remarked that while TBF had been confirmed to receive more than $3. million from the DEBTOR, due to the [draconian] Rule 1144 it was effectively punished by a [inadequate] disgorgement of $1.6 million. (DISGORGE MOTION footnote)

69.    THE UST further remarked that any disgorgement less than $1.6 million would simply be viewed as a cost of doing business. (DISGORGE MOTION part35,36,38,39).

70.    The UST DISGORGE MOTION failed to specify disqualification, failed to mention the egregiousness of the [clandestine] HIRING LETTER, after the parties had been forewarned not to engage in any such behavior while failing to mention any disgorgemen/disqualification issues concerning MNAT. These facts, in and of themselves, [alarmingly mandate] warrant detailed investigation as the UST office is the final fiduciary protectorate of the Public and the Policing agent for the Courts.  If such esteemed "*honorable*" public office cannot perform such tasks, whether by influence, inability or fear, the System is egregiously flawed.

71.    All the above facts warrant disqualification, "total" disgorgement without the other facts that the HIRING LETTER is testified to be a collaborative endeavor by both MNAT and TBF, as well as Barry Gold and the signature Dave Gatto (as well as others).  The firm of CrossRoads LLC was the Court approved financial consultant for the DEBTOR and stated in their fee application to the Court "*While waiting on the Court approval of the hiring of Barry Gold*" (D.I. 467).  This demonstrates that there was a presence of mind concerning such. As well as the fact the UST, the Court and other review parties simply ignore the former Chairman of the Creditors Committee Affidavit that state that the Chairman was "*deceived*" by the parties concerning the Barry Gold issue.

72.     All of which does not take into account that additional "non-disclosed" "conflicts of interest" have come to light, post January 25, 2005 responses.  MNAT mentioned the entity of the Learning Company as a possible conflict.  This disclosure was less than candid and amounts to serious egregiousness after the Order to respond of January 25, 2005.  For the Learning Company was owned by BAIN associated entities and acquired by Mattel a large creditor of the DEBTOR committee being owed more than $10 million by the DEBTOR.  BAIN owns KB Toys and as such acquired the bulk of DEBTOR estate at severe discounts, including the domain entity of the DEBTOR which was originally sold to BAIN/KB Toys for $10 million and reduced by negotiations with TBF, MNAT and Barry Gold to only $3 million.  MNAT currently works for BAIN in the KB Toys bankruptcy estate (Del. Bankir. 04-10120). All these "non-disclosed" issues are a continuous violation that mandate disqualification, disgorgement, disbar proceedings and referral to the US Attorney office. Collusion is no small matter, even if great lengths occur, disclosed, unlike this DEBTOR where great lengths are endeavored to hinder the justice of review.

73.     Also, TBF has disclosed working with Barry Gold in cases such as Jumbo Sports and Stage Stores.  TBF, as did MNAT, was less than totally candid in this disclosure as both Barry Gold in eToys and Paul Traub in Stage Stores (S TX Bankr 00-35080) did testify that Jack Bush assisted them in finding opportunities.  Jack Bush is a senior exec of IdeaForest, a BAIN entity, Jack Bush is also a director and Stock holder in Stage as well, as Stage Stores is owned by BAIN entities/associates this is a severe matter!.  Stage Stores directors includes Michael Glazer who is CEO of KB Toys.  TBF testified on March 1, 2005 that TBF paid Barry Gold 4 separate payments of $30,000 each pre and post petition filing of the DEBTOR and the payments halted when Barry Gold became "wind down coordinator" of the DEBTOR. TBF  has not "disclosed"

that TBF was at Stage while working as counsel for the DEBTOR "pre-petition" "unofficial" creditors committee.

74.    Another, undisclosed issue, is the fact that Stage Stores is Co-debtor with Liquidity Solutions. Liquidity Solutions acquired many of the claims of the DEBTOR Estate and as such is not allowed to profit, 1 penny, from such endeavor and being that such remains an ongoing, "non-disclosed" issue, is subject to "equitable subordination". The PLAN has clauses that permit the Plan Administrator to settle issues of less than $1 million without court approval. The Plan also contains clauses Per Rule(s) that prohibit the Plan Administrator from having ties or paying those with connections to Administrator. Also TBF was a "revoked" entity, for years, and as such every time TBF was paid while stating in "good standing" was perjury and a possible rescindable transaction.

75.    As the UST requested disgorgement without these additional "collaborative" endeavors being addressed combined with the fact that Mark Kenney as Attorney for the UST office did defend the "collaborators" in the KB Toys case (D.I.2228,2336), Mark Kenney is an "appellee" to Mr. ALBER appeal, Mark Kenney signed the Stipulation to Settle the [inadequate] DISGORGE MOTION, with a clause that states illegitimately that the UST **will not seek to compel any additional disclosures** and the fact that both Mr. ALBER and HAAS have testified to facts that violations of 1**8 USC § 1512 Intimidation of Victim/Witness** has occurred, combined with the simple plausibility that the endeavors to dismiss Mr. ALBER or HAAS are both retaliatory and an endeavor to cover up ongoing felony violations, mandates referral to the US Attorney office per **18 U.S.C. 3057(a)**.

