# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------X

In re:                                              Chapter 11

ETOYS, INC., et al.,                                Case Nos. 01-0706 (MFW)
                                                      through 01-0709 (MFW)

                                Debtors.
_____X

ROBERT K. ALBER, *Pro Se*,

                    Appellant,

            v.                                      Civil Action No. 05-0830    (SLR)
                                                    Procedurally Consolidated with
TRAUB, BONACQUIST & FOX, LLP,                       Civil Action No. 05-0831
BARRY GOLD, MORRIS, NICHOLS,
ARSHT & TUNNELL, LLP, THE UNITED
STATES TRUSTEE and the POST-
EFFECTIVE DATE COMMITTEE OF
EBC I, INC., f/k/a eToys, Inc.

                    Appellees.

-------------------------------------------------X

## MOTION FOR A WRIT OF MANDAMUS AND FOR THE COURT TO RECONSIDER THE MEMORANDUM ORDER ISSUED BY CHIEF FEDERAL JUDGE SUE L. ROBINSON DISMISSING THE ALBER APPEAL WITH PREJUDICE ON THE GROUNDS THAT SAID MEMORANDUM ORDER IS ERRONEOUS AND WITHOUT THE REQUIRED MERIT TO WARRANT SUCH AN EXTREME SANCTION

# STATEMENT

I, Robert K. Alber, *Pro Se*, Appellant (**case no. 05-0830**)/Cross Appellee (**case no. 05-0831**) (hereafter referred to as "ALBER" whether in the first or third person as appropriate grammar dictates), both cases having originated in Federal Bankruptcy Court, District of Delaware, Case No. 01-0706, the Honorable Chief Federal Judge Mary F. Walrath presiding (hereafter referred to as JUDGE WALRATH), do hereby Move this Court to reconsider and reverse the Memorandum Order (the ORDER) issued by Chief Federal Judge Sue L. Robinson (hereafter referred to as JUDGE ROBINSON), District of Delaware, on February 26th, 2007 (***Exhibit A***), which dismissed the ALBER Appeal *with prejudice*. ALBER affirmatively asserts that the Memorandum Order is erroneous and unjust for a plethora of reasons, some of which are listed below:

A)    The fact that "*fraud upon the court*" is still being perpetrated upon the eToys Estate, the Court, and aggrieved parties (such as ALBER and HAAS), and the dismissal of the ALBER Appeal is an endeavor to "cover up" these matters. As such a *Writ of Mandamus* is justified to prevent "manifest injustice" that seeks to perpetrate great "materially adverse" harm to "parties of interest" under the "color of law" in violation of 18 U.S.C. § 3057(a). 18 U.S.C. § 1512 and fraud sections 152, statutory violations of 155 Fee Fixing and 157 that must be halted for the sake of the "integrity of the judicial process;" and,

B)    where this Court (of itself and through the Clerk) appears to be complicit by providing for "sealed" letters of outside parties, without Motion or justification, while fabricating timeline issues to justify dismissal of a valid Appeal with thus far proven merit. Another justification for a *Writ of Mandamus*; and,

C)    the Clerk of this Court did admonish ALBER for not serving 'Laser' Steven Haas (HAAS), refusing to file documents for ALBER until ALBER had submitted proof that HAAS had indeed been served (by ALBER) (**D.I. 46**).    But then, after Mark Minuti, ESQ (hereafter referred to as MINUTI), Counsel for Barry F. Gold, eToys Plan Administrator (hereafter referred to as GOLD) filed a letter to the Court which

1     included the ALBER Opening Brief in its entirety (**D.I. 48**), the Clerk did enter the
2     ALBER Opening Brief into the record (**D.I. 49**); and,

3

4  D)  the Court/Clerk did then refuse to hold Appellees to the same standard of service,
5     regarding the Motion To Dismiss (**D.I. 42**), which this Court did grant in dismissing
6     the ALBER Appeal *with prejudice*. Another reason why a *Writ of Mandamus* is
7     justified; and,

8

9  E)  JUDGE ROBINSON does express confusion at one point in her Memorandum
10     Order when she equivocates on the issue of what exactly ALBER filed: i.e. that she
11     is not sure if the document in question is, indeed, the ALBER Opening Brief (**D.I.
12     49, at the bottom of page 3**. Specifically: "*On January 23rd, 2007, however, he
13     filed a brief which appears to address the merits of his appeal.*"), whereas later on
14     in her ORDER she specifically references the same document as the (ALBER)
15     Opening Brief {**D.I. 49, pages 4-5, Item 4(c)**}. Specifically: "*ending with the
16     untimely filing of his opening brief.*"); and,

17

18  F)  JUDGE ROBINSON did reclassify and seal the ALBER Motion For An Extension
19     Of Time (**D.I. 35**) absent a Motion from any party, and now includes an Attachment
20     to said ALBER Motion without explanation as to what is included in said
21     Attachment, the originating source of said Attachment, what controlling legal
22     authority was used to enter said Attachment into the record, what Motion to include
23     said Attachment was considered prior to the Court's decision, or even who
24     requested that said Attachment be entered. This sort of 'cowboy' mentality on the
25     part of the Court is surely grounds for a *Writ of Mandamus*; and,

26

27  G)  the fact that this Court's Clerk did not Docket all filings related to the ALBER
28     Appeal does directly prejudice ALBER unfairly, because the Court's incrimination
29     that ALBER has not taken the ALBER Appeal seriously and has been, instead,
30     attempting to delay Justice from being served, all such incriminations against
31     ALBER would have been shown as false at the outset. While inclusion of all of the
32     early filings related to the ALBER Appeal had not previously caused ALBER any

1        grave concern, not including said early filings have now become an issue since this

2        Court did draw an erroneous conclusion which inclusion of these early filings may

3        have precluded; and,

4

5    H)    the fact that the so-called 'watchdogs of Justice' overseeing the Federal Bankruptcy

6        System, the United States Trustee Program (hereafter referred to as UST), a self-

7        policing Agency (which in and of itself is a recipe for corruption, and reeks of

8        Soviet Union inter-governmental policies prior to perestroika), has not only failed

9        in its 'mission' as 'watchdogs of Justice,' instead more accurately resembling 'self-

10      serving lapdogs of the rich and powerful,' actively facilitates fraud and deceit upon

11      the Court, and, ultimately, places ALBER, HAAS and others in a materially adverse

12      situation (covered in detail later); and,

13

14   I)     none of the Appellees complied with the Scheduling Order at all, nor did any of

15      them even make any attempt to do so.  This in defiance of the Ruling by the

16      Honorable Federal Judge Kent A. Jordan (hereafter referred to as JUDGE

17      JORDAN) that they do so (**D.I. 37**); the transcript of the October 16th, 2006

18      teleconference);  and,

19

20   J)    although Ronald Sussman, ESQ (SUSSMAN), objected to the Amended ALBER

21      Designation Of Documents during the same teleconference (**D.I. 37**), whereupon

22      JUDGE JORDAN did advise SUSSMAN to contact ALBER, SUSSMAN never

23      complied with this order; and,

24

25   K)   MINUTI (in **D.I. 52**), also mentioned that GOLD would be filing a Motion against

26      the Amended ALBER Designation Of Documents (**D.I. 24**), which is odd because

27      the Amended ALBER Designation Of Documents (again, **D.I. 24**), was filed on

