UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| ETOYS, INC., *et al.* | : | Case Number 01-706 (MFW) |
| | : | |
| | : | Jointly Administered |
| Debtors | : | |
| | : | Hearing Date: 3/8/2005 at 3:00 p.m. |
| | : | Objection Deadline: 3/4/2005 at 2:00 p.m. |

**NOTICE OF MOTION**

**TO:**   THE DEBTOR; THE POST EFFECTIVE DATE COMMITTEE; TRAUB BONACQUIST & FOX LLP; COLLATERAL LOGISTICS, INC.; ROBERT ALBER; AND GARY RAMSEY

The United States Trustee has filed a Motion to Approve Settlement of the United States Trustee's Motion for Entry of an Order Directing the Disgorgement of Fees Paid to Traub Bonacquist & Fox LLP for Services Rendered as Counsel to the Official Committee of Unsecured Creditors (the "Settlement Motion").

Responses to the Settlement Motion, if any, must be filed on or before March 4, 2005 at 2:00 p.m. (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801.

At the same time, you must serve a copy of the response upon the undersigned counsel for the United States Trustee and upon counsel for Traub Bonacquist & Fox LLP.

A HEARING ON THE SETTLEMENT MOTION WILL BE HELD ON MARCH 8, 2005 AT 3:00 P.M. BEFORE THE HONORABLE MARY F. WALRATH, UNITED STATES BANKRUPTCY JUDGE, IN THE UNITED STATES BANKRUPTCY COURT, COURTROOM 4, 824 MARKET STREET, FIFTH FLOOR, WILMINGTON, DELAWARE 19801.

[Remainder of Page Intentionally Blank]

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

                              **KELLY BEAUDIN STAPLETON**
                              **UNITED STATES TRUSTEE**

Dated: February 24, 2005      **BY:**   /s/ Mark S. Kenney
                                            Mark S. Kenney, Esquire
                                            Trial Attorney
                                            J. Caleb Boggs Federal Building
                                            844 King Street, Suite 2207, Lockbox 35
                                            Wilmington, DE 19801
                                            (302) 573-6491
                                            (302) 573-6497 (Fax)
                                            mark.kenney@usdoj.gov

Counsel for Traub Bonacquist & Fox LLP.:

James L. Garrity, Esquire
SHEARMAN & STERLING
599 Lexington Avenue
New York, NY 10022
Fax (212) 848-7179
jgarrity@shearman.com

Ronald R. Sussman, Esquire
KRONISH LIEB WEINER &
 HELLMAN LLP
1114 Avenue of the Americas
New York, NY 10036
Fax (212) 479-6275
rsussman@kronishlieb.com

# Exhibit H

## Bonus – D.I. 102

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : |
| | : Chapter 11 |
| BONUS STORES, INC. | : |
| | : Case Number 02-12284(MFW) |
| Debtor. | : |
| | : Hearing Date: 8/18/03 at 10:30 a.m. |
| | : Objection Deadline: 8/11/03 at 4:00 p.m. |
| | : Extended to 8/14/03 at 4:00 p.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S APPLICATION
FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF
ASSET DISPOSITION ADVISORS LLC AS ASSET DISPOSITION
ADVISORS AND CONSULTANTS (D.I. 17)**

In support of her Objection to the Debtor's Application for an Order Authorizing the Employment and Retention of Asset Disposition Advisors LLC as Asset Disposition Advisors and Consultants (the "Application"), Roberta A. DeAngelis, the Acting United States Trustee for Region 3 ("UST"), by undersigned counsel, avers as follows:

1. This Court has jurisdiction to hear and determine the above-referenced Objection.

2. Pursuant to 28 U.S.C. § 586(a)(3)(H), the UST is charged with monitoring applications filed under section 327 of the Bankruptcy Code "and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3.  Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the above-referenced Objection.

4.  By its Application, the Debtor seeks authority to employ and retain Asset Disposition Advisors ("ADA") as its asset disposition advisors and consultants pursuant to Section 327(a) of the Bankruptcy Code.

5.  Employment under 11 U.S.C. § 327(a) requires that the professional person sought to be employed must "not hold or represent an interest adverse to the estate" and must further be a "disinterested person." 11 U.S.C. § 101(14)(E) provides in pertinent part that a "disinterested person" is a person that "does not have an interest materially adverse to the interest of the estate ... by reason of any *direct or indirect* relationship to, connection with, or interest in, the debtor ... or for any other reason" (emphasis added).

6.  In evaluating whether a professional "holds or represents an interest adverse to the interest of the estate," it is clear that actual conflicts of interest are *per se* disqualifying. Additionally, while potential conflicts do not disqualify a professional *per se*, retention of a professional with potential conflicts is disfavored. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476 (3d Cir. 1998)(*quoting In re BH&P, Inc.*, 949 F.2d 1300, 1316-17 (3d Cir. 1991)).

7.  ADA represents or has represented interests adverse to the estate and is not a disinterested person.

    (a)  The Application discloses that in addition to performing pre-petition services *for the Debtor* from and after July 11, 2003, ADA also performed services *for Fleet Retail Finance, Inc.* ("FRFI"), the Debtor's secured lender, through and including

2

July 10, 2003; those services related specifically to the Debtor. In fact, the Affidavit of Barry Gold annexed to the Application ("Gold Affidavit") discloses that FRFI employed ADA:

> in connection with the Debtor's financial difficulties, and to assist FRFI, and the Debtor, in assessing matters affecting FRFI's collateral, identifying underperforming locations, and in assisting said parties in formulating and implementing a down-sizing program geared towards generating maximum realizable asset values. In the period through and including July 10, 2003, ADA assisted FRFI and the Debtor in the formulation and implementation and inventory liquidation program affecting 214 locations (which store closing program is the subject of various "first day" motions filed by the Debtor).

Gold Affidavit, ¶ 6d.[1]

(b)  The Gold Affidavit further discloses that Paul Traub, a partner in the law firm of Traub, Bonacquist & Fox, LLP, is also a principal of ADA. TB&F is the Debtor's proposed bankruptcy co-counsel; indeed, TB&F's engagement letter with the Debtor indicates that Mr. Traub is the lead TB&F partner on the engagement.

(c)  The engagement letter between the Debtor and TB&F (attached as an exhibit to the Debtor's application to employ TB&F) is dated July 9, 2003 but recites that the engagement is "effective as of July 3, 2003." Thus, while TB&F was performing services for the Debtor, ADA was simultaneously performing services for FRFI.

(d)  FRFI's interests are structurally and inherently adverse to those of the Debtor and the estate. This is axiomatic, even though FRFI and the Debtor may share some common goals and may not disagree openly on certain issues. FRFI's interests are

---

[1] Upon inquiry by counsel for the UST, Mr. Gold disclosed that "ADA and FRFI did not have a formal written engagement agreement in place covering ADA's performance of services." Thus, the precise terms and scope of ADA's engagement by FRFI are unknown.

3

to protect its collateral, assert the broadest lien rights possible and recover its claims in full; FRFI is not burdened by duties to any other creditor. The Debtor, in contrast, has fiduciary obligations to multiple creditor constituencies; it has an interest, on behalf of the estate, in minimizing the reach of FRFI's control and in preserving the availability of assets for distribution to unsecured creditors. These interests remain adverse even if the Debtor has agreed to waive any direct challenges to FRFI's liens.

(e)     Based on the information set forth in the Gold and Traub Affidavits, ADA cannot provide the impartial and independent advice necessary to assist the Debtor in performing its fiduciary duties to the estate; such advice includes, among other things, whether and how to implement the down-sizing program that ADA formulated while working for FRFI.

(f)     Despite the July 10, 2003 conclusion of ADA's engagement by FRFI, continuing obligations to FRFI (*e.g.*, to maintain the confidentiality of information) may also prevent ADA from providing the impartial and independent advice to which the estate is entitled.

(g)     ADA's lack of disinterestedness cannot be cured, nor can it be waived. *In re American Printers & Lithographers*, 148 B.R. 862, 867 (Bankr. N.D. Ill. 1992).

(h)     Even granting ADA the benefit of every possible doubt and viewing the Application in the light most favorable toward permitting employment and retention of ADA, the Application demonstrates that ADA cannot meet the requirements of Section 327(a) that are a *sine qua non* of professional retention. Accordingly, the proposed

4

employment of ADA should be denied. *See generally In re Marvel Entertainment Group, Inc., supra.*

8.  The UST reserves the right to further amend this Objection to assert such other grounds as may become apparent upon further investigation and/or discovery.

9.  The UST leaves Debtors to their burdens of proof and reserves all discovery rights.

WHEREFORE the UST requests that this Court issue an order denying the Application and/or granting such other relief that this Court deems appropriate.

    Respectfully submitted,

    **ROBERTA A. DeANGELIS**
    **ACTING UNITED STATES TRUSTEE, REGION 3**

Dated: August 13, 2003    BY: /s/ Mark S. Kenney
    Mark S. Kenney, Esquire
    Trial Attorney
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491
    (302) 573-6497 (Fax)

# Exhibit I

# Bonus – D.I. 103

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* : | |
| : | Chapter 11 |
| BONUS STORES, INC. : | |
| : | Case Number 02-12284(MFW) |
| Debtor. : | |
| : | Hearing Date: 8/18/03 at 10:30 a.m. |
| : | Objection Deadline: 8/11/03 at 4:00 p.m. |
| : | Extended to 8/14/03 at 4:00 p.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO APPLICATION FOR
ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF TRAUB
BONACQUIST & FOX, LLP AS CO-COUNSEL TO DEBTOR (D.I. 16)**

In support of her Objection to the Application for an Order Authorizing the Employment and Retention of Traub, Bonacquist & Fox LLP as Co-Counsel to the Debtor (the "Application"), Roberta A. DeAngelis, the Acting United States Trustee for Region 3 ("UST"), by undersigned counsel, avers as follows:

1. This Court has jurisdiction to hear and determine the above-referenced Objection.

2. Pursuant to 28 U.S.C. § 586(a)(3)(H), the UST is charged with monitoring applications filed under section 327 of the Bankruptcy Code "and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3. Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the above-referenced Objection.

4. By its Application, the Debtor seeks authority to employ and retain Traub, Bonacquist & Fox LLP (TB&F") as its co-counsel pursuant to Section 327(a) of the Bankruptcy Code.

5. Employment under 11 U.S.C. § 327(a) requires that the professional person sought to be employed must "not hold or represent an interest adverse to the estate" and must further be a "disinterested person." 11 U.S.C. § 101(14)(E) provides in pertinent part that a "disinterested person" is a person that "does not have an interest materially adverse to the interest of the estate ... by reason of any *direct or indirect* relationship to, connection with, or interest in, the debtor ... or for any other reason" (emphasis added).

6. In evaluating whether a professional "holds or represents an interest adverse to the interest of the estate," it is clear that actual conflicts of interest are *per se* disqualifying. Additionally, while potential conflicts do not disqualify a professional *per se*, retention of a professional with potential conflicts is disfavored. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476 (3d Cir. 1998)(*quoting In re BH&P, Inc.*, 949 F.2d 1300, 1316-17 (3d Cir. 1991)).

7. Substantial questions exist regarding whether TB&F does not hold or represent an interest adverse to the estate and is a disinterested person.

   (a) The Application discloses that Paul Traub, Esquire, the lead TB&F partner on the proposed engagement, is a principal of Asset Disposition Advisors LLC (ADA"), a consulting firm which the Debtor also seeks to employ as an asset disposition advisor and

2

consultant. The Affidavit of Paul Traub annexed to the Application states that before the July 25, 2003 petition date, Mr. Traub and other attorneys at TB&F performed certain consulting services through ADA for and on behalf of the Debtor. Traub Affidavit, ¶7f.

    (b)    The Debtor's separate application to employ ADA discloses that in addition to performing pre-petition services *for the Debtor* (through Mr. Traub and other TB&F attorneys) since July 11, 2003, ADA also performed services *for Fleet Retail Finance, Inc.* ("FRFI"), the Debtor's secured lender, through July 10, 2003; those services related specifically to the Debtor. The Affidavit of Barry Gold annexed to the Debtor's application to employ ADA ("Gold Affidavit") discloses that FRFI employed ADA:

> in connection with the Debtor's financial difficulties, and to assist FRFI, and the Debtor, in assessing matters affecting FRFI's collateral, identifying underperforming locations, and in assisting said parties in formulating and implementing a down-sizing program geared towards generating maximum realizable asset values. In the period through and including July 10, 2003, ADA assisted FRFI and the Debtor in the formulation and implementation and inventory liquidation program affecting 214 locations (which store closing program is the subject of various "first day" motions filed by the Debtor).

Gold Affidavit, ¶ 6d.[1] This information is not disclosed in the Traub Affidavit. The Traub and Gold Affidavits also do not disclose whether any of the ADA services performed for FRFI were performed by Traub and/or other TB&F attorneys.

    (c)    The engagement letter between the Debtor and TB&F is dated July 9, 2003 and recites that the engagement is "effective as of July 3, 2003." The letter between ADA and FRFI terminating ADA's engagement on behalf of FRFI is dated July 10, 2003; Mr.

---

[1] Upon inquiry by counsel for the UST, Mr. Gold disclosed that "ADA and FRFI did not have a formal written engagement agreement in place covering ADA's performance of services." Thus, the precise terms and scope of ADA's engagement by FRFI are unknown.

3

Traub signed that letter on behalf of ADA. Thus, while Mr. Traub's law firm, TB&F, was performing services for the Debtor, his consulting firm, ADA, was performing services for FRFI.. In short, there were zero degrees of separation between FRFI and TB&F.

(d)   FRFI's interests are structurally and inherently adverse to those of the Debtor and the estate; this is true even though FRFI and the Debtor may share some common goals and may not disagree openly on certain issues. FRFI's interests are to protect its collateral, assert the broadest lien rights possible and recover its claims in full; FRFI is not burdened by duties to any other creditor. The Debtor, in contrast, has fiduciary obligations to multiple creditor constituencies; it has an interest, on behalf of the estate, in minimizing the reach of FRFI's control and in preserving the availability of assets for distribution to unsecured creditors. These interests remain adverse even if the Debtor has agreed to waive any direct challenges to FRFI's liens.

(e)   Based upon the information set forth in the Traub and Gold Affidavits and upon TB&F's prior relationship with FRFI via ADA, TB&F cannot provide the impartial and independent advice necessary to assist the Debtor in performing its fiduciary duties to the estate; such advice includes whether and how to implement the down-sizing program formulated while ADA performed services for FRFI, whether to assert causes of action against FRFI in connection with that program or otherwise, whether to assert claims against ADA in connection with ADA's services to FRFI, and whether to assert challenges to the validity, priority or extent of any liens granted to FRFI.

      (f)    TB&F's lack of disinterestedness cannot be cured, nor can it be waived.

*In re American Printers & Lithographers*, 148 B.R. 862, 867 (Bankr. N.D. Ill. 1992).

      (g)    Even granting TB&F the benefit of every possible doubt and viewing the Application in the light most favorable toward permitting employment and retention of TB&F, the Application simply leaves open too many questions about TB&F's disinterestedness. Accordingly, the proposed employment of TB&F should be denied. *See generally In re Marvel Entertainment Group, Inc., supra.*

8.    The UST reserves the right to further amend this Objection to assert such other grounds as may become apparent upon further investigation and/or discovery.

9.    The UST leaves Debtors to their burdens of proof and reserves all discovery rights.

WHEREFORE the UST requests that this Court issue an order denying the Application and/or granting such other relief that this Court deems appropriate.

                    Respectfully submitted,

                    **ROBERTA A. DeANGELIS**
                    **ACTING UNITED STATES TRUSTEE, REGION 3**

Dated: August 13, 2003      BY: /s/ Mark S. Kenney
                                    Mark S. Kenney, Esquire
                                    Trial Attorney
                                    J. Caleb Boggs Federal Building
                                    844 King Street, Suite 2207, Lockbox 35
                                    Wilmington, DE 19801
                                    (302) 573-6491
                                    (302) 573-6497 (Fax)

# Exhibit J

# Letter to U S Trustee – Kelly Stapleton
# March 11th, 2007

Sunday, March 11th, 2007

Dear Ms. Stapleton,

This is a letter I crafted to you back in October, 2006, but because of health issues (which I'm still recovering from) I did not send it to you at the time. I added a couple of items today which were not in the original version, but then nothing has changed so the facts remain the same.

A funny thing about the truth: it never changes...

Sincerely,

Robert K. Alber

---

Monday, October 2nd, 2006

**To:**

Kelly Beaudin Stapleton, ESQ
U.S. Trustee, Third Region
833 Chestnut Street, Suite 500
Philadelphia, PA 19107
Tel:   (215) 597-4411
Fax:   (215) 597-5795
kelly.b.stapleton@usdoj.gov
(*via email, fax & USPS*)

Dear Ms. Stapleton,

   This letter is in regards to the eToys Bankruptcy Case, case no. **01-0706**, District of Delaware, **the Honorable Chief Federal Judge Mary F. Walrath presiding**, and concerns core matters in the ongoing eToys Bankruptcy Case (eToys), filed March 7th, 2001.

- 1 -

You may have forgotten me, but I am Robert K. Alber, an eToys shareholder, *Pro Se*, and Plaintiff against Morris, Nichols, Arsht & Tunnel (MNAT), Traub, Bonacquist & Fox, LLP (TB&F) and Barry F. Gold (GOLD) in the eToys Bankruptcy Case. I conducted the Trial of said entities on March 1st, 2005. I'm also the Appellant in case no. **05-0830** & Cross-Appellee in case no. **05-0831**.

And as I'm sure you are aware, you and the U.S. Trustee's Office are listed as an Appellee in case 0830. Even though I did not originally list you as such, your office 'joined' with the other Appellees against me, at your own discretion. While I can't say that I wasn't dismayed when you first declared me your enemy (by listing yourself as an Appellee), it is appropriate and I'm not adverse to bringing information of your offices indiscretions and dishonesty to the public eye. So, I'm in the middle of writing my Appellate Brief, due Wednesday, October 4th, 2006, but decided to take a brief break and notify your office of other egregious acts by MNAT, TB&F and GOLD because our investigations into matters concerning these parties have turned up more and more evidence against them which I do have leave of the Bankruptcy Court to address. As the U.S. Trustee's Office is the self-acclaimed 'government watchdog' in all Federal Bankruptcy Cases I decided that giving your office another chance to make right certain wrongs in our case before addressing these, and other concerns, before the Court. I've done this throughout the entire eToys case, with negligible results from your office, and, in fact, causing much discord between your office and me in the process, but I still consider it my duty to keep your office informed.

If you would please refer back to your office's eToys filing, docket 2195, and consult with your representative in the case, trial attorney Mark Kenney (KENNEY), you will find that TB&F members and GOLD did testify that their only involvement with each other after mid-May, 2001, was the partnership between Paul Traub (TRAUB) and GOLD in Asset Disposition Advisors (ADA), and then refer to Judge Walrath's Opinion, dated October 4th, 2005, whereupon Judge Walrath did state that since ADA wasn't involved in eToys she would not rule that TRAUB's and GOLD's involvement was an issue. While Judge Walrath is <u>technically</u> correct in her opinion (since ADA is not an official entity in the eToys Bankruptcy), we find it specious of her in not addressing the core issue: that GOLD and TB&F were conflicted, and that since GOLD was/is the controlling entity for eToys, his