disclosure of his incestuous involvement with TB&F was material to his filing a Disclosure Statement when he was hired as 'wind-down coordinator' in May, 2001.

But, we have also found that TB&F and GOLD were not honest when they stated their only business involvement after May, 2001, was through, and as partners/principles in, ADA.

**1)** Please reference the Cosmetics Plus Bankruptcy Case, case no. **01-14471**, Cosmetics Plus Group, Ltd. a Delaware Corporation, **the Honorable Judge Prudence Carter Beatty presiding**. Although this is a Delaware Corporation it was filed in the **Southern District of New York (SDNY)** but I can find no paperwork filed anywhere in the Delaware PACER system or in this case showing why: but I can find references through other cases where this is done, and allegations that it's done with the intent to hide information from certain Courts for nefarious reasons. To me this appears to be one such instance. For had this case been filed in Delaware it would have been easier to find evidence of perjury in TB&F's and GOLD's testimony and they may not have perjured themselves at all knowing this information was readily available.

Please note that ADA was not involved in this Bankruptcy, and if ADA was involved they (it) never filed an application for employment complying with **327(a)** and **101(14)**.

Other 'inaccuracies' in TB&F's testimony and filings in eToys have to do with Goldman Sachs Capital Partners (GSCP) and Fleet Retail Finance Incorporated (FRFI) – both Investment Banking Institutions of which eToys did/does have litigation against in the New York State Supreme Court, and in which TB&F was placed in charge of that litigation due to (undisclosed) conflicts of interest by MNAT (MNAT was and is still eToys debtor's counsel).

According to the information we have, GSCP was at least part owner of Cosmetics Plus. Sullivan & Cromwell handled the deal for GSCP, which is even listed on the Sullivan & Cromwell website (in other words, this isn't hidden from anyone). GSCP appointed Ronald Scharman as COO of Cosmetics Plus in 1995, and Ronald Scharman is still signing documents on behalf of Cosmetics Plus (as is reflected in Court filings). What we must have

then is TB&F working for GSCP in the Cosmetics Plus case concurrently with suing Goldman Sachs (GS; the parent company of GSCP) in eToys. According to fee applications filed in the eToys case, eToys litigation against GS was being discussed and investigated with the intent of eToys filing litigation against GS back in August, 2001 (the same month Cosmetics Plus filed Bankruptcy).

In the eToys case, GS was working for eToys pre-petition and became adverse to eToys after eToys filed Chapter 11 for not only its pre-petition involvement but the IPO litigation as well. TB&F had two (2) reasons to disclose GS in the eToys case, yet didn't.

Of particular note is the fact that an "R. DeAngelis" called TB&F attorney Steven Fox during the Cosmetics Plus case, concerning banking issues, which is reflected in TB&F's Fee Application (docket 302, part 1 of the detailed billing records, on August 14th, 2001). There's also a "B. DeAngelis" who called TB&F attorney TRAUB on September 5th, 2001 (docket 302, part 2 of the detailed billing records). While we can't confirm whether or not this is Roberta DeAngelis, with the U.S. Trustee's Office, we haven't been able to disprove it either. I bring this to your attention because, if this is indeed Roberta DeAngelis, her jurisdiction did not extend to the SDNY. She was acting Trustee in the 3rd Region back then. And the fact that the U.S. Trustee's Office knew of the business involvement between GOLD and TRAUB and never did anything about it until we (and Steven Haas) brought it up in late 2004 has always left us confused.

2)      Now please reference the Nationwide Computers & Electronics, Inc., Bankruptcy Case, **01-21241, the Honorable Judge Adlai S. Hardin Jr. presiding**. This case was also filed in the **SDNY**, and an Examiner/Trustee, Andrew Plotzker, was appointed after several of the largest creditors objected to how the case was being handled (with TB&F as Creditors' Committee).

After studying Court filings and the related adversary case dockets in this case, we have great respect for Mr. Plotzker for 'telling it like it is' and holding TB&F accountable for the fraud they were perpetrating upon the Court, and upon the creditors they were (supposed to be) representing. We've known for some time that TB&F represented Thomson Multimedia as corporate counsel, what we didn't realize was how far TB&F would go in furthering

Thomson's financial interests and those of the owners of Nationwide above that of everyone else. (If TB&F will go to such lengths to further Thomson's interests, they'll surely go to the same extremes to protect interests of other 'friends' of theirs as well. And to cause harm to the creditors which they swore to represent to help a 'friend' means that they'd likely do the same in other cases.)

For it was found, by Mr. Plotzker, that TB&F was giving <u>extreme preferential treatment</u> to Thomson Multimedia, the largest creditor in the case, at the expense of the Estate and all other parties of interest. As a result, <u>TB&F was compelled to return all monies paid to them in the case</u> **and** <u>withdraw an Administrative Claim they had filed (for $75,000: docket 274)</u>. Thus, TB&F was adjudged guilty and escaped numerous Federal felony prosecutions and possible jail time by simply agreeing to not receive any payment for their services? If TB&F had been prosecuted for their crimes in this case, as it appeared Mr. Plotzker wanted to do, our eToys case may have worked out far differently and I may not be writing you this letter.

It was also reported in one docket of that case that TB&F attempted to have a professional not do an official 'employment application' as they (TB&F) did in our case regarding GOLD.

I'm not sure if Mr. Plotzker works on Chapter 11 cases, but if he had been on our case instead of KENNEY (who we've seen with our own eyes is **VERY** friendly with TB&F) we probably wouldn't have the problems in our eToys case that started <u>prior to the bankruptcy filing</u>. Mr. Plotzker would likely have done all he could to clean up the mess if his attention to duty in the 'Nationwide' case is any indication.

**NOTE:** Both of these cases were filed in mid-2001, <u>just after</u> the eToys case was filed (on March 7th, 2001), and, had adequate disclosure been made at the time, TB&F would have been precluded from being the Creditors' Committee in the eToys case, and especially for being in charge of the IPO litigation of eToys vs. Goldman Sachs and eToys vs. Fleet, et al. And although I've included much commentary in this letter, what I'm stating are my conclusions after going through many, many Court filings and billing statements in these cases (and likely over 100+ more cases) doing in-depth research. And we go through not only Federal Court filings but SEC filings as well.

- 5 -

**3)** Also, we have found that MNAT was representing Fleet in the TW, Inc. Bankruptcy Case, case no. **03-10785**, District of Delaware, **the Honorable Mary F. Walrath presiding**. This was hard to figure out, because it was hidden so well, but Court filings do prove, conclusively, that Congress Financial and Fleet were co-lenders in the case yet MNAT's filings only mentioned Congress; never Fleet. TB&F was/is debtor's counsel in this case, working directly for Gordon Brothers and the Ozer Group (who together formed GBO, Inc., which owns TW, Inc.) and there's no way TB&F couldn't have known MNAT was representing Fleet in that case. TB&F had a duty to disclose their full relationship with Fleet in our eToys case.

If you'll look into the eToys case further you'll see that MNAT, TB&F and GOLD always join with each other and defend each other. This is a 'team' we're dealing with; not separate entities as they would have all of us believe.

**4)** Thus far three (3) of my filings have been stricken, but they're still available on PACER. Despite the fact these filings were stricken, they contain proof of additional 'failures to disclose' and 'conflicts of interest' which none of the guilty parties have yet disclosed as is the continuing legal requirement and as Judge Walrath pointed out in her October 4th, 2005, Opinion. The docket listings on PACER I'm referring to are:

 a) **eToys docket 2238**, which details conflicts between GOLD and TB&F, along with some issues I/we have with KENNEY and others under your direction. Interesting that your filing, **eToys docket 2195**, is so well written, and incriminates TB&F so fiercely, yet every time I brought these issues to KENNEY's attention he told me it was no big deal. This is one of the big issues I have with your office, because I've attempted to follow the appropriate 'chain of command' every step of the way, and yet, in the end, I had to bring these issues before the Court because nobody I contacted in your Office would do anything.

 b) **eToys docket 2239**, which details yet more egregious, undisclosed conflicts of interest regarding MNAT, eToys debtor's counsel. I find it odd that your office hasn't acted on information/evidence which was made public well over a year ago.

      c)      **eToys docket 2253**, related to my **05-0830** Appeal. True, this filing also isn't complimentary to your Office. But then there are yet more 'conflicts' detailed, along with the supporting evidence, on which your office has still not acted. TRAUB applied directly to GOLD for employment, even addressing his employment letter (on behalf of TB&F) "Dear Barry." TB&F worked directly for Bain (as the owner of Stage Stores), as did GOLD, immediately prior to TB&F going to work for eToys (TB&F started with eToys on or before January 10th, 2001, and from billing records may have even still been working for Bain at the time). TB&F put GOLD on its payroll, paying GOLD directly, until GOLD went to work for eToys. As the Cosmetics Plus case shows, GOLD continued working directly for TB&F while he was first 'wind down coordinator' and later President/CEO of eToys.

GOLD testified in his Deposition that he received jobs from Jack Bush, who is an Executive/Director for Bain, and in the Jumbo Sports Bankruptcy case Jack Bush <u>and Fleet</u> both submitted letters of support for GOLD to receive 503(b) monies for his 'substantial contributions' to the Jumbo Sports Estate. Immediately after GOLD, Bush and a Robert Floum (who is also part of the 'Group') left Jumbo Sports, GOLD went to work for Bain/Stage Stores and Jack Bush and Robert Floum were hired. We have these Jumbo Sports Court filings in our possession if you'd like us to send you copies (since they are only available by either going to the Clerk's Office in Tampa, FL., or by ordering them from there).

We also have many, many Court documents from the Luria & Sons Bankruptcy case, which we had to retrieve from the Atlanta, GA., National Archives (since they're no longer stored in Miami, FL., where the case was originally filed).

**5)**      I sent your Office several emails, with additional information/evidence, yet did not even receive a 'we received your information' response. For all I know, everything I've ever sent your office was deleted as soon as it came in.

A couple of questions here are appropriate:

1. Why isn't your office going after these entities that are obviously breaking the Law?

2. Why are you only going after the people bringing violations of the Law to your attention?

Perhaps '**Item 6**,' below, will answer those questions:

**6)** In perusing the U.S. Trustee website, we found rulings on over forty (40) internal investigations conducted by the U.S. Trustee's Program into acts (some for incompetence, some of a criminal nature) of certain of your employees working on Federal Bankruptcy cases. After downloading them, and studying them, we found it interesting that whenever it's brought to the attention of your Program that you have an incompetent and/or crooked person working for you (your Program), it seems that the remedy is to allow that person to finish whatever Bankruptcy case(s) they're working on at the time and the only punishment administered is that the person is not assigned to any further legal matters (although a few people did repay/reimburse money).

One good case in point is **an internal U.S. Trustee Investigation, Case No. 02-0007**, and the resultant ruling against a Trustee representative (an Examiner) that committed (what we would term) extortion and/or blackmail against three (3) creditors; Chase Manhattan, The Bank of New York and Mapco Equities. For being found guilty the Trustee was simply removed from the rotation (an interesting turn of a phrase) because, it was stated in the report, the Trustee no longer fit within the requirement of 'disinterestedness?' The Trustee wasn't prosecuted for any crime; the Trustee was just told that no longer would the U.S. Trustee Program have any need for their services.

Also, everything is redacted so as to make it (almost) impossible for all but the most determined individuals (like us) to figure out who it is you're protecting, and what case(s) they were working on where they committed said 'indiscretions' and/or criminal acts. We found it interesting that the Code your Program used for redacting all identifying information from your internal investigations (which should have been made public, and the relevant party (ies) prosecuted) is **5 U.S.C. § 552(b)(6)**. Which states:  **§ 552.** *Public information; agency rules, opinions, orders, records, and proceedings:* **(b)** *This section does not apply to matters that are - :* **(6)** *personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;"*

- 8 -

So, according to the U.S. Trustee Program it's a "clearly unwarranted invasion of personal privacy" for entities who work for you, and who are found to have committed serious, criminal acts, to be identified to the public?

One conclusion to which a reasonable person could arrive, considering the behavior of your Program in these incidences and the purposeful redacting, is that it's possible the reason behind your Program not prosecuting more entities for egregious non-disclosure, conflicts of interest and other criminal acts is because your Program does not even attempt to hold itself accountable for these same acts, and, in fact, has pages and pages of codes protecting your Program's employees from the very same Laws they are supposed to be enforcing against others (in Federal Bankruptcies).

To put it simply: If any entity in a Federal Bankruptcy case adopted the standards under which your Program operates, and refused to act otherwise, they would be in violation of numerous Federal Bankruptcy Laws and face felony criminal prosecution and jail time.

In our opinion: This will not do.  For all we know, some of the attorneys on our case were ejected from the U.S. Trustee's Program for negligence, or even criminal activity, and the knowledge of that fact is being kept from us by the Rules under which your Program operates.

Representatives of the U.S. Trustee's Program must be held to a higher standard of ethics than the entities over whom they administer.  They must also have to follow the same Rules and Codes, and, if caught violating those Rules and Codes, or for incompetence, they must be immediately taken off their current case(s) and held liable for their actions in public; not behind closed doors.  It's been found in the past that self-policing one's own actions, with little or no oversight or input from outside, unrelated entities, is as surely a recipe for disaster as would be just passing out copies of the Federal Bankruptcy Rules to all parties when a Corporation files Bankruptcy and expecting they would obey the Law without anyone watching over them.

That's why the U.S. Trustee's Office was created and given 'watchdog' status. Because we all know that self-policing just doesn't work: "Power corrupts, absolute power corrupts absolutely."

7) I, Robert K. Alber, am a *Pro Se*, therefore not an attorney (as you and KENNEY are). Until I became involved in the eToys case, so as to protect my shareholder interests in eToys, the closest I had ever been to a Federal Court was when I either drove past one or saw Federal Court proceedings on television. Yet it was left to me to bring the evidence before the Court detailing the misdeeds of MNAT in the eToys case, conduct the depositions of MNAT (and TB&F and GOLD: February 9th, 2005), and conduct the Trial of MNAT (and TB&F and GOLD: March 1st, 2005). Based on the evidence I presented to the Court, Judge Walrath found MNAT to be guilty beyond a shadow of a doubt for intentionally committing a fraud upon the Court and upon the eToys Estate (Judge Walrath's Opinion & Orders dated October 4th, 2005). Yet, to this day, the official U.S. Trustee's position regarding MNAT's actions as debtor's counsel in the eToys case has been that they've done nothing wrong and the same MNAT attorneys are still performing duties in our case. We find it inconceivable that the U.S. Trustee's Office is still mute concerning the intentional fraud that debtor's counsel MNAT committed in our case. Federal Bankruptcy Law dictates, with no equivocation, that debtor's counsel, above all other parties in a Federal Bankruptcy, disclose **all** actual and/or potential conflicts of interest or face severe consequences.

8) In **eToys docket 2195** (on page 21), filed February 15th, 2005, you made the following statement:

> *"The UST respectfully submits that under the circumstances of this case, a substantial disgorgement of up to the full amount of the $1,648,124.28 of fees and expenses awarded to TB&F for its pre-effective date services (less amounts earned prior to any discussion of GOLD's employment) may be required in order to provide a deterrent against future violations of FED.R.BANKR.P.2014(a). Any lesser sanction may simply be viewed as a "cost of doing business" and encourage professionals to encounter the risk of silence in the face of their duty to disclose."*

- 10 -

Yet TB&F has continued to commit the same, and other, Federal crimes. How do you explain that? And your office never even remarked on the MNAT failure to disclose Goldman Sachs and GE Capital in the Finova Bankruptcy Case. **Judge Walrath found MNAT guilty of committing intentional fraud upon the Court and the estate** (whom MNAT **still** represents as debtors counsel). So why haven't you addressed this issue?

9)   To further address issues regarding '**Item 8**' above: According to **Section 5-1.2.1**, U.S. Trustee obligations, **28 U.S.C. § 586 (a)(3)(F)** which states the United States Trustee has the duty of "*notifying the appropriate United States Attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States.*" Furthermore, according to **Section 5-7.3, DISCUSSIONS OR NEGOTIATIONS REGARDING LOSSES**, which specifically states "*When there is a suspected loss of estate assets or an inability to account for those assets, there shall be **no** settlement negotiations, discussions or agreements initiated or entered into regarding the return of funds, compensation, or resolution of the matter, absent the written approval of the Deputy Director.*" (emphasis mine)

Yet, despite serious violations of disclosure and conflict of interest requirements as detailed in Federal Bankruptcy Law {**327(a) and 101(14), and others**}, and the evidence presented by me at the February 1st, 2005, eToys Court Hearing (with KENNEY and Assistant U.S. Trustee Frank Perch sitting at the same table as I was), detailing the discrepancies between MNAT, TB&F and GOLD's statements as to what financial matters (of a material nature) were left in the eToys case, the U.S. Trustee's Office filed a proposed, agreed upon **9019 Settlement Motion** before the Court on February 24th, 2005, along with a 'Motion To Shorten Time' for responses (**eToys dockets 2201 & 2202**).

You waited all that time before doing anything, and then you want to limit the amount of time the parties who brought these matters to your attention have to respond? What was this all about? What was the 'sudden emergency' that caused you to do this, especially when you knew a Trial date was approaching in just a few days? I conclude, with no reservations, that your Office (KENNEY, perhaps?) wanted to stop my prosecution of TB&F going forward before any more harm could befall them. But, by your actions (in proposing the 9019 Settlement Proposal) on the eve of the Trial, you did preclude me (who was to conduct the

- 11 -

Trial) from being Granted the full disgorgement I was requesting, along with other penalties, that the Court may have imposed upon TB&F absent your interference. Your Office's (and/or KENNEY's) obstructive tactics have been noted.

**10)** It's now been almost two (2) years since we brought to the attention of the Court serious violations of Federal Bankruptcy Law which: a) caused TB&F to disgorge $750,000; and, b) caused MNAT to be found guilty of committing intentional fraud upon the Court <u>and</u> <u>upon the eToys Estate</u>; and, c) caused a new Federal disclosure requirement for Executives (because of GOLD's actions and inactions). Yet the eToys PEDC has done nothing at all to address these admitted <u>and</u> proven violations of the Law against the eToys Estate, which they are responsible for serving and protecting. Thus, the PEDC has not only forfeited its duties, but is allowing said guilty parties to continue representing the eToys Estate as if nothing ever happened. I'm requesting that you address the PEDC's failure in the eToys Bankruptcy Case and join with me in requesting that the current PEDC be replaced with a new PEDC that will fulfill their duties.

**11)** Despite the fact that your office did file an excellent Motion For Disgorgement in the eToys Bankruptcy Case on February 15th, 2005, eToys Docket 2195, Johann Hamerski submitted an Affidavit (under oath) into the official record of the Yavapai County Superior Court (Arizona) giving a completely different recounting of KENNEY's official opinion of the crimes TB&F had committed in the eToys case (***Exhibit A***). Please note that what Johann Hamerski states KENNEY told him is in direct opposition to what KENNEY submitted into Federal Bankruptcy Court in the U.S. Trustee Motion For Disgorgement.

So did KENNEY submit a document into Federal Court which he believed to be false at the time of filing? Or is Johann Hamerski lying about what KENNEY told him?

I submit that if Johann Hamerski is telling the truth in his Affidavit, then KENNEY, and yourself, are guilty of Obstruction Of Justice as I remarked earlier.

According to a recent letter from Mr. Walton to 'Laser' Steven Haas, the U.S. Trustee Program doesn't make comments like these (***Exhibit B***). But then, my sources have advised me that KENNEY and Hamerski are 'friends.' So this may be an exception to the rules.

**12)** In the **Mpower Holding Corporation Bankruptcy, District of Delaware, Case No. 02-11046**, MNAT is representing Goldman Sachs and Merrill Lynch (both Bondholders) and Shearman Sterling is debtors counsel. Merrill Lynch and Goldman Sachs were/are both being sued by eToys in the New York Supreme Court and MNAT is eToys debtors counsel. Shearman Sterling represents both Goldman Sachs and Merrill Lynch as corporate counsel. Yet MNAT never disclosed its representation of Merrill Lynch or Goldman Sachs in the eToys case. Nor does Shearman Sterling disclose, as debtor's counsel, that they represent Merrill Lynch or Goldman Sachs. These are egregious non-disclosures by both of these attorney firms. Will you/your office do anything about this?

**13)** In the **NII Holdings, Inc. Bankruptcy, District of Delaware, Case No. 02-11505**, MNAT is again representing Goldman Sachs (as a Bondholder), at the same time they (MNAT) are eToys debtor's counsel, with eToys being adverse to Goldman Sachs. Again, egregious non-disclosures while representing an investment bank. A Federal Felony carrying a 10 year sentence if found guilty. (Donald F. Walton was U.S. Trustee, 3rd Region, when this occurred, so its inclusion here may be of specific interest to Mr. Walton. As may KENNEY's behavior since Mr. Walton was his boss at the time.)

**14)** MNAT was representing Mattel Toy Company in the Learning Center sale in 1999. Mattel is/was the largest creditor in the eToys Bankruptcy Case and MNAT is still eToys debtors counsel. Even though I revealed in a filing in the eToys Bankruptcy that MNAT had never disclosed that they (MNAT) had represented Mattel in 1999, MNAT has still never made a supplemental disclosure of this fact. KENNEY and your office are also aware of MNAT failure to disclose representing Mattel (because you were served my filing which detailed MNAT's failure to disclose, yet you've done nothing. (When will it end?)

Anyways… I do appreciate you allowing me a few minutes of your time so I could address these issues which continue to plague our eToys Bankruptcy (and many others we've researched).

And, Ms. Stapleton, please bear in mind that the cases, issues and conclusions I've stated and/or referenced in this letter to you are: a) just parts of our ongoing investigations into violations of the Law by these, and other, parties administering the eToys case; and, b) just the tip of the iceberg based on the information contained herein; and, c) just a few case studies into Bankruptcy Code violations of the many we're conducting (which all reference eToys parties).

In closing, I, Robert K. Alber, beg of you to do your (respective) jobs and help me (and other eToys shareholders) in our continuing quest to see Justice done in our case. It was never my wish that I become adverse to the U.S. Trustee's Program. That statement is witnessed by the phone conversations I've had with KENNEY (in 2002 and 2004) and the numerous (unanswered) communications I've sent to your Office concerning other code violations and matters which deserve attention. It has been the choice of your Office to be adverse to me in what appears to be your continuing quest to not admit to grave failings within your Office's charter and statutes governing your behavior and duties, with the result being that you have instead chosen to cover up {or as we in the private sector are so inclined to phrase such behavior; 'covering your ass' (*cya*)} these grave failings in the hopes that I, and others, will just 'go away.'

If this is what you expect to happen your strategy is doomed to failure. For we were, and still are, victims of various criminal acts by MNAT, TB&F and GOLD (and others) in our eToys case and we will not quit. All I/we want is for your Office to fulfill your obligations to us and other parties of interest in our case and rectify the wrongs that have befallen us.

In preparation for my Appeal we've been studying up on case precedents and authorities, finding that it's never too late for wrongs to be rectified in a Federal Bankruptcy case as long as the Plan is not being harmed or the 'pie' isn't going to be divided up differently. We're not asking for any of that; our actions have and will continue to benefit all parties in our case, and the success of the Plan as a whole. Although… since the Plan was obviously not presented in 'good faith' nor was any sort of 'arms length' actions or activities ever undertaken since the parties administering our case are, for all intents and purposes, one entity (MNAT, TB&F and GOLD), we will go after the Plan separately, and perhaps ask for precedent to be set in our case regarding that matter. Because in our opinion; it's never too

- 14 -

late for Justice to occur. But then that's another matter that we'll deal with when we believe the time is right.

So please, put whatever personal or emotional grievances against me aside. It does not serve me, in the least, to be adverse to you or the Office you represent. I've been forced into that position only because of the U.S. Trustee's Office continuing inaction in performing and acting on the authority vested in your Office as the official 'government watchdogs' whose duty it is to ensure Federal Bankruptcies are administered honestly and openly.

I would appreciate your attention to these matters involving our eToys Bankruptcy case immediately, and, if I can be of any assistance, in any capacity, I'm at your service.

Sincerely,

/s/ *Robert K. Alber*           .

Robert K. Alber
eToys Shareholder of Record
*Pro Se*

17685 DeWitt Avenue
Morgan Hill, CA  95037

Tel/Fax:    (408) 778-5241
Cell:       (928) 279-6244

email:      condo28@mail.com


**cc:**
Clifford D. White, acting head of the U.S. Trustee Program
Roberta DeAngelis, lead counsel for the U.S. Trustee Program
Mark S. Kenney, trial attorney/U.S. Trustee representative overseeing the eToys Bankruptcy
Donald F. Walton, acting Deputy Director for the U.S. Trustee Program