## HAAS HAS STANDING

76.    The appellee's have consistently caused HAAS to be stricken, expunged and dismissed, all under the "color of law" denying "adjudication upon merits", denying "quantum merit" on contractual duties that the Court approved, that CLI and HAAS completed where no complaint occurred until after HAAS was offered a "bribe" by the perpetrators.

77.    The work of CLI and HAAS not only was approved, the court approved the work "net of all expense" including, but, not limited to, the DEBTOR obligation to pay wages, salaries etc, as the Chairman of the Committee also testified that HAAS is entitled to wages, also the fact remains, that even if CLI had never been approved, the Code, under 503(b) permits, without any necessity of motive, in an "untimely" manner a consideration of 503(b), that at the barest of minimums as HAAS was the one to prove the affiliation and "non-disclosure" as such HAAS is entitled to compensation for the efforts involved in such. Needless to say the Court dismissal of CLI is of grave concern, as it permits retaliatory measures at the benefit of "unclean hands" without "adjudication upon merits" as the CLI and dismissal of HAAS also involved the bankruptcy Court denying HAAS counsel form placing in his "pro hac vice" for work that is no obvious to have been completed "under duress"!. The work was performed, the DEBTOR benefited, the only, truly item at issue, is that BAIN, which acquired the DEBTOR assets at severe discounts, while having "undisclosed" connections to MNAT, TBF and Barry Gold had to pay more than it desired to, due directly to the efforts of HAAS and CLI. It is simply mind boggling how everyone is assisting the defrauding of such "good faith" endeavors!

# CONCLUSIONS

78.     Mr. ALBER filed his appeal on time, even if "arguendo" you state it was a day or so late, such is not sufficient justification for dismissal without "*adjudication upon merits*" especially when the Constitution of the United States deemed it necessary to appoint the UST as "watchdog" to protect those rights and it is clearly evidenced that such protection is in "question"!.

79.     The requisites for Writ of Mandamus, specifically documentation of "manifest injustice" is abundant and overwhelmingly demonstrated. Fraud upon the court is already concluded upon by the Court and the UST, without taking into to consideration the continuing, ongoing, offenses, which cannot be permitted, under the '*color of law*" to be ignored after the Court Ordered the parties to respond to allegations.  Such would set the precedent that all counsels should do as many violations as possible, admit to the most minor of infractions [if caught] and ride out the storm while bilking estates "ad hoc". This latest endeavor to fraudulently dismiss Mr. ALBER is a direct result of the offensive nature that such fraud brazenly and flagrant engage in disregard for statutory requirements. The very fact that the OPINION states that Barry Gold did not have to apply is reversible error as erroneous a conclusion as one could muster.  Compounded by the FACT that the UST STIPULATION

would "DARE" to engage in "ad hoc" circumvention of the Code by stating the UST will "**NOT**" seek to compel any additional disclosures. What planet are we on?

80.     We do not seek jail punishment for the perpetrators, HAAS only seeks to do his job, which is directly affected, whether paid or not, by the perpetrators of fraud who warned HAAS to "back off" or not only would HAAS not be compensated, but the parties would come after HAAS for monies previously earned. Such is most certainly in violation of 18 U.S.C. 1512 Intimidation of Victim or Witness. Assisted as such by repeated delivery to HAAS by the counsel hired by HAAS once the DEBTOR failed to compensate HAAS according to terms by the COURT APPROVED measure that the DEBTOR counsel MNAT would effect that presentation of paper work to the Court as a "cost saving measure" to the DEBTOR from HAAS hiring independent counsel, which is documented by the Chairman Affidavit. Under "color of law" the perpetrators demonstrated their power to interfere with justice by simply stating the ridiculous concept that HAAS signed a "*waiver*" to all monies earned or expensed. This petitioner respectfully request that this court direct removal of the plan administrator and that any replacement thereof be satisfactory to HAAS and Mr. ALBER. That referral to the US Attorney office occur per **18 USC 3057(a),** that Judge Walrath be **Recused**, that **Review of the Failures to Act of UST per Rule 2020** occur, that examination of books and records be permitted, at direct expense of the estate (CrossRoads has been paid millions to keep track of the DEBTOR cash assets) and as **Rule 2004** is permitted to be a "**fishing**" expedition, in light of the ugly, overwhelming fraud, such "**fishing**" should occur with subpoena powers and that Mr. ALBER be allowed to formulate a equity committee with counsel provided for by the DEBTOR and that if , necessary Change of Venue occur, as a jurisprudent matter to divest the power and

influence that is so readily apparent, that HAAS has standing as "person aggrieved", that the "sealed" items in the record be explained and "unsealed", that the party that caused such be available for deposition, that the Writ of Mandamus is warranted, "mandated" as is demonstrated by the DISGORGE MOTION and the points thereof, that did "not" take into illustration the HIRING LETTER and the ongoing failures to disclose, as well as the court rescinding of the dismissal of Mr. ALBER appeal as well as any other remedies the Court may deem appropriate.


Respectfully submitted this 9th Day of March 2007

Under "penalty of perjury"!

 /s/ Steven Haas

(a/k/a Laser Haas)
whose company Collateral Logistics was Court
approved.