28      September 19th, 2006, leading ALBER to conclude that this threat of a Motion by

29      GOLD is but another attempt to delay these proceedings, and in contrast to

30      Appellees assertions that they (the Appellees) wanted the ALBER Appeal

31      concluded as quickly as possible; and,

32

1  L)    when JUDGE JORDAN did set the date for the October 16th, 2006, teleconference,

2        JUDGE JORDAN Ordered that all parties must attend with the names of those who

3        were Ordered to be in attendance listed (**D.I. 32**); and,

4

5  M)    which MNAT did respond to said Order (**D.I. 32**) on the morning of the

6        teleconference (**D.I. 33**), confirming that all parties had been contacted (by MNAT)

7        and confirmed that they would all attend; and,

8

9  N)    coincidentally, the ALBER Motion For An Extension Of Time (**D.I. 35**) was then

10        served upon the Court and all other parties just prior to the October 16th,

11        teleconference with JUDGE JORDAN, but then, contrary to the Court's explicit

12        Order that all parties attend, and despite the fact that all parties had affirmed they

13        would attend (thus complying with JUDGE JORDAN's Orders), James L. Garrity,

14        ESQ (a former Federal Judge, hereafter referred to as GARRITY, co-counsel for the

15        currently defunct Traub, Bonacquist & Fox Law Firm (hereafter referred to as

16        TB&F), and Steven E. Fox, ESQ (hereafter referred to as SFOX; with the currently

17        defunct TB&F Law Firm), did *Fail To Appear*; and,

18

19  O)    the fact that two (2) of the Appellees' Counsel, GARRITY and SFOX, were not in

20        attendance (as Ordered by the Court) had to have been noticed by the Court, yet

21        nothing was ever said or done to prevent this blatant *Contempt of Court* from

22        occurring again in the future.  This is very appropriate to mention now that the

23        ALBER Appeal was subsequently dismissed *with prejudice* and ALBER (unfairly)

24        found to be dilatory.

25

26  P)    that on January 31st, 2007, ALBER received an email from MINUTI requesting that

27        I join with Appellees in requesting a Scheduling Order (**Exhibit B**).  ALBER

28        responded the next day, February 1st, 2007, with the offer of an additional five (5)

29        days delay, stating ALBER would join with Appellees in a Motion to the Court

30        (**Exhibit C**).  ALBER did not receive a reply from any of the Appellees, rather, on

31        February 5th, 2007, ALBER was served, via email, a Motion For A Scheduling

32        Order and a Letter to the Court from MINUTI.  The ALBER response to MINUTI

1    on February 1st, 2007, is important for the reason that said ALBER response shows
2    ALBER's willingness to act in good faith toward Appellees. Appellees bad faith is
3    exhibited by their lack of response to any of ALBER's letters.

4

5    Despite the fact that said unethical actions did, and continue to, occur, JUDGE ROBINSON
6    dismissed the ALBER Appeal with prejudice which is a sanction to be used <u>only as a last</u>
7    <u>resort</u>: a decision which can hardly be equated with Justice considering that this harshest of
8    sanctions was handed down **after** the ALBER Opening Brief was filed, and without the merits
9    of the ALBER Appeal even being considered.

10

11   Additionally, JUDGE ROBINSON Granted Appellees' Motion To Dismiss the ALBER
12   Appeal (**D.I. 42**), despite the fact that said Motion To Dismiss was not served on all parties,
13   notably 'Laser' Steven Haas, and with no apparent knowledge that ALBER had filed the
14   ALBER Opening Brief even though such occurrence is established by the Court record and
15   reflected by Appellee GOLD in a letter to the Court dated January 23rd, 2007 (**D.I. 48**). It's
16   interesting to note, here, that said 'letter' by GOLD (**D.I. 48**) refers to the ALBER Opening
17   Brief correctly and submits said ALBER Opening Brief as 'Exhibit A,' yet the GOLD letter
18   was entered into the Court Record **prior to** the ALBER Opening Brief (**D.I. 49**).

19

20   To be as explicit as possible, given the gravity of the situation and to further show how
21   seriously ALBER takes the ALBER Appeal (and the Appellate Court process), ALBER will
22   perform a comprehensive review of the errors and/or misstatements contained within the
23   Memorandum Order by addressing each point contained therein separately.

24

25   **Item 1**:    JUDGE ROBINSON makes the erroneous statement that there was a lawsuit
26   filed against ALBER in Alaska by the Hamerskis. This is quite simply not true. Said 'fact'
27   was not mentioned in any document filed in this case {unless it was referenced in the ***letter*** to
28   the Court, filed under seal (**D.I. 45**), or in ex parte communications with the Court}.

29

30   Furthermore, the ALBER Motion to which JUDGE ROBINSON's Orders were drawn upon
31   (the ALBER Motion For An Extension Of Time, **D.I. 35**) was Granted by JUDGE JORDAN,

1   on October 16th, 2006, and absent a Motion To Reconsider, JUDGE ROBINSON's Rulings

2   regarding the above referenced ALBER Motion are not based in any legal theory or precedent

3   ALBER is aware of.  Another occurrence which ALBER was recently apprised of is that

4   JUDGE ROBINSON, on February 20th, 2007 (according to the Pacer Docket record), has now

5   Ordered this same ALBER Motion (**D.I. 35**) be filed 'under seal.'  Absent a Motion requesting

6   that JUDGE ROBINSON file a Motion 'under seal' ALBER cannot find under what legal

7   authority JUDGE ROBINSON made this determination.    And the Court adding an

8   'Attachment' to the ALBER Motion (as mentioned previously, in greater detail, in Item F,

9   page 4 of this document) is another anomaly which JUDGE ROBINSON must justify.

10

11  If, in fact, the **_letter_** filed 'under seal' contained a request that said ALBER Motion (**D.I. 35**) be

12  placed 'under seal,' then another set of legal questions arise: a) A Magistrate is not allowed to

13  hear a Federal Appeal originating in a Federal Bankruptcy Court; yet, b) said Magistrate ruled

14  that the aforementioned 'letter' be filed 'under seal;' and, c) said Magistrate was assigned to

15  the ALBER Appeal by JUDGE ROBINSON (**D.I. 43**), which was in fact contrary to Federal

16  Rules of Appellate Procedure; and, d) upon mention that a Magistrate was not allowed to hear

17  the ALBER Appeal by MINUTI (**D.I. 48**), JUDGE ROBINSON did then reassign the ALBER

18  Appeal to herself (on February 2nd, 2007); and, e) JUDGE ROBINSON did then, apparently,

19  Grant the request in the letter to the Court and put language of a prejudicial nature (against

20  ALBER) in the Court's Memorandum Order (**D.I. 55**); and, f) JUDGE ROBINSON did then

21  have the District Court Clerk re-file the ALBER Motion (**D.I. 35**) 'under seal' (on February

22  20th, 2007, as is noted in the Pacer Docket list for **D.I. 35**); and finally, and perhaps most

23  importantly, g) a request for a document to be filed under seal is only to be made in the form of

24  a proper Motion.

25

26  ALBER can find no legal precedent for the above referenced actions by JUDGE ROBINSON,

27  nor do any ethical justifications for said behavior come to mind.  ALBER, here, asserts that

28  only ex parte communications can be found to be responsible.

29

30  **Item 2**:      The ALBER Appeal was actually filed on October 13th, 2005, within the 10 day

31  limit for filing a Notice Of Appeal Intent (JUDGE WALRATH's Opinion & Orders were

1    handed down on October 4th, 2005), but was delayed by a flood of Motions by Appellees (12-

2    14 in all) seeking to dismiss the ALBER Appeal and the HAAS Appeal along with Motions To

3    Strike Documents filed in connection with said Appeal.  Said 'Motions by Appellees,' along

4    with ALBER's Response to the Appellees' Motions (**eToys D.I. 2353**), were heard by JUDGE

5    WALRATH on December 1st, 2005, with ALBER in personal attendance, whereupon all of the

6    Appellees' Motions were denied.  Actions by Appellees in this regard, along with the

7    Bankruptcy Court's not transmitting the ALBER Appeal, caused the ALBER Appeal to be

8    delayed by almost two (2) months.  Res Judicata issues also exist regarding Motions filed by

9    Appellees calling for documents filed by ALBER to be struck from the record, and Appellees'

10    Motions To Dismiss.   Yet because of the District Court not entering **all** of the Dockets

11    regarding the ALBER Appeal into the District Court Docket record, this District Court is now

12    of the erroneous opinion that ALBER is not taking the ALBER Appeal seriously.  To prove

13    this point, examination of the ALBER Response (**eToys D.I. 2353**) in its (lengthy) entirety

14    clearly shows the enormous amount of research and forethought applied by ALBER; all

15    without any formal, higher education (in contrast to the years of legal education of those

16    ALBER has been fighting in Court, and elsewhere, these last 6+ years).  If, after digesting and

17    considering the time and effort put forth by ALBER in composing the ALBER Response this

18    Court is still under the illusion that ALBER is not taking the ALBER Appeal seriously, please

19    state the reasons for arriving at said conclusion.

20

21    **Item 3**:    Despite the inclusion of the transcript from the teleconference held on October

22    16th, 2006, JUDGE JORDAN presiding (**D.I. 37**), along with inferences within the

23    Memorandum Order that the Court did read and comprehend said transcript, JUDGE

24    ROBINSON errs by not acknowledging the fact that JUDGE JORDAN did state that ALBER

25    would be given more time to recuperate from the mental exhaustion and extreme stress

26    {brought on by harassment tactics by associates of the Appellees as outlined in detail in the

27    ALBER Motion For An Extension Of Time (**D.I. 35**)} if ALBER were to request said

28    extension.  ALBER did so in a letter to Appellees on November 16th, 2006 (**Exhibit D**), but

29    then fell more seriously ill (with the result being invasive, cranial surgery) and failed to submit

30    the letter, or ALBER's request, to the Court as required.  The fact that JUDGE ROBINSON is

31    unfamiliar with JUDGE JORDAN's Rulings during the October 16th, 2006 teleconference,

1   along with other inconsistencies by JUDGE ROBINSON (as detailed elsewhere within this
2   document), shows that either; a) JUDGE ROBINSON is unfamiliar with events/documents
3   associated with the ALBER Appeal; or, b) the Memorandum Order was crafted by a person(s)
4   either prejudiced against the ALBER Appeal; or, c) unfamiliar with the ALBER Appeal; or d)
5   JUDGE ROBINSON refuses to let facts stand in the way of her expressing unfounded,
6   erroneous 'opinions' in Memorandum Orders.
7
8   Later on in '**Item 3**' JUDGE ROBINSON does express her confusion as to whether or not I,
9   ALBER, even filed an Appellate Brief. For the document in question is, indeed, the ALBER
10  Opening Brief (**D.I. 49**), which even the most cursory examination clearly shows. This is clear
11  proof that JUDGE ROBINSON signed the Memorandum Order Dismissing the ALBER
12  Appeal without even considering the merits of said ALBER Appeal. For had she (JUDGE
13  ROBINSON) performed an examination of the title page of the ALBER Opening Brief, it
14  would have been abundantly clear that said document was the ALBER Opening Brief.
15
16  **Item 4**:        Interestingly, JUDGE ROBINSON's choice of words in **Item 3**, which ALBER
17  addresses above, clearly shows that JUDGE ROBINSON did not act in accordance with the
18  authority she (JUDGE ROBINSON) references in her Memorandum Order {Poulis V. State
19  Farm Fire and Cas. Co., 747 F.2d 863 (3d Cir. 1984)} when she (JUDGE ROBINSON) states
20  she is ignorant of the contents of the ALBER Opening Brief. <u>For such would have precluded</u>
21  <u>her from issuing a ruling dismissing the ALBER Appeal with prejudice.</u> Instead, JUDGE
22  ROBINSON refuses to take into account ALBER's ill health (being disabled prior to the onset
23  of the eToys Bankruptcy case and to the present), invasive cranial surgery (on December 1st,
24  2006), several visits to a hospital emergency room, and a three (3) day stay as an inpatient as a
25  meritorious claim or defense. JUDGE ROBINSON brushes all of this aside and attributes
26  ALBER's tardiness to "willful or bad faith" and imposes an extreme sanction.
27
28  **Item 4(a)**:    While JUDGE ROBINSON acknowledges that I, ALBER, "was an effective
29  advocate in the bankruptcy proceedings," and that ALBER is *pro se*, JUDGE ROBINSON
30  fails, or refuses, to come to the obvious conclusion that something serious must have happened
31  to explain why ALBER, is now having problems meeting deadlines. A cursory examination of

1    the ALBER Certificate of Service (**D.I. 46**) would have revealed to her that ALBER was (and
2    still is) suffering from the after effects of a serious operation (which medical specialists tell
3    ALBER will take many months to fully heal), along with debilitating mental exhaustion and
4    extreme stress {as is outlined in **D.I. 35**}.
5
6    Additionally, as ALBER rushed to California from Arizona in anticipation of a hurriedly
7    scheduled operation (by the specialist performing the operation, who stated to ALBER that the
8    operation should be done immediately), ALBER requested of HAAS that HAAS notify the
9    Court of ALBER's serious medical condition and impending surgery.  HAAS has assured
10   ALBER that he (HAAS) did so by mail to the Court, yet no acknowledgement of receiving
11   said correspondence from HAAS to the Court has ever come to light.  As the Court may state,
12   upon reading this incrimination, that the Court does not accept, post or file such documents,
13   ALBER queries the Court as to why the Court would accept, and then file, under seal, a *letter*,
14   and then add an Attachment to one of ALBER's Motions (which ALBER must assume was
15   requested in the letter).
16
17   **Item 4(b)**:   On the contrary.   Harassment and unethical conduct by Appellees and
18   Appellees' associates have directly delayed ALBER from completing the ALBER Appeal by
19   endangering ALBER's health as is outlined, in detail, in **D.I. 35**, which is extensive but still
20   does not include all of the information/evidence ALBER has at his (ALBER's) disposal.
21
22   **Item 4(c)**:   Although JUDGE ROBINSON is aware of ALBER being pro se (hence not an
23   attorney), here JUDGE ROBINSON belittles ALBER for not being completely familiar with
24   Federal Rules of Appellate Procedure and thus not complying with said Rules in ALBER's
25   first attempt at 'record designation.'   JUDGE ROBINSON also does not, here, mention that
26   ALBER's second attempt at 'record designation' was successful and in compliance with Court
27   procedure.   But then, contrary to earlier language in the Memorandum Order, JUDGE
28   ROBINSON does here acknowledge that the document in question was, in fact, known by her
29   to be ALBER's Opening Brief.
30

1    **Item 4(d)**:    In ALBER's opinion, the voluminous, well thought out and well researched
2    material collated and then contained within the ALBER Response to Appellees' Motions To
3    Dismiss and Motions To Strike (**eToys D.I. 2353**), the ALBER Motion For An Extension Of
4    Time (**D.I. 35**) and the ALBER Opening Brief (**D.I. 49**) clearly show that ALBER has an
5    inordinate amount of respect for the appellate process.

6

7    **Item 4(e)**:    ALBER received the Magistrate's Order from the Court on January 11th, 2007,
8    not January 5th, 2007, as JUDGE ROBINSON states.  Therefore, I, ALBER, responded within
9    7-8 days with the ALBER Opening Brief: reasonable under the circumstances.  For this reason
10    alone the ALBER Opening Brief must be accepted by this Court and the ALBER Appeal
11    allowed to continue.

12

13    **Item 4(f)**:    A factual error contained within this 'Item 4(f)' perhaps explains why this Court
14    came to an erroneous conclusion in regards to MNAT receiving harsher sanctions, as the
15    ALBER Appeal calls for.  The UST did not participate in the settlement agreement between
16    Goldman Sachs and eToys.  This matter was handled by eToys itself, which, with MNAT as
17    eToys Debtor's Counsel while having an ongoing, actual undisclosed conflict with Goldman
18    Sachs, ALBER asserts would have necessitated harsher sanctions against MNAT.  Especially
19    with JUDGE WALRATH's ruling that MNAT committed intentional fraud upon the Court and
20    the eToys Estate (whom MNAT, as Debtor's Counsel, was sworn to defend above any other
21    entity).  Wherever, or from whom, the Court learned that the UST played a part in the eToys
22    Settlement with Goldman Sachs regarding Goldman Sachs pre-petition employment by eToys,
23    is undeniably an unreliable source.  Or, again, the Court, or whoever crafted the Memorandum
24    Order is not at all familiar with the case, or wishes to give credit to an Agency of the Justice
25    Department (sic) that deserves none.

26

27    ## THE ALBER APPEAL DEMANDS
28    ## "ADJUDICATION UPON THE MERITS"

29    Not once in JUDGE ROBINSON's Memorandum Order is it stated, or even alluded to, that
30    JUDGE ROBINSON considered the merits of the ALBER APPEAL, except to state:

1          *"The likelihood that Mr. Alber can successfully challenge the bankruptcy*

2          *court's exercise of its broad discretion as to such matters is minimal."*

3

4     In ALBER's opinion, the only purpose said 'opinion' of JUDGE ROBINSON can serve is to

5     make her job superfluous in matters of Bankruptcy Appeals.

6

7     But to deal with one reason why JUDGE WALRATH's Opinion/Orders should be modified,

8     and what ALBER believes ultimately caused JUDGE WALRATH to impose such light

9     sentences in contrast with her earlier, unrelenting quest for the Truth to emerge:

10

11                          **<u>Obstruction Of Justice by the UST</u>**

12          1.     In the eToys bankruptcy case, allegations of Perjury, Fraud, False Oaths,

13    Collusion to Defraud, Scheme to Fix Fees, False Declarations, Intimidation of Victim/Witness

14    and Conspiracy to Circumvent the Code were made by ALBER, eToys Court approved

15    liquidation entity Collateral Logistics, Inc. (hereafter referred to as CLI), and 'Laser' Steven

16    Haas (hereafter referred to as HAAS), the CEO/President/Sole Shareholder of CLI, against the

17    Appellees (MNAT, TB&F and GOLD).  After the allegations were made, they were affirmed

18    (i.e. admitted to) by the offending parties through various Court documents (many filed in the

19    period surrounding January 25th, 2005), in depositions, and on the stand, under oath, at the

20    resulting Trial held March 1st, 2005.  Time and again, the Appellees sought to explain away

21    their unlawful, unethical behavior by reason of inadvertent neglect and/or oversight.

22

23          2.     The violations are by GOLD, who was originally hired by eToys as *"wind down*

24    *coordinator"* on May 21st, 2001, at the behest of a referral by TB&F (the Court approved

25    counsel for the Official Committee of Unsecured Creditors), and collaboratively assisted by the

26    Court approved eToys Debtor's Counsel: Morris, Nichols, Arsht & Tunnel (hereafter referred

27    to as MNAT).

28

29          3.     At the time of hiring, GOLD, as eToys *'wind-down coordinator,'* was the sole

30    authority in running post-petition eToys.   GOLD later assumed the position of eToys

31    CEO/President: still with the 'sole' authority to make decisions on behalf of eToys, and again

1    with the support and approval of TB&F and MNAT. On or about December 1st, 2002, GOLD

2    was appointed to the position of (confirmed) Plan Administrator, which was again

3    accomplished by surreptitious endeavors to circumvent the Code by MNAT, TB&F and GOLD

4    (which facilitated GOLD being appointed Plan Administrator). To reiterate, when the

5    discovery of the non-disclosures was found, and the offenders (Appellees) where confronted

6    with these issues (through Court filings), Appellees attempted to explain away their unlawful,

7    unethical actions using the same, lame excuses of ignorance and/or involuntary disregard for

8    the Code and Rule of Law.

9

10    4.    The 'non-disclosure' of 'conflicts of interest' that are 'materially adverse' to

11    'persons aggrieved' and 'parties of interest' are abundantly documented by irrefutable

12    evidence as provided by court dockets and other official records that remain insurmountable.

13

14    5.    However, the statutory violations have been assisted by clearly erroneous

15    'findings of facts' and 'conclusions of law.' As stated earlier, the allegations made by ALBER

16    and HAAS resulted in numerous 'admitted' 'failures to disclose' by Appellees.

17

18    6.    At a Court hearing on February 1st, 2005 (**eToys D.I. 2191**, the transcript of that

19    hearing), ALBER's request of the Court to depose GOLD, TB&F and MNAT was Granted,

20    resulting in the Depositions taking place on February 9th, 2005, UST representative Mark

21    Kenney, ESQ (hereafter referred to as KENNEY) attended the Deposition.

22

23    7.    On February 15th, 2005, the UST filed a Disgorgement Motion (**Exhibit E,**

24    **eToys D.I. 2195**). With no equivocation, the facts outlined in the UST Motion proved,

25    beyond any shadow of a doubt, that multiple non-disclosures did occur, while also showing

26    that these 'non-disclosures' were 'materially adverse' (**eToys D.I. 2195, Item 22**), and that the

27    UST had forewarn the parties not to engage in replacing key personnel of the Debtor

28    (eToys)(**eToys Docket 2195, Items 19 & 35**).

29

30    Other, equally damning, relevant points in the UST Disgorgement Motion (**D.I.2195**):

31

32    a.    Item 2 states that the UST is charged with Oversight per 28 USC § 586.

33

b.  Item 2 also refers to the UST as a "watchdog."  (i.e. per the Janet Reno Reform Act of 1994.)

c.  Item 3 states that the UST has standing per 11 USC § 307.

d.  Item 5 states that Michael S. Fox, ESQ, one of the principals of TB&F, affirmed no conflicts in a 2014 Disclosure.

e.  Item 6 states that GOLD was hired on or about May 21st, 2001, as "*wind down coordinator*."

f.  Item 9 states that <u>in January, 2002, the Official Creditors Committee applied to expand the scope of TB&F's retention to include representing the eToys Estate</u> in the eToys v Goldman Sachs litigation filed in New York Supreme Court and that [MFOX] submitted a 2014 Affidavit affirming the continuing 'disinterestedness' of TB&F.

g.  Item 10 states that the Plan was confirmed on November 1st, 2002.

h.  Item 12 states professionals have a duty to fully disclose any and all relationships/connections.

i.  Item 12 also states Local Rule 2014-1(a) disclosure is a continuing duty.

j.  Item 12, again, states a [single] violation is independent basis for disgorgement and even disqualification.

k.  Item 13 states that "The court and parties in interest police conflicts through mandatory disclosure of relationships un FED.R.Bankr.P. 2014(a)."

l.  Item 14 states a professional "may not pick and choose which connections to disclose, or which connections to ignore as unimportant or trivial."

m.  Item 14 also states parties should not be required to search or ferret out violations; that disclosures should be complete.

n.  Item 15 states that even if there is no harm done, disqualification can occur.

o.  Item 15 reflected upon the AC&S Del. decision that such failures to disclose should be punished as severely as "fraud upon the court."

p.  Item 15 also reflected that non-disclosures did not have to be "intentional" for the Court to rule on the disinterestedness issue.

q.  Item 17 states that by not disclosing the connections between TB&F and GOLD, that TB&F breached its [fiduciary] duties.

r.   Item 17 also states that TB&F compounded the violations when it affirmatively continued to falsely state the facts in its (TB&F's) supplemental 2014 affidavit in January, 2002.

s.   Item 18 remarked upon the Bonus Sales Bankruptcy Case, showing prior knowledge that disclosure was required, and where the parties admitted discussing the fact that the 'non-disclosures' were now public, but that the [perpetrating] parties decided to remain silent.

t.   Item 19 states that the members of TB&F are [vastly] experienced practitioners in bankruptcy matters, and TB&F is not a stranger to the disclosure/reporting process.

u.   Item 19 also states that the UST specifically remarked about the parties being forewarned [against] engaging in replacing Debtor (eToys) controlling authorities as the UST stated "More significantly TB&F was specifically aware in this matter, from discussions with the [UST], of the UST's concerns about replacing corporate officers with individuals related to any of the retained professionals in the case."

v.   Item 19, again, states that the placement of GOLD was not an accident, but directly per the request of TB&F, and that the non-disclosure of TB&F's connections with GOLD was deliberate.

w.   Item 21 stated that TB&F's 'failure to disclose' directly, and 'seriously,' affected the integrity of the judicial process, and that TB&F's continued employment was rendered inappropriate.

x.   Item 22 states that the connections between GOLD and TB&F were 'materially adverse,' and that TB&F was no longer qualified under 101(14).

y.   Item 23 states that TB&F and GOLD had competition of economic interest against [fiduciary responsibilities] that would tend to diminish estate values.

z.   Item 25 states that GOLD's employment impaired TB&F, that there was "no independent DEBTOR v. creditor relationship," and that it was "unrealistic to expect that the numerous connections between GOLD and TB&F would not influence the interactions between TB&F and the Debtor and TB&F's ability to evaluate the Debtor's decisions and actions dispassionately."  That TB&F and GOLD had clear [self interest].

aa.  Item 26 states that the UST was not made aware of the connections between TB&F and GOLD until 3½ years after TB&F was retained as Committee Counsel.

bb.  Item 29 states that in deciding if "fraud upon the court" has occurred, the Supreme Court has always used the determination of whether or not the alleged fraud "harmed the judicial process."

cc.  Items 30-31 further clarifies what constitutes "fraud upon the Court" when it states [W]here a judgment is obtained by fraud perpetrated by an attorney ---such is "fraud upon the court" and it is done by attorney's who are "officers of the court" and "an unconscionable plan or scheme to improperly influence the court or interfere with the judicial machinery performing a task of impartial adjudication, as by preventing an opposing party from fairly presenting his case or defense."

dd.  Item 32 applies directly to the ALBER Appeal dismissal as it cites the Pearson case: "[W]hatever safeguards counsel may realize in remaining silent "does not" extend to deliberate efforts to mislead."

ee.  Item 33 states that "in this case, as in Pearson, a grave miscarriage of justice took place."

ff.  Item 35 reiterates the statement the UST made in Item 19 where the parties were "forewarned" in specific discussions with the UST office "that the replacement officers not be related to any of the professionals employed in the case."

gg.  Item 35 also states "This, it is respectfully submitted, is all of the intent needed to demonstrate that TB&F's Rule 2014 disclosure violation was a fraud upon the court."

hh.  Item 36 remarks that "TB&F Rule 2014 violation harmed the integrity of the Court and the judicial process. In this case, it also undermined public confidence in the integrity of the bankruptcy process."

ii.  Item 38 states that the eToys PEDC can hire anyone it wants to.

jj.  Item 39 states TB&F should be disgorged $1.6 million [as a sufficient deterrent].

kk.  The UST finally remarked in Item 39 that "anything less would simply be viewed as a cost of doing business."

- 16 -

1    8.    But then, on February 24th, 2005, just nine (9) days after filing their (the UST)

2    Disgorgement Motion and five (5) days prior to the Trial which was to be conducted by

3    ALBER, the UST filed a Stipulation To Settle (with TB&F) (**Exhibit F, eToys D.I. 2201**).

4

5    9.    As submitted to the Court, the UST Stipulation To Settle (with TB&F)

6    effectively covered up any other offenses alleged by engaging in <u>illegal contract obligations</u> by

7    stating;

8

9    *"**WHEREAS** the United States Trustee will not seek to compel any additional*

10    *disclosures".*

11

12    10.    Such abusive contractual statements are in direct violation of **28 USC**

13    **586(A)(3)(F)** as well as Oath of Office and **18 USC 3057(a).** The statutory abuse also laid the

14    flawed foundation for JUDGE WALRATH's OPINION to state that there was no perjury

15    (even though more than 20 separate counts have occurred by more than half a dozen parties

16    with continued, unaddressed perjury matters being stricken or expunged due to the "*doctrine*"

17    of "*scienter*" as incidents of "*unclean hands*" are overwhelmingly documented, which the UST

18    Stipulation To Settle (**D.I. 2201**), signed by KENNEY, seeks to utilize in abating statutory

19    disclosure requirements.) An example of perjury not addressed is the simple matter of GOLD's

20    PLAN Declaration (**eToys D.I. 1312**) stating that the PLAN was negotiated in "*good faith*"

21    with "*arms length*" negotiations between the DEBTOR (GOLD) and Creditor (TB&F), which

22    was impossible to accomplish as TRAUB did testify on the Stand, at the Trial held on March

23    1st, 2005, during direct examination by the Court, (**eToys D.I. 2228,** the transcript of that

24    hearing) that TB&F had paid GOLD four (4) separate payments of $30,000 each from January,

25    2001, through May, 2001 (which is both *pre* and *post* petition), only to halt such payments by

26    TB&F to GOLD when GOLD became the "*wind-down coordinator*" for the DEBTOR at

27    $40,000 per month.

28

29    11. The above admittance by TRAUB, under oath, meets all three (3) requirements for

30    proof of the violation of the **Janet Reno Reform Act of 1994 18 U.S.C. § 155: Fee Fixing**.

31    Which is, of itself, a misdemeanor that becomes a full-blown list of felony violations when it is

1    taken into account that said acts were assisted by the collaborative endeavor of MNAT, TB&F
2    and GOLD, and others to circumvent the Code, after being forewarned by the UST not to
3    engage in such acts (**D.I. 2195, Items 19 and 35**).  Not only is conspiracy a probable,
4    successful prosecution, RICO also has substantial foundation.

5

6        12.    The same day the UST filed the UST Stipulation For Settlement (**eToys D.I.
7    2201**), February 24th, 2005, the UST filed a Motion To Shorten Time, To Limit Notice And To
8    Approve Form And Manner Of Notice In Connection With Motion To Approve Settlement…
9    (**Exhibit G, eToys D.I. 2202**).  Of note is the fact that the UST wants to limit the service of
10   who receive the UST Disgorgement Motion and the UST Stipulation For Settlement only to
11   those who are now Appellees; MNAT, GOLD, the eToys PEDC, TB&F, CLI/HAAS, ALBER
12   and Gary L. Ramsey (another eToys shareholder who attended the 2005 eToys Court Hearing
13   with ALBER).  The UST's reasoning was that none of the other 'aggrieved parties' in the
14   eToys Bankruptcy Case would have been interested anyway.

15

16       13.    ALBER vehemently disagrees with the UST in this regard, asserting that
17   perhaps all other 'aggrieved parties' and 'parties of interest' in the eToys Bankruptcy Case
18   (creditors, shareholders, bondholders, the SEC, the U.S. Attorneys Office…) would have been
19   interested had they (the above named 'aggrieved parties') been notified.  In fact, the flood of
20   responses may have been overwhelming and the March 1st, 2005, Trial before JUDGE
21   WALRATH may have resulted in a 'standing room only' situation.  By not notifying these
22   other 'aggrieved parties' of the serious level of fraud and corruption in the eToys Bankruptcy
23   Case by those administering the eToys Estate, Justice was likely forestalled, leaving only a
24   couple of *Pro Se*'s to argue what was/is arguably a high profile, complicated, mega bankruptcy
25   ($470+ Million) case in Federal Court.  ALBER contends that this Motion (**D.I. 2202**), with
26   the included, limited service to aggrieved parties, was but one more factor in what many
27   consider a cover-up of monstrous proportions (encompassing the UST, Debtors Counsel, the
28   Official Creditors Committee and the Plan Administrator).

29

30       14.    Furthermore, in Item 13 of the UST Disgorgement Motion (**D.I. 2195**), the UST
31   states emphatically that "The court and parties in interest police conflicts through mandatory
32   disclosure of relationships under FED.R.Bankr.P. 2014(a)."  So, using the UST own words,

1  what the UST committed by causing only a very few parties to receive notice of alleged, and
2  admitted, <u>criminal violations</u> of FED.R.Bankr.P. 2014(a), <u>was nothing short of an engineered</u>
3  <u>cover-up</u> by depriving said "parties in interest" of crucial information.  For how is what the
4  UST did, in depriving 'parties in interest' of crucial information concerning Bankruptcy
5  disclosure matters, any different than TB&F & GOLD's actions by their failures to disclose
6  their close connections and disabling conflicts of interest?
7
8      15.    Item 26 states that "Evidence of the connection between TB&F and GOLD in
9  this case was not brought to the attention of the UST until more than 3 ½ years after this court
10  approved TB&F's employment as Committee counsel."  A footnote from 'Item 26' states that
11  "A professional may not leave the court or other parties in interest to search the record for a
12  professional's relationships or otherwise to ferret out those relationships within a single case."
13  In the Bonus Stores Bankruptcy Case (hereafter referred to as BONUS, **District of Delaware,**
14  **03-12284**, JUDGE WALRATH presiding), KENNEY filed an objection to the hiring of ADA
15  **(Exhibit H, BONUS D.I. 102)** and an objection to the hiring of TB&F **(Exhibit I, BONUS**
16  **D.I. 103)**.  KENNEY's objections (in both *D.I. 102 & D.I. 103*) reveals that he (KENNEY)
17  knew of the connection between GOLD and TB&F at that time.  Therefore, the UST/
18  KENNEY did not have to look anywhere.  KENNEY had filed objections for the UST
19  detailing the connections between GOLD and TB&F in July, 2003.
20
21      16.    More incriminating for the UST and KENNEY is that they (the UST and
22  KENNEY) knew of the actual, disabling conflict of interest between GOLD, TB&F and Fleet
23  Bank in July, 2003, yet remained silent in the eToys Bankruptcy Case where TB&F began
24  pursuing litigation against Fleet Bank, on behalf of Debtor eToys, starting in May, 2003, with
25  GOLD as eToys Plan Administrator.  Again, the UST and/or KENNEY did not have to look
26  anywhere.  KENNEY had filed objections for the UST detailing the connections between
27  Fleet, GOLD and TB&F/TRAUB in July, 2003.
28
29      17.    Also of relevance in the BONUS case is the relationship detailed by the
30  UST/KENNEY between TB&F and GOLD.  For Item 38 states that the eToys PEDC can hire
31  anyone it wants to.  What the UST always refused to comment on, even though ALBER raised
32  the subject repeatedly in both Court filings and at the March 1st, 2005, Trial, and the UST

1   affirmed ALBER's contentions (in Item 9, above), was that TB&F was representing the eToys
2   Estate in the IPO litigation in the New York State Supreme Court against Fleet Bank at the
3   same time it (TB&F) had an undisclosed, disabling conflict of interest with Fleet Bank.

4

5   18.   While it's true that ADA was not involved in the eToys Bankruptcy Case, the
6   two (2) sole principals of ADA were (TRAUB and GOLD).  But for anyone to read the
7   language in the UST (KENNEY) Disgorgement Motion (**eToys D.I. 2195**) and/or the UST
8   (KENNEY) Objections in the BONUS Bankruptcy Case (**BONUS D.I. 102 & 103**), digesting
9   the UST's own interpretation of the Rules and Code governing disclosure, disinterestedness,
10  and what constituted conflict of interest, and come to the conclusion that neither TB&F and/or
11  GOLD committed any crimes is either folly or intentional ignorance.  Once again, the
12  UST/KENNEY did not have to search or ferret out any information from any other cases to
13  locate any of this information: they only had to be conscious.

14

15  19.   While it may be claimed that notifying the eToys PEDC of said acts [of a
16  criminal nature involving non-disclosure] was sufficient, since they (the eToys PEDC)
17  represented the Creditors and Bondholders, it must be noted that; a) TB&F represented(s) the
18  PEDC; and, b) MNAT had/has a disabling, undisclosed Conflict Of Interest with Mattel Toy
19  Co. (who served on the PEDC) and Fisher-Price Toys (a wholly owned subsidiary of Mattel
20  who also served on the PEDC); and c) the eToys PEDC showed no interest in how the eToys
21  Estate was/is being administered (which is why ALBER listed the eToys PEDC as Appellees);
22  and all of the Appellees (MNAT, GOLD and TB&F) had/have undisclosed Conflicts Of
23  Interests with **Bain Capital** (who purchased most of etoys, including the name and the
24  virtually new, state-of-the-are Blair Fulfillment Facility in Blair, Virginia) for a pittance in the
25  eToys Bankruptcy Auction which was conducted by TRAUB.

26

27  20.   Of great importance is the fact that there was not any mention of MNAT in the
28  UST Motion To Disgorge, nor did the UST ever condemn MNAT for what JUDGE
29  WALRATH later Ruled to be 'intentional fraud upon the Court and the [eToys] Estate.'  For it
30  was revealed by ALBER (**eToys D.I. 2178**) that MNAT was representing Goldman Sachs and
31  G.E. Capital in the Finova Bankruptcy Case (District of Delaware, 01-0697, filed the same day
32  as the eToys Bankruptcy Case in the same Delaware Court, hereafter referred to as FINOVA),

1    while at the same time Goldman Sachs and G.E. Capital (both investment banks) were
2    materially adverse to the eToys Estate (whom MNAT represented as Debtor's Counsel). Of
3    particular, relevant note is that KENNEY and Frank Perch (hereafter referred to as PERCH)
4    represented the UST in FINOVA, and both represented the UST in the eToys Bankruptcy
5    Case. This is probably why KENNEY and PERCH always refused to comment on MNAT's
6    failures to disclose; because they (KENNEY & PERCH) could be found to be either
7    incompetent or criminally liable for such negligence. And, in ALBER's opinion, the UST's
8    continued silence regarding the severe criminal violations by MNAT can be seen as
9    Obstruction Of Justice, especially when considered in conjunction with the UST's lax
10   treatment of TB&F and GOLD, and then joining with the Appellees in the ALBER Appeal.

11

12       21.    More of this pattern is seen in one of ALBER's most recent letters to the UST
13   hierarchy: (**Exhibit J**). This letter documents situations in other cases which are [criminally]
14   relevant to the eToys Bankruptcy Case, an Affidavit by Johann Hamerski detailing KENNEY's
15   phone confession (to Hamerski) that he (KENNEY) did (in KENNEYS mind) knowingly file
16   false documents in the eToys Bankruptcy Case, and information ALBER had uncovered from
17   deep within the UST website which allows ALBER to state, with no reservations, that the UST
18   Program, under cover of their own self-policing internal policies, knowingly and willfully
19   conceals crimes against Bankruptcy Estates by UST employees.

20

21       22.    The extremely relevant point in **Items 14 & 15**, above, is that there was more
22   than sufficient motive on the part of Appellees and the UST to keep awareness of the
23   allegations against those parties administering the eToys Estate from becoming general
24   knowledge among all of the other [eToys] 'aggrieved parties' and 'parties of interest.'

25   **STATUTORY VIOLATIONS OF SERIOUS CONSEQUENCE NOT YET ADDRESSED**
26

27       23.    The scheme to dismiss the ALBER Appeal adversely affects parties by
28   facilitating continuous, ongoing, statutory violations.

29

- 21 -

1      24.    Whereupon the Court (JUDGE WALRATH) did issue an Opinion on October

2    4th, 2005 (**eToys D.I. 2319**) with a corresponding Order that approved the UST February 24th,

3    2005, Stipulation to Settle (**eToys D.I. 2201**) by KENNEY, which used many of the UST

4    conclusions as a basis.

5

6      25.    The OPINION continued along illicit avenues of statutory application, stated no

7    referral to the United States Attorney would occur, that no perjury occurred by GOLD who

8    was "**not**" required to apply as (post-petition) "*wind down coordinator*" by **327(a), or** any law,

9    in direct violation of **18 USC 3057(a)** and the **Judicial Canon of Conduct 3(B)3**. No

10   honorable review of the facts at hand, in compliance with the Code and precedents established

11   by the 3rd Circuit, can come to the same [erroneous] conclusions.

12

13     26.    The illegitimate foundation the OPINION infers gives the [precedent setting]

14   impression that the System, the Court and the UST will disregard any abuse of process for

15   solely personal reasons.    Applied to the present, this would include this Court's erroneous

16   statement that ALBER did not submit his brief 'on time,' which is substantiated by false

17   testimony which in and of itself warrants an investigation.  It is a simple premise: They must,

18   at all costs, using any and all means of power, influence, and/or persuasion, endeavor to halt

19   these items from being addressed (by any authority with integrity above reproach) or the

20   offending parties will, at the barest of minimum, be <u>disbarred</u>.

21

22     27.    These endeavors to "*cover up*" by dismissing "*good faith*" parties (ALBER)

23   without "*adjudication on merits*" violates the very "**Poulis**" standard the Court seeks to dismiss

24   the ALBER Appeal on. There are uncommon, undeniable, illustration(s) of manipulation

25   which apparently disregards the fact that "*covering up*" these affairs, to assist established

26   colleagues also becomes complicit by framework with "*unclean hands*" in willful,

27   premeditated "*fraud upon the court*" causing "*materially adverse*" harm not only to ALBER,

28   but also upon other shareholders and the Public as a whole, through direct butchery of the

29   Integrity of the System and the Public's faith in the Courts.

30

31     28.    Thus, it is ALBER's sincerest hope and desire that ALBER may encounter the

32   aforementioned 'authority with integrity above reproach' who will take on what some

1  (including ALBER) may characterize as a 'good ol' boys club' within the Delaware

2  Bankruptcy Court System.

3

4  ## Standard of Review

5      29.    The right to Writ of Mandamus is stated as follows;

### TITLE 28 > PART V > CHAPTER 111 > § 1651

**§ 1651. Writs**

**(a)** The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

**(b)** An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction

6

7      30.    The function of the Writ of Mandamus can be utilized when Justices refuse to

8  address matters of Recusal. A Writ of Mandamus is "*drastic remedy that a court should grant*

9  *only in extraordinary circumstances in response to an act amounting to a judicial usurpation*

10  *of power*". In re: Mwanze, 242 F.3d 521, 524 (3d Cir. 2001). A Writ for Mandamus may not be

11  used to circumvent the appeal process. As this is within an appeal concerning erroneous

12  "*finding of facts*" that is complicit with erroneous " *conclusions of law*" with ongoing Perjury

13  violations, assisting "fraud upon the court" seeking to dismiss "*erroneously*" with "*prejudice*"

14  the standard is not only met, it is exceeded abundantly when both the UST and the Court

15  certify unlawful contract clauses that permit circumvention of "*unambiguous*" statutory

16  provisions, such as "the United States Trustee will not seek to compel any additional

17  disclosures" (D.I. 2201).

18

19  # SUMMARY

20      ALBER filed the ALBER Appeal Brief 'on time.' Even if "arguendo" the Clerk/Court

21  stated it was a day late or several days late, such is not sufficient justification for dismissal

22  without "adjudication upon merits," of which no attempt was made according to JUDGE

23  ROBINSON's Memorandum Order. Another point worth reiterating is that ALBER responded

1  to the Magistrate's Scheduling Order within only 7-8 days of receiving the Scheduling Order

2  from the Court. For it must be noted that all of the 'professionals' receive documents and/or

3  rulings from the Court via email and/or fax, whereas pro se ALBER receives the same

4  documents and/or rulings from the Court via regular (snail) mail. And what with ALBER

5  residing on the west coast, it takes from 4-7 days to receive said documents from the Court. So

6  with ALBER receiving the Magistrate's Scheduling Order on January 11th, 2007, ALBER had

7  only 7 days to comply with said Order. Another case in point is that ALBER did not receive

8  the Memorandum Order from the Court dated February 27th, 2007 until March 3rd, 2007.

9

10  For the Court and UST were served with the ALBER Opening Brief, by hand, on

11  January 19th, 2007, which was shown on the ALBER Certificate Of Service (**D.I. 50**). So the

12  Clerk/Court's statement that the ALBER Opening Brief was filed on January 23rd is erroneous.

13  If, however, the Clerk/Court is using the date ALBER served HAAS, because of the deficiency

14  of notice, then the Appellees' Motion To Dismiss, which the Court Granted in dismissing the

15  ALBER Appeal with prejudice, has not been served to this day according to the Pacer Docket

16  records.

17

18  And if the circumstance outlined above is true, then this Court did Grant a Motion To

19  Dismiss which was never correctly (i.e. legally) served, and which the Court did punish

20  ALBER for the same infraction/neglect.

21

22  Given that ALBER is pro se, and everyone who opposes ALBER is a legal

23  professional, why is ALBER held to such a higher standard (being ignorant of most all things

24  legal until this eToys case) than legal professionals who do this for a living?

25

26  And while it is surely apparent that ALBER does not regard the UST as 'watchdogs of

27  Justice,' ALBER does want it known to all that such was not always the case. For ALBER's

28  first phone call to an 'authority figure' in the eToys Bankruptcy Case was to KENNEY in early

29  2002, whereupon ALBER felt graced to be conversing with a person ALBER assumed (at the

30  time) to be a person of integrity who would examine the evidence ALBER presented to him

31  (KENNEY) and then, after considering said evidence, using the power vested in him/his office

32  to stop the evil-doers in their tracks. ALBER's current, non-existent faith in the UST (in

1  Delaware) comes from direct, personal contact over a period of approximately 5 years. Thus,

2  ALBER's opinion has been formed over quite some time and is hardly a 'rush to judgment' as

3  some may [mistakenly] assume.

4

5      That said: ALBER <u>has</u> had the opportunity of meeting several persons in the UST

6  Program who exhibit honor and integrity; unfortunately for ALBER (and eToys) none of them

7  worked in the Delaware office.

8

9                            # <u>CONCLUSION</u>

10      The Memorandum Order by JUDGE ROBINSON is erroneous, and with no legal

11  foundation; that is clearly shown. But the root cause for the time being wasted by the Court

12  stems from problems endemic within the Bankruptcy system itself: specifically corruption

13  within the UST Program (an Appellee in the ALBER Appeal). These are matters which this

14  District Court can, and should address in considering the ALBER Appeal. But if the ALBER

15  Appeal is not addressed, then the fraud and corruption are left to continue unabated, with the

16  offending parties now given a 'green light' since all of the information brought before this

17  Court by ALBER and HAAS would be allowed to lapse.

18

19      And allowing any or all the above listed actions to occur in her Court shows either a

20  confused state of mind on the part of JUDGE ROBINSON, or the collaboration of people other

21  than JUDGE ROBINSON in crafting the ORDER whereupon JUDGE ROBINSON did then

22  sign the ORDER without confirming its veracity: either of which mandates a judicial review of

23  JUDGE ROBINSON's fitness and/or capacity to serve on the bench. For dismissing a Federal

24  Appeal '*with <u>prejudice</u> as an extreme sanction*' is a grave matter.

25

26      For those who still insist that ALBER was tardy in filing the ALBER Opening Brief,

27  please consider the following. ALBER made his initial purchase of 1,000 shares of eToys

28  stock on December 8th, 2000, with proceeds from the final disposition of ALBER's 1997 work-

29  related injury which caused ALBER to be disabled. Upon hearing, from other eToys

30  shareholders, that foul play may have been responsible for the loss of ALBER's investment

31  (meager as it may have been by others' standards), ALBER began researching the background

1    of the eToys Bankruptcy.   Confirming, to ALBER's satisfaction, that foul play was indeed

2    afoot, ALBER proceeded to challenge the people/entities charged with overseeing the eToys

3    Bankruptcy in Federal Bankruptcy Court.   This culminated in a generally favorable Opinion

4    from JUDGE WALRATH.   Yet now, 6+ years after beginning this trek, ALBER is berated by

5    a Federal Judge for reasons beyond ALBER's control (health issues), and chastised as a person

6    who makes a mockery of the Judicial system by exhibiting "willful or bad faith."

7

8           Whereas seasoned, well-educated Corporate Attorneys who (according to them)

9    'inadvertently' break laws that have been on the books for years; and it's always a mistake

10   which they always want to rectify with a simple "I'm sorry, I won't do it again.  I promise!"

11   (paraphrased)  Always looking and sounding like a child who just got caught, yet again, with

12   their hands in the proverbial cookie jar!   ALBER does not believe it's Justice to let these

13   seasoned, well-educated Corporate Attorneys, (so-called) Officers of the Court, who have

14   sworn to act in an ethical manner in seeing that Justice is served, off with a simple "I'm sorry."

15   This is why the ALBER Appeal was filed: to see the punishment meted out in JUDGE

16   WALRATH's Opinion and Orders modified so that the punishment fits the crimes.

17

18          As in the ALBER Appeal itself, ALBER implores this Court to refer the cases against

19   MNAT, TB&F and GOLD to the United States Attorney's Office (USAO) for prosecution.

20   Or, at the very least, to allow the ALBER Appeal to proceed, with the next indicated step either

21   to set a deadline for the Appellees' Reply Brief, or Rule that since the Appellees did not file a

22   reply brief in accordance with the Scheduling Order put in place by the Magistrate, that this

23   Court Rule in favor of ALBER.

24

25   RESPECTFULLY SUBMITTED this 15th day of March, 2007,

26
27
28
29
30                                          _____
31                                          ROBERT K. ALBER
32                                          *Pro Se Appellant/Cross Appellee*
33                                          *17685 DeWitt Avenue*
34                                          *Morgan Hill, CA  95037*
35                                          *Tel/Fax:    (408) 778-5241*
36                                          *condo28@mail.com*

# SERVICE LIST

Office of the Clerk
United States District Court in the District of Delaware
844 N. King Street, Lockbox 18
Wilmington, Delaware  19801-3570


Office of the Clerk
Court of the United States Bankruptcy Court
District of Delaware
824 Market Street, 5th Floor
Wilmington, Delaware  19801


'Laser' Steven Haas
108 E. Jewel Street
Delmar, Delaware  19940
laserace01@yahoo.com


Robert J. Dehney, ESQ
Derek Abbott, ESQ
Gregory W. Werkheiser, ESQ
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
Tel:    (302) 575-7229
Fax:    (302) 425-4663
RDehney@MNAT.com
dabbott@mnat.com
gwerkheiser@mnat.com


James L. Garrity, Jr., ESQ
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022
Tel:    (212) 848-4879
Fax:    (212) 848-4879
Defense Counsel for Traub, Bonacquist & Fox LLP (currently defunct)
jgarrity@shearman.com

Ronald R. Sussman, ESQ
Kronish, Lieb, Weiner & Hellman LLP
1114 Avenue of the Americas
New York, NY 10036-7798
Tel:    (212) 479-6063
Fax:    (212) 820-9785
Defense Counsel for Traub, Bonacquist & Fox, LLP (currently defunct)
rsussman@kronishlieb.com


Mark Minuti, ESQ
Barry F. Gold
Saul Ewing LLP
222 Delaware Avenue
Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Tel:    (724) 413-5783
Fax:    (724) 898-0015
Defense Counsel for Barry Gold
mminuti@saul.com
barrygold@aol.com


G. David Dean, ESQ
Saul Ewing LLP
100 South Charles Street
Baltimore, MD 21202
Tel:    (410) 332-8704
Fax:    (410) 332-8163
Defense Counsel for Barry F. Gold
gdean@saul.com


Paul R. Traub, ESQ
Susan F. Balaschak, ESQ
Steven E. Fox, ESQ
Dreier, LLP/The Traub Group, f/k/a Traub, Bonacquist & Fox, LLP (currently defunct)
499 Park Avenue
New York, NY 10022
Tel:    (212) 328-6100
Fax:    (212) 328-6101
pt@tbfesq.com

Michael S. Fox, ESQ
Olshan, Grundman, Frome, Rosenzweig & Wolosky, LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022
Tel:   (212) 451-2277
Fax:   (212) 451-2222
Formerly of Traub, Bonacquist & Fox, LLP (currently defunct)
mfox@olshanlaw.com


U.S. Securities and Exchange Commission (SEC)
Susan Sherrill-Beard
E. Gordon Robinson
3475 Lenox Road
Suite 1000
Atlanta, GA  30326
Tel:   (404) 842-7625
Fax:   (404) 842-7633
Investigators for the SEC
sherrill-beards@sec.gov


Kelly Beaudin Stapleton, ESQ
U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107
Tel:   (215) 597-4411
Fax:   (215) 597-5795
Office of the U.S. Trustee
kelly.b.stapleton@usdoj.gov


Mark S. Kenney, ESQ
J. Caleb Boggs Federal Building
844 King Street,
Suite 2313
Lockbox 35
Wilmington, DE  19801
Tel:   (302) 573-6565
Fax:   (302) 573-6497
Office of the U.S. Trustee
mark.kenney@usdoj.gov

Frederick Rosner, ESQ
Duane, Morris, LLP
1100 North Market Street
Suite 1200
Wilmington, DE 19801-1246
Tel:    (302) 657-4943
Fax:    (302) 657-4901
Local Counsel for Traub, Bonacquist & Fox (currently defunct)
Formerly of Jaspan Schlesinger Hoffman, LLP
FBRosner@duanemorris